Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Eric E. Wall (Bar No. 248692)
ericwall@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Vincent M. Pollmeier (Bar No. 210684)
vincentpollmeier@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S Figueroa Street 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

Attorneys for Plaintiffs ViaSat, Inc. and ViaSat
Communications, Inc. f/k/a WildBlue
Communications, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC., <br><br> Defendants. | CASE NO.  3:12-cv-00260-H-WVG <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ISSUANCE OF LETTER ROGATORY TO MACDONALD, DETTWILER & ASSOCIATES LTD. IN CANADA** <br><br> Judge:         Hon. William V. Gallo <br> Courtroom:  F <br> Date:          December 3, 2012 <br> Time:          3:00 p.m. |

## Introduction

Plaintiffs ViaSat, Inc. and ViaSat Communications, Inc. (collectively, "ViaSat") request that the Court issue the accompanying Letter Rogatory to MacDonald, Dettwiler & Associates Ltd. ("MDA") in Canada, which requests documents regarding (a) analyses of the value of SS/L's business operations and satellite manufacturing services, and (b) the negotiation and consummation of MDA's agreement to acquire Defendant Space Systems/Loral, Inc. ("SS/L") from Defendant Loral Space & Communications, Inc. ("LS&C," collectively with SS/L, "Defendants"). Defendants have stated in a meet and confer with ViaSat that they will not take a position on this application until it is filed.

The issuance of a Letter Rogatory is necessary because the requested information is highly relevant to ViaSat's infringement claims in this litigation. MDA has agreed to purchase SS/L from LS&C and has likely generated materials regarding valuations of, and commentary on, SS/L's current assets, satellite manufacturing services, and future business prospects. MDA's Purchase Agreement with LS&C and SS/L also provided that LS&C would retain control over SS/L's actions in this lawsuit.

The documents in MDA's possession are relevant to this lawsuit. Valuations of SS/L's satellite manufacturing services and future business plans are relevant to ViaSat's claim for damages relating to SS/L's infringing satellite projects. Valuations of SS/L's intellectual property are relevant to SS/L's counterclaims for damages against ViaSat. The Purchase Agreement and documents regarding its negotiation are relevant to both of these issues as well as ViaSat's claims of inducement. ViaSat thus respectfully requests that the Court grant this motion and issue the Letter Rogatory.

## Relevant Background

In late June 2012—*i.e.*, several months after ViaSat first filed its lawsuit against Defendants—MDA (a Canadian corporation based in Richmond, British Columbia) and Defendants announced that MDA had agreed to purchase Defendant SS/L from Defendant LS&C. *See* Loral Space & Communications, Inc., Form 8-K dated June 28, 2012 ("Loral 8-K"), *available*

*at* http://www.sec.gov/Archives/edgar/data/1006269/000114420412036799/v317134_8k.htm (last visited Oct. 26, 2012). In view of the $875 million purchase price paid by MDA and the sophistication of the parties, MDA, SS/L, LS&C, or all three likely conducted or provided analyses of the value of SS/L's assets and business before agreeing to the transaction. The purchase contract, a portion of which was filed with the U.S. Securities and Exchange Commission ("Purchase Agreement"), specifically referenced ViaSat's lawsuit against Defendants and contained numerous clauses relating to the same. *See id.*, Ex. 10.1 §§ 10.2-10.4, 10.7-10.8, *available at* http://www.sec.gov/Archives/edgar/data/1006269/000114420412036799/v317134_ex10-1.htm (last visited Oct. 26, 2012). Pursuant to the provisions that have been made public, LS&C will still control SS/L's actions in the lawsuit even after the transaction is complete. Numerous provisions of the Purchase Agreement, however, were not publicly disclosed. Schedule 10.8, for example, which is referenced throughout Article X of the Purchase Agreement and contains the details of "Special Provisions Relating to Covered [ViaSat] Litigation," was not filed with the SEC. *Id.*

### Argument

### I.   LETTERS ROGATORY ARE THE PROPER METHOD FOR A U.S. COURT TO SEEK DISCOVERY IN A FOREIGN JURISDICTION

A letter rogatory is a formal written request sent by a court to a foreign court asking that a witness residing within that foreign court's jurisdiction either provide documents, a deposition, or both for use in a pending action before the requesting court. *Marroquin-Manriquez v. I.N.S.,* 699 F.2d 129 (3rd Cir. 1983); *U.S. v. Reagan,* 453 F.2d 165, 168 (6th Cir. 1971) (affirming district court's issuance of letters rogatory seeking documents from investigation conducted by German authorities); Wright, Miller, & Marcus, Federal Practice and Procedure (2007), § 2083. The decision to issue such a letter is within the Court's discretion, *U.S. v. Mason,* 1990 WL 185894, at *3 (4th Cir. 1990), and the proper inquiry for issuance is whether the discovery sought complies with the liberal standard of Federal Rule of Civil Procedure 26. *DBMS Consultants Ltd. v. Comp. Assocs. Int'l, Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990); *see also Barnes & Noble, Inc. v. LSI*

