# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS, INC., <br><br> Defendants. | CASE NO. 3:12-CV-00260-H (WVG) <br><br> **ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE** |

On May 25, 2012, Plaintiffs and Counterclaim-Defendants ViaSat, Inc. and ViaSat Communications, Inc., f/k/a Wildblue Communications, Inc. (collectively, "ViaSat") filed an amended complaint alleging patent infringement. (Doc. No. 25.) On July 6, 2012, Defendant and Counterclaim-Plaintiff Space Systems/Loral, Inc. ("SS/L") filed an answer including counterclaims alleging, among other things, infringement of U.S. Patent No. 6,400,696 ("the '696 Patent") and U.S. Patent No. 7, 219,132 ("the '132 Patent"). (Doc. No. 29.) On November 13, 2012, ViaSat filed a motion for summary judgment claiming invalidity of the '696 and '132 Patents. (Doc. No. 68.) On December 24, 2012, SS/L filed a redacted opposition to the motion and an unredacted version under seal. (Doc. Nos. 99, 102, 103.) On December 31, 2012, ViaSat filed a reply in support of the motion. (Doc. Nos. 107, 109.) On

1  January 7, 2013, the Court held a hearing on the motion. Sean S. Pak and Vincent M.
2  Pollmeier appeared for ViaSat and Amanda K. Bonn appeared for SS/L.
3     SS/L filed its infringement contentions concerning the '696 and '132 Patents on
4  September 5, 2012. (Doc. No. 68-12, Decl. of J. Judah Ex. C, SS/L's Disclosure of Asserted
5  Claims and Infringement Contentions Pursuant to Patent L.R. 3.1 ("SS/L Infringement
6  Contentions.") ViaSat filed its invalidity contentions concerning those patents on November
7  26, 2012. (Doc. No. 99-2, Decl. of A. Bonn Exs. K-M.)  The claim construction hearing is
8  currently set for March 15, 2013. (Doc. No. 66.)
9     After due consideration, the Court denies ViaSat's motion for summary judgment
10 without prejudice to refiling after development of a more complete record.

11                                **Background**

12    SS/L is the owner of the '696 and '132 Patents. (Doc. No. 94 ("SS/L Answer") ¶¶ 65,
13 74.) The patents concern commercial satellite systems designed to maximize the efficiency
14 of broadband communications. SS/L's counterclaims allege that ViaSat's satellite user
15 terminals, including the Linkway 2100, infringes both patents. (Id. ¶¶ 49, 66; SS/L
16 Infringement Contentions at 3.) ViaSat moves for summary judgment of invalidity because
17 its accused product, the Linkway 2100, was offered for sale more than a year prior to the filing
18 dates of both patents at issue. (Doc. No. 68-1 ("ViaSat Br.") at 10.)
19    ViaSat brings its motion at this early stage of the litigation, before claim construction,
20 by relying on a narrow doctrine of invalidity. Relying on Evans Cooling Systems, Inc. v.
21 General Motors Corp., ViaSat argues that SS/L's own infringement contentions, if taken as
22 true, establish the invalidity of the '696 and '132 Patents. 125 F.3d 1448, 1451 (Fed. Cir.
23 1997). Under the Evans Cooling doctrine, an alleged infringer may claim a patent's invalidity
24 under the on-sale bar of 35 U.S.C. § 102(b) without the benefit of an element-by-element
25 demonstration of anticipation, and thus without the need for a full claim construction, by
26 showing that the actual accused product was on sale prior to the patent's critical date. Id.
27 Rather than contest that the Linkway 2100 was not offered for sale prior to the '696 and '132
28 Patents' critical dates, SS/L disputes whether the Linkway 2100 offered for sale in 1999 is the

same product as the Linkway 2100 that SS/L claims infringes its patents.

