UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., *et al.*, | ) |
| | ) Civil No. 12-CV-0260-H (WVG) |
| Plaintiffs, | ) |
| v. | ) ORDER GRANTING IN PART AND |
| | ) DENYING IN PART PLAINTIFFS' |
| SPACE SYSTEMS/LORAL, INC., *et al.*, | ) MOTION FOR ISSUANCE OF LETTER |
| | ) ROGATORY TO MACDONALD, |
| Defendants. | ) DETTWILER & ASSOCIATES LTD. IN |
| | ) CANADA |
| | ) |
| | ) [DOC. NO. 65] |

Pending before the Court is Plaintiffs' Motion for Issuance of Letter Rogatory to MacDonald, Dettwiler, and Associates, Ltd. ("MDA"), a Canadian company based in Richmond, British Columbia. (Doc. No. 65.) In their Motion, Plaintiffs request that the Court sign and seal a discovery request to the Canadian courts for nine categories of documents sought from MDA. (Doc. No. 65-1 at 7.) For the reasons set forth below, the Court hereby GRANTS in part, and DENIES in part, Plaintiffs' Motion for Issuance of Letter Rogatory. The Court grants Plaintiffs' Request Numbers 1 and 7, and denies all other requests listed in the proposed Letter Rogatory. (Doc. No. 65-2 at 8.)

**I. BACKGROUND**

On February 1, 2012, Plaintiffs filed the instant lawsuit against Defendant Space Systems/Loral, Inc. ("SS/L"), alleging patent infringement and breach of contract. (Doc. No. 1.) On February 17, 2012, Plaintiffs filed a First Amended Complaint, adding Defendant Loral Space & Communications, Inc. ("Loral") to the lawsuit. (Doc. No. 5.) On June 15, 2012, Defendant SS/L filed its Answer, Affirmative

Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint ("SAC"), and on August 29, 2012, Defendant Loral filed its Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' SAC. ((Doc. Nos. 29, 57.) On December 7, 2012, Plaintiffs filed a Third Amended Complaint against both Defendants. (Doc. No. 88.)

In late June of 2012, Defendants and non-party MDA announced that MDA had agreed to purchase Defendant SS/L from Defendant Loral. (Doc. No. 65-1 at 2.) In Plaintiffs' instant Motion, they request documents from MDA that are related to the analyses of the value of SS/L's business operations and satellite manufacturing service, as well as documents regarding the Purchase Agreement ("Agreement") and negotiations surrounding MDA's acquisition of SS/L. Id.

## A. **PLAINTIFFS' MOTION**

Plaintiffs claim that the information they request in the proposed Letter Rogatory is highly relevant to the infringement claims in the instant lawsuit. They argue that the price MDA paid to acquire SS/L, as well as the related negotiations, will likely provide information about the value of SS/L's business components. (Doc. No. 65-1 at 6.) The business components include projects that involve the manufacture of satellites accused of infringing Plaintiffs' patents and Defendant SS/L's own asserted patents. Id. Plaintiffs allege that documents relating to the Agreement and negotiations are relevant to damages and Plaintiffs' allegations of inducement. Id.

## B. **DEFENDANTS' OPPOSITION**

On November 19, 2012, Defendants filed an Opposition to Plaintiffs' Motion for Issuance of Letter Rogatory. (Doc. No. 70.) Defendants request that the Court deny Plaintiffs' Motion on the grounds that the material Plaintiffs seek from MDA is irrelevant, privileged, and cumulative of what they could seek in the United States through party discovery. Id. at 4-5. Specifically, Defendants assert that the requested information is irrelevant to any claim or defense in the lawsuit, including damages. Id. at 8. They assert that Plaintiffs seek privileged information, and that SS/L, Loral, and non-party MDA executed a Common Interest/Joint Defense Agreement before they exchanged any confidential information relating to this litigation. Id. at 5. They claim that the parties discussed legal analyses of the instant lawsuit that Defendants prepared during negotiations associated with the Agreement. Id. Defendants also claim that

Plaintiffs are able to procure the majority of the requested information through a domestic document request, rather than through the Canadian court system. Id. at 8, 13.

Finally, Defendants argue that the proposed form of the Letter Rogatory misrepresents the factual findings of this Court. (Doc. No. 70 at 4-5.) They claim that Plaintiffs' proposed Letter Rogatory would require this Court to represent to the Canadian courts that it has made the following findings of fact: (1) the evidence Plaintiffs seek is actually in MDA's possession; (2) this Court has deemed the evidence Plaintiffs seek to be "highly relevant" to this lawsuit; and (3) this Court has determined that the documents Plaintiffs seek cannot be secured except by intervention of the Appropriate Judicial Authority of the State of Canada. Id. at 14-15.

### C. PLAINTIFFS' REPLY

In response to Defendants' privilege assertions, Plaintiffs argue that MDA's valuations, which took place after MDA and Loral began negotiations, do not constitute work product. (Doc. No. 72 at 5.) Plaintiffs assert that MDA's financial evaluations of SS/L's business operations were made during the course of acquisition negotiations and thus, cannot fairly be said to exist because of the litigation. Id. Further, Plaintiffs argue that, even if some subset of documents within the scope of their requests may be considered privileged, that should not bar discovery from MDA wholesale. Id. at 2.

## II. APPLICABLE LAW

### A. LETTERS ROGATORY

A letter rogatory[1] is a formal written request sent by a court to a foreign court. Barnes and Noble, Inc. v. LSI Corp., 2012 WL 1808849, 1 (N.D. Cal. May 17, 2012); Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co., 841 F.Supp.2d 769, 775 (S.D.N.Y. 2010). "In its broader sense in international practice, the term letters rogatory denotes a formal request from a court in which an action is pending, to a foreign court to perform some judicial act." Lantheus Medical Imaging, 841 F.Supp.2d at 775; citing 22 C.F.R. § 92.54. Parties may use letters rogatory to "take evidence from a specific person within the foreign jurisdiction." Id; citing Black's Law Dictionary, 778; see Intel Corp. v. Advanced Micro Devices, Inc., 542

---

[1] The term "letters rogatory" is synonymous with the term "letters of request." See Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co., 841 F.Supp.2d 769, 775, n.5 (S.D.N.Y. 2010); see also Evanston Ins. Co. v. OEA, Inc., 2006 WL 1652315,1 (E.D. Cal. 2006). In 1993, the term "letter of request" was substituted for the term "rogatory" because it is the primary method provided by the Hague Convention. Evanston, 2006 WL 1652315, 1, n.2.

1  U.S. 241, 248 n.1, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). A letter rogatory can include requests for the
2  production of documents ("RFPs"). Id; citing United States v. Reagan, 453 F.2d 165, 168 (6th Cir. 1971).
3       Congress has empowered federal courts to issue and to enforce letters rogatory. Lantheus Medical
4  Imaging, 841 F.Supp.2d at 776. Federal Rule of Civil Procedure 28(b) and 28 U.S.C. § 1781(b)(2) authorize
5  federal courts to issue letters rogatory that enable a litigant in the United States to obtain non-party
6  discovery from a foreign entity. Id.
7       A court has inherent authority to issue letters rogatory. Barnes and Noble, Inc., 2012 WL 1808849,
8  2; citing Reagan, 453 F.2d at 172; see also United States v. Staples, 256 F.2d 290, 292 (9th Cir. 1958.)
9  Whether to issue such a letter is a matter of discretion for the court. Barnes and Noble, Inc., 2012 WL
10  1808849, 2. When determining whether to exercise discretion, a court will generally not weigh the
11  evidence sought from the discovery request, nor will it attempt to predict whether that evidence will actually
12  be obtained. Id. However, a court's decision whether to issue a letter rogatory does require an application
13  of Rule 28(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure. Id.

## B. INTERPLAY BETWEEN FEDERAL RULES OF CIVIL PROCEDURE 26 AND 28

15       In considering the issuance of letters rogatory, courts apply the discovery principles outlined in
16  Federal Rule of Civil Procedure 26. See Asis Internet Servs. v. Optin Global, Inc., 2007 WL 1880369, 3
17  (N.D. Cal. Jun. 29, 2007) (explaining intersection of Rule 28(b) and Rule 26(c)). Discovery through the
18  use of letters rogatory is consistent with the liberal discovery provisions of Rule 26. Barnes and Noble, Inc.,
19  2012 WL 1808849, 2; Asis Internet Services, 2007 WL 1880369, 3; DBMS Consultants Ltd. v. Computer
20  Assocs. Int'l, Inc., 131 F.R.D. 367, 369-70 (D.Mass. 1990) (holding that request for letter rogatory was
21  consistent with liberal discovery provisions of Rule 26.)
22       Rule 26 states that, "[p]arties may obtain discovery regarding any nonprivileged matter that is
23  relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The broad scope of Rule 26 also allows
24  that, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably
25  calculated to lead to the discovery of admissible evidence." Id. The Advisory Committee Notes to Rule
26  26 indicate that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or
27  any other matters which may aid a party in the preparation or presentation of his case." Adv. Com. Notes
28  1946 Amendment, Fed.R.Civ.P. 26.

However, Rule 26(b)(2)(C) does impose limitations on the liberal scope of discovery set forth in Rule 26(b)(1). Rule 26(b)(2)(C) reads,

> On motion or on its own, the court **must** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C) (emphasis added)

Courts are permitted to make any order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." SEC v. Leslie, 2009 WL 688836, 3 (N.D. Cal. Mar. 16, 2009). Further, "the scope of permissible discovery is not unbounded. Requested discovery must be relevant, it must not be protected by privilege, and it must not impose undue burden or be unnecessarily cumulative under the tests described in Rule 26(b)(2)(C)." Calixto v. Watson Bowman Acme Corp., 2009 WL 3823390, 19 (S.D. Fl. Nov. 16, 2009).

### C. PARTY OPPOSING LETTER ROGATORY MUST SHOW GOOD REASON FOR DENIAL

Courts routinely issue letters rogatory where the movant makes a reasonable showing that the evidence sought may be material, or may lead to the discovery of material evidence. Netherby Ltd. v. Jones Apparel Group, Inc., 2005 WL 1214345, 1 (S.D.N.Y. May. 18, 2005). No higher standard is necessary for the issuance of letters rogatory than that needed for discovery upon a domestic company. Id.

It follows that a party opposing the issuance of letters rogatory must show good reason for a court to deny the application. Leslie, 2009 WL 688836, 3; Ethypharm S.A. France v. Abbott Laboratories, 748 F.Supp.2d 354, 358 (D.Del. 2010). "[S]ome courts have gone so far as to hold that the party opposing issuance of a letter rogatory must establish good cause for the denial." Leslie, 2009 WL 688836, 3; quoting Evanston, 2006 WL 1652315, 2. Whether such a showing has been made, and whether and in what form a letter rogatory should issue, are factual determinations turning upon the circumstances of the particular case. Leslie, 2009 WL 688836, 3; citing DBMS Consultants Ltd., 131 F.R.D. at 369.

The United States Supreme Court has identified a five factor comity analysis for courts to consider when determining whether to grant a request for issuance of a letter rogatory. Calixto, 2009 WL 3823390, 21 (S.D. Fl. Nov. 16, 2009). A court should determine both whether the discovery sought falls within the scope of discovery authorized by the Federal Rules, as well as whether considerations of comity warrant the requested discovery. Calixto, 2009 WL 3823390, 18. The following factors are relevant to any comity analysis:

1. The importance to the...litigation of the of the documents or other information requested;
2. The degree of specificity of the request;
3. Whether the information originated in the United States;
4. The availability of alternative means of securing the information;
5. The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Calixto, 2009 WL 3823390, 21; Seoul Semiconductors Co. Ltd. v. Nichia Corp., 590 F.Supp.2d 832, 834 (E.D. Tex. 2008).

### III. DISCUSSION

**A. PLAINTIFFS' REQUESTS ARE RELEVANT TO THE INSTANT LITIGATION**

Plaintiffs contend that the information sought from MDA through the proposed Letter Rogatory falls well within the bounds of allowable discovery. They assert that they are requesting two categories of documents from MDA: (1) documents regarding valuations; and (2) documents regarding the Purchase Agreement. (Doc. No. 65-1 at 5.) Plaintiffs argue that valuation documents are relevant to the parties' damages claims, including both reasonable royalty and lost profit damages. Id. They claim that documents relating to the Agreement and the surrounding negotiations are also relevant to damages, and to Plaintiffs' allegations of inducement. Id. at 6.

Moreover, Plaintiffs argue that the price that MDA paid for SS/L, and negotiations regarding the price, will likely shed light on the value of the components of the business, including projects involving the manufacture of satellites accused of infringing Plaintiffs' patents and SS/L's asserted patents. (Doc. No. 65-1 at 6.) They claim that negotiation documents regarding provisions of the Agreement relating to this litigation may also provide information about MDA, Loral, or SS/L's assessment of the value of Plaintiffs' asserted patents. Id.

Defendants argue that Plaintiffs' requests are irrelevant because they seek documents concerning MDA's valuations of SS/L's current and future business operations, even though Plaintiffs' alleged damages arise from past events. (Doc. No. 70 at 8.) Defendants claim that, by seeking MDA's post-lawsuit evaluations and forward projections of SS/L's entire business, Plaintiffs seek information that is not relevant to any claim or defense, including damages. Id.

Plaintiffs' cite Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc., to support their argument that valuation documents are relevant to damages claims. (Doc. No. 65-1 at 5; Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc., 2008 WL 928539 (N.D. Cal. Apr. 4, 2008).) The court in Fresenius, which discussed damages based on royalty rates in a patent infringement case, found that the amount paid to acquire a company with desired patents, and the acquisition amount allotted to a particular patent, is relevant to the establishment of a reasonable royalty. Id. at 653. Thus, the court determined that the evaluation and acquisition of a company purchased by the defendant company, as well as the evaluation of its various assets, was discoverable. Id. Further, in Fastek, LLC v. Steco, the court determined that valuation and due diligence documents created during the acquisition of one company by another was relevant to damages. Fastek, LLC v. Steco, 2011 WL 4499101, 2 (S.D. Cal. Sept. 27, 2011).

Plaintiffs also cite Illinois Tool Works, Inc. v. MOC Prods. Co., Inc., to support their argument that the information requested from MDA is relevant to damages claims. (Doc. No. 65-1 at 6; Illinois Tool Works, Inc. v. MOC Prods. Co., Inc. 2012 WL 3561984, 9 (S.D. Cal. Aug. 17, 2012). In Illinois Tool, the court determined that a patent owner can compute his lost profits "indirectly, through use of the infringer's profit margin." Id. at 9. The court noted that lost profits can be measured by the difference between the patent owner's cost of production and the price at which the patent owner would have sold the product. Id. Further, Plaintiffs cite Oiness v. Walgreen Co., to support their claim that future lost profits are an acceptable measure of damages, as long as they are not speculative. (Doc. No. 65-1 at 6; Oiness v. Walgreen Co., 88 F.3d 1025, 1031 (Fed.Cir. 1996), cert. denied, 519 U.S. 1112 (1997).) Moreover, a valuation of a party's patent portfolio may be relevant to assessing a reasonable royalty for patents within the portfolio that are asserted in the litigation. Oracle Am., Inc. v. Google Inc., 2012 WL 877125 (N.D. Cal. Mar. 15, 2012).

In <u>Soverain Software LLC v. J.C. Penny Corp., Inc.</u>, the court concluded that damages experts may consider post-infringement information in arriving at a hypothetically negotiated royalty rate. <u>Soverain Software LLC v. J.C. Penny Corp., Inc.</u>, 2012 WL 4903268, 11 (E.D. Tex. Aug. 9, 2012). The court discussed changed circumstances such as litigation expenses, the defendants' enhanced profitability, proven success of technology, and purposeful nature of infringement. <u>Id.</u> With respect to reasonable royalties, a third party's or defendant's own analyses of the value of technologies involved in the asserted patents are highly relevant and probative of the proper royalty to apply. <u>Fresenius</u>, 2008 WL 928539, 4 (upholding jury's determination of reasonable royalty rate because they were presented with an independent valuation of infringing technology); <u>see</u> <u>also</u> <u>Georgia Pac. Corp. v. U.S. Plywood Corp.</u>, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970) (listing factors relevant to determination of a reasonable royalty, including "the established profitability of the product made under the patent: its commercial success; and its current popularity.").

The Court agrees with Plaintiffs that their requests for valuation documents, documents involving the Agreement, and material concerning negotiations, are relevant to the instant litigation. As the cases cited above demonstrate, requests for information regarding damages, such as information about future lost profits and the valuation of patent portfolios, are relevant to patent infringement cases, and therefore are entirely appropriate. Defendants have failed to show that Plaintiffs' requests are irrelevant to the instant litigation.

**B. NOT ALL REQUESTED DOCUMENTS ARE PROTECTED BY WORK PRODUCT DOCTRINE**

Defendants assert that, through the proposed Letter Rogatory, Plaintiffs seek internal post-lawsuit communications, analyses, and agreements that would be protected by the work-product doctrine if sought directly from SS/L. (Doc. No. 70 at 4.) Defendants claim that Plaintiffs seek to "exploit the fact that SS/L and Loral had to discuss this litigation with MDA before MDA purchased SS/L." <u>Id.</u> Defendants also claim that MDA's status as a post-lawsuit purchaser affords MDA and SS/L full protection under the common legal interest doctrine.[2] <u>Id.</u>

---

[2] The common legal interest doctrine constitutes an exception to the rule on waiver of privilege where communications are disclosed to third parties. <u>Morvil Technology, LLC v. Ablation Frontiers, Inc.</u>, 2012 WL 760603, 1 (S.D. Cal. Mar. 8, 2012).

Defendants rely on Morvil v. Ablation, where the court discussed the overlap of commercial and legal interests between parties, and found that overlap will not negate the common legal interest doctrine. (Doc. No. 70 at 7); Morvil Tech., LLC v. Ablation Frontiers, Inc., 2012 WL 760603, 3 (S.D. Cal. Mar. 8, 2012). The documents at issue in Morvil were authored by attorneys during the acquisition of one defendant company by another defendant company. Id. at 1. After an *in camera* review of the disputed documents, the court found that the documents were attorney-client privileged as between two of the companies and their respective outside counsel. Id. The court found that the companies shared a mutual interest in valid and enforceable patents, which fit within the confines of the common legal interest doctrine, and therefore the documents were protected by privilege. Id. at 3.

Defendants also cite In re Grand Jury Subpoena (Torf), a case where the Ninth Circuit discussed the application of the work product doctrine to single purpose documents and dual purpose documents. In re Grand Jury Subpoena (Torf), 357 F.3d 900, 907 (9th Cir. 2004). Single purpose documents are created in anticipation of litigation and are protected under the work product doctrine. Id. Dual purpose documents, which are prepared not only for litigation but also for a non-litigation purpose, may be protected if, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained "because of" the prospect of litigation. Id. However, the court noted that there is no protection if the document would have been created in essentially similar form, irrespective of litigation. Id. at 908. The documents at issue in In re Grand Jury Subpoena were created at the direction of an attorney hired to defend a company in impending litigation. Id. at 904-05. The Ninth Circuit determined that the documents were protected under the work product doctrine because their litigation purpose so permeated any non-litigation purpose that the two purposes could not be discretely separated from the factual nexus as a whole. Id. at 910.

In contrast, Plaintiffs cite United States v. Richey, which also discussed the application of the work product doctrine to dual purpose documents. United States v. Richey, 632 F.3d 559 (9th Cir. 2011). In Richey, a taxpayer hired a law firm to provide legal advice about a conservation easement. Id. at 562. The law firm then retained a certified appraiser to provide valuation services and advice with respect to the easement. Id. The appraiser prepared an appraisal report to be filed with the taxpayer's federal income tax return, and a work file concerning the value of the easement. Id. Considering the totality of the

1  circumstances, the Ninth Circuit determined that it could not conclude that the appraisal work file could be
2  fairly said to have been prepared or obtained "because of" the prospect of litigation, and therefore, did not
3  invoke work product protection. Id. at 568.

4        Here, the Court finds that the information Plaintiffs seek in Request Numbers 1 and 7, is not
5  protected by the work product doctrine. Plaintiffs ask MDA to produce "[d]ocuments concerning MDA's
6  evaluation(s) of SS/L's current and future business operations," and "[d]ocuments concerning the
7  negotiation of the Purchase Agreement By and Among [Loral], [SS/L], and [MDA] dated as of June 26,
8  2012 (SS/L Purchase Contract)."

9        As discussed in In re Grand Jury Subpoena, there is no work product protection if the documents
10 would have been created in essentially similar form, irrespective of litigation. In re Grand Jury Subpoena,
11 357 F.3d at 908. Documents related to the negotiations of the Purchase Agreement and documents
12 concerning MDA's evaluations of SS/L's business operations, would have been created in essentially
13 similar form during MDA's acquisition of SS/L, whether or not Defendants were involved in the instant
14 litigation with Plaintiffs. Therefore, the Court cannot find that the information sought in Request Numbers
15 1 and 7 are protected by the work-product doctrine, or are entitled to protection under the common legal
16 interest doctrine. The Court declines to determine whether the other requests seek documents that are work
17 product protected, as the other requests are denied on the grounds discussed below.

18 **C. MAJORITY OF PLAINTIFFS' REQUESTS TO MDA ARE DULPICATIVE AND CUMULATIVE**

19       Defendants argue that the request for issuance of the proposed Letter Rogatory should be denied
20 because Plaintiffs seek cumulative and duplicative information. (Doc. No. 70 at 4.) They argue that, to the
21 extent Plaintiffs seek information that is not privileged, they can request the information within the United
22 States from the parties to this lawsuit, which would be more convenient and less burdensome. Id. at 7-8.

23       Defendants cite Calixto, where that court refused to issue letters rogatory because the
24 requests sought cumulative documents. (Doc. No. 70 at 1; Calixto, 2009 WL 3823390, 20-22.) In Calixto,
25 the plaintiff moved for letters rogatory seeking documents related to manufacturing, sales, orders,
26 marketing, pricing, and profitability of alleged infringing products from the defendants' foreign affiliates.
27 Id. at 21. The court noted that it "must consider the availability of other methods of obtaining the
28 information sought before resorting to the Hague Convention procedures." Id. The court applied the

limitations imposed by Rule 26(b)(2)(C), as well as comity considerations, and declined to issue letters rogatory after determining that the documents sought would duplicate most, if not all of the information already provided by the defendant. Id.

As noted above, the Court finds that the information Plaintiffs seek through the issuance of the proposed Letter Rogatory to MDA falls within the broad scope of discovery anticipated by the Federal Rules of Civil Procedure. However, the analysis must continue to determine whether any of the Rule 26(b)(2)(C) limitations or comity considerations preclude the requested discovery. Applying those limitations, the Court agrees with Defendants that the proposed Letter Rogatory seeks unnecessarily duplicative information which Plaintiffs can request from the United States-based Defendants. The majority of Plaintiffs' requests seek material that Defendants likely possess, such as agreements relating to the instant litigation, the final version of the SS/L Purchase Contract, and valuations of SS/L's patent portfolio. (See Doc. No. 65-2 at 8.) Therefore, the Court finds that Defendants have shown good reason for the Court to deny Plaintiffs' duplicative requests.

However, the Court does not find that Defendants have demonstrated the requisite good reason to deny Request Numbers 1 and 7. Request Number 1 seeks information concerning MDA's evaluations of SS/L's business operations, which presumably must come from MDA. Further, as to Request Number 7, the Court finds it likely that MDA has its own documents relating to the negotiation of the Agreement.

## IV. RULING

Many of Plaintiffs' requests seek evaluations conducted by Defendants, and other information likely to be in Defendants' possession, which Plaintiffs can clearly seek directly from Defendants. The Court will not order non-party MDA to conduct a thorough search of all of their records, and then meet and confer with Defendants to determine what information uncovered in their search is not cumulative or duplicative of Defendants' production.

Plaintiffs claim that they are only requesting MDA's documents, and not documents in the possession of the named Defendants. Generally speaking, Letters Rogatory are an appropriate discovery method, but the Court is not prepared to modify Plaintiffs' requests so that they clearly seek MDA's documents. The Court declines to do Plaintiffs' work for them and re-draft the requests to appropriately

narrow the scope so that they seek non-cumulative information.  Therefore, as indicated in the chart below, the Court hereby grants Plaintiffs' Request Numbers 1 and 7, and denies Request Numbers 2-6, and 8-9.

| REQUEST NO. | REQUEST | GRANTED | DENIED | NOTES |
|---|---|---|---|---|
| 1 | Documents concerning MDA's evaluation(s) of SS/L's current and future business operations. | X | | |
| 2 | Documents concerning SS/L's evaluation(s) of its current and future business operations. | | X | Plaintiffs can seek information from Defendants. |
| 3 | Documents concerning Loral's evaluation(s) of SS/L's current and future business operations. | | X | Plaintiffs can seek information from Defendants. |
| 4 | Documents concerning valuation(s) of technologies SS/L can offer or has offered for use in its satellite manufacturing services. | | X | Plaintiffs can seek information from Defendants. |
| 5 | Documents concerning valuation(s) of SS/L's patent portfolio. | | X | Plaintiffs can seek information from Defendants. |
| 6 | Documents concerning valuation(s) of SS/L's patents at issue in ViaSat, Inc., et al. v. Space Systems/Loral, Inc., et al, 12-CV-00260-H-WVG (S.D. Cal.) Or license to such patents. | | X | Plaintiffs can seek information from Defendants. |
| 7 | Documents concerning the negotiation of the Purchase Agreement By and Among Loral, SS/L, MDA, and MDA Communications Holdings, Inc., dated as of June 26, 2012 ("SS/L Purchase Contract"). | X | | |
| 8 | The final and complete version of the SS/L Purchase Contract, including all schedules, appendices, exhibits, and/or attachments. | | X | Plaintiffs can seek information from Defendants. |
| 9 | Agreements relating to litigation between SS/L and ViaSat, Inc. or ViaSat Communications, Inc., including but not limited to indemnification agreements. | | X | Plaintiffs can seek information from Defendants. |

//

//

IT IS SO ORDERED.

DATED: January 14, 2013

Hon. William V. Gallo
U.S. Magistrate Judge