UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., *et al.*,<br><br>           Plaintiffs,<br>v.<br>SPACE SYSTEMS/LORAL, INC.,<br><br>           Defendant. | Civil No. 12-CV-0260-H (WVG)<br><br>ORDER ON DISCOVERY DISPUTES |

Pending before the Court are several discovery disputes initiated by both parties in this case. On February 19, 2013, the parties submitted to the Court a Joint Statement Regarding Discovery Disputes (hereafter "Joint Statement").

In the Joint Statement, Plaintiffs ViaSat, Inc. and ViaSat Communications, Inc. (collectively "Plaintiffs") claim that Defendants Space Systems/Loral, Inc. ("SS/L") and Loral Space & Communications, Inc. ("LS&C") (collectively "Defendants") have improperly redacted contract terms for a Purchase Agreement with non-party MacDonald, Dettwiler & Associates Ltd. ("MDA"). Plaintiffs also argue that Defendants have failed to sufficiently identify conception related documents in response to a discovery request. Defendants ask the Court for an order compelling Plaintiffs to identify the proprietary information allegedly disclosed by Defendants.

After reviewing the parties' Joint Statement, supporting exhibits, and conducting an *in camera* review of the redacted Schedules, the Court hereby issues the rulings set forth below.

## I. REDACTIONS

Currently before the Court is Plaintiffs' dispute regarding production of redacted Schedules contained within the Purchase Agreement ("Agreement") between Defendants and MDA. Plaintiffs move to compel the Schedules, which Defendants have withheld as protected by the work product and common legal interest doctrines. For the reasons set forth below, the Court hereby DENIES Plaintiffs' request to compel production of the redacted Schedules.

### A. BACKGROUND

In late June of 2012, several months after Plaintiffs first filed the instant lawsuit against Defendants, MDA and Defendants announced that MDA had agreed to purchase Defendant SS/L from Defendant LS&C. (Doc. No. 65-1 at 2.) On January 31, 2013, Defendants produced the complete Agreement, but redacted Schedules 4.23(d) and 10.8. (Joint Statement at 1.)

Defendants claim that the redacted material is work product privilege because it was prepared by counsel in anticipation of this litigation, and it is subject to the common legal interest doctrine because it was exchanged for the purpose of furthering a joint defense against Plaintiffs after the sale. (Joint Statement at 9.) They assert that the Schedules describe communications and understandings between Defendant SS/L and MDA in response to, and in anticipation of, this litigation, and include a paragraph of legal strategy and analysis prepared for this litigation. Id. Defendants contend that it is a communication's content that triggers privilege protection, not its form. Id. They also argue that the redacted Schedules constitute less than one page of material in the 780 page Agreement. Id. at 8.

Although Defendants do not assert that the Schedules are subject to the attorney-client privilege, Plaintiffs nonetheless argue that the material cannot be protected by the attorney-client privilege because it is part of a contract, and a contract is not a communication seeking

legal advice from an attorney. Plaintiffs also argue that the work product privilege does not apply to the Schedules. They contend that a contract, even a joint defense agreement, is an agreement which defines legal rights between parties, and although both Schedules may reference the instant litigation, their primary purpose is to "define the metes and bounds of the contractual relationship between Defendants and MDA." Thus, Defendants argue, the Schedules were not made in anticipation of this litigation. (Joint Statement at 2.)

Finally, Plaintiffs argue that, should the Court find that the Schedules are privileged, it must also find that the privilege has been waived because Defendants incorporated both Schedules by reference into a public SEC filing, making them terms of a public document. (Joint Statement at 3.) Plaintiffs also believe that Defendants "likely" shared unredacted copies of the Schedules with MDA's advisors, and thus waived any privilege.

## B. LEGAL STANDARD

### 1. Work Product Doctrine

The work product doctrine protects attorneys' thought processes and legal recommendations. Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). "[T]he work-product doctrine serves to balance an attorney's ability to prepare in representing its clients against society's interest in revealing all true and material facts relevant to the resolution of a dispute." F.D.I.C. v. Fidelity & Deposit Co. of Maryland, 196 F.R.D. 375 (S.D. Cal. May 1, 2000) (citing Hickman, 329 U.S. at 509-12.)

To qualify for protection against discovery under the work product doctrine, documents must (1) be prepared in anticipation of litigation or for trial, and (2) be prepared by or for another party or by or for that other party's representative. In Re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.), 357 F.3d 900, 907 (9th Cir. 2004) (citing In Re California Pub. Utils. Comm'n, 892 F.2d 778, 780-81 (9th Cir. 1989).)

"In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." United States v. Richey, 632 F.3d 559, 567-68 (9th Cir. 2011) (citing In Re Grand Jury Subpoena, 357 F.3d at 907.) Dual purpose documents are considered to be prepared because of litigation if, "in

light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Id.  In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." Id.

Courts recognize two types of work product, ordinary work product and opinion work product. Pulse Engineering, Inc. v. Mascon, Inc., 2008 WL 3234177, 2 (S.D. Cal. Oct. 2, 2009). Opinion work product includes the mental impressions, conclusions, opinions, or legal theories of an attorney, and generally is entitled to nearly absolute protection. Id; citing Holmgren v. State Farm Mutual Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992) (holding that opinion work product is entitled to nearly absolute protection with limited exceptions). Ordinary work product, by contrast, is subject to disclosure when the party seeking the discovery can show a substantial need, and an inability to obtain the materials by other means. Pulse Engineering, Inc. v. Mascon, Inc., 2008 WL 3234177, 2 (S.D. Cal. Oct. 2, 2009); see Upjohn Co. v. United States, 449 U.S. 383, 401, 101 S. Ct. 677, 66 L.Ed.2d. 584 (1991) (declining to decide whether opinion work product is entitled to absolute protection, but recognizing that ordinary work product is discoverable upon a showing of substantial need and inability to obtain materials without undue hardship.)

The party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine. Tornay v. U.S., 840 F.2d 1424, 1426 (9th Cir. 1988); Pulse Engineering, 2008 WL 3234177, 2.

## 2. Common Legal Interest Doctrine

The common legal interest doctrine is not a privilege in and of itself, rather, it constitutes an exception to the rule on waiver where communications are disclosed to third parties. Pulse Engineering, 2008 WL 3234177, 3; Morvil Technology, LLC v. Ablation Frontiers, Inc., 2012 WL 760603 (S.D. Cal. Mar. 8, 2012) (citing United States v. Bergonzi, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003).) "The common interest privilege ...applies where

(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." Pulse Engineering, 2008 WL 3234177, 3 (citing Bergonzi, 216 F.R.D. at 495-96.)  In Morvil Technology, a court in this judicial district noted that a joint anticipated litigation has been held to be a common legal interest among a buyer and seller of intellectual property.  Morvil, 2012 WL 760603, 2; see Hewlett-Packard v. Bausch & Lomb, Inc., 115 F.R.D. 308 (N.D. Cal. 1987).

## C. RULING

After conducting an *in camera* review, the Court finds that Schedules 4.23(d) and 10.8 were properly redacted.  Taking a conservative approach to the work product doctrine, Schedule 10.8 appears to be work product material.  While the Court considers Schedule 10.8 to be a close call on the issue of privilege, Schedule 4.23(d) is not a close call.  Schedule 4.23(d) is clearly protected by the work product doctrine.  Schedule 4.23(d) contains thoughts and impressions of counsel, and the Court finds the material to be an attorney's work product. Further, both Schedules were drafted at a time when Defendants were already involved in the instant litigation with Plaintiffs.

Plaintiffs' contention that the work product doctrine should not apply in the instant case because the contractual nature of the communications predominates, and therefore the Schedules were not made in anticipation of litigation, is not supported by the documents lodged with this Court.  The Court has reviewed the parties' arguments and the unredacted Schedules lodged with chambers and finds that the Schedules were prepared in anticipation of the ongoing litigation and contain attorney's thought processes and legal recommendations.

Further, despite Plaintiffs' contentions, the Court finds that Defendants have not waived their protection under the work product doctrine.  In this setting of a non-party purchasing Defendant SS/L from Defendant LS&C in the midst of patent infringement litigation, the parties' common legal interest predominates.

Finally, if it is true that the Agreement is publically available through an SEC filing, Plaintiffs can obtain the Schedules themselves.

## II. CONCEPTION DATES

Currently before the Court is Plaintiffs' dispute regarding Defendants' production of conception related documents. Plaintiffs move to compel a supplemental response to Interrogatory ("ROG") Number ("No") 10, and Defendants argue that they have already provided a complete response and fully complied with Patent Local Rule 3.2(b). For the reasons set forth below, the Court hereby GRANTS Plaintiffs' request to compel a supplemental response to ROG No. 10.

### A. BACKGROUND

On July 26, 2012, Plaintiffs served ROG No. 10 upon Defendants, which requested,

> For each claim of the SS/L Asserted Patents, describe in detail all facts RELATING to its conception and reduction to practice, including identifying the date of conception; the date of reduction to practice of its subject matter; all acts YOU contend represent diligence occurring between the dates of conception and reduction to practice; each person involved in such conception, diligence and/or reduction to practice; where the invention was first reduced to practice; and when, where, and to whom the invention was first disclosed.

(Joint Statement at 3; Exh. B at 4-5.)

On September 5, 2012, in response to ROG No. 10, Defendants identified fifteen separate conception dates for Defendant SS/L's forty asserted patent claims. (Joint Statement at 3.) Plaintiffs claim that Defendants provided little to no explanation of the facts surrounding conception, and identified no documents that supported their assertions. Id. Defendants then produced more than 60,000 pages of conception related documents in their Patent Local Rule 3.2(b) production. Id. After the document production, Plaintiffs requested that Defendants supplement their response to ROG No. 10, and provide sufficient information to ascertain, on a claim-by-claim basis, the documents and facts demonstrating Defendant SS/L's claimed conception dates. Id. at 3-4.

On February 1, 2013, Defendants provided a supplemental response to ROG No. 10, identifying only one document for each claimed conception date. (Joint Statement at 4.) Defendants represented that the documents identified were the earliest conception documents. Id.

Plaintiffs now move the Court for an order compelling Defendants to identify which of their Patent Local Rule 3.2(b) documents correspond to which asserted claims. They claim that they need this information in order to know the conception dates that Defendants will assert. Id. Plaintiffs claim that, without prompt supplementation, Defendants will be able to belatedly amend their responses late in discovery to reveal a different conception date allegedly supported by other documents from the thousands they produced. Id. Plaintiffs contend that they would be prejudiced by such late disclosure because it may deprive them of the ability to depose relevant witnesses regarding the actual conception date and supporting documents. Id.

Defendants argue that they have already identified the material information sought by Plaintiffs through ROG No. 10. (Joint Statement at 10.) They state that they have identified documents evidencing the earliest conception date for each of Defendants' patents-in-suit. Id. Defendants assert that they have identified their conception documents with specificity to each patent, but not to each claim. They claim that Plaintiffs' request for identification of all documents pertaining to Defendant SS/L's conception of its patents, as well as a chart indexing every document on a patent-by-patent and claim-by-claim basis, is above and beyond the requirements of Patent Local Rule 3.2(b). (Joint Statement at 10.)

Defendants contend that Plaintiffs' request to cross-index all documents to all claims would be particularly burdensome. (Joint Statement at 10.) Moreover, Defendants argue that they have produced exactly what Plaintiffs have produced, and that there is no basis for Plaintiffs to complain that Defendants disclosures are inadequate when they mirror Plaintiffs' disclosures.

## B. LEGAL STANDARD

Patent Local Rule 3.2(b) requires the party claiming patent infringement to produce:

> **All documents** evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3.1.e, whichever is earlier.

Patent L.R. 3.2(b) (emphasis added)

Proving a conception date that is earlier than the date the patent was filed is important for preventing articles and other inventions from being considered "prior" art that can invalidate the patent by rendering it obvious or anticipated. U.S. v. Mohsen, 2005 WL 3288651, 1 at n.1 (N.D. Cal. Dec. 5, 2005). In order to receive an effective date earlier than the filing date of a patent for the purpose of determining whether a reference is prior art, a patentee has the burden of proving by clear and unequivocal evidence, that the invention was both conceived and reduced to practice before the application date. Id.

Conception requires proof that the inventor formed in his mind a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice, and that the idea be so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation. Aspex Eyewear, Inc. v. Revolution Eyewear, Inc., 2001 WL 34852696, 5 (C.D. Cal. June 4, 2001). Where a party seeks to show conception though oral testimony of an inventor, it must produce independent evidence corroborating that testimony. Id. Indeed, "[p]roof of an alleged inventor's conception and reduction to practice is a heavy one and requires full corroboration by other than the inventor's own self-serving testimony or records." Id. (citing Potter Instrument Co., Inc. v. Odec Computer Systems, Inc., 370 F.Supp. 198, 206 (D.R.I. 1974).)

## C. RULING

After review of Defendants' responses, it appears that they provided two different conception dates for some claims in their initial response and supplemental response. This circumstance alone provides sufficient justification to grant Plaintiffs' request. Beyond that, however, the "moving target" of conception dates certainly raises suspicion with the Court in light of Plaintiffs argument that, without all conception related documents for each claim, Defendants will be free to amend conception dates later in this litigation.

Defendants complain that the production of all conception related documents on a claim-by-claim basis would be unduly burdensome, and therefore they produced documents related only to the earliest conception date for each claim. However, Patent Local Rule

3.2(b) explicitly requires the production of **all documents** evidencing the conception ... of each claimed invention ..." Patent L.R. 3.2(b) (emphasis added). The Court finds Defendants' current production of documents related only to the earliest conception dates to be insufficient. The Court does not find this production to be unduly burdensome, especially when the production would be in compliance with Patent Local Rule 3.2(b).

Moreover, Defendants' contention that they have responded just as Plaintiffs have responded and Defendants did not lodge a complaint to Plaintiffs response, is irrelevant. Plaintiffs have a valid complaint because they have not received all of the conception related documents on a claim-by-claim basis, and Defendants are ordered to respond.

### III. INTERROGATORIES - PROPRIETARY INFORMATION

Currently before the Court is Defendants' dispute regarding production of supplemental responses to ROG Nos. 22 and 23, involving proprietary information allegedly disclosed by Defendants. For the reasons set forth below, the Court hereby DENIES Defendants' request to compel supplemental responses.

### A. BACKGROUND

On September 5, 2012, Plaintiffs answered Defendants' ROG No. 22. The Joint Statement is silent from both parties as to when Plaintiffs answered ROG No. 23. On February 7, 2013, Defendants requested that Plaintiffs supplement their responses to ROG Nos. 22 and 23, in order to comply with California Code of Civil Procedure 2019.210, which applies to trade secret disputes. (Joint Statement at 4-5.) Plaintiffs claim that they have already identified the proprietary information that they believe Defendants disclosed. Id. at 4.

Defendants claim that they are entitled to know the substance of Plaintiffs' allegations, and Plaintiffs' responses do not put Defendants on notice of the claims against them. (Joint Statement at 6.) They claim that Plaintiffs' responses include only vague categories of information that Defendants allegedly disclosed. Defendants argue that this Court should order Plaintiffs bound to the scope of what they have disclosed so that Defendants may argue that Plaintiffs' vague concepts are not proprietary at all. Id. at 7.

## B. RULING

This Court's Chambers Rules require a party to notify the Court within thirty days of the date upon which the event giving rise to a dispute occurred. (Judge Gallo's Chambers Rule IV.) Plaintiffs answered ROG No. 22 on September 5, 2012, and Defendants waited for five months, until February 7, 2013, to ask Plaintiffs to supplement their responses. Therefore, any dispute arising from these responses is untimely and will not be entertained by the Court.

## IV. CONCLUSION

**On or before April 12, 2013**, pursuant to the Patent Local Rules of this judicial district, Defendants shall produce all documents related to conception, and shall identify all conception documents for each claim.

IT IS SO ORDERED.

DATED: March 15, 2013

_____
Hon. William V. Gallo
U.S. Magistrate Judge