UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC.,<br><br>                              Plaintiffs,<br><br>     vs.<br><br>SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS, INC.,<br><br>                              Defendants. | CASE NO. 3:12-CV-00260-H (WVG)<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE** |

On May 25, 2012, Plaintiffs and Counterclaim-Defendants ViaSat, Inc. and ViaSat Communications, Inc., f/k/a Wildblue Communications, Inc. (collectively, "ViaSat") filed an amended complaint alleging patent infringement.  (Doc. No. 25.) On July 6, 2012, Defendant and Counterclaim-Plaintiff Space Systems/Loral, Inc. ("SS/L") filed an answer including counterclaims alleging, among other things, infringement of U.S. Patent No. 6,400,696 (the "'696 Patent") and U.S. Patent No. 7, 219,132 (the "'132 Patent").  (Doc. No. 29.)  On November 13, 2012, ViaSat filed a motion for summary judgment claiming invalidity of the '696 and '132 Patents.  (Doc. No. 68.)  On January 8, 2013, the Court denied ViaSat's motion without prejudice.

(Doc. No. 111.) On March 26, 2013, ViaSat filed a renewed motion for summary judgment claiming invalidity of the same patents. (Doc. No. 128.) On April 23, 2013, SS/L filed its opposition to ViaSat's renewed summary judgment motion. (Doc. No. 150.) On April 29, 2013, ViaSat filed a reply in support of the motion. (Doc. No. 158.) On May 3, 2013, the Court held a hearing on the motion. Sean S. Pak and Adam B. Wolfson appeared for ViaSat and Ian B. Crosby and Amanda K. Bonn appeared for SS/L.

SS/L filed their infringement contentions concerning the '696 and '132 Patents on September 5, 2012. (Doc. No. 68-12.) ViaSat filed their invalidity contentions concerning those patents on November 26, 2012. (Doc. No. 99-2, Decl. of A. Bonn Exs. K-M.) SS/L filed amended infringement contentions concerning those patents on February 1, 2013. (Doc. No. 128-3 Ex. A.) ViaSat responded with amended invalidity contentions concerning those patents, filed with their motion for summary judgment on March 26, 2013. (Doc. No. 131-2 Exs. J, K.) The Court held the claim construction hearing on May 24, 2013.

After due consideration, the Court denies ViaSat's motion for summary judgment without prejudice.

## Background

SS/L is the owner of the '696 and '132 Patents. (Doc. No. 94 ("SS/L Answer") ¶¶ 65, 74.) The patents concern commercial satellite-based communication systems designed to maximize the efficiency of broadband communication networks. SS/L's counterclaims allege that ViaSat's satellite user terminals infringe both patents. (Id. ¶¶ 49, 66.)[1] ViaSat moves for summary judgment of invalidity because its product, the

---

[1] SS/L's preliminary infringement contentions specifically accused the Linkway 2100 of infringing SS/L's patents. (Doc. No. 68-12 at 3.) Following the Court's denial of ViaSat's prior motion for summary judgment, SS/L amended their infringement contentions and withdrew their allegations against Linkway 2100 entirely. (See Doc. No. 128-3 Ex. A.) SS/L states that they did so because ViaSat primarily sold Linkway systems to the Department of Defense, immunizing ViaSat from potential liability for most of the damages related to Linkway's alleged infringement. (Doc. No. 149 at 2-3);

Linkway 2100, was offered for sale more than a year prior to the filing dates of both patents at issue. (Doc. No. 128-1 at 3.) ViaSat contends that the Linkway 2100 anticipates and therefore invalidates both the '696 and '132 patents. (Id.)

## I.     The '696 Patent

The '696 Patent, titled "Bent-Pipe Satellite System Which Couples A LAN To A Gateway And Uses Dynamic Assignment/Multiple Access Protocol," was issued on June 4, 2002 and claims priority to November 7, 2000 (the patent's "critical date"). (SS/L Answer ¶ 64; id. Ex. B, '696 Patent.) The '696 Patent generally claims "[d]ynamic resource management systems that improve communication over a satellite communication link." ('696 Patent.) The Linkway 2100 was a ground-based system used to facilitate high-speed communications across satellite networks. (Doc. No. 131, Decl. of A. Agarwal ¶ 3.) ViaSat argues that the Linkway 2100 anticipated Claims 1, 2, 3, 4, 5, 7, 8, 9, 10 and 13 of the '696 Patent. ViaSat additionally argues that the Linkway 2100 rendered obvious Claims 6 and 11 of the '696 Patent.

Claim 1 is the '696 Patent's only independent claim. ('696 Patent.) Claim 1 discloses the following:

> A dynamic resource management system comprising:
> a local area network edge device;
> one or more personal computers coupled to the local area network edge device by way of a network;
> a gateway;
> a data source coupled to the gateway; and
> a satellite that provides a communications link between the local area network edge device and the gateway;
> the local area network edge device and the gateway implementing signaling based on a non-asynchronous transfer mode (ATM) protocol, and wherein the non-asynchronous transfer mode protocol is overlaid with one or more dynamic assignment/multiple access communications protocols.

(Id.) The dependent claims incorporate the disclosures of Claim 1 and elaborate on, among other things, the protocols, data sources, and type of satellite employed in particular embodiments of the invention. (Id.)

///

---

see 28 U.S.C. § 1498.

**II.   The '132 Patent**

The '132 Patent, titled "Dynamic Resource Allocation Architecture For Differentiated Services Over Broadband Communications Networks," was issued on May 15, 2007 and claims priority to March 30, 2001. (SS/L Answer ¶ 73; Id. Ex. C, '136 Patent.)  The '132 Patent generally claims "[d]ynamic resource allocation that provides differentiated services over a broadband communication network." ('132 Patent.)  ViaSat argues that the Linkway 2100 anticipated Claims 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16 and 17 of the '696 Patent.

Claim 1 is the '132 Patent's only independent claim. (Id.) Claim 1 discloses the following:

> A dynamic resource allocation system comprising:
> one or more personal computers coupled to a local area network edge device that generates a resource request in response to received data from a user of said personal computer;
> a satellite that provides a communications link;
> one or more Internet protocol networks;
> a gateway in connection with said local area network edge device via said communications link and interfaces to one or more said Internet protocol networks, wherein said gateway receives said resource request from said local area network edge device to set required resources;
> a generator for generating messages of different types from said user data;
> a classifier for identifying specific types of said messages;
> a marker for marking said identifying messages; and
> a scheduler for scheduling said marked messages;
> wherein said gateway dynamically allocates resources to meet the requirements of each said marked messages by applying a dynamic assignment/multiple access (DAMA) communication protocol for transmitting data between said one or more personal computers and said one or more Internet protocol networks;
> wherein said DAMA communication protocol comprises three modes, including fixed assignment, reservation assignment, and random assignment modes.

(Id.) The '132 Patent's dependent claims specify the manner in which the dynamic assignment/multiple access (DAMA) protocol makes resource allocations, for example, via "an application detection algorithm" as in Claim 5, a "resource requirement estimation algorithm that is based on queue statistics versus performance statistics," as in Claim 6, or a "weighted fair queueing algorithm . . . that drains the queues" as in Claim 9. (Id.)

///

**Discussion**

## I. Legal Standards

### A. Motion for Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The

Court does not make credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts. . . ." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

### B.     Invalidity Pursuant to 35 U.S.C. § 102(b)

Under 35 U.S.C. § 282, a patent is presumed valid, and an attack on its validity requires proof of facts by clear and convincing evidence or "its equivalent, by whatever form of words it may be expressed." Buildex Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed. Cir. 1988). The "clear and convincing" standard of proof of facts is an intermediate standard which lies somewhere between "beyond a reasonable doubt" and a "preponderance of the evidence." Id. (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). Section 102(b) provides a patent may be invalid if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).

ViaSat moves for summary judgment of invalidity because its product, the Linkway 2100, was offered for sale more than a year prior to the filing dates of both patents at issue. Whether an invention was on sale within the meaning of § 102 is a question of law. Scaltech, Inc. v. Retec/Tetra, LLC, 269 F.3d 1321, 1327 (Fed. Cir. 2001). The statutory on-sale bar applies when two conditions are satisfied before the critical date: first, the product must be the subject of a commercial offer for sale, and, second, the invention must be ready for patenting. Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67 (1998).

ViaSat contends that Comsat Laboratories ("Comsat"), the original developer

and marketer of the Linkway 2100,[2] offered the Linkway 2100 for sale to one of its customers, INTELSAT, at least as early as November 3, 1999, over a year before the critical dates of either the '132 or the '696 Patents. ViaSat argues that the Linkway 2100 offered for sale in 1999 anticipates and invalidates both the '696 and '132 Patents. SS/L counters that ViaSat has failed to satisfy its evidentiary burden to show that the Linkway 2100 offered for sale in 1999 anticipates SS/L's patents.[3]

A determination of anticipation is a question of fact. In re Gleave, 560 F.3d 1331, 1334 (Fed. Cir. 2009). An anticipation defense under 35 U.S.C. § 102 requires clear and convincing evidence that a single prior-art reference discloses all limitations of a claim. See, e.g., Glaxo Group Ltd. v. Apotex, Inc., 376 F.3d 1339, 1348 (Fed. Cir. 2004); Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1188-89 (Fed. Cir. 2002). A prior art reference anticipates a claimed invention if it explicitly or inherently discloses each and every element of the claim and enables one of ordinary skill in the art to make the invention without undue experimentation. Id. A claim is anticipated under 35 U.S.C. § 102(b) if the claimed subject matter was patented or described in a printed publication more than one year prior to the date of application for patent. 35 U.S.C. § 102(b). Anticipation is typically established by one skilled in the art who must "identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference." Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 1315 (Fed. Cir. 2002). Such testimony cannot be merely conclusory. Id. at 1315-16. Summary judgment of anticipation is appropriate if the record reveals no

---

[2] ViaSat notes that Comsat Laboratories is now a subsidiary of ViaSat. (Doc. No. 128-1 at 1.)

[3] For the purposes of this motion, SS/L does not dispute that the Linkway 2100 was both subject to an offer for sale and ready for patenting over a year before either of SS/L's patents at issue were filed. Accordingly, the Court assumes for the purposes of this motion that the transaction between Comsat and INTELSAT involving the Linkway 2100 amounted to an offer for sale, and that the Linkway 2100 at that time was ready for patenting, sufficient to satisfy § 102(b).

genuine dispute of material fact. See, e.g., In re Cruciferous Sports Litig., 301 F.3d 1343 (Fed. Cir. 2002).

**Discussion**

**I.    The '696 Patent**

    **A.    Anticipation**

The Linkway 2100 was a ground-based satellite terminal system used to facilitate high-speed communications systems across satellite networks. (Doc. No. 131, Decl. of A. Agarwal ¶ 3.) ViaSat asserts that the Linkway 2100 anticipated every limitation of Claims 1, 2, 3, 4, 5, 7, 8, 9, 10 and 13 of the '696 Patent. In support of ViaSat's anticipation argument, ViaSat provides an invalidity chart with an element by element analysis of the '696 Patent claims in view of the functions implemented by the Linkway 2100. (Doc. No. 131-2 Ex. J.)

SS/L contends that the Linkway 2100 was a prior art system of the type that the '696 Patent was specifically designed to improve upon, and accordingly lacks several of the '696 Patent's claimed innovations. (Doc. No. 149 at 8-9; Doc. No. 149-12, Decl. of C. Jones ¶¶ 23-27.) In particular, SS/L argues that the Linkway 2100 lacked an overlying DAMA algorithm as disclosed by Claim 1.[4] ViaSat's expert, however, identifies several protocols in the Linkway 2100 as DAMA protocols that, based on his review of the source code, operated at a higher level than Linkway 2100's non-ATM signaling protocol, satisfying the "overlay" limitation. (Doc. No. 131, Decl. of A. Agarwal ¶¶ 11-19; Doc. No. 157, Decl. of A. Agarwal ¶¶ 5-11.) For example, ViaSat's expert identifies a "collision resolution algorithm that resolved collisions among random assignment bursts." (Doc. No. 131, Decl. of A. Agarwal ¶ 18.) He identifies "code that performs the queuing and scheduling of segments that ultimately comprise

---

[4] In its claim construction order, the Court construed "the non-asynchronous transfer protocol mode is overlaid with one or more dynamic assignment/multiple access communications protocols" to mean "one or more dynamic assignment/multiple access algorithms implement communications protocols that are built on top of the non-asynchronous transfer mode protocol." (Doc. No. 206.)

the Linkway 2100 bursts." (Id.) "Additionally," he notes, "for signaling messages, Linkway 2100 uses a retransmission protocol called TSP, that makes use of feedback to determine whether or not a transmission was successfully received at the destination terminal. If the TSP protocol determines that a transmission was not successfully received (i.e., a collision occurred), it will re-queue the segments and the function SCHSchPBDataAloha() will once again schedule the segments into another randomly selected, random-access burst." (Id.) He states that this along with other DAMA algorithms employed by Linkway 2100's "bandwith manager," (see Doc. No. 131, Decl. of A. Agarwal ¶¶ 11-18), "operated on the application layer of the system, and the non-ATM protocol operated on the lower link layer of the system." (Doc. No. 157, Decl. of A. Agarwal ¶¶ 5-7.) In his view, "this is a 'DAMA overlay' within the meaning of SS/L's proposed construction of the '696 Patent." (Id. ¶ 8.)

In contrast, SS/L's expert contends that the Linkway 2100's bandwith management functions were either internal to the proprietary signaling protocol of the Linkway 2100, thus failing to "overlay" or lie "on top of" the signaling protocol by communicating with the signaling protocol from a different networking layer, or were statically determined by a human operator and thus were not "algorithms" at all. (Doc. No. 149-12, Decl. of C. Jones ¶¶ 25-27, 53, 60.) SS/L's expert addresses the protocols identified in ViaSat's motion, (see Doc. No. 128-1 at 10; Doc. No. 131, Decl. of A. Agarwal ¶¶ 10, 12, 13, 17), and explains, for example, that the "BWReporterSend()" function in Linkway 2100 "provides signaling in reaction to a data rate measurement that can be used to allocate additional as-available bandwidth." (Doc. No. 149-12, Decl. of C. Jones ¶ 59.c.) However, he contends, "measuring the data rate of a connection does not . . . constitute an overlay in the sense of the '696 Patent because data rate of incoming packets is simply a consequence of packet arrival rate. A data rate estimate does not constitute additional information that describes a message's type in order to classify the message and then enable the message to be transmitted with a

priority that is higher or lower than other messages based on the type information." (Id. ¶ 59.b)  He argues that "[i]mplementing a DAMA protocol as an overlay over a non-ATM signaling protocol enables specialized algorithms to control resource allocation at the signaling layer without modification of the signaling layer protocol itself. . . . By contrast, Linkway 2100 implements DAMA algorithms within the media access control layer, where they are not being controlled by an overlay of type and classifier information for QoS originating in a layer above." (Id. ¶ 53.)  Furthermore, the Court construed "overlay" to mean "built on top of the non-asynchronous transfer mode protocol" in its claim construction order, consistent with SS/L's proposed construction.  (Doc. No. 206.)

Viewing the evidence in the light most favorable to SS/L, the nonmoving party, the Court concludes that a genuine dispute of material facts exist as to the invalidity of the '696 Patent.  A dispute remains as to whether the Linkway 2100 satisfied Claim 1's limitation that "the non-asynchronous transfer mode protocol is overlaid with one or more dynamic assignment/multiple access communications protocols."  ('696 Patent.)  Because the remainder of the dependent claims incorporate all of Claim 1's limitations, an issue of fact remains as to the validity of all of the '696 Patent's claims. Cf. Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1299 (Fed. Cir. 2002) (noting if limitations of independent claims not met, limitations of dependent claims cannot be met); Hartness Int'l, Inc. v. Simplimatic Eng'g Co., 819 F.2d 1100, 1108 (Fed. Cir. 1987).

**B.   Obviousness**

ViaSat additionally contends that Claims 6 and 11 of the '696 are invalid by way of obviousness.  A patent claim is invalid as obvious if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  35 U.S.C. § 103(a).  Obviousness is a legal question

based on underlying factual determinations. Eisai Co. Ltd. v. Dr. Reddy's Lab., Ltd., 533 F.3d 1353, 1356 (Fed. Cir. 2008). "The factual determinations underpinning the legal conclusion of obviousness include 1) the scope and content of the prior art, 2) the level of ordinary skill in the art, 3) the differences between the claimed invention and the prior art, and 4) evidence of secondary factors." Id. (citing Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966)). Secondary factors include "commercial success, long felt but unsolved needs, failure of others, etc." KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007) (quoting Graham, 353 U.S. at 17-18). Obviousness requires a showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention. Unigene Labs., Inc. v. Apotex, Inc., 655 F.3d 1352, 1360 (Fed. Cir. 2011) (citing KSR, 550 U.S. at 421). Unlike anticipation, where a single reference must disclose all claim elements, a party asserting obviousness may rely on the prior art as a whole. Panduit Corp. V. Dennison Mfg., 810 F.2d 1561, 1566 (Fed. Cir. 1987).

ViaSat argues that the Linkway 2100 rendered Claims 6 and 11 of the '696 Patent obvious. Claims 6 and 11 are dependent on and incorporate all of the limitations of independent Claim 1. ('696 Patent.) ViaSat has failed to establish by clear and convincing evidence that the DAMA overlay of the '696 Patent's independent Claim 1, in addition to the remainder of Claims 1, 6, and 11, would have been obvious to one of ordinary skill in the art. It is not enough to assert that using DAMA protocols involved prior art, absent a showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention. (See Doc. No. 158 at 3-4); Unigene Labs, 655 F.3d at 1360 (citing KSR, 550 U.S. at 421). ViaSat has not made such a showing at this time. Because ViaSat fails to show that Claim 1 is invalid as obvious, ViaSat likewise fails to establish Claims 6 and 11 are obvious. See

Hartness Int'l, 819 F.2d at 1108 (holding where independent claim deemed nonobvious, claims dependant on independent claim are necessarily nonobivious). The Court accordingly denies ViaSat's motion as to Claims 6 and 11 of the '696 Patent.

## II.     The '132 Patent

ViaSat argues that the Linkway 2100 anticipated Claims 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16 and 17 of the '132 Patent. ViaSat provides an element-by-element invalidity chart comparing the Linkway 2100 to the limitations of each of the claims of the '132 Patent. (Doc. No. 131-2 Ex. K.)

SS/L contends that Claim 1 of the '132 Patent disclosed limitations beyond those anticipated by the Linkway 2100. In particular, SS/L argues that the "classifier" and "marker" disclosed by Claim 1 were not present in the Linkway 2100. (Doc. No. 149-12, Decl. of C. Jones ¶¶ 28-35.)  While the Linkway 2100 included protocols for classifying and marking messages for the purposes of bandwith allocation, SS/L argues that the classifier disclosed by Claim 1 classifies messages by the identified type of data; for example, voice or video data. (Id. ¶¶ 28, 35.) In contrast, the Linkway 2100 classified and subsequently marked messages based on characteristics extrinsic to the type of data identified, such as the data transmission rate of the user's network. (Id. ¶¶ 33-37, 40; Doc. No. 131, Decl. of A. Agarwal ¶ 5 ("In Linkway 2100, the dynamic allocation of bandwidth among user terminals was based on (a) consumer profiles; (b) the bandwidth limitations of the communication link; and (c) required end-to-end error rate performance.)) According to SS/L's extrinsic evidence, the Linkway 2100 lacked the capacity to dynamically classify data for resource allocation based on the content of the data, limiting its ability to anticipate the bandwidth usage of data packets being transmitted.  (Id. ¶¶ 21-24.)  ViaSat does not argue that Linkway 2100 had such capability but instead argues that the "classifier" and "marker" disclosures of Claim 1 were not limited to classifications based on type of data. (Doc. No. 158 at 7-8.) The parties disputed the meanings of "classifier" and "marker" for the purposes of claim

construction, but the Court's constructions do not resolve the parties' dispute regarding invalidity.[5]

The Court concludes that, based on the current record and viewing the evidence in the light most favorable to SS/L, a genuine dispute of material fact exists with regard to whether the Linkway 2100 included a "classifier for identifying specific types of . . . messages" and a "marker for marking said identifying messages" as claimed by the '132 Patent.[6]  Whether Linkway 2100 classified and marked messages in the manner disclosed by the '132 Patent is a factual issue not susceptible to resolution at this stage.  The Court accordingly denies ViaSat's motion for summary judgment of invalidity of Claim 1 of the '132 Patent.  Moreover, because each dependent claim incorporates the limitations of independent Claim 1, the Court must deny ViaSat's motion as regards the remainder of the '132 Patent.  Cf. Minn. Mining & Mfg., 303 F.3d at 1299 (noting if limitations of independent claims not met, limitations of dependent claims cannot be met); Hartness Int'l, 819 F.2d at 1108.

///

///

///

///

---

[5] In its claim construction order, the Court construed "a classifier for identifying specific types of said messages" as "an entity which identifies specific types of said messages according to defined rules." (Doc. No. 206.) The Court construed "marker for marking said identif[ied] messages" as "an entity that performs the process of setting header fields of messages selected by the classifier based on defined rules." (Id.)

[6] The Court is unconvinced by ViaSat's contention, raised in their reply, that additional prior art beyond the Linkway 2100 renders this portion of Claim 1 obvious.  ViaSat simply asserts that the DiffServ architecture, noted by the '132 Patent as an example of a method to classify and mark, was prior art to the Patent. (Doc. No. 158 at 7-8.)  Absent an additional showing, the mere fact that part of the '132 Patent's functionality already existed is insufficient to invalidate the '132 Patent by way of obviousness. See KSR, 550 U.S. at 421; Unigene Labs, 655 F.3d at 1360; Eisai Co., 533 F.3d at 1356 (noting invalidity by obviousness requires factual inquiry including "1) the scope and content of the prior art, 2) the level of ordinary skill in the art, 3) the differences between the claimed invention and the prior art, and 4) evidence of secondary factors").

### Conclusion

ViaSat has failed to demonstrate invalidity of the '696 and '132 Patents by clear and convincing evidence based on the current record. Accordingly, the Court denies ViaSat's motion for summary judgment without prejudice to refiling after the record is more developed.

**IT IS SO ORDERED.**

DATED: May 29, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT