QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Eric E. Wall (Bar No. 248692)
ericwall@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:  (415) 875 6600

Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Vincent M. Pollmeier (Bar No. 210684)
vincentpollmeier@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
865 S Figueroa Street 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000

Attorneys for Plaintiffs ViaSat, Inc. and
ViaSat Communications, Inc.
f/k/a WildBlue Communications, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS, INC., <br><br> Defendants. | CASE NO. 3:12-cv-00260-H-WVG <br><br> **VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE EARLIEST DATE OF 35 U.S.C. § 112 WRITTEN DESCRIPTION SUPPORT FOR THE '875 PATENT** <br><br> Judge:       Hon. Marilyn L. Huff <br> Courtroom: 15A <br> Date:        October 29, 2013 <br> Time:        9:00 a.m. |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    RELEVANT BACKGROUND.................................................................2

II.   ARGUMENT .................................................................................4

    A.    Legal Standard ................................................................5

    B.    The 2006 Application Discloses a Spot Beam Satellite System with Feeder Beams and Service Beams ....................................7

    C.    The 2006 Application Discloses Proximate and Non-Proximate Service and Feeder Beams ................................................8

    D.    The 2006 Application Discloses Feeder Beams that Re-Use Colors of Non-Proximate Service Beams ..................................9

    E.    The 2006 Application Discloses Proximate Feeder and Service Beams that Use Different Colors ........................................12

    F.    Dr. Schindall Admits That Loral's Colorizations of Figure 2B Are Inaccurate ..............................................................13

    G.    The Addition of Material to the 2009 Application Does Not Show That the 2006 Application Did Not Support the Claims ...........16

    H.    The Inventors' Testimony Confirms that the 2006 Application Supports the Asserted Claims ..............................................17

    I.    Dr. Schindall Is Biased, Misconstrues the Patent, and Applies the Wrong Standard ..............................................................21

    J.    The 2007 Application Provides the Same Written Description Support for the Asserted Claims ........................................25

III.  CONCLUSION .................................................................................25

04568.51904/5548251.1

Case No. 3:12-cv-00260-H-WVG

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE EARLIEST DATE OF 35 U.S.C. § 112 WRITTEN DESCRIPTION SUPPORT FOR THE '875 PATENT

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*All Dental Prodx, LLC v. Advantage Dental Products, Inc.*,
309 F.3d 774 (Fed. Cir. 2002) ........................................................... 7, 24

*In re Alton*,
76 F.3d 1168 (Fed. Cir. 1996) ........................................................... 8, 24

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) ....................................... 1, 6, 18, 24, 25

*Capon v. Eshhar*,
418 F.3d 1349 (Fed. Cir. 2005) ............................................................. 6, 25

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
635 F.3d 1373 (Fed. Cir. 2011) .................................................................. 7

*Invitrogen Corp. v. Clontech Laboratoriess, Inc.*,
429 F.3d 1052 (Fed. Cir. 2005) .................................................................. 7

*LizardTech, Inc. v. Earth Resources Mapping, Inc.*,
424 F.3d 1336 (Fed. Cir. 2005) .................................................................. 6

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
579 F.3d 1363 (Fed. Cir. 2009) .................................................................. 7

*MercExchange, LLC v. eBay, Inc.*,
401 F.3d 1323 (Fed. Cir. 2005), *vacated and remanded on other grounds*,
547 U.S. 388 .............................................................................................. 7

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
655 F.3d 1364 (Fed. Cir. 2011) .................................................................. 5

*Streck, Inc. v. Research & Diagnostics Systems, Inc.*,
665 F.3d 1269 (Fed. Cir. 2012) .................................................................. 6

*U.S. E.E.O.C. v. Caesars Entertainment, Inc.*,
237 F.R.D. 428 (D. Nev. 2006) ................................................................. 22

*Vas-Cath Inc. v. Mahurkar*,
935 F.2d 1555 (Fed. Cir. 1991) .................................................................. 7

## Federal Statutes

35 U.S.C. § 112 ............................................................................................ 5

35 U.S.C. § 120 ............................................................................................ 6

-2-

Case No. 3:12-cv-00260-H-WVG

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE
EARLIEST DATE OF 35 U.S.C. § 112 WRITTEN DESCRIPTION SUPPORT FOR THE '875 PATENT

Whether a patent claim is entitled to the priority date of an earlier application is a **question of fact**. *Ariad Pharms., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*) (emphasis added). And the facts must be viewed in the light most favorable to ViaSat as the non-movant. Here, the evidence that the asserted claims are entitled to claim priority to the 2006 Application is not only substantial, it is overwhelming: (1) the invention of the '875 patent is apparent on the face of the 2006 Application itself, (2) expert witness, Dr. Chris Bartone, has opined that a person of ordinary skill in the art would understand from that Application that its authors invented the claims of the '875 patent, and (3) Loral's own expert, Dr. Joel Schindall, has admitted as much at his deposition.

Ignoring both the evidentiary record and the applicable legal standard, Loral argues that the 2006 Application does not teach that the inventors conceived of the idea of a feeder beam that re-uses the same color as a non-proximate service beam, which Loral describes as the "core idea of the '875 patent." (Mot. at 15.) The entire basis of Loral's argument is that the 2006 Application only discloses color reuse between feeder and service beams when their coverage areas are completely geographically *isolated* from one another. But, the 2006 Application is not so narrow. Indeed, when discussing the case of a geographically isolated feeder beam, Paragraph 25 of the 2006 Application explicitly teaches that such isolation permits "**greater** re-use of the allocated frequencies." (emphasis added.) This description clearly indicates to a person skilled in the art that reuse of at least one color occurs even where the feeder beam coverage area is ***proximate*** to one or more service beam coverage areas. ██████████████████████████████

██████████████████████████████



1

2

3

4

5

6 [1]  This admission

7 alone is absolutely fatal to Loral's entire Motion.   Even if the various concessions

8 from Dr. Schindall were not dispositive of Loral's Motion, Dr. Bartone fully

9 explains in the accompanying declaration how the asserted claims are fully

10 supported by the 2006 Application.  (Bartone Dec. ¶¶ 16-22.)  There is therefore

11 more than substantial evidence for a jury to conclude that the asserted claims are

12 entitled to a 2006 priority date.  Loral's motion should be denied.

13 **I.    RELEVANT BACKGROUND**

14       The '875 patent describes a spot-beam satellite system designed to make more

15 efficient use of the limited spectrum such systems enjoy.  The system is comprised

16 of gateways connected to a network (*e.g.*, the internet), numerous subscriber

17 terminals that customers use to access the system, and a satellite that links the two

18 types of components.  (Ex. 1 at Fig. 1A.)  The beam that connects the satellite to the

19 gateway is a "feeder beam," and the beam that connects the satellite to the

20 subscriber terminal is a "service beam."  (Ex. 1 at Fig. 1A.)

21       Satellite communications systems have limited frequency bandwidth with

22 which to convey information.  (*See* Bartone Dec. ¶ 12.)  Gateways and subscriber

23

24    [1]   Unless otherwise noted, references to "Ex. __" refer to the accompanying Declaration of Sean Pak in Support of ViaSat's Opposition.

terminals may use "colors" to divide the bandwidth.  (Bartone Dec. ¶ 11, n.3.)  The patent explains that a color "has a unique combination of frequency band and polarization."  (Ex. 1 at 23:58-60.)  The patent facilitates color re-use between feeder beams and service beams, which thereby increases the system's overall data-carrying capacity.  In systems where gateway terminals and their associated feeder beams are located within the geographic coverage area of the service beams, the satellite designer must typically reserve certain portions of the frequency spectrum for feeder beams, and other portions for service beams to avoid interference.  (Bartone Dec. ¶ 12.)

The '875 patent uses a more efficient geographic placement of gateway terminals.  (Bartone Dec. ¶¶ 13-15; Ex. 1 at 15:64-16:2.)  The patent geographically separates gateways and subscriber terminals, which allows the gateways and subscriber terminals to re-use the same colors without undue interference.  (Bartone Dec. ¶ 13; Ex. 1 at 15:64-16:2.)  Complete geographic separation between feeder beam and service beam coverage areas is not, however, always possible.  (Bartone Dec. ¶ 14.)  The '875 patent depicts such a scenario in Figure 2B:



FIG. 2B

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE EARLIEST DATE OF 35 U.S.C. § 112 WRITTEN DESCRIPTION SUPPORT FOR THE '875 PATENT

1    (Ex. 1 at Fig. 2B (emphasis added); Bartone Dec. ¶ 16.)  As can be seen, the feeder

2    beam and service beam coverage areas overlap in some locations.  In these

3    overlapping or "proximate" situations, the patent describes reducing interference by

4    assigning the proximate spot beams different "colors" than those assigned to the

5    feeder beam.  (Ex. 1 at 1:51-60 & 23:66-24:8.)

6          The patent thus describes an inventive satellite system that uses spatial

7    separation between feeder beams and service beams to facilitate greater color re-

8    use.  (Bartone Dec. ¶ 15.)   Specifically, the patent claims a satellite configured to

9    receive information from feeder beams and service beams whose associated

10   coverage areas are ***not*** proximate to one another such that the beams share the same

11   color(s) without undue risk of interference.  (Ex. 1 at 24:8-16; Bartone Dec. ¶

12   15.)   A satellite configured in this way—*i.e.*, non-proximate beams re-using

13   frequencies, and proximate beams using orthogonal, non-interfering signals—

14   increases the capacity of the satellite communications system by maximizing the

15   available bandwidth.

16   **II.    ARGUMENT**

17         Claim 1 of the '875 patent recites in part a spot beam satellite that uses

18   service beams and one or more feeder beams:

19         wherein the feeder beam coverage area is proximate to one or more of
        the service beam coverage areas,

20         wherein the at least one feeder beam and a service beam associated
21         with each of the one or more service beam coverage areas proximate to
         the feeder beam coverage area are allocated different colors from the
22         beam pattern, such that signals associated with different colors differ by
         a frequency band, a polarization, or both a frequency band and a
23         polarization,

24

wherein the feeder beam coverage area is not proximate to one or more of the service beam coverage areas, and

wherein a set of colors allocated to a service beam associated with each of the one or more service beam coverage areas not proximate to the feeder beam coverage area includes at least one same color allocated to the at least one feeder beam, such that signals associated with the same color have the same frequency band and polarization.

(Ex. 1 at 23:66-24:16; Bartone Dec. ¶ 11, n.3.)  According to Loral, this claim language encompasses the "concept that a single feeder beam will use the same color as a <u>non-proximate service beam</u> and also a different color as a <u>proximate service beam</u>," which it claims is not disclosed in the 2006 or 2007 Applications. (Mot. at 3 (emphasis in original).)  Loral is, however, incorrect.  There is substantial evidence that both Applications provide written description of this concept to those skilled in the art, as well as every other element of the claim.

### A.    <u>Legal Standard</u>

"Claims deserve the provisional application's earlier filing date so long as that application contains adequate written description under 35 U.S.C. § 112." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 655 F.3d 1364, 1371 (Fed. Cir. 2011) (reversing summary judgment that patent was not entitled to claim priority to provisional application); *see* 35 U.S.C. § 120.  The written-description requirement is satisfied when "the disclosure of the [invention in the parent application] reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad,* 598 F.3d at 1351.

The test is not rigid.  "[T]he description requirement does not demand any particular form of disclosure . . . or that the specification recited the claimed invention *in haec verba*." *Id*. at 1352.  And it "does not demand either examples or

1   an actual reduction to practice."  *Id.*  Because the written description standard is

2   applied from the perspective of one of ordinary skill in the art, it must take into

3   account the knowledge that such a person would have.  *Id.* at 1351 (must consider

4   "the existing knowledge in the particular field" and "the extent and content of the

5   prior art") (quoting *Capon v. Eshhar*, 418 F.3d 1349, 1359 (Fed. Cir. 2005));

6   *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005)

7   ("A claim will not be invalidated on section 112 grounds simply because the

8   embodiments of the specification do not contain examples explicitly covering the

9   full scope of the claim language.  That is because the patent specification is written

10  for a person of skill in the art, and such a person comes to the patent with the

11  knowledge of what has come before.").  In *Streck, Inc. v. Research & Diagnostics*

12  *Systems, Inc.*, 665 F.3d 1269, 1287 (Fed. Cir. 2012), the court recently affirmed a

13  summary judgment that the patent satisfied the written description requirement in

14  part in light of "well-known" teachings "in the prior art."

15          Whether a patent application complies with the written description

16  requirement is a question of fact.  *Ariad,* 598 F.3d at 1351.  Where resolution of the

17  issue turns on differing expert opinions as to whether a person of ordinary skill in

18  the art would find that the specification conveys the invention, summary judgment is

19  especially inappropriate.[2]

20  _____

21          [2]  *See Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
    635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the

22  credibility and weight that should be afforded to conflicting expert reports, summary
    judgment is usually inappropriate."); *Martek Biosciences Corp. v. Nutrinova, Inc.*,

23  579 F.3d 1363, 1370-72 (Fed. Cir. 2009) (affirming denial of motion for judgment
    as a matter of law of invalidity where patentee offered nonconclusory testimony

24  from a technical expert, which the jury was entitled to credit, that the priority

1    Loral sets up an improperly stringent standard.  It argues for example that

2  "there simply is no express disclosure of the core ideas in claim 1."  (Mot. at 15.)

3  Even if that were true—which it is not—the law does not require an "express

4  disclosure."  Instead, "the failure of the specification to specifically mention a

5  limitation that later appears in the claims is not a fatal one when one skilled in the

6  art would recognize upon reading the specification that the new language reflects

7  what the specification shows has been invented."  *All Dental Prodx, LLC v.*

8  *Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002).  "If a person of

9  ordinary skill in the art would have understood the inventor to have been in

10  possession of the claimed invention at the time of filing, even if every nuance of the

11  claims is not explicitly described in the specification, then the adequate written

12  description requirement is met."  *In re Alton*, 76 F.3d 1168, 1175 (Fed. Cir. 1996).

### B.  The 2006 Application Discloses a Spot Beam Satellite System with Feeder Beams and Service Beams

13
14    There is no dispute that the 2006 Application discloses a satellite system with

15  gateways and subscriber terminals using feeder beams and service beams as claimed

16

17  application disclosed the invention to one of skill in the art); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072-73 (Fed. Cir. 2005) (affirming summary

18  judgment that claims were not invalid for lack of written description where the patentee provided an undisputed expert declaration that challenged claim limitations

19  were known in the art by the application filing date); *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1337 (Fed. Cir. 2005) (vacating summary judgment that patent

20  did not satisfy the written description requirement in light of expert declaration opining that a person of ordinary skill in the art would understand that the

21  specification's reference to "creating a credit" disclosed "creating a corresponding debit against the proceeds due to the seller" as claimed), *vacated and remanded on*

22  *other grounds*, 547 U.S. 388; *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1567 (Fed.

23  Cir. 1991) (district court erred by granting summary judgment that the patent not entitled to claim priority to an earlier application when district court disregarded

24  patentee's expert declaration).

by the '875 patent.  (Ex. 2 at Fig. 1A.)  Figures 2A and 2B disclose that the satellite system is a spot beam system, with feeder and service beams of limited geographic areas.  (*Id*. at Figs. 2A & 2 B.)  ████████████████████████████████

████████████████████████████████

## C.   The 2006 Application Discloses Proximate and Non-Proximate Service and Feeder Beams

There is no dispute that the 2006 Application discloses that spot beams can be "proximate" to one another, and that this may cause interference.  The Court previously construed "proximate" to mean "at least partially overlapping, such that color re-use among the beams is not permitted."  (Dkt. 206 at 8.)  The 2006 Application states:  "There may in some instances be service spot beam overlap (e.g., 205-c, 205-d, 205-e), while there is no overlap in other areas," and Figures 2A and 2B depict feeder and service beams that do not overlap.  (Ex. 2 Figs. 2A & 2B & ¶24.)  ████████████████████████████████

████████████████████████████████

The 2006 Application also explains that feeder beams can overlap with service beams and therefore be "proximate."  Paragraph 25 of the 2006 Application states, "As shown in FIG. 2B, [t]he gateway terminals 210 may be located in a region covered by a service spotbeam (e.g., the first, second, and fourth gateways 210-1, 210-2, 210-4)."  (Ex. 2 ¶ 25.)  ████████████████████████

████████████████████████████████

████████████████████████

### D. The 2006 Application Discloses Feeder Beams that Re-Use Colors of Non-Proximate Service Beams

Loral argues that the 2006 Application does not disclose that feeder beams may re-use the same color as a non-proximate service beam. (Mot. at 16-17.) The 2006 Application, however, conveys this concept to skilled artisans in multiple ways, and Loral's argument ignores the overall specification and the knowledge possessed by a person of ordinary skill in the art. ███████████████

████████████████████████████████████████████████

████████████████████████

In particular, Figures 12A and 12B of the 2006 Application disclose that service beams and feeder beams can re-use the same color. (Bartone Dec. ¶¶ 17-18.) Figure 12A depicts the "forward link distribution system," i.e., the feeder beam. (Ex. 2 at ¶¶ 20 & 25; Bartone Dec. ¶¶ 17-18.)



FIG. 12A

1  (Ex. 2 at Fig. 12A.)  Each of four different spot beams (205-1 to 205-4) are serviced

2  by a gateway using two different frequencies and two polarizations, creating four

3  colors.  (Ex. 2 at ¶¶ 20 & 22; Bartone Dec ¶¶ 17-18.)

4         Figure 12B depicts the "return link distribution system" reusing the same

5  colors.



FIG. 12B

16  (Ex. 2 at Fig. 12B & ¶23; Bartone Dec. ¶¶ 17-18.)  The same frequency pairs are

17  reused in Figures 12A and 12B.  (Bartone Dec. ¶¶ 17-18.) ███████████████

18  ████████████████████████████████████████████████████

19  ███████████████████████████████

20         The 2006 Application further explains this re-use of colors can occur between

21  feeder beams and non-proximate service beams when it describes how different spot

22  beams can re-use the same colors when they are targeted at different locations:  "In

23  one embodiment, the satellite 105 operates in a multibeam mode, transmitting a

24

-10-

1   number of narrow beams each directed at a different region of the earth, allowing

2   for frequency re-use."  (Ex. 2 at ¶13.)  The 2006 Application also explains:  "By

3   locating gateway terminals 210 outside of the spotbeam regions (e.g., the third

4   gateway 210-3), spatial diversity is achieved to allow for greater re-use of the

5   allocated frequencies."  (Ex. 2  at ¶ 25.)  Paragraph 25 of the 2006 Application thus

6   explains that by separating spot beams, including feeder and certain service beams,

7   those beams can re-use the same colors.  (Ex. 2 at ¶ 25; Bartone Dec. ¶ 19.)

8         Contrary to Loral's arguments, the 2006 Application does not limit the

9   concept of color reuse between feeder beams and service beams to situations

10  involving spatially *isolated* feeder beams.  Paragraph 75 of the 2006 Application,

11  *e.g.*, discloses non-proximate feeder and service beams re-using colors.  (Bartone

12  Dec. ¶ 20.)  It states:  "In one embodiment, the plurality of forward link service

13  beams and the at least one forward link feeder beam are associated with different

14  earth surface coverage areas and employ frequency re-use to utilize at least one

15  common frequency channel."  (Ex. 2 at ¶ 75.)[3]

16        Additionally, Paragraph 25 of the 2006 Application notes that spatial isolation

17  of feeder beams results in "***greater*** re-use of the allocated frequencies."  (Ex. 2 at ¶

18  25 (emphasis added).)  Both ViaSat's expert, Dr. Bartone, ██████████████████

19  ████████████████████████████████████████████████████████

20

21  _____

22    [3]  Dr. Schindall attempted to distinguish Paragraph 75 as addressing the
     embodiment discussed in a preceding Paragraph 73, which he testified describes

23  "two separate feeder beams that are geographically isolated."  (Ex. 5 at 119-20.)
     Nothing in Paragraph 75, however, states that it is addressing the same embodiment

24  as Paragraph 73.

1

2  (Bartone Dec. ¶¶ 19, 20-21, 23-25;

3

4

5    Loral therefore  when it

6  argues that the 2006 Application "does not even _imply_ sharing of colors between

7  feeder and service beams, much less _require_ it." (Mot. at 18.)

### E.    The 2006 Application Discloses Proximate Feeder and Service Beams that Use Different Colors

The 2006 Application also conveys the advantages of assigning different colors to proximate feeder and service beams. (Bartone Dec. ¶ 16.) As described above, the 2006 Application discloses proximate service beams and feeder beams. (_See_ Ex. 2 at ¶¶ 24-25 ("As shown in FIG. 2A, there is complete geographic exclusivity between the feeder and service spot beams 205, 225, but that is not the case for FIG. 2B."). And the 2006 Application counsels against using the same colors for proximate spot beams: "However, with overlap, there are certain interference issues which may inhibit frequency band re-use in the overlapping regions. A four color pattern allows avoiding interference even where there is some overlap between service beams 205." (Ex. 2 at ¶ 24; Bartone Dec. ¶ 16.)

Nothing in these statements is limited solely to overlapping service beams, as Loral suggests. Indeed the same Paragraph discusses overlapping service **_and_** feeder beams, and

---

4

1 ████████████████████████████████████████████████████

2 ██████████████████████████████████ The 2006 Application thus teaches the

3 value of assigning proximate spot beams—regardless of whether they are feeder or

4 service beams—different colors.  (Bartone Dec. ¶¶ 16, 21-22.)

### F.    Dr. Schindall Admits That Loral's Colorizations of Figure 2B Are Inaccurate

As part of its Motion, Loral submits a colorized version of Figure 2B from the 2006 Application, which it contends demonstrates that the Figure, by itself, does not disclose "a feeder beam that uses a same color as a non-proximate service beam while also using a different color than a proximate service beam" and therefore do not practice the claims of the patent.  (Mot. at 18-19.)  Loral's reliance on these colorizations fails, however, on multiple grounds—██████████████████████ ████████████████████████████████████

When all the teachings of the 2006 Application are considered by those skilled in the art with their background knowledge,[5] it is clear that Loral's colorizations are not even a sensible way of colorizing Figure 2B.  First, Loral's colorizations do not depict a "four color pattern" for service beams as the relevant disclosures clearly describe.  (Ex. 2 at ¶ 24 ("A four color pattern allows avoiding interference even where there is some overlap between service beams 205.").)  If Loral's colorizations are modified to reflect the four-color pattern described in the 2006 Application, they depict a configuration that is within the scope of Claim 1:

---

[5]    ViaSat does not rely solely on Figure 2B for disclosure of the invention. Therefore, even if Figure 2B can be colored in a way that is outside the scope of the claims, that does not demonstrate that the claims are not fully supported when the 2006 Application is considered in its entirety.



(Ex. 7; Bartone Dec. ¶ 27)

Second, Loral assigns only a single "color" to the feeder beams. But Figures 12A and 12B of the 2006 Application describe a feeder beam comprised of *multiple* colors that are reused by service beams. Assuming that all of the feeder beams in Figure 2B comprise more than one color (as is clearly depicted in Figures 12A and 12B), corresponding "colorings" of Figure 2B will result in: (1) at least one feeder beam being proximate to one or more service beams, and (2) the feeder beam being allocated at least one same color as at least one non-proximate service beam:

1

2

3

4

5

6

7

8



9    (Ex. 8; Bartone Dec.¶ 28.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE
EARLIEST DATE OF 35 U.S.C. § 112 WRITTEN DESCRIPTION SUPPORT FOR THE '875 PATENT

1    ████████████████████████    These numerous admissions

2    demonstrate that there is at a minimum a dispute of material fact.

3    **G.    The Addition of Material to the 2009 Application Does Not Show That the 2006 Application Did Not Support the Claims**

4

5    Loral emphasizes ViaSat's addition of Figure 16 to the 2009 Application that

6    later matured into the '875 patent.  (Mot. at 20-21.)  The addition of Figure 16 to the

7    2009 Application, however, does nothing to negate the fact that the 2006

8    Application already fully supported the asserted claims.  In particular, Figure 16 was

9    not added in response to any rejection or suggestion by the Patent Examiner that the

10   claims were not fully supported by the specification of the 2006 Application.

11   Loral notes that, during an interview with the Patent Examiner, ViaSat

12   "explained pending claim 1 with reference to Figure 16 [of the 2009 application]."

13   (Mot. at 7 (quoting Def. Ex. B at VST00001312-13).)  The fact that ViaSat

14   explained the claim by reference to Figure 16 of the 2009 Application, however,

15   does not show that the claim is not supported by the 2006 Application.  Choosing

16   one figure of many to describe a claim does not mean that the others should be

17   ignored.  There would have been no reason for ViaSat to point to the 2006

18   Application or limit its discussion solely to the 2006 Application to explain the

19   claim since the Examiner did not suggest that the claim was anything but fully

20   supported by and entitled to claim priority to the 2006 Application.

21   Loral also points to other material that was added to the 2009 Application.

22   (Mot. at 8.)  Loral argues that this additional material provides greater support for

23   and a more fulsome description of the asserted claims than the 2006 Application.

24   But the fact that the 2009 Application provides further written description does not

1  establish that the 2006 Application lacked adequate written description in the first

2  place.  The standard is whether the 2006 Application "reasonably conveys to those

3  skilled in the art that the inventor had possession of the claimed subject matter as of

4  the filing date." *Ariad,* 598 F.3d at 1351.  The standard is ***not*** whether it was

5  possible to provide an even more thorough and meticulous disclosure.

6       Nor, contrary, to Loral's argument, did the Examiner rely on any

7  representation that the claims could only be supported by the 2009 Application.

8  (Mot. at 8.)  ViaSat never made any such representation.  Indeed, the Examiner did

9  not even state that he relied on ViaSat's description of the invention and reference to

10  Figure 16.  In the quotation that Loral cites, the Examiner states that he relied on

11  "the applicant's remarks stated on ***pages 10-11***" of ViaSat's Reply to Interview

12  Summary.  (Dkt. 307-2 at VST00001288 (emphasis added).)  Pages 10 and 11 of

13  ViaSat's remarks contained an explanation of why the claim was not obvious.  (*Id.*

14  at VST00001313-14.)   The portion of ViaSat's "Reply to Interview Summary" that

15  refers to Figure 16 appears on ***page 9***.  (*Id.* at VST00001312.)  Loral is therefore

16  incorrect when it claims that the Examiner relied on Figure 16 or ViaSat's

17  description of it when allowing the '875 patent to issue, even if that were somehow

18  relevant, which it is not.

19   **H.    The Inventors' Testimony Confirms that the 2006 Application Supports the Asserted Claims**

20

21       The testimony of the inventors, Mark Dankberg and Mark Miller, also

22  confirms that the 2006 Application fully supports the asserted claims.  ■

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████

4 █████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████  ██  ████

6 ███████  ███  ████████████████████████████████████████

7 █████████████████████████████████████████████████

8 ████████████████████████████

9   Mr. Miller's testimony corroborates Mr. Dankberg's.  ██████████████

10 ███████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████

13 ██████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 █████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 █████████████████████████████████████████████[6]

18   Loral argues that Mr. Dankberg's testimony, nevertheless, supports a finding

19 that the 2006 Application does not disclose the invention.  But Loral simply ignores

20 contrary testimony. █████████████████████████████████

21

22 ─────────────────────

[6]  Loral claims that Mr. Miller testified ███████████████████████████ In the

24 portion of the transcript Loral cites, Mr. Miller actually testified that ██████████████



Case No. 3:12-cv-00260-H-WVG
ViaSat's Opposition to Defendants' Motion for Partial Summary Judgment of the
Earliest Date of 35 U.S.C. § 112 Written Description Support for the '875 Patent

1

2

3



The only portion of Mr. Dankberg's testimony Loral cites that even relates to the relevant claim limitations and parts of the 2006 Application is completely irrelevant.

[8]

As the testimony cited above demonstrates, the inventors provided concrete examples of why a person of ordinary skill in the art would find more than adequate

_____

[7]

[8] Loral also wrongly implies that ViaSat is bound by Mr. Dankberg's testimony because he was designated pursuant to Rule 30(b)(6) to provide testimony on ViaSat's behalf. The Rule 30(b)(6) topics on which Mr. Dankberg was designated did not call for ViaSat's written-description or priority-date contentions, (Ex. 12 at 1-12 & Ex. 1), and ViaSat objected on this basis, (Def. Ex. J at 52, 54-55, 70 & 76). A witness' answers that are outside the scope of the Rule 30(b)(6) topics on which he has been designated are not admissions. *U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 433 (D. Nev. 2006).

written description in the 2006 Application for the asserted claims of the '875 patent.  Moreover, Loral does not dispute—because it cannot—that Mr. Dankberg conceived of the invention by 2006.  Instead, it seeks to escape this priority date by ignoring the import of the 2006 Application's content.

## I.    Dr. Schindall Is Biased, Misconstrues the Patent, and Applies the Wrong Standard

Loral bases its Motion on the declaration of its expert, Dr. Joel Schindall, which it claims demonstrates an absence of any dispute of material fact.  (Mot. at 11.)  That declaration, however, is biased, applies the wrong legal standard and contains factual errors that render it unreliable, much less capable of showing an absence of dispute of material fact.  The jury is entitled to consider these credibility issues at trial.

Dr. Schindall errs in his understanding of the patent's claims.  Dr. Schindall opines, "Claim 1 of the '875 Patent attempts to lay claim to a very specific spatial arrangement between feeder and service beam coverage areas, *with specific colors*." (Dkt. 306-2 ¶6.)  Again, nothing in claim 1 of the '875 patent even mentions use of any specific colors.  The claim simply requires use of "different colors" in some instances and the "same color" in others.  Dr. Schindall's and Loral's search for disclosure of "specific colors" in the 2006 Application is therefore an attempt to take the Court on a wild goose chase.

Dr. Schindall's declaration also improperly focuses on what the '875 patent explicitly discloses, not what the 2006 Application teaches a person of skill in the art.  (*See* Dkt. 306-2 at ¶¶ 10-11 (opining on disclosures in columns 7 & 14-15 of the issued patent).) ████████████████████████████████



Dr. Schindall's declaration therefore does not focus on the relevant disclosures in the 2006 Application at all.

This is not the only substantive error conceded by Dr. Schindall. His declaration claims that "the '875 Patent teaches that frequency reuse between feeder and service beams can only occur if a gateway is located completely outside of the service spotbeam regions." (Dkt. 306-2 at ¶11.)

Dr. Schindall also does not apply the correct legal standard. His declaration does not opine on whether a person of skill in the art, reviewing the 2006



Application, would understand whether its authors had invented the asserted claims. Instead, Dr. Schindall opines that "one of ordinary skill in the art ***could find no disclosure*** of the asserted claims of the '875 Patent in the original matter of the provisional applications" (Dkt. 306-2 ¶5 (emphasis added).)

The test is whether a person of skill in the art would understand that the inventor had invented the claimed invention as of the filing of the earlier application. *Ariad*, 598 F.3d at 1351. Indeed, "the failure of the specification to specifically mention a limitation that later appears in the claims is not a fatal one when one skilled in the art would recognize upon reading the specification that the new language reflects what the specification shows has been invented." *All Dental Prodx*, 309 F.3d at 779. "If a person of ordinary skill in the art would have understood the inventor to have been in possession of the claimed invention at the time of filing, even if every nuance of the claims is not explicitly described in the specification, then the adequate written description requirement is met." *In re Alton*, 76 F.3d at 1175.

*Ariad*, 598 F.3d at 1351 (stating that inquiry requires

1

2

3

4

5          Dr. Schindall is also far from an independent, objective expert, and the jury is

6   entitled to weigh his relationship with Loral in assessing his testimony.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Case No. 3:12-cv-00260-H-WVG

ViaSat's Opposition to Defendants' Motion for Partial Summary Judgment of the
Earliest Date of 35 U.S.C. § 112 Written Description Support for the '875 Patent

### J.     The 2007 Application Provides the Same Written Description Support for the Asserted Claims

In 2007, ViaSat filed a Non-Provisional Application, to which the '875 patent also claims priority.  (Dkt. 308-1.)  Loral contends that, to claim priority to the previous 2006 Application, the 2007 Application must also satisfy the written description requirement.  (Mot. at 13-14.)  Loral does not dispute, however, that the 2007 Application contains the same relevant disclosures as the 2006 Application discussed above, as well as additional details further elaborating on the invention of the '875 patent, which Loral does not dispute.  (Mot. at 6 & 16 (describing the 2007 Application as "essentially a copy-and-paste of the written descriptions and figures from the 2006 Provisional Application").)  ViaSat is therefore entitled to claim priority to both the 2006 and 2007 Applications.

## III.   CONCLUSION

Giving its Motion the most charitable reading, Loral shows only that its expert interprets ViaSat's applications differently than both the inventors and ViaSat's own independent expert.  This does not establish an absence of dispute of material fact; rather, it shows that the '875 patent's priority date is subject to conflicting evidence that only a jury can resolve.  Loral's position to the contrary rests on a legally erroneous and impermissibly stringent application of the written-description standard, and an apparent misunderstanding of the facts.  Further, as a summary judgment motion on an issue of fact, all evidence should be viewed in the light most favorable to ViaSat as the non-movant.  The Court should thus deny the Motion in its entirety.

-25-                                    Case No. 3:12-cv-00260-H-WVG

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE EARLIEST DATE OF 35 U.S.C. § 112 WRITTEN DESCRIPTION SUPPORT FOR THE '875 PATENT

1   DATED: October 2, 2013                QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP

2

3

4                                         By  /s/ Sean S. Pak
                                              Sean S. Pak

5

6                                         Attorneys for Plaintiffs ViaSat, Inc. and
                                          ViaSat Communications, Inc. f/k/a
7                                         WildBlue Communications, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

## <u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that, on October 2, 2013, I caused the foregoing "ViaSat's

3   Opposition to Defendants' Motion for Partial Summary Judgment of the  Earliest

4   Date of 35 U.S.C. § 112 Written Description Support for the '875 Patent" to be

5   served on Defendants' counsel via the Court's CM/ECF system.

6

7   DATED:  October 2, 2013

8                   By  */s/ Sean Pak*

9                        Sean Pak

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE
EARLIEST DATE OF 35 U.S.C. § 112 WRITTEN DESCRIPTION SUPPORT FOR THE '875 PATENT