QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Eric E. Wall (Bar No. 248692)
ericwall@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875 6600

Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Vincent M. Pollmeier (Bar No. 210684)
vincentpollmeier@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
865 S Figueroa Street 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

Attorneys for Plaintiff ViaSat, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS, INC., <br><br> Defendants. | CASE NO. 3:12-cv-00260-H-WVG <br><br> **PUBLIC REDACTED** <br><br> **MEMORANDUM IN SUPPORT OF VIASAT'S MOTION FOR SUMMARY JUDGMENT THAT SS/L MAY NOT RECOVER PRE-FILING DAMAGES** <br><br> Date: January 24, 2014 <br> Time: 9:00 a.m. <br> Place: Courtroom 15A |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... I

I.    INTRODUCTION ................................................................................................ 1

II.    UNDISPUTED FACTS ....................................................................................... 3

    A.    SS/L's Counterclaim ................................................................................ 3

    B.    ViaSat's Open and Notorious Sales of Accused Products ...................... 4

    C.    SS/L's Failure To Protect Its Alleged Intellectual Property .................... 7

III.    ARGUMENT ....................................................................................................... 8

    A.    SS/L May Not Seek Damages for Alleged Infringement Occurring More than Six Years Prior to the Filing of SS/L's Counterclaims ........................................................................................... 8

    B.    SS/L's Failure to Require Marking of Licensed Products Precludes Damages for Infringement from March 2007 Through April 2012 ................................................................................................. 9

        1.    Legal Standard .............................................................................. 9

        2.    SS/L's Failure To Require Licensees To Mark Precludes Certain Pre-Filing Damages ...................................................... 10

    C.    SS/L's Presumptively Unreasonable Delay in Filing Suit Means that Pre-Filing Damages Are Barred by the Doctrine of Laches .......... 11

        1.    Legal Standard ............................................................................ 11

        2.    SS/L Knew, or Should Have Known, of ViaSat's Alleged Infringement Prior to June 15, 2006 ............................................ 12

        3.    The Presumption of Laches Applies to SS/L's Counterclaims ............................................................................. 13

        4.    It Would Be Inequitable To Permit SS/L To Recover Pre-Filing Damages ........................................................................ 14

IV.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ................................................................ 11, 12, 13, 14

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993) ................................................................................... 10

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994) ................................................................................ 9, 10

*Comcast Cable Communications Corp. v. Finisair Corp.*,
  No. C 06-04206 WHA, 2008 WL 170672 (N.D. Cal. Jan. 17, 2008) .................... 12

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
  679 F. Supp. 2d 512 (D. Del. 2010) ......................................................................... 14

*Lans v. Digital Equipment Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001) ............................................................................... 10

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996) ................................................................................... 9

## Statutes

35 U.S.C. § 286 ............................................................................................... 2, 8, 15

35 U.S.C. § 287 ...................................................................................................... 2, 8

35 U.S.C. § 287(a) .................................................................................... 9, 10, 11, 15

## I. INTRODUCTION

For years, Defendant Space Systems/Loral ("SS/L") watched silently as ViaSat sold and marketed products that SS/L now claims infringe the patent that it asserts in this case. Having sat on its rights for a decade, SS/L may not recover the extensive damages it seeks. SS/L's damages claims overreach in several respects: by seeking damages for acts of alleged infringement occurring more than six years prior to filing its counterclaims; by seeking damages for acts of alleged infringement occurring during a period in which SS/L failed to require licensed products to be marked; and by seeking pre-filing damages despite the presumptive application of laches. Summary judgment is appropriate on each of these issues.

When Plaintiff ViaSat, Inc. ("ViaSat") developed the revolutionary technology that underlies the ViaSat-1 satellite, it went to great lengths to notify SS/L of its proprietary information and its intention to keep that information protected. It signed non-disclosure agreements with its potential contractors and, once it selected a builder, re-confirmed—by contract—that ViaSat's record-breaking satellite design concepts remained ViaSat's intellectual property. SS/L, the builder, agreed that it would not share ViaSat's design concepts—concepts that multiple SS/L employees have confirmed were ViaSat's "competition sensitive information." But SS/L breached that promise and willfully infringed ViaSat's intellectual property by, *inter alia*, building a satellite for ViaSat's primary competitor using ViaSat's proprietary information. When it learned of SS/L's transgressions, ViaSat promptly notified SS/L of its grievances. SS/L's refusal even to consider the possibility that it had misappropriated ViaSat's intellectual property led ViaSat to file the instant suit.

In marked contrast to ViaSat's diligent efforts to preserve the secrecy of its most important proprietary information, SS/L acknowledges historically paying little attention to its intellectual property. Until filing a counterclaim in 2012 asserting that ViaSat infringes U.S. Patent No. 6,400,696 ("'696 patent")—a patent that issued in 2002—SS/L never mentioned its patent to ViaSat. But it is not disputed that ViaSat has engaged in the open sale of its accused satellite modems ("SMs") and satellite modem termination systems ("SMTSs") since 2002. It is not disputed that accused SMs and SMTSs have been sold and used under license from SS/L since before June 2006 without being marked as patented. Throughout, it is not disputed that SS/L has regularly received information regarding ViaSat's sale of SMs and SMTSs without SS/L ever informing ViaSat that it could be infringing an SS/L patent. Rather than a genuine effort to protect innovative ideas, SS/L's senior management candidly admitted that SS/L's counterclaims were filed in order to put pressure on ViaSat in this litigation. SS/L's president then boasted that SS/L was prepared "to wage legal warfare with ViaSat Inc. that will cost both companies 'three to five years and tens of millions of dollars.'" (Ex. 8 at VST03387224.)[1]

Each aspect of SS/L's failure to diligently protect its alleged intellectual property has consequences. Section 286 of the Patent Act forbids tardy counterclaim-plaintiffs like SS/L from seeking damages for acts of alleged infringement occurring more than six years prior to the filing of the counterclaim. Section 287 of the Patent Act precludes pre-filing damages where, as here, the patentee has licensed the sale of products that practice the patent without requiring

---

[1] Citations to "Ex. __" refer to exhibits attached to the accompanying Declaration of Matthew D. Cannon.

1  that those products be identified as patented.  And the doctrine of laches
2  presumptively forbids recovery of pre-filing damages where the patentee knew or
3  should have known of its infringement claim more than six years before filing suit.
4      SS/L is using a federal lawsuit as a mere bargaining chip based on claims it
5  waited more than a decade to assert.  SS/L should not be permitted to pursue
6  artificially inflated damages claims to exert maximum leverage.  There is no dispute
7  that SS/L waited a presumptively unreasonable time before filing its counterclaims.
8  As a result, SS/L should not be permitted to seek damages for any acts of alleged
9  patent infringement prior to filing its counterclaims.

## II.  UNDISPUTED FACTS

### A.  SS/L's Counterclaim

ViaSat filed its complaint in this case on February 1, 2012.  (Dkt. 1.)  SS/L filed its answer and counterclaims on June 15, 2012.[2]  (Dkt. 29.)  Although SS/L originally accused ViaSat of infringing three SS/L patents (*see* Dkt. 29 at ¶ 199), SS/L now accuses three of ViaSat's ground system product lines—LinkStar, SurfBeam, and SurfBeam 2—of infringing only the '696 patent.  Claim 1 of the '696 patent is set forth below:

    1. A dynamic resource management system comprising:

        a local area network edge device;

        one or more personal computers coupled to the local area

            network edge device by way of a network;

        a gateway;

---

[2] SS/L filed a case on April 9, 2012 alleging infringement of the '696 patent by ViaSat.  (Case No. 3:12-cv-00874-MMA-WVG.)  That case was voluntarily dismissed on June 20, 2012.  (Case No. 3:12-cv-00874-MMA-WVG, Dkt. 14.)

-3-     Case No. 3:12-cv-00260-H-WVG
**VIASAT'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-FILING DAMAGES**

```
              a data source coupled to the gateway; and
              a satellite that provides a communications link between the local
                     area network edge device and the gateway;
              the local area network edge device and the gateway
                     implementing signaling based on a non-asynchronous
                     transfer mode (ATM) protocol, and wherein the non-
                     asynchronous transfer mode protocol is overlaid with one
                     or more dynamic assignment/multiple access
                     communication protocols.
```

(Ex. 1 at cl. 1.)

According to SS/L, the '696 patent covers the dynamic assignment of bandwidth to prioritize data traffic in a network. "This method of dynamically assigning communication resources in a network with the purpose of prioritizing different types of services is referred to as Quality of Service (QoS) differentiation, QoS provisioning, or simply QoS." (Ex. 2 at ¶ 15.) SS/L asserts that all LinkStar SMs and SMTSs infringe its patent. (*Id.* at ¶ 33.) SS/L also asserts that all SurfBeam and SurfBeam 2 SMs and SMTSs infringe, save those that are licensed for use with the SS/L-built WildBlue-1 and ViaSat-1 satellites. (*Id.* at ¶¶ 20, 25; *see also* Ex. 3 at Nos. 7, 8.) That ViaSat would receive such a license is standard practice in dealing with SS/L: "When a customer contracts with SS/L for a satellite, that customer typically receives a license to use SS/L's intellectual property for purposes of the SS/L satellite project." (Ex. 4 at No. 17.)

### B.   ViaSat's Open and Notorious Sales of Accused Products

ViaSat had been in the business of manufacturing and selling satellite ground

1  systems long before this case began.  Michael Targoff, who served until last year as
2  the CEO of Loral Space & Communications, the parent company of SS/L, testified
3  that ███████████████████████████████████████████████████
4  (Ex. 6 at 216:22 - 217:3.)  Indeed, Targoff sat on ViaSat's Board of Directors
5  throughout most of the 2000s.  (*See id.* at 22:25 - 24:1.)  During that time, he
6  regularly received information summarizing ViaSat's business operations, including
7  the development of its ground system technologies.  (*See* Ex. 9; Ex. 10 at
8  SSL1915978.) ███████████████████████████████████████
9  ██████████████████████████████████████████████████
10 ██████████  (*Compare* Ex. 10 at SSL1915978 *and* SSL1915979.)  John Stenbit
11 was another common director.  He served as a Director for ViaSat beginning in
12 2004 and as a Director for SS/L beginning in 2006 and, similarly to Targoff,
13 received information about both companies' operations.  (*See* Ex. 10 at
14 SSL1915978; Ex. 34 at SSL0944993; Ex. 35 at VST03606593.)
15      Targoff and Stenbit need not have been on the ViaSat Board to learn of
16 ViaSat's sale of the products SS/L now accuses of infringement.  As SS/L's own
17 documents confirm, those products had been openly marketed—and were known to
18 the Defendants—for years:
19  • ████████████████████████████████████████
20    ██████████████████████████████████████████
21    ██████████████████████████████████████████
22    ████████  (Ex. 11.)  Significantly, SS/L alleges that the SurfBeam
23    system infringes by virtue of its implementation of the QoS
24    functionality in the DOCSIS specification.  (*See, e.g.*, Ex. 2 at ¶ 64.)

-5-   Case No. 3:12-cv-00260-H-WVG
**VIASAT'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-FILING DAMAGES**

- ███████████████████████████████████████

  ████████████████████████████████" (Ex. 12 at SSL0005478.)
  ███████████████████████████████████████
  ███████████████████████████████████████
  ██████████. (*Id.*)

- ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████
  ██████████ (Exs. 13-18; *see also* Exs. 19-21.) ████
  ███████████████████████████████ (Exs. 14-17.)
  ███████████████████████████████████████
  ███████████████████████████████ (Ex. 18 at SSL1738459-
  60.)

- ███████████████████████████████████████
  ███████████████████████████████████████
  ████" (Ex. 22; Ex. 23.) ██████████████████████
  ███████████████████████████████████. (Ex. 24.)

SS/L had more than passing familiarity with ViaSat's products, however. SS/L specifically sought and considered information from ViaSat regarding its ground systems in order to support SS/L satellite projects:

- William Nations, named inventor of one of the counterclaim patents that SS/L originally asserted (but has now dropped), testified that █
  ███████████████████████████████████████
  ███████████████████████████████ (Ex. 5

-6-    Case No. 3:12-cv-00260-H-WVG
**VIASAT'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-FILING DAMAGES**



(Ex. 30 at SSL2061113.)

### C. SS/L's Failure To Protect Its Alleged Intellectual Property

Despite repeated encounters with ViaSat and its ground system products, SS/L never notified ViaSat that it believed ViaSat was infringing any SS/L patents. Shortly after SS/L filed its counterclaims, Targoff gave an interview for a news story on the case. (Ex. 5 at 211:8-213:1; Exs. 7-8.) The article that resulted from that interview confirms that SS/L had never "brought this [infringement allegation] to light before" filing its counterclaims. (Ex. 8 at VST03387224.) That was because, in Targoff's words, SS/L and Loral "'never spent a lot of time thinking how we could assess [our patents] against people.'" (*Id.*) Indeed, "SS/L and Loral

have not undertaken to investigate infringement by any entity other than ViaSat" and cannot identify any products marked with SS/L's patent numbers. (Ex. 4 at No. 14.) Targoff's hope was that, by filing the counterclaim against ViaSat, SS/L would make ViaSat have "'second thoughts'" about proceeding with its suit. (Ex. 8 at VST03387225.)

## III. ARGUMENT

SS/L's counterclaim damages should be summarily limited for three independent reasons: (1) SS/L apparently seeks damages for infringing acts occurring more than 6 years prior to filing suit in violation of 35 U.S.C. § 286; (2) SS/L seeks damages for patent infringement occurring prior to providing ViaSat with notice of alleged infringement despite failing to require marking of licensed products pursuant to 35 U.S.C. § 287; and (3) SS/L's dilatory, attritive counterclaims for pre-filing damages are barred by the doctrine of laches.

### A. SS/L May Not Seek Damages for Alleged Infringement Occurring More than Six Years Prior to the Filing of SS/L's Counterclaims

Section 286 of the Patent Act is plain: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286. SS/L filed its counterclaim on June 15, 2012. As a result, SS/L may not seek damages for any infringement committed before June 15, 2006.

Despite the straightforward application of this rule, SS/L's damages expert opined that SS/L may be entitled to damages dating back to 2002. (Ex. 2 at, *e.g.*, p. 4.) ViaSat is entitled to summary judgment that SS/L may not seek damages for any alleged infringement occurring before June 15, 2006.

### B. SS/L's Failure to Require Marking of Licensed Products Precludes Damages for Infringement from March 2007 Through April 2012

SS/L failed to require ViaSat to mark licensed products with the '696 patent. SS/L therefore is precluded by 35 U.S.C. § 287(a) from recovering damages for infringement between the date when ViaSat sold licensed SurfBeam terminals and the date SS/L filed its counterclaims.

#### 1. Legal Standard

Section 287(a) provides that patented products may be marked with the numbers of the patents those products practice. "In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287(a). The marking requirement includes not just products that practice apparatus claims, but also products that are components of patented systems. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-85 (Fed. Cir. 1994) (explaining that marking requirement applied where patentee sold component for customers' incorporation into patented system).

Courts have been clear that the marking statute applies to licensed products, in addition to products sold by the patentee itself. *See, e.g.*, *id.* at 185. This means that a patentee must engage in "reasonable efforts" to ensure that its licensees mark. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996) (finding statute satisfied where patentee had included marking requirement in license and licensee had marked vast majority of licensed products).

When patented products are sold without being marked, a patentee may only recover damages for infringement that occurs after the defendant receives actual

notice of the infringement allegations. *See* 35 U.S.C. § 287(a). The notice must come from the patentee. *See Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 n.18 (Fed. Cir. 1993). "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted*, 24 F.3d at 187 ("It is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement.").

### 2. SS/L's Failure To Require Licensees To Mark Precludes Certain Pre-Filing Damages

In this case, Section 287(a) precludes any recovery by SS/L for infringement occurring between March 20, 2007 and April 9, 2012. There is no genuine dispute of any material fact—SS/L admits that ViaSat and its subsidiaries sold and used licensed products without marking long before SS/L filed suit.[3]

ViaSat's former subsidiary, WildBlue, began using the SurfBeam system to provide consumer broadband services over the WildBlue-1 satellite on March 20, 2007. (*See* Ex. 32.) SS/L admits that ViaSat's alleged use of the '696 patent in the SurfBeam system to provide service over WildBlue-1 was licensed. (Ex. 2 at ¶ 20; Ex. 3 at Nos. 7, 8.)

It is undisputed that the SurfBeam products used to provide service over WildBlue-1 were not marked with the '696 patent. Moreover, SS/L never endeavored to require ViaSat (or any other licensee) to mark licensed products: SS/L was not able to identify *any* products that have been marked with the '696

---

[3] Given SS/L's admission that its customers "typically" receive a license to SS/L's entire patent portfolio for purposes of each satellite project and the breadth of its infringement allegations, it is likely that there are many other licensed products that are not marked with the '696 patent. (*See* Ex. 4 at No. 17.)

patent. (Ex. 4 at No. 14.) In the absence of any marking or requirement to mark, SS/L is barred from seeking damages for infringing acts that occurred before SS/L filed its counterclaims.

No actual notice of infringement was provided to ViaSat before SS/L filed its counterclaim in April 2012. Loral CEO Michael Targoff confirmed that SS/L never "brought this [infringement allegation] to light before" filing its counterclaims. (Ex. 8 at VST03387225.) That was because, in Targoff's words, SS/L and Loral "'never spent a lot of time thinking how we could assess [our patents] against people.'" (*Id.*) Indeed, "SS/L and Loral have not undertaken to investigate infringement by any entity other than ViaSat." (Ex. 4 at No. 14.)

It is undisputed that ViaSat sold licensed products that were not marked with the '696 patent, and that no actual notice of infringement was provided to ViaSat until SS/L first filed its counterclaim. ViaSat is entitled to summary judgment that SS/L is barred by 35 U.S.C. § 287(a) from seeking damages for infringement between March 20, 2007 and April 9, 2012.

### C. SS/L's Presumptively Unreasonable Delay in Filing Suit Means that Pre-Filing Damages Are Barred by the Doctrine of Laches

In addition to the statutory limitations on damages for SS/L's belated counterclaim, ViaSat is also entitled to summary judgment that SS/L may not recover pre-filing damages pursuant to the equitable doctrine of laches. Given SS/L's decade of inattention to its patent, SS/L is presumptively forbidden from seeking pre-filing damages.

#### 1. Legal Standard

Laches bars pre-filing recovery where two elements are satisfied: (1) unreasonable delay in filing suit; and (2) prejudice to the defendant. *A.C. Aukerman*

*Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (*en banc*). Both elements are presumed to be satisfied where the plaintiff has knowledge of the allegedly infringing product(s) more than 6 years prior to filing suit. *Id.* The period of delay is measured from the time the patentee had actual or constructive knowledge of the infringement claim. *Id.*

"Patentees are expected to exercise due diligence with respect to their patent rights. Ignorance will not insulate a patentee from constructive knowledge that their patent rights are being infringed." *Comcast Cable Communications Corp. v. Finisair Corp.*, No. C 06-04206 WHA, 2008 WL 170672, at *3 (N.D. Cal. Jan. 17, 2008). Furthermore, "a patentee . . . may be charged with knowledge of infringing activities not only of industries for which it is involved, but also for industries in which its patent has applications." *Comcast*, 2008 WL 170672, at *5.

### 2. SS/L Knew, or Should Have Known, of ViaSat's Alleged Infringement Prior to June 15, 2006

It is beyond genuine dispute that S/L knew or should have known about ViaSat's allegedly infringing behavior prior to June 15, 2006. SS/L repeatedly solicited information from ViaSat about its accused ground systems before that date. That SS/L had such knowledge is confirmed by the testimony of its witnesses and by SS/L's documents.

The record is replete with evidence that SS/L had actual knowledge of ViaSat's products before June 15, 2006. SS/L employee William Nations testified that ████████████████████████████████████████████ (Ex. 5 at 22:16-20.) ████████████████████████████

████████████████████████████████████████████████████████

1  ██████████████████████████████████████████ (*See* Exs. 25-28; Exs. 29-
2  31.)  ViaSat Director John Stenbit also joined the Board of Directors of Space
3  Systems/Loral in June 2006, ████████████████████████████████████████
4  ████████████████████████████████ (*See, e.g.*, Ex. 10; Ex. 35 at
5  VST03606593.)

6      To the extent that SS/L nonetheless attempts to deny that it had actual
7  knowledge of ViaSat's alleged infringement prior to June 15, 2006, SS/L certainly
8  had constructive knowledge.  Loral Space & Communications, formerly SS/L's
9  parent company, was well aware of ViaSat's ground systems.  ████████████
10 ████████████████████████████████████████████████████████████. (*See*
11 Ex. 6 at 22:25 - 24:1, 216:22 - 217:3; Exs. 9-10.) ██████████████████████
12 ████████████████████████████████████████████████████████████████
13 ██████████████████████████████████████████████ (*See* Ex. 11; Exs.
14 13-18; Exs. 19-21.) ████████████████████████████████████████████
15 ██████████████████████████████████████████. (*See* Exs. 22-24.)
16 Any lack of knowledge of ViaSat's products on SS/L's part was solely the result of
17 SS/L's admitted inattention to its patent rights.  (Ex. 8; Ex. 4 at No. 14.)

18     **3.**    <u>**The Presumption of Laches Applies to SS/L's Counterclaims**</u>

19     Where, as here, a patentee has actual or constructive knowledge of the
20 allegedly infringing behavior more than six years before filing suit, laches is
21 presumed. *Aukerman*, 960 F.2d at 1035-36 ("*Prima facie*, the underlying critical
22 factors of laches are presumed upon proof that the patentee delayed filing suit for
23 more than six years after actual or constructive knowledge of the defendant's
24 alleged infringing activity.").  If the presumption of laches applies, the patentee

1  "bears the burden of producing sufficient evidence to raise a genuine issue
2  regarding" its reasonable delay, lack of prejudice to the alleged infringer, or the
3  alleged infringer's unclean hands. *Crown Packaging Tech., Inc. v. Rexam Beverage*
4  *Can Co.*, 679 F. Supp. 2d 512, 526 (D. Del. 2010) (granting summary judgment of
5  laches). To date, SS/L has not identified any evidence that would tend to excuse its
6  delay, prove lack of prejudice, or suggest that ViaSat's hands are unclean.

### 4. It Would Be Inequitable To Permit SS/L To Recover Pre-Filing Damages

Because laches is an equitable doctrine, the Court must consider all of the circumstances to determine if barring recovery is just. *See Aukerman*, 960 F.2d at 1028. Here, the equities resoundingly favor barring SS/L's pre-filing recovery.

Despite being aware of ViaSat's accused products for more than a decade, SS/L never notified ViaSat that it may be infringing a ViaSat patent. (Ex. 8.) Instead, SS/L did the opposite—it routinely encouraged ViaSat's continued sales and marketing efforts. 

(*See* Exs. 25-28; Exs. 29-31.)

(*See* Ex. 33 at SSL0123544.)

(*See* Ex. 10 at SSL1915978; Ex. 34 at SSL0944993; Ex. 35 at VST03606593.)

SS/L slept on its rights under the '696 patent. Only after *ViaSat* brought its

1 suit for *SS/L's* willful breach of contract and patent infringement did SS/L even
2 consider its intellectual property.  By its own admission, SS/L's counterclaims are
3 designed to give ViaSat "second thoughts" about pursuing its lawsuit regarding
4 SS/L's wrongdoing, driving up the costs for both parties and wasting the Court's
5 resources.  (Ex. 8.)  SS/L's belated gotcha-style counterclaims should not be
6 encouraged, and SS/L should be precluded from seeking pre-filing damages.

## IV.   CONCLUSION

SS/L's contentions as to its counterclaim damages vastly overreach.  For the foregoing reasons, ViaSat respectfully requests that the Court grant summary judgment that SS/L is not entitled to seek any damages for alleged acts of infringement occurring prior to June 15, 2012 pursuant to the doctrine of laches.  Additionally or alternatively, ViaSat respectfully requests that the Court grant summary judgment that SS/L is precluded from seeking damages for alleged acts of infringement occurring prior to March 20, 2007 and April 9, 2012 pursuant to 35 U.S.C. § 287(a).  And, in any event, ViaSat respectfully requests that the Court enter summary judgment that SS/L may not seek damages for alleged acts of infringement occurring prior to June 15, 2006 pursuant to 35 U.S.C. § 286.

DATED: December 16, 2013   QUINN EMANUEL URQUHART &
                           SULLIVAN, LLP


                           By  */s/ Sean S. Pak*
                              Sean S. Pak

                              Attorneys for Plaintiff ViaSat, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that, on December 16, 2013, I caused the foregoing **MEMORANDUM IN SUPPORT OF VIASAT'S MOTION FOR SUMMARY JUDGMENT THAT SS/L MAY NOT RECOVER PRE-FILING DAMAGES** to be served on Defendants' counsel via the Court's ECF system and via e-mail.

DATED: December 16, 2013

By */s/ Sean S. Pak*
Sean S. Pak

-17-   Case No. 3:12-cv-00260-H-WVG
**VIASAT'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-FILING DAMAGES**