QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Eric E. Wall (Bar No. 248692)
ericwall@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875 6600

Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Vincent M. Pollmeier (Bar No. 210684)
vincentpollmeier@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
865 S Figueroa Street 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

Attorneys for Plaintiffs ViaSat, Inc. and
ViaSat Communications, Inc.
f/k/a WildBlue Communications, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC.,<br>VIASAT COMMUNICATIONS, INC.,<br>f/k/a WILDBLUE<br>COMMUNICATIONS, INC.,<br><br>        Plaintiffs,<br><br>    vs.<br><br>SPACE SYSTEMS/LORAL, INC.,<br>LORAL SPACE &<br>COMMUNICATIONS,<br>INC.,<br><br>        Defendants. | CASE NO. 3:12-cv-00260-H-WVG<br><br>**[PUBLIC REDACTED]<br>VIASAT'S OPPOSITION TO<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT OF NON-<br>INFRINGEMENT OF U.S. PATENT<br>NO. 8,107,875**<br><br>Judge:     Hon. Marilyn L. Huff<br>Courtroom: 15A<br>Date:      January 17, 2014<br>Time:      9:00 a.m. |

# TABLE OF CONTENTS

**Page**

BACKGROUND.................................................................................2

I.  THE '875 PATENT........................................................................2

II.  THE VIASAT-1 AND ACCUSED JUPITER-1 SATELLITES.....................5

ARGUMENT .................................................................................8

I.  LEGAL STANDARD.......................................................................8

II.  THERE IS SUBSTANTIAL EVIDENCE OF DEFENDANTS' DIRECT INFRINGEMENT OF THE '875 PATENT ...........................8

    A.  Jupiter-1 Receives Data From Feeder and Service Beams with Proximate Coverage Areas.....................................................9

    B.  Jupiter-1's Proximate Feeder and Service Beams Are Allocated Different Colors..................................................... 10

    C.  Jupiter-1 is Configured to Receive Data From Service and Feeder Beams ................................................................. 12

        1.  There Is Substantial Evidence that Jupiter-1 Satellite Is Configured to Receive Data from Service and Feeder Beams................................................................. 13

        2.  The Patent Does Not Require the Satellite to "Turn Off" or Have a "Physical Structure" that Allocate Colors ..................... 16

    D.  Defendants' Infringement Does Not Depend on Subjective Intent, How the Satellite Is Used, or the Process by Which It Was Made ...................................................................... 18

        1.  Defendants' Motion Reargues Validity Positions the Court Has Rejected............................................................ 19

        2.  Defendants' Rejected Invalidity Arguments Again Fail........... 19

        3.  Defendants' Authority Is Inapposite ................................ 22

III.  THERE IS SUBSTANTIAL EVIDENCE OF DEFENDANTS' INDIRECT INFRINGEMENT OF THE '875 PATENT................................ 23

IV.  CONCLUSION............................................................................ 24

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

*Absolute Software, Inc. v. Stealth Signal, Inc.,*
   659 F.3d 1121 (Fed. Cir. 2011)..............................................................7

5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
   314 F.3d 1313 (Fed. Cir. 2003)........................................................15, 18

6

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,*
   340 F.3d 1298 (Fed. Cir. 2003)...........................................................20

7

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)...........................................................................8

8

*Apple Inc. v. Samsung Elecs. Co., Ltd.,*
   695 F.3d 1370 (Fed. Cir. 2012)...........................................................20

9

*Bell Commc'ns Research, Inc. v. Vitalink Connc'ns Corp.,*
   55 F.3d 615 (Fed. Cir. 1995)..............................................................12

10

*Bosig Instruments, Inc. v. Nautilus, Inc.,*
   715 F.3d 891 (Fed. Cir. 2013)............................................................21

11

*Broadcom Corp. v. Emulex Corp.,*
   732 F.3d 1325 (Fed. Cir. 2013)...........................................................12

12

13

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.,*
   635 F.3d 1373 (Fed. Cir. 2011)............................................................8

14

*Funai Elec. Co., Ltd. v. Daweoo Elecs. Corp.,*
   616 F.3d 1357 (Fed. Cir. 2010)...........................................................21

15

*Gart v. Logitech, Inc.,*
   254 F.3d 1334 (Fed. Cir. 2001)............................................................8

16

*Hewlett-Packard Co. v. Bausch & Lomb Inc.,*
   909 F.2d 1464 (Fed. Cir. 1990)...........................................................22

17

*Hilgraeve Corp. v. Symantec Corp.,*
   265 F.3d 1336 (Fed. Cir. 2001)...........................................................11

18

*Hologic, Inc. v. SenoRx, Inc.,*
   639 F.3d 1329 (Fed. Cir. 2011)...........................................................20

19

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC.,*
   496 F. App'x 57 (Fed. Cir. 2012).........................................................20

20

21

*McDavid, Inc. v. Nike USA, Inc.,*
   892 F. Supp. 2d 970 (N.D. Ill. 2012) ....................................................16

22

23

24

*Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*,
  527 F.3d 1330 (Fed. Cir. 2008).........................................................................8

*Optical Disc Corp. v. Del Mar Avionics*,
  208 F.3d 1324 (Fed. Cir. 2000).........................................................................8

*Paragon Solutions, LLC v. Timex Corp.*,
  566 F.3d 1075 (Fed. Cir. 2009).......................................................... 20, 22, 23

*Ricoh Co. v. Katun Corp.*,
  486 F. Supp. 2d 395 (D.N.J. 2007) .................................................................20

*In re Schreiber*,
  128 F.3d 1473 (Fed. Cir. 1997).......................................................................21

*Source Search Techs., LLC v. LendingTree, LLC*,
  588 F.3d 1063 (Fed. Cir. 2009)...............................................................15, 18

*Toshiba Corp. v. Juniper Networks, Inc.*,
  No. 03-1035, 2006 WL 1788479 (D. Del. June 28, 2006) ...................................20

*Typhoon Touch Tech., Inc. v. Dell, Inc.*,
  659 F.3d 1376 (Fed. Cir. 2011)......................................................................20

*Warner Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ...........................................................................................8

*Z4 Techs., Inc. v. Microsoft Corp.*,
  507 F.3d 1340 (Fed. Cir. 2007).......................................................................11

## **Statutes**

35 U.S.C. § 271(b) .................................................................................................23

35 U.S.C. § 271(c) .................................................................................................23

Fed. R. Civ. P. 56(c) ................................................................................................8

1    According to candid and damaging admissions from their own internal

2  documents, ███████████████████████████████

3  ████████████████████████████████████████████

4  ████████████████████. ViaSat-1 was the first satellite to

5  embody ViaSat's innovative technology for maximizing bandwidth in a spot beam

6  satellite through strategic beam placement and color re-use, which is claimed in the

7  asserted U.S. Patent No. 8,107,875. Applying one broad claim interpretation,

8  Defendants admit that the ViaSat-1 satellite practices the '875 patent. Yet, by

9  applying a different, narrower claim construction in this motion, they argue that the

10  ██████ Jupiter-1 satellite does not. That position is belied by the detailed, three-

11  hundred page report from Dr. Chris Bartone, an expert on satellite design, detailing

12  multiple instances of infringement in the Jupiter-1 satellite. Defendants' argument

13  that there is not even substantial evidence of infringement is contrary to their own

14  admissions and inconsistent application of the claims, and is a transparent attempt to

15  escape liability.

16    This is, in fact, Defendants' fourth attempt to escape liability for their

17  ████████████████████████████████ through pretrial

18  motion practice. First, Defendants moved for summary judgment on the appropriate

19  priority date for the '875 patent, which the Court denied. (Dkt. 306; Dkt. 433.)

20  Second, Defendants moved to strike the expert report of Dr. Bartone in which he

21  provided his opinion on how Defendants' infringe the '875 patent, which the Court

22  also denied. (Dkt. 461; Dkt. 495.) Third, Defendants moved to exclude Dr.

23  Bartone's testimony, this time based on claim construction arguments Defendants'

24  failed to present at the claim construction hearing. (Dkt. 526.) Finally, Defendants

1   filed this fourth attempt at disposing of the '875 patent.  Like Defendants' previous

2   motions, it too should be denied.  This Court has already held that there are factual

3   disputes regarding this patent, and there is no basis for reconsidering the Court's

4   prior decisions.

## BACKGROUND

6   **I.   THE '875 PATENT**

7   The '875 patent describes a spot-beam satellite system designed to make more

8   efficient use of the limited spectrum available to satellite systems.  The patented

9   system is comprised of gateways connected to a network (*e.g.*, the internet),

10   numerous subscriber terminals that customers use to access the system, and a

11   satellite that links the two types of components.  (Smith Dec. Ex. 1 at Fig. 1A.)  The

12   beam that connects the satellite to the gateway is a "feeder beam," and the beam that

13   connects the satellite to the subscriber terminal is a "service beam."  (*Id.*)

14   Satellite communications systems have limited frequency bandwidth with

15   which to convey information.  Gateways and subscriber terminals may use "colors"

16   to divide the bandwidth.  (*Id.* at 1:51-53; Bonn Dec. Ex. 2 at ¶ 55.)  In systems

17   where gateway terminals and their associated feeder beams are located within the

18   geographic coverage area of the service beams, the satellite designer must typically

19   reserve certain portions of the frequency spectrum for feeder beams, and other

20   portions for service beams in order to avoid interference.  (*Id.* at ¶¶ 60-63.)

21   The '875 patent facilitates color re-use between feeder beams and service

22   beams, which thereby increases the system's overall data-carrying capacity.  (*Id.* at

23   ¶¶ 56 & 65-71.)  In particular, it describes a more efficient geographic placement of

24   gateway terminals to avoid interference and enhance color re-use.  (Smith Dec. Ex.

1 at 15:62-16:62.)  Prior to the '875 patent, broadband internet satellites focused on providing full service beam coverage over the continental United States, referred to as "full" or "ubiquitous CONUS."  (Bonn Dec. Ex. 2 at ¶ 59.)  A prior art example of service beams covering the entire continental United States is depicted below:



(Bonn Dec. Ex. 2 at ¶ 59.)  Because the service beam coverage area included the entire continental United States, gateway terminals were commonly placed within these service beam coverage areas.

The inventors of the '875 Patent realized that by omitting service beams in sparsely populated regions (resulting in "partial CONUS" coverage) and placing gateway terminals in these sparsely populated regions, the feeder beam could reuse all of the colors that were allocated to the service beams.  (*Id.* at ¶ 65; Smith Dec. Ex. 1 at 2:3-6, 7:22-24, 7:38-41, 14:9-14 & 15:62-16:62.)  The patent therefore describes geographically separating gateways and subscriber terminals, which allows the gateways and subscriber terminals to re-use the same colors without undue interference.  (*Id.* at 15:62-16:62; Bonn Dec. Ex. 2 at ¶ 65.)  To achieve complete re-use of the uplink and downlink frequency bands by the feeder beam and

1  its associated service beams, the patent teaches that complete spatial isolation is

2  desirable.  (*Id.* at ¶ 69; Smith Dec. Ex. 1 at 15:5-18.)

3        The '875 patent also introduced the concept of a "feeder beam coverage

4  area."  Re-using service beam colors for feeder beams introduces additional

5  interference between feeder beams and service beams.  (Bonn Dec. Ex. 2 at ¶ 68.)

6  As taught by the '875 patent, the "feeder beam coverage area" bounds the area in

7  which unacceptable interference will result between the feeder beam and a service

8  beam transmitting or receiving signals of the same color.  (*Id.*; Smith Dec. Ex. 1 at

9  7:22-29, 15:52-56 & Fig. 2B.)

10       The '875 patent further acknowledges that, in striking a balance between the

11 competing goals of maximum color re-use and oprtimal service beam coverage area,

12 some overlap between feeder beam coverage areas and service beam coverage areas

13 can occur.  The claims of the '875 patent are addressed to this situation in which a

14 feeder beam coverage area is "proximate" to a service beam coverage area and

15 complete re-use of color is therefore not possible.  Asserted claim 1 therefore

16 recites:

17       [a] A spot beam satellite comprising:

18       [b] an antenna system configured to create a beam pattern having a
         plurality of different colors, wherein a color has a unique combination
19       of frequency band and polarization,

20       [c] ***the spot beam satellite being configured to receive data from a
         plurality of service beams and from at least one feeder beam,***
21

22       [d] each service beam having an associated service beam coverage area

23       [e] and the at least one feeder beam having an associated feeder beam
         coverage area,

24

[f] wherein the feeder beam coverage area is proximate to one or more of the service beam coverage areas,

[g] wherein **the at least one feeder beam and a service beam associated with each of the one or more service beam coverage areas proximate to the feeder beam coverage area are allocated different colors** from the beam pattern, such that signals associated with different colors differ by a frequency band, a polarization, or both a frequency band and a polarization,

[h] wherein the feeder beam coverage area is not proximate to one or more of the service beam coverage areas, and

[i] wherein a set of colors allocated to a service beam associated with each of the one or more service beam coverage areas not proximate to the feeder beam coverage area includes at least one same color allocated to the at least one feeder beam, such that signals associated with the same color have the same frequency band and polarization.

(Smith Dec. Ex. 1 at 23:55-24:16 (claim element lettering; relevant claim language emphasized).)

## II.    THE VIASAT-1 AND ACCUSED JUPITER-1 SATELLITES

The '875 patent was first practiced by ViaSat's ViaSat-1 satellite. (*See* Bonn Dec. Ex. 2 at ¶¶ 488-610; Smith Dec. Ex. 2 at 7.4.1.4.7.)[1] ViaSat is not, however, a satellite manufacturer. It therefore began discussing with Defendant SS/L the building of ViaSat-1 in early 2006. During the design process, ViaSat disclosed numerous proprietary technologies for its design, including the technology claimed in the '875 patent. (*See* Smith Dec. Ex. 3 at ¶¶ 39, 79-85, 95-103 & 110.)

While ViaSat and SS/L were working to build ViaSat-1, SS/L contracted with Hughes Network Systems ("HNS" or "Hughes") to begin building a competing

---

[1]    Defendants do not dispute that the ViaSat-1 satellite practices the '875 patent. Their expert, Dr. Schindall, has provided an expert report opining that it practices the asserted claims in an attempt to prove that the satellite is itself prior art to the '875 patent . (Smith Dec. Ex. 2 at 95-100.)

1   broadband satellite that would become the accused Jupiter-1 satellite.  The original

2   plan for Jupiter-1 was very different from ViaSat-1 and the '875 patent.  For

3   example, ████████████████████████████████████████████████████████

4   ████████████████████████████████████.  (Smith Dec. Ex. 4 at

5   SSL0346214; Smith Dec. Ex. 5 at SSL0826283; Smith Dec. Ex. 6.)  In a May 4,

6   2007 email, a Hughes Vice President wrote to SS/L ██████████████████

7   ██████████████████████████████████████████████

8   ████████████████████████████  (Smith Dec. Ex. 7).  ████████

9   █████████████████████████████████████████████████

10  ███████████████████████████  (Smith Dec. Ex. 8.)

11  ██████████████████████████████████████████████████

12  ███████████████████████████████████████████████████

13  ██████████████████████████████████████████████████

14  ██████████████████████████████████████████████████

15  ███████████████████████████████████████████████████

16  █████████████████████████████████████████████████

17  █████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ███████████████████████████████████████████████████

20  ███████████████████████████████████████████████████

21  ██████████████████████████████████████████████████

22  ██████████████████████████████████████████████████

23  ███████████████████████████████████████████████████

24  ███████████████████



(Smith Dec. Ex. 13.)

Thus

1  ██████—all made possible by the same technology claimed in the '875 patent and

2  used first on the ViaSat-1 satellite.

3  **ARGUMENT**

4  **I.    LEGAL STANDARD**

5  Patent infringement is a question of fact. *Absolute Software, Inc. v. Stealth*

6  *Signal, Inc.,* 659 F.3d 1121, 1130-31 (Fed. Cir. 2011). To determine infringement,

7  the fact-finder compares the construed claims to the allegedly infringing device and

8  determines whether every limitation is present. *Gart v. Logitech, Inc.*, 254 F.3d

9  1334, 1339 (Fed. Cir. 2001).

10  Defendants bears the burden to establish the absence of any genuine issues of

11  material fact and legal entitlement to judgment. Fed. R. Civ. P. 56(c). Summary

12  judgment is proper only if no reasonable jury could find infringement. *Gart*, 254

13  F.3d at 1339. All of ViaSat's infringement evidence must be credited and all

14  justifiable inferences from that evidence must be drawn in ViaSat's favor. *Id.* A

15  conflict between the parties' experts on a material issue defeats summary judgment.

16  *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d

17  1373, 1384 (Fed. Cir. 2011).[2]

18  **II.    THERE IS SUBSTANTIAL EVIDENCE OF DEFENDANTS' DIRECT**
    **INFRINGEMENT OF THE '875 PATENT**

19

20  The evidence of Defendants' direct infringement of the '875 patent is not only

21  substantial, it is overwhelming. Because they believe it is prior art to the patent

22  [2]    *See also Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.,* 527 F.3d 1330, 1339

23  (Fed. Cir. 2008) ("The conflict in [expert] declarations created a genuine issue of
    material fact that made summary judgment inappropriate."); *Optical Disc Corp. v.*

24  *Del Mar Avionics,* 208 F.3d 1324, 1338-39 (Fed. Cir. 2000) (vacating part of
    summary judgment where the parties' experts offered conflicting testimony).

1  (which it is not), Defendants argue that the ViaSat-1 satellite practices its claims.

2  This admission, combined with █████████████████████████████

3  ███████████████████ is substantial evidence of infringement.  ViaSat has

4  also provided a three-hundred page expert report detailing how the copycat Jupiter-1

5  satellite practices the asserted claims of the '875 patent.  (Bonn Dec. Ex. 2.)  That

6  report provides a detailed, element-by-element explanation of infringement under

7  the plain claim language and the Court's claim construction.

8      In their Motion, Defendants do not dispute that Jupiter-1 practices nearly all

9  of the limitations of the asserted claims of the '875 patent.  The only claim

10  limitation that Defendants argue is not met is element [g], which requires a feeder

11  beam and a proximate service beam to be "allocated different colors."  (Mot. at 2.)[3]

12  Defendants' arguments are, however, contrary to the plain claim language, the

13  Court's claim construction, and statements by their own expert witnesses.

### A.     Jupiter-1 Receives Data From Feeder and Service Beams with Proximate Coverage Areas

16      Defendants do not dispute that the Jupiter-1 satellite receives data from

17  proximate feeder and service beams.  Defendants candidly admit in their Motion

18  that, for example, ███████████████████████████████████████

19  ███████████████████████████████████████████████

20  ███████████████████████████████████████████

---

22  [3]  Defendants move for summary judgment that this claim limitation is not
23  infringed under the doctrine of equivalents.  (Mot. at 12-13.)  Although ViaSat has
   presented evidence that other claim limitations (not challenged in this motion) are
   infringed by equivalents (Bonn Dec. Ex. 2 at ¶¶422-53), it does not intend to prove
24  infringement of this limitation under the doctrine of equivalents.

1   █████████████   (Mot. at 5.)  This is illustrated in a graphic from Defendants'

2   own Motion showing Jupiter-1's partial CONUS coverage:



15   (Mot. at 5.)[4]

16   **B.    Jupiter-1's Proximate Feeder and Service Beams Are Allocated**
           **Different Colors**

17

18       Defendants also do not dispute that that these proximate beams use different

19   colors.[5]  This is described in detail in the expert report of Dr. Chris Bartone.  (Bonn

20   Dec. Ex. 2 at ¶¶ 154-88.)  As explained by Dr. Bartone, ████████████████

21

22   [4]  This is substantially similar to the partial CONUS beam map for ViaSat-1 that
     Defendants' expert opines practices the '875 patent.  (*See* Smith Dec. Ex. 2 at 95.)

23   [5]  Defendants state that, although they dispute Dr. Bartone's analysis of the
     "colors" employed by the Jupiter-1 satellite, they accept his "coloring for purposes

24   of this motion."  (Mot. at 6 n.2.)  ViaSat therefore does not address that dispute here.

1 ████████████████████████████████████████████████

2 ███████████████████████████████████████. As explained by Dr. Bartone (and

3 Defendants do not dispute), ████████████████████████████████████

4 ████████████████████████████████████████████████

5 █████████████████████████████████. (*Id.* at ¶¶ 161, 167, 173, 179 &

6 185.)  This evidence is not only substantial, it is undisputed.

7 　　　Defendants nevertheless argue that ████████████████████████

8 ██████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████.  (Mot. at 6.)  Defendants therefore identify a possible mode of use in

11 which they claim the Jupiter-1 satellite is not using the inventive concept of the '875

12 patent.  This, however, does not establish non-infringement.

13 　　　First, as described above, Defendants do not dispute Dr. Bartone's showing

14 that, ████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 █████████████████████████████████████████.  It is

18 black-letter law that "infringement is not avoided merely because a noninfringing

19 mode of operation is possible." *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340,

20 1350 (Fed. Cir. 2007); *see also Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336,

21 1343 (Fed. Cir. 2001) ("[I]n determining whether a product claim is infringed, we

22

23 　　[6]   The NGSO frequency band is a set of frequencies normally reserved for use in non-geostationary orbit satellites.  "NGSO mode" refers to a mode of operation that

24 uses this frequency band.

1   have held that an accused device may be found to infringe if it is reasonably capable

2   of satisfying the claim limitations, even though it may also be capable of non-

3   infringing modes of operation."). Similarly, "[i]t is well settled that an accused

4   device that 'sometimes, but not always, embodies a claim nonetheless infringes.'"

5   *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (quoting

6   *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23

7   (Fed. Cir. 1995)). Here, the plain claim language simply requires that the satellite

8   be configured to receive data from service and feeder beams that are allocated colors

9   in the manner described. The satellite is, in fact, ███████████████████████

10  ████████████████████

11      Second, Defendants' expert admitted under oath that the ████████████████

12  █████████████████████████. (Smith Dec. Ex. 15 at 131-█████████

13  ████████████████████████████████). Defendants

14  therefore base their non-infringement position on a mode of operation ██████

15  ████████████████████. Thus, contrary to Defendants'

16  argument, the satellite has always been configured to infringe..

17      **C.   Jupiter-1 is Configured to Receive Data From Service and Feeder**

18          **Beams**

19      Claim 1 of the '875 patent requires that the accused satellite be "configured to

20  receive data from a plurality of service beams and from at least one feeder beam."

21  Those beams must be allocated colors in the manner described by the claim. The

22  claim does not state that the satellite itself must perform the allocation.

23

24

1

### 1.   There Is Substantial Evidence that Jupiter-1 Satellite Is Configured to Receive Data from Service and Feeder Beams

2

3   Defendants' own Motion demonstrates that all requirements of claim 1 are

4   met.  First of all, Defendants do not dispute ███████████████████████

███████████████████████████████████

5   ███████████████████████████████████

6   ███████████████████████████████████

7   ███████████████████████████████████

8   ████████████████████████████████████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████████████

11  ████████████████████████████████████████████

12  ████████████████████████████████████████████

13  ███████████████████████████████████████

14  ██████████████████████████████

15  Further, Dr. Bartone testified that "████████████████████████████████

16  ████████████████████████████████████

17  ████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  █████████████████

22  Dr. Bartone's expert report contains even more extensive detail about how

23

24  ████████████████████████████████████████████

Case No. 3:12-cv-00260-H-WVG
ViaSat's Opposition to Defendants' Motion for Summary
Judgment of Non-Infringement of U.S. Patent No. 8.107.875

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ██████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████[7]

14     Defendants' own witnesses also described other aspects of Jupiter-1's

15 configuration.  For example, SS/L officer Hampton Chan testified that ████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20     [7]   Defendants argue that the Jupiter-1 satellite will function even if the coloring
21 of its feeder and service beams is altered.  (Mot. at 12.)  The fact that the satellite is
   theoretically capable of operating with beams of different color allocations does not
22 demonstrate that the satellite is not configured to operate with specific feeder and
   service beams that are, in fact, allocated colors as described in claim 1.  That the
23 plain claim language may encompass satellites that are also capable of operating
   with alternative beam configurations simply confirms the breadth of the claim, not
24 non-infringement.

1   █████████████████████████████████████████████

2   ████████████████████████████.

3   Defendants' own Motion excerpts one of the "██████████████████

4   ████████████████████████████████████████

5   ███████████████████████████████████

6   ████████████████████████████████████

7   █████████████████████████████████████████

8   ██████████████████.

9   ████████████████████████████████████████████

10   █████████████████████████████████████████████

11   ██████████████████████████████████

12   █████████████████████████████████████████████

13   ██████████████████████████████████████████████

14   ████████████████████████████████████

15   ████████████████████████████████

16   █████████████████████████████████████████████

17   ███████████████████ Defendants cannot contend that they have provided

18 clear and convincing evidence that the ViaSat-1 satellite is invalidating prior art

19 without identifying any "configuration" whatsoever while simultaneously arguing

20 that there is not even substantial evidence that Jupiter-1 practices this claim

21 limitation. *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1075

22 (Fed. Cir. 2009) ("As this court has repeatedly instructed in the past, 'it is axiomatic

23 that claims are construed the same way for both invalidity and infringement.'")

24

1    (quoting *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed.

2    Cir. 2003)).

3    **2.    The Patent Does Not Require the Satellite to "Turn Off" or
         Have a "Physical Structure" that Allocate Colors**

4

5    Defendants argue that there is no necessary "configuration" in the Jupiter-1

6    satellite ███████████████████████████████████████████████

7    ██████. (Mot. at 7-12.)  Defendants argue that the Jupiter-1 satellite does not

8    infringe ████████████████████████████████████████████

     ███████████████████████████████████████████████

9    ███████████████████████████████████████████████

10   ████████████████████████████████████████████████

11   ████████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ██████████████████████████████████████████

14   ████████████████████████████████████████ (*Id.*)  Defendants'

15   argument rests on a fundamental misreading of the plain claim language.  Claim 1

16   does not require the *satellite* to "turn off" or "allocate" colors.

17   Neither does claim 1 require the accused satellite to have a "physical

18   structure" that allocates colors or is only capable of receiving certain colors from

19   certain beams.  Instead, the claim states simply that the satellite must be configured

20   to receive data from certain beams and those *beams* "are allocated different colors."

21   The "allocation" limitation is written in the passive voice.  It does not require the

22   satellite to perform the allocation or that the configuration in the satellite limit what

23   colors it can receive.  The claim simply does not require the satellite itself to

24   perform the allocation or be configured to perform the allocation of colors.  *See,*

-16-                Case No. 3:12-cv-00260-H-WVG
ViaSat's Opposition to Defendants' Motion for Summary
Judgment of Non-Infringement of U.S. Patent No. 8.107.875

1    *e.g., McDavid, Inc. v. Nike USA, Inc.*, 892 F. Supp. 2d 970, 974 (N.D. Ill. 2012)

2    (noting that "the claims use the passive voice, requiring that the elements are 'held,'

3    but do not specify the subject performing the holding").  Defendants' expert, Dr.

4    Helgert, agreed:

5

6

7

8

9    (Smith Dec. Ex. 15 at 126) (emphasis added).)  How the allocation came about is

10   simply irrelevant to whether or not the relevant beams "are allocated different

11   colors" or whether the satellite is configured to receive data from those beams.

12

13

14

15

16

17

18

19

20

21

22

23

24



(Smith Dec. Ex. 15 at 138-39 (emphasis added).) ████████████████████

████████████████████████████████████████████████████████████

████████████████████. Defendants' inconsistent application of the claims

to ViaSat-1 and Jupiter-1 itself demonstrates substantial evidence of infringement.

*Source Search Techs.*, 588 F.3d at 1075 ("As this court has repeatedly instructed in

the past, 'it is axiomatic that claims are construed the same way for both invalidity

and infringement.'") (quoting *Amgen*, 314 F.3d at 1330).

### D.   Defendants' Infringement Does Not Depend on Subjective Intent, How the Satellite Is Used, or the Process by Which It Was Made

Defendants argue that whether Jupiter-1 infringes the '875 patent cannot turn

on either the "process by which it is made" or the subjective intent of the person

using the satellite.  (Mot. at 10-11.)  ViaSat does not contend otherwise.  Nothing in

ViaSat's proof of infringement turns on how the Jupiter-1 satellite was made or the

subjective intent of anyone operating it.  Defendants are simply attempting to

repackage as non-infringement positions the same invalidity arguments that the

Court has already rejected.

1.   **Defendants' Motion Reargues Validity Positions the Court Has Rejected**

Defendants' argument is simply a rehashing of invalidity positions it has already lost on.  Defendants previously moved for summary judgment that the claims of ViaSat's 8,010,043 patent were invalid as indefinite.  (Dkt. 251-1.) Defendants argued that a limitation of that patent was indefinite because, according to Defendants, it recited "how the claimed satellite is operated and details about users' reception of a spot beam" and "an action by a user or subscriber terminal to use the spot beam."  (Dkt. 251-1 at 8-9.)  The Court rejected this argument and denied Defendants' motion because "apparatus claims are not necessarily indefinite for using functional language."  (Dkt. 358 at 8.)

Similarly, Defendants argued at claim construction and in a motion for summary judgment that the claims of the 8,068,827 patent were indefinite because ViaSat's construction left "the question of infringement dependent on the subjective motivations of the individual on the ground."  (Dkt. 138 at 16-17; Dkt. 206 at 20; Dkt. 209 at 9-10.)  The Court again rejected this argument.  (Dkt. 206 at 21; Dkt. 209 at 9-10.)

Defendants now repackage the same invalidity position as an argument for non-infringement.  The Court has already ruled that these arguments present factual disputes that preclude summary judgment.  The same just as is true here in the context of infringement as it was in the context of invalidity.

2.   **Defendants' Rejected Invalidity Arguments Again Fail**

Even if the Court were inclined to consider Defendants' invalidity arguments in the context of this Motion for non-infringement, they fail on the merits.  None of

1   the evidence of infringement turns in any way on the subjective intent of a person

2   operating the Jupiter-1 satellite.  ViaSat does not rely on any person or party's

3   subjective intent to prove infringement, and "intent" is not a limitation in claim 1 of

4   the '875 patent.  Instead, ViaSat points to the objectively verifiable configuration of

5   the satellite and the indisputable allocation of colors to its feeder and service beams.

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████

11  ██████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ███████████████████████████████████.

14      Similarly, Defendants argue that ████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████ (Mot. at 11.)  Of course this is true. ████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ███████████████████████████████████████████████

22      Nor, contrary to Defendants' suggestion, is there anything unusual about a

23  patent claim that requires that the accused device be "configured" to operate with

24  unclaimed components, in this case feeder and service beams, having certain color

allocations.[8]  Even the case relied on by Defendants, *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1079 (Fed. Cir. 2009), took no issue with a claim that claimed a device "configured to be worn by a subject performing a physical activity" and "configured to receive electromagnetic signals from three or more sources."  Defendants cite no cases suggesting that the factfinder cannot consider evidence of what colors are allocated to the gateways and subscriber terminals with which Jupiter-1 is configured to operate.

Finally, as the Court has held there is no prohibition on a patent claim defining an invention by the results it achieves or its function. *Bosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 903-04 (Fed. Cir. 2013).  It is black letter law that a "patent applicant is free to recite features of an apparatus either structurally or

---

[8]  *See, e.g., HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1274-75 (Fed. Cir. 2012) (claim not indefinite where mobile station was claimed to operate in a specific network environment); *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 496 F. App'x 57, 60 (Fed. Cir. 2012) (claim for an apparatus requiring a "frame configured for resting on a ground surface"); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1372 (Fed. Cir. 2012) (apparatus claim that required "an interface module configured to receive an inputted information descriptor from a user-input device"); *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381-82 (Fed. Cir. 2011) (finding that the term "operating in conjunction with" required no construction because it was clear the term meant "configured and programmed to operate in conjunction with" the processor operating system at issue in the patent); *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1331 (Fed. Cir. 2011) (patent claiming a surgical apparatus "configured to fill an insterstitial void created by the surgical extraction of diseased tissue"); *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1302 (Fed. Cir. 2003) (claim reciting a masonry block "configured to mate with an inset of one or more adjacently positioned blocks"); *Toshiba Corp. v. Juniper Networks, Inc.*, No. 03-1035, 2006 WL 1788479, at *4 (D. Del. June 28, 2006) (finding no indefiniteness where claim limitation stating "communicates with the next hop node" was equivalent to "is configured to communicate with the next hop node," which is just permissible functional language); *Ricoh Co. v. Katun Corp.*, 486 F. Supp. 2d 395, 402 (D.N.J. 2007) (collecting cases).

1  functionally." *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997).  Similarly, a

2  court may construe a claim term using "comparative and functional language" that

3  explains "what a component does . . . in the context in which it is used." *Funai*

4  *Elec. Co., Ltd. v. Daweoo Elecs. Corp.*, 616 F.3d 1357, 1366 (Fed. Cir. 2010).

5        **3.**     **Defendants' Authority Is Inapposite**

6       None of the cases cited by Defendants are to the contrary.  For example,

7  defendants cite *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468

8  (Fed. Cir. 1990).  In that case, the district court held that certain prior art reference

9  using a "knurled wheel" did not render obvious a patent related to "X-Y plotters

10  used to create a two-dimensional plot, such as a chart or a graph, on a sheet of

11  paper." *Id.* at 1466.  The patent did not claim use of a "knurled wheel" but instead a

12  "rough surface" with "a random pattern, size, and height of rough spots." *Id.* at

13  1468.  The defendant argued that, even though a "knurled wheel" did not fall within

14  the literal scope of the claim, there was no "operational difference." *Id.*  The

15  Federal Circuit held that the lack of an "operational difference" was irrelevant

16  because the prior art did not read on the claim language. *Id.* ("In the present case,

17  the language 'random pattern, size, and height of rough spots' *is* certainly *different*

18  than the surface of a knurled wheel.").  In the case at bar, however, ViaSat has

19  presented substantial evidence that Jupiter-1 ***does*** fall within the scope of the plain

20  claim language as construed by the Court.  ViaSat is ***not*** arguing that, despite falling

21  outside the literal scope of the claim, the lack of an "operational difference" renders

22  Jupiter-1 nevertheless infringing.  Indeed, there is no "operational difference"

23  whatsoever between Jupiter-1 and the asserted claims of the '875 patent.

24

1      Defendants also cite *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075,

2  1090 (Fed. Cir. 2009).  In that case, the Federal Circuit held that it was improper to

3  construe the claim term "displaying real-time data" to mean "without contextually

4  meaningful delay" because a determination of what was "contextually meaningful"

5  would turn on how the device was used.  *Id.*  The court emphasized that "[a]bsent an

6  express limitation to the contrary, *any* use of a device that meets all of the

7  limitations of an apparatus claim written in structural terms infringes that apparatus

8  claim." *Id.* at 1091.  Here, ViaSat has shown that the Jupiter-1 satellite meets every

9  limitation of claim 1.  Proof of infringement does not turn on how the Jupiter-1

10  satellite is "used," but instead whether it is configured to receive data from service

11  and feeder beams allocated colors as claimed in the patent.

12      Finally, Defendants cite *Union Oil Co. of California v. Atlantic Richfield Co.*,

13  208 F.3d 989 (Fed. Cir. 2000), for the proposition that any (and not simply certain)

14  use of a patented composition is infringement.  (Mot. at 11.)  ViaSat agrees.  Any

15  and all uses of products within the scope of the claims infringe, including any use of

16  the Jupiter-1 satellite.  Defendants' infringement does not depend on how they or

17  Hughes use Jupiter-1.

18  **III.   THERE IS SUBSTANTIAL EVIDENCE OF DEFENDANTS'**
19       **INDIRECT INFRINGEMENT OF THE '875 PATENT**

20      In addition to directly infringing the '875 patent by making, selling, and

21  offering to sell the Jupiter-1 satellite, there is also substantial evidence that

22  Defendants have indirectly infringed the patent.  One form of indirect infringement

23  occurs when a defendant induces a third party to infringe the patent.  35 U.S.C. §

24  271(b).  A second form of indirect infringement occurs when a defendant aids in

1  committing an act of direct infringement by supplying a component used in the

2  infringement. 35 U.S.C. § 271(c).  As explained in Dr. Bartone's expert report,

3  Defendants have induced and contributed to Hughes' infringing use of the '875

4  patent.  (Bonn Dec. Ex. 2 at ¶¶ 454-72.)

5        Defendants do not dispute that, if the Jupiter-1 satellite infringes, they are

6  liable for induced and contributory infringement.  (Mot. at 13.)  They only contend

7  that, for the reasons stated elsewhere in their Motion, that there can be no indirect

8  infringement because the offer to sell, sale, manufacture, and use of the Jupiter-1

9  satellite does not directly infringe.  (*Id.*)  That assertion is thoroughly rebutted in the

10  preceding section of this Opposition, which are incorporated herein.

11  **IV.    <u>CONCLUSION</u>**

12        For the foregoing reasons, Defendants' second Motion for Summary

13  Judgment on the '875 patent should be denied.

14

15  DATED: January 3, 2014                QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
16

17

18                                        By */s/ Sean S. Pak*
                                            _____

19                                        Attorneys for Plaintiffs ViaSat, Inc. and
                                          ViaSat Communications, Inc. f/k/a
20                                        WildBlue Communications, Inc.

21

22

23

24

-24-                          Case No. 3:12-cv-00260-H-WVG
ViaSat's Opposition to Defendants' Motion for Summary
Judgment of Non-Infringement of U.S. Patent No. 8.107.875

1

## CERTIFICATE OF SERVICE

2         I hereby certify that, on January 3, 2014, I caused the foregoing "ViaSat's

3   Opposition to Defendants' Motion for Summary Judgment of Non-Infringement of

4   U.S. Patent No. 8,107,875" to be served on Defendants' counsel via the Court's

5   CM/ECF system.

6

DATED:  January 3, 2014

7

8                                           By  _/s/ Sean Pak_____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24