*Corp.*, No. 11–02709, 2012 WL 1808849, at *2 (N.D. Cal. May 17, 2012) ("A court's decision whether to issue a letter rogatory [compelling deposition testimony] … require[s] an application of Rule 28(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure.")

Here, ViaSat's use of a Letter Rogatory is the appropriate and sanctioned method of obtaining discovery from MDA.[1]  Where a document custodian is located in a nation, like Canada, that is not a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,[2] letters rogatory are particularly appropriate.  *See*, *e.g.*, *Bakeer v. Nippon Cargo Airlines, Co.*, 2011 U.S. Dist. LEXIS 90102, *61-62 (E.D.N.Y. 2011) (noting that "[s]ince Japan is not a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters…, [t]he only method for obtaining the testimony of an unwilling Japanese witness is through 'a letter rogatory executed by a Japanese court'"); *U.S. v. Walus*, 616 F.2d 283, 304 (7th Cir. 1980) (district court should have granted request by defendant for use of letter rogatory to obtain evidence located abroad that was relevant to defendant's case); *U.S. v. Paraffin Wax*, 23 F.R.D. 289 (E.D.N.Y. 1959); *Danisch v. Guardian Life Ins., Co.*, 19 F.R.D. 235 (S.D.N.Y. 1956); *Branyan v. KLM*, 13 F.R.D. 425 (S.D.N.Y. 1953).

## II. **LETTERS ROGATORY ARE APPROPRIATE UNDER CANADIAN LAW**

ViaSat's request also complies with Canadian law.  The Canada Evidence Act specifically provides that a court outside of Canada may serve letters rogatory upon a Canadian court.

---

[1] *See* Federal Rule of Civil Procedure 4(f)(2)(B); the All Writs Act, 28 U.S.C. §§1651, 1781 (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner"); Article 5(j), Vienna Convention on Consular Relations, April 24, 1963; 21 U.S.T. 77; 596 U.N.T.S. 261; T.I.A.S. 6820.

[2] *See, e.g.*, U.S. Department of State, http://travel.state.gov/law/judicial/judicial_682.html (noting that Canada is not a party to the Hague Convention on the "Taking of Evidence Abroad in Civil or Commercial Matters") (last visited Oct. 23, 2012); Hague Convention, http://www.hcch.net/index_en.php?act=states.details&sid=28 (listing Conventions Canada has ratified, but "Taking of Evidence Abroad in Civil or Commercial Matters" is not among them) (last visited Oct. 23, 2012).

R.S.C.1985, c. C-5 §. 46.  Judicial assistance between the United States and Canada is also governed by Article 5 of the Vienna Convention on Consular Relations, dated April 24, 1963 ("Vienna Convention"), which provides that a letter rogatory is an appropriate method for requesting evidence located in a foreign state.  Vienna Convention, Art. 5(j); 21 U.S.T. 77; 596 U.N.T.S. 261; T.I.A.S. 6820; *see also* U.S. Department of State, http://travel.state.gov/law/judicial/judicial_682.html (last visited Oct. 26, 2012).  Pursuant to these parallel authorities, once a Letter Rogatory is sent by the State Department to the Appropriate Judicial Authority of Canada, the Judicial Authority of Canada has the power to transmit the Letter to MDA.  *Id.*; R.S.C.1985, c. C-5 § 46.

### III.     VIASAT SEEKS RELEVANT DISCOVERY VIA THE PROPOSED LETTER ROGATORY

As the proposed letter rogatory attached hereto as Exhibit A demonstrates, ViaSat requests two categories of documents from MDA: documents regarding valuations and documents regarding the Purchase Agreement.

Valuation documents are relevant to both parties' damages claims, including both reasonable royalty and lost profits damages.  With respect to reasonable royalties, a third party's (or defendant's own) analyses of the value of technology(s) practicing the asserted patents are highly relevant and probative of the proper royalty to apply.  *See*, *e.g.*, *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2008 WL 928539, at *4 (N.D. Cal. Apr. 4, 2008) (upholding jury's determination of reasonable royalty because they were presented with, *inter alia*, an independent valuation of infringing technology); *see also Georgia Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing factors relevant to determination of a reasonable royalty, including "the established profitability of the product made under the patent; its commercial success; and its current popularity.").  Further, a valuation of a party's patent portfolio may be relevant to assessing a reasonable royalty for patents within the portfolio that are asserted in the litigation.  *See Oracle Am., Inc. v. Google Inc.*, 2012 WL 877125 (N.D. Cal. Mar. 15, 2012) (concluding that reliance on valuation of patent portfolio was relevant to reasonable

royalty analysis). With respect to lost profits, analyses of a defendant's past profits and future business prospects—especially analyses conducted by a potential purchaser of the defendant or the defendant itself—are highly relevant to the damages inquiry in that they provide real world examples of how industry participants calculate their profit margins. *See Illinois Tool Works, Inc. v. MOC Prods. Co., Inc.*, 2012 WL 3561984, at *9 (S.D. Cal. Aug. 17, 2012) ("A patent owner can compute his lost profits directly, through his anticipated profit margin, or indirectly, through use of the infringer's profit margin. The infringer's profits may properly be considered, for comparison purposes with the patent owner's proof of his lost profits, in estimating the patent owner's damages.") Such evidence is exactly that which the Federal Circuit urges a plaintiff to gather and present to the court. *See*, *e.g.*, *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 1112 (1997) (noting a lost profits analysis must proceed on bases beyond "mere speculation and guess work.").

Documents relating to the Purchase Agreement and its negotiation are relevant to both damages and ViaSat's allegations of inducement. The price that MDA paid for SS/L, and negotiations regarding that price, will likely shed light on the value of the components of the business, including projects involving the manufacture of satellites accused of infringing ViaSat's patents and SS/L's own asserted patents. Negotiation documents regarding provisions of the Purchase Agreement relating to this litigation may also provide information about MDA, LS&C, or SS/L's assessment of the value of ViaSat's asserted patents. *See*, *e.g.*, *Fresenius Medical Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653-654 (N.D. Cal. 2004) (granting motion to compel production of acquisition documents, including all documents related to parent's "evaluation, purchase, and acquisition" of company that owned patents-in-suit; "[t]he amount paid to acquire a company with desired patents, and the amount of the acquisition amount allotted to a particular patent is relevant to the establishment of a reasonable royalty") (citing *Integra Lifesciences I, Ltd. V. Merck*, 331 F.3d 860, 871 (Fed. Cir. 2003)); *Oracle*, 2012 WL 877125. Finally, provisions regarding LS&C's indemnification of MDA, at least some of which were not

filed with the SEC,[3] may provide evidence that LS&C induced infringement.  *See E.I. DuPont de Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680, 739-40 (D. Del. 1995) (relying on indemnification agreement in finding induced infringement).

Accordingly, there are multiple reasons for the production of MDA's documents and the proposed Letter Rogatory will enable ViaSat to begin seeking their production expeditiously.

### Conclusion

For the foregoing reasons, ViaSat requests that the court approve, date, sign, and seal the proposed Letter Rogatory accompanying ViaSat's Motion.  The documents requested by ViaSat are set forth in Exhibit A of the proposed Letter Rogatory.  After the court signs the Letter Rogatory, ViaSat further requests that the clerk authenticate the court's signature by affixing the court's seal thereto, and that the Letter Rogatory be thereafter returned by the clerk to counsel for ViaSat.  Counsel for ViaSat will promptly have the Letter Rogatory transmitted to the United States Department of State for delivery to the Appropriate Judicial Authority of Canada for execution.

DATED: October 26, 2012                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Adam B. Wolfson*
    Adam B. Wolfson
    Attorney for Plaintiffs
    ViaSat, Inc. and ViaSat Communications, Inc.

---

[3] (*See* Loral 8-K, Ex. 10.1 § 10.8(e) (setting forth LS&C and SS/L's respective payment obligations stemming from this lawsuit, all of which are specified in the unfiled Schedule 10.8), and 10.8(f) (setting forth—again, in the unfiled Schedule 10.8—LS&C's maximum liability for SS/L from this litigation if that company is sold again following the MDA acquisition).)

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 26, 2012 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

DATED: October 26, 2012                      */s/ Adam B. Wolfson*
                                              Adam B. Wolfson
                                              adamwolfson@quinnemanuel.com
                                              Attorneys for Plaintiffs ViaSat, Inc. and
                                              ViaSat Communications, Inc.