The '696 Patent, titled "Bent-Pipe Satellite System Which Couples A LAN To A Gateway And Uses Dynamic Assignment/Multiple Access Protocol," was issued on June 4, 2002 and claims priority to November 7, 2000 (the patent's "critical date"). (Id. ¶ 64; Id. Ex. B, '696 Patent.) Claim 1 of the '696 Patent claims a dynamic resource management system in which a local area network ("LAN") edge device and a gateway implement "signaling based on a non-asynchronous transfer mote (ATM) protocol," that is "overlaid with one or more dynamic assignment/multiple access communications protocols." ('696 Patent.) Several of the dependent claims specify the type of protocols used. (Id.)

The '132 Patent, titled "Dynamic Resource Allocation Architecture For Differentiated Services Over Broadband Communications Networks," was issued on May 15, 2007 and claims priority to March 30, 2001. (SS/L Answer ¶ 73; Id. Ex. C, '136 Patent.) Claim 1 of the '132 Patent claims a dynamic resource allocation system that classifies and marks different types of user data and allocates resources to meet the differing requirements of such user data. ('132 Patent.) Claim 1 includes limitations that there exist a "classifier for identifying specific types of said messages," a "marker for marking said identifying messages," and a "scheduler for scheduling said marked messages." (Id.) Claim 1 then recites that the gateway "dynamically allocates resources to meet the requirements of each said marked message by applying a dynamic assignment/multiple access (DAMA) communication protocol . . . ." (Id.) The '132 Patent's dependent claims specify the manner in which the DAMA protocol makes resource allocations, for example, via "an application detection algorithm" as in Claim 5, a "resource requirement estimation algorithm that is based on queue statistics," as in Claim 6, or a "weighted fair queueing algorithm . . . that drains the queues" as in Claim 9. (Id.)

SS/L alleges that the Linkway 2100 infringes Claims 1-5, 7-11, and 13 of the '696 Patent. (SS/L Infringement Contentions at 3.) SS/L's infringement contentions accuse Linkway 2100 of, among other things, practicing the non-ATM protocol limitation of Claim 1 by "implement[ing] signaling using [a] proprietary implementation of DVB-RCS protocols, which are non-asynchronous transfer mode protocols." (Id.)

SS/l also alleges that the Linkway 2100 infringes Claims 1-3, 5-12, and 14-17 of the '132 Patent.  (Id.)  SS/L's infringement contentions accuse Linkway 2100 of practicing these claims by "conduct[ing] a deep packet inspection to determine the nature of relevant traffic giving first preference to prioritized classes based on operator set relative weights," "apply[ing] a marking to the classified packets to indicate which class of service that packet requires" and "dynamically assign[ing] communication resources using policies that include QoS [quality of service] differentiation and resource constraints."  (Id.)

## Discussion

### I.   Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts. . . ." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

## II.    Invalidity Pursuant to 35 U.S.C. § 102(b)

Under 35 U.S.C. § 282, a patent is presumed valid, and an attack on its validity requires proof of facts by clear and convincing evidence or "its equivalent, by whatever form of words it may be expressed." Buildex Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed. Cir. 1988). The "clear and convincing" standard of proof of facts is an intermediate standard which lies somewhere between "beyond a reasonable doubt" and a "preponderance of the evidence." Id. (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). Section 102(b) provides a patent may be invalid if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).

ViaSat moves for summary judgment of invalidity because its accused product, the Linkway 2100, was offered for sale more than a year prior to the filing dates of both patents at issue. (ViaSat Br. at 10.) Whether an invention was on sale within the meaning of § 102 is a question of law. Scaltech, Inc. v. Retec/Tetra, LLC, 269 F.3d 1321, 1327 (Fed. Cir. 2001). The statutory on-sale bar applies when two conditions are satisfied before the critical date: first, the product must be the subject of a commercial offer for sale, and, second, the invention must be ready for patenting. Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67 (1998). To meet the first, commercial offer, prong, the offer must be sufficiently definite that another party could make a binding contract by simple acceptance, assuming consideration. Netscape Commc'ns. Corp. v. Konrad, 295 F.3d 1315, 1323 (Fed. Cir. 2002). "Neither profit, revenue,

nor even an actual sale is required for the use to be a commercial offer under section 102(b)--an attempt to sell is sufficient if it rises to an offer upon which a contract can be made merely by accepting it." Atlanta Attachment Co. v. Leggett & Platt, Inc., 516 F.3d 1361, 1365 (Fed. Cir. 2008). The ready for patenting prong is met if prior to the critical date the device was reduced to practice, or if there is proof that "prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." Id. at 1366.

ViaSat contends that COMSAT Laboratories ("COMSAT"), the original developer and marketer of the Linkway 2100,[1] offered the Linkway 2100 for sale to one of its customers, INTELSAT, at least as early as November 3, 1999, over a year before the critical dates of either the '132 or the '696 Patents. (ViaSat Br. at 1-4.)[2] SS/L argues that ViaSat has failed to satisfy its evidentiary burden to show that the Linkway 2100 offered for sale in 1999 is prior art to SS/L's patents.

Typically, in order to satisfy the on-sale bar, the alleged infringer must engage in an element-by-element analysis demonstrating that the prior art anticipates every element of the disputed claims. See, e.g., Scaltech Inc. v. Retec/Tetra, LLC, 178 F.3d 1378, 1384 (Fed. Cir. 1999) ("[T]he first determination in the § 102(b) analysis must be whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention."); Nextec Applications v. Brookwood Companies, Inc., 703 F. Supp. 2d 390, 422 (S.D.N.Y. 2010). A limited exception permits an alleged infringer to claim invalidity where the actual accused product was on sale before the relevant patent's critical date without an element-by-element analysis. Evans Cooling Systems, Inc. v. General Motors Corp., 125

---

[1] ViaSat notes that it acquired COMSAT Laboratories from COMSAT Corporation in July, 2001. (ViaSat Br. at 2 n.1.)

[2] For the purposes of this motion, SS/L does not dispute that the Linkway 2100 was both subject to an offer for sale and ready for patenting over a year before either of SS/L's patents at issue were filed. (Doc. No. 103 ("SS/L Opp.") at 1 n.2.) Accordingly, the Court assumes for the purposes of this motion that the transaction between COMSAT and INTELSAT involving the Linkway 2100 amounted to an offer for sale, and that the Linkway 2100 at that time was ready for patenting, sufficient to satisfy § 102(b).

F.3d 1448, 1451 (Fed. Cir. 1997). The Evan's Cooling doctrine permits an alleged infringer to use the patent-holder's infringement contentions against him, admitting infringement solely for the purpose of the motion and relying on those contentions to demonstrate anticipation. Id. If the holder's infringement contentions claim a particular product infringes and that product was undisputably on sale prior to the patent's critical date, then the infringement contentions, if taken as true, actually prove the patent's invalidity. Id. "Because the entire basis of the infringement claim under these circumstances is the patentee's contention that the accused product contains every limitation of the patented claim, if the accused infringer can prove that the accused product actually existed before the filing date of the asserted patent, the accused infringer's evidentiary burden to prove invalidity by anticipation will be satisfied at by the patentee's claims of infringement against that product." Nextec, 703 F. Supp. 2d at 422.

ViaSat relies on the Evans Cooling doctrine to claim invalidity of the '696 and '132 Patents. Rather than provide an element-by-element analysis demonstrating that the Linkway 2100 actually anticipated each element of SS/L's claims, ViaSat simply points out that SS/L accuses the Linkway 2100 of infringing its patents, admits infringement solely for the purposes of the motion, and argues that the Linkway 2100 was on sale prior to SS/L's patents being filed. See id. ("When the item alleged by one party to be anticipating prior art is the exact same item that the other party contends infringes, the party seeking to prove invalidity by anticipation can establish invalidity without actually performing an element by element comparison of the claim to the prior art item in question.").

In opposition, SS/L argues that the Linkway 2100 offered for sale in 1999 ("1999 Linkway") is materially different from the Linkway 2100 utilized by ViaSat after the patents were filed ("post-1999 Linkway"). According to SS/L, the post-1999 Linkway infringes SS/L's patents, including infringing elements that the 1999 Linkway did not yet possess. If the post-1999 Linkway is different from the 1999 Linkway, then ViaSat cannot claim anticipation without an element-by-element showing that the 1999 Linkway anticipates each of the claims of SS/L's patents. See ResQNET.Com, Inc. v. Lansa, Inc., 382 F. Supp. 2d 424 (S.D.N.Y. 2005) (denying summary judgment because accused product was not "materially

identical" to product sold pre-critical date), overruled in part on other grounds, 594 F.3d 860 (Fed. Cir. 2010); cf Vanmoor v. Wal-Mart Stores, Inc.,201 F.3d 1363 1366-67 (Fed. Cir. 2000) ("Here the pre-critical date sales were of completed cartridges made to specifications that remain unchanged to the present day, showing that any invention embodied in the accused cartridges was reduced to practice before the critical date.")

     SS/L points to at least two potential material differences between versions of the source code underlying the Linkway 2100 satellite user terminal employed before and after the '696 and '132 Patents' pre-sale critical dates.  First, SS/L points out that its infringement contentions regarding independent Claim 1 of the '696 Patent specifically refer to "proprietary implementations of DVB-RCS protocols" as exemplary of the "non-asynchronous transfer mode protocols" employed by Linkway and claimed by the '696 Patent.  (SS/L Opp. at 15; Doc. No. 103-1, Decl. of C. Jones ¶ 26.)  SS/L's expert asserts that the DVB protocol accused of infringing the '696 Patent appears for the first time in a 2006 version of Linkway's source code.  (Doc. No. 103-1, Decl. of C. Jones ¶ 26.)  Second, SS/L refers to the '132 Patent's claim for a process that assigns network resources to user data based on the identified type of user data and uses, among other things, "a marker for marking said identifying messages."  (SS/L Opp. at 16; Doc No. 103-2, Decl. of C. Jones Exs. E, F.)  SS/L argues that Linkway's "policies that use QoS differentiation and resource constraints" that allegedly infringe the '132 Patent's claim for that process were not employed in pre-critical date versions of Linkway's source code.  (SS/L Opp. at 16; Doc No. 103-2, Decl. of C. Jones Exs. E, F.)  SS/L further claims that the relative file size between earlier and later versions of Linkway source code indicates that the product has changed materially over time.  (See Doc. No. 103-1, Decl. of C. Jones. ¶ 10 (pointing out that volume of source code for Linkway 2100 in 2006 was nearly seven times greater than in 1999.))  SS/L contends that, given more time to evaluate Linkway's source code, it would find additional differences between the earlier and later versions of Linkway.[3]

---

[3] On November 13, 2012, pursuant to the Court's case management order, ViaSat was to have made its Patent Local Rule 3.4(a) production including "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation" relating to its invalidity

In its reply, ViaSat argues that the differences in older versions of Linkway code identified by SS/L are immaterial to the claims of SS/L's patents. (Doc. No. 107 ("ViaSat Reply Br.") at 6-9.) ViaSat contends that DVB is one of several non-ATM protocols employed by Linkway, including protocols employed in 1999. (Id. at 7-8; Doc. No. 109-1, Decl. of A. Agarwal ¶¶ 9-12.) Additionally, ViaSat argues that Linkway always employed quality of service ("QoS") differentiation and resource constraints, sufficient to anticipate the identified '132 Patent's claim limitation, even if it did not employ the particular functionality identified by SS/L. (Id.; Doc. No. 109-1, Decl. of A. Agarwal ¶¶ 13-19.) ViaSat, relying on an expert declaration included in its reply, maintains that the core invalidating functionality of the Linkway 2100 has remained the same. (Id. at 6; Doc. No. 109-1, Decl. of A. Agarwal ¶¶ 8, 21.) Moreover, ViaSat points out that SS/L's complaint and current infringement contentions are not limited to any particular version of Linkway 2100. (See SS/L Infringement Contentions at Ex. 1 p. 1.) At the time SS/L filed its infringement contentions, SS/L did not have the benefit of comparing multiple versions of Linkway's source code. ViaSat notes that SS/L's infringement contentions refer to ViaSat's sale of Linkway 2100 to "Any and All Purchasers," and even mention INTELSAT by name. (Id.) ViaSat had good reason to read SS/L's contentions to include all versions of Linkway 2100.

Nonetheless, based on the current record, ViaSat has not demonstrated by clear and convincing evidence that the 1999 Linkway anticipates and invalidates SS/L's patents. SS/L has identified material differences between the earlier and later versions of the Linkway product, including specific protocols that SS/L alleges infringes its patents. While ViaSat may be able to demonstrate, upon a more specific showing, that the 1999 Linkway anticipates the

---

contentions. (Doc. No. 69 ¶ 5(a).) ViaSat did not produce the Linkway 2100 source code at that time, contending that it was not required to do so. (Doc. No. 87 at 2.) ViaSat filed its motion for summary judgment on November 13, 2012. (Doc. No. 68.) ViaSat produced the source code on December 7, 2012, following an order from the magistrate judge compelling it to do so, only ten business days before SS/L's opposition to the motion for summary judgment was due. (Doc. No. 87.) During that time the source code was only made available for SS/L to review during regular business hours and limited weekend hours. (Doc. No. 99-1, Decl. of A. Bonn ¶ 36.) The source code for the Linkway 2100 product includes several thousand files. (Doc. No. 103-1, Decl. of C. Jones. ¶ 10.)

1 limitations of SS/L's patent's claims, ViaSat has not yet met its burden.  Viewing the current
2 evidence in the light most favorable to SS/L and drawing all reasonable inferences in its favor,
3 the identified differences between the 1999 Linkway and the post-1999 Linkway are sufficient
4 to defeat the present summary judgment motion.  Cf Cummings v. Adidas USA, 716 F. Supp.
5 2d 323, 333 & n.70 (S.D.N.Y. 2010) (distinguishing ResQNET because there "by contrast,
6 defendants ha[d] provided an abundance of evidence that the [shoe] that was offered for
7 commercial sale and ready for patenting [was] the very same shoe plaintiffs accuse of
8 infringement.")  Merely pointing out that the accused product shares the same name as the
9 prior art is insufficient in a case involving complex software that has clearly evolved over time.
10 (See Doc. No. 103-1, Decl. of C. Jones. ¶ 10 (pointing out that  volume of source code for
11 Linkway 2100 in 2006 was nearly seven times greater than in 1999.))

12 Based on the current record, ViaSat has not established by clear and convincing
13 evidence that the accused version of the Linkway 2100 is materially identical to the version
14 offered for sale prior to the critical date.  Moreover, SS/L has provided affirmative evidence
15 indicating that the two versions are materially different.  ViaSat has the burden of
16 demonstrating that the prior art anticipates the limitations of the patents at issue and has failed
17 to do so.  See Scaltech, 269 F.3d at 1329.  The Court concludes that ViaSat has not satisfied
18 the first Pfaff prong.  Pfaff, 525 U.S. at 67 (for on-sale bar, two conditions must be satisfied
19 before the critical date: first, the product must be the subject of a commercial offer for sale,
20 and, second, the invention must be ready for patenting).  Accordingly, summary judgment on
21 the invalidity of the '696 and '132 Patents is inappropriate at this time.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**Conclusion**

ViaSat has failed to demonstrate invalidity of the '696 and '132 Patents by clear and convincing evidence based on the current record. Accordingly, the Court denies ViaSat's motion for summary judgment without prejudice to refiling after the record is more developed.

**IT IS SO ORDERED.**

DATED: January 8, 2013

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT