William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC.,<br><br>　　　　Plaintiffs,<br>　vs.<br><br>SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC.,<br><br>　　　　Defendants/Counterclaim Plaintiffs. | Case No. 3:12-cv-00260-H-WVG<br><br>Hon. Marilyn L. Huff<br><br>**[REDACTED PUBLIC VERSION]**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS OF VIASAT'S DAMAGES EXPERT DR. DANIEL SLOTTJE**<br><br>Date: January 31, 2014<br>Time: 1:00 p.m.<br>Place: Courtroom 15A |

# TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................................... 1

**I.    DR. SLOTTJE'S LOST PROFITS OPINION MUST BE EXCLUDED** . 2

    **A.  ViaSat's Cannot Obtain Lost Profits from a Non-Competitor** ........... 2

    **B.  Dr. Slottje's Lost Profits Opinion Ignores Broadband Alternatives, Is Speculative and Unreliable, and Lacks Evidentiary Support** ................................................................................. 2

        1.  Dr. Slottje's proposed "distinct satellite submarket" is contradicted by the evidence. ............................................................ 3

        2.  Dr. Slottje's presumption of a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ignores straightforward design modifications that SS/L would have implemented that would have resulted in much more capacity. ........................................................................................... 5

        3.  Dr. Slottje's "but for" 100% capture rate ▓▓▓▓▓▓▓▓▓▓ is completely unsupportable, as is his assumption that ViaSat can accommodate ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. .................. 5

**II.   DR. SLOTTJE'S PROPOSED ROYALTY MUST BE EXCLUDED** ...... 7

    **A.  A $587.1 Million Royalty Is Not Reasonable** ......................................... 7

    **B.  Dr. Slottje's Royalty Is Based on Irrelevant Capacity Leases That Do Not Reflect the Value of the Patented Technology** ................ 9

    **C.  ViaSat Does Not Justify Dr. Slottje's Alleged "Reasonableness Checks"** ................................................................................................... 10

**CONCLUSION** ..................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Apple, Inc. v. Motorola, Inc.*,
  No. 1:11-cv-08540, 2012 WL 1959560 (N.D. Ill. May 22, 2012) .................... 8

*Applied Md. Resources Corp. v. U.S. Surgical Corp.*,
  435 F.3d 1356 (Fed. Cir. 2006) ....................................................................... 7

*BASF Corp. v. Aristo, Inc.*,
  No. 2:07 CV 222 PPS, 2012 WL 2159252 (N.D. Ind. June 12 2012) ............... 5

*DataQuill Ltd. v. High Tech Computer Corp.*,
  No. 08-cv-543, 2012 WL 1284381 (S.D. Cal. Apr. 16, 2012) .......................... 9

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999) .................................................................. 2, 4

*King Instruments Corp. v. Perego*,
  65 F.3d 941 (Fed. Cir. 1995) .......................................................................... 2

*LaserDynamics, Inv. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) .......................................................................... 8

*Micro Chemical, Inc. v. Lextron, Inc.*,
  318 F.3d 1119 (Fed. Cir. 2003) ...................................................................... 5

*Minco, Inc. v. Combustion Engineering, Inc.*,
  95 F.3d 1119 (Fed. Cir. 2003) ........................................................................ 2

*Rite-Hite Corp. v. Kelley Co., Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995) ........................................................................ 8

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
  750 F.2d 1552 (Fed. Cir. 1984) .................................................................. 7, 8

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ................................................................ 6, 10

## INTRODUCTION

ViaSat urges the Court to dismiss Defendants' objections to Dr. Slottje's inflated damages opinion as mere "quibbles" about the "precision" of Dr. Slottje's model that go to the "weight" to be given his opinion, not the admissibility. Opp. at 9. But this motion does not amount to mere quibbles over topics more appropriate for cross examination. The Federal Circuit has repeatedly instructed district courts to reject expert opinions on damages that are not grounded in economic reality. Asking ▇▇▇▇▇▇▇ as a royalty in damages than SS/L even expected to make in profits on the accused satellite easily qualifies this as one such opinion.

ViaSat attempts to justify the excessive damages it is seeking by pointing to profits that Hughes expects to receive and the "economic reality of the satellite market." Opp. at 18. But ViaSat's endeavor to downplay the exorbitance of Dr. Slottje's damages cannot overcome the clear shortcomings of Dr. Slottje's analysis—such as his assumption that ViaSat-1 would have captured 100% of Hughes's subscribers ▇▇▇▇▇▇▇, when he admits that ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇. ViaSat is also unable to camouflage the obvious unreasonableness of a royalty that assumes the value of the patented technology is equivalent to the value of capacity on a finished, launched, and insured satellite, and is based on the threat of an unquantifiable, invented "reputational harm" that no witness or document even mentions and is not supported by any evidence.

Professor Slottje may be a well-educated, seasoned expert, but his opinions in this case are too far reaching, are completely removed from the facts, and must be excluded.

## I.   DR. SLOTTJE'S LOST PROFITS OPINION MUST BE EXCLUDED

### A.   ViaSat's Cannot Obtain Lost Profits from a Non-Competitor

ViaSat does not point to one case that holds that a party can receive lost profits from a defendant with which it does not compete. In *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995), the patent holder and the defendant <u>both sold competing products</u>: "[Plaintiff and defendant] market competing machines...." *Id.* at 944. It stands for the unremarkable proposition that if the patent holder's competing product does not practice the patented invention yet still competes with the infringing product sold by the defendant, lost profits may be available.

Although ViaSat claims that this case "is analogous" to *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1119 (Fed. Cir. 2003), it admits that the *Minco* parties competed with one another on sales of fused silica – the product produced by the patented rotary furnace. The only other case cited by ViaSat supporting its claim to lost profits as a non-competitor is *Grain Processing*, which also involved a parties who "competed head-to-head as the only significant suppliers" of the patented product. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341 at 1349 (Fed. Cir. 1999). ViaSat's theory of liability for lost profits from a non-competitor is completely unsupported and should be excluded.

### B.   Dr. Slottje's Lost Profits Opinion Ignores Broadband Alternatives, Is Speculative and Unreliable, and Lacks Evidentiary Support

ViaSat does not establish a lack of non-infringing substitutes and cannot support Dr. Slottje's unreliable presumption of a "but for" ▮▮▮▮▮, a 100% capture rate, or the static ▮▮▮▮▮ on which Dr. Slottje's lost profits opinion relies. These shortcomings of Dr. Slottje's analysis are not

"unsubstantiated quibbles with the precision of Dr. Slottje's model," as ViaSat would hope; instead, they are fatal to ViaSat's recovery of lost profits. Opp. at 9.

Although ViaSat attempts to overcome the shortcomings of Dr. Slottje's analysis by complaining that Defendants "have not independently calculated either a capture rate or the capacity of the ViaSat-1 satellite," it is not Defendants' burden to do so. Opp. at 9. Indeed, ViaSat weaves this theme throughout its brief, erroneously suggesting that it is Defendants' burden to demonstrate the availability of lost profits for ViaSat. *See, e.g.*, Opp. at 13 ("Defendants have not calculated that figure [of alleged lost subscribers] themselves…."); Opp. at 14 ("Defendants have not offered any opinion as to the actual subscriber capacity of the ViaSat-1 satellite."); Opp. at 16 ("Defendants make no effort to quantify the effect of this [beam by beam] variation on Prof. Slottje's model …."[1]). But it is not Defendants' burden to correct Dr. Slottje's shortcomings – it is ViaSat's burden to prove lost profits with reasonable certainty, and it has failed to do so.

> 1. Dr. Slottje's proposed "distinct satellite submarket" is contradicted by the evidence.

Dr. Slottje's only analysis to support his conclusion of the absence of non-infringing substitutes was to state based on <u>no data whatsoever</u> that people who purchased satellite internet prefer satellite internet, thus concluding that a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ exists. 12/16/13 Bageant Decl.,[2] Ex. 1 at 33. ViaSat attempts to justify this conclusion by arguing that

---

[1] This is actually incorrect; Defendants' expert did conduct a beam by beam analysis. *See.* Ex. 2 at Appendix Tables 1.0-15.0.

[2] Exhibits cited to herein as "Ex. __" were filed as exhibits to the 12/16/13 Decl. of P. Bageant in Support of Defs.' Mot. to Exclude Opinions of Dr. Daniel Slottje.

terrestrial broadband is different and serves a different market. But this litigation-motivated position is completely inconsistent with ViaSat's real-world position that ViaSat-1's satellite internet service <u>competes with DSL, cable, and wireless internet</u>. Ex. 10; Ex. 2 at 51-52.[3] Indeed, Dr. Slottje even admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 at 30. Dr. Slottje's doctrine of "revealed preference" cannot ignore the real-life fact that satellite internet competes with other forms of broadband and cannot overcome the law that lost profits are not available where there are acceptable non-infringing substitutes available on the market at the time of infringement. *Grain Processing*, 185 F.3d at 1348-50.

ViaSat attempts to overcome this deficiency by arguing that it is "beyond reasonable dispute" that ViaSat-1 lost subscribers – [t]he only question is how many such subscribers lost." Opp. at 13. But even if it were true that ViaSat-1 <u>did</u> lose subscribers to Jupiter, ViaSat still must meet its burden of proving with "reasonable probability that [it] would have made the asserted sales 'but for' the infringement." *Grain Processing*, 185 F.3d at 1349. It cannot do so based on Dr. Slottje's unsupported declaration that "terrestrial broadband is not a strong substitute for

---

[3] *See also* http://www.viasat.com/broadband-satellite-networks/high-capacity-satellite-system (stating that ViaSat-1 is "[c]ompeting with DSL, mobile wireless for fixed use, and cable – <u>40% of new subscribers have other alternatives</u>") (emphasis added); www.exede.com/what-is-exede.com ("Don't suffer any longer with slow cable, DSL, or dial-up – super fast Exede Internet is available almost anywhere."); http://investors.viasat.com/releasedetail.cfm?ReleaseID=814289 ("[Exede] is proving to be a popular, <u>competitive alternative to residential DSL and wireless Internet</u>.") (emphasis added); http://www.viasat.com/files/assets/web/ViaSat-1_FAQ_3_09_V3.pdf ("ViaSat-1 is a ViaSat-led project to build a satellite system that is designed to propel satellite into the mainstream of broadband access choices <u>alongside DSL and cable</u> by putting more, cheaper bits in space.") (emphasis added).

satellite broadband." Opp. at 11.

    2.    <u>Dr. Slottje's presumption of a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ignores straightforward design modifications that SS/L would have implemented that would have resulted in much more capacity.</u>

ViaSat attempts to excuse Dr. Slottje's complete failure to consider evidence of the non-infringing alternatives satellite designs SS/L could have implemented ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ by suggesting that Defendants' disclosure of such alternatives was late. Opp. at 13. But even assuming Dr. Slottje's "two-player submarket" satellite broadband theory is correct, Defendants' evidence of non-infringing alternatives was properly raised in its responsive expert reports. *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1125 (Fed. Cir. 2003) (stating that once "the patentee shows two suppliers in the relevant market," the burden "<u>going forward</u> then shifts to the infringer" who may "<u>rebut the presumption</u>" by showing non-infringing alternatives) (emphasis added); *see, e.g., BASF Corp. v. Aristo, Inc.*, No. 2:07 CV 222 PPS, 2012 WL 2159252, at *2, *7 (N.D. Ind. June 12 2012) (allowing <u>supplemental</u> responsive report on availability of non-infringing alternatives). Moreover, ViaSat's counsel deposed Defendants' experts who discussed the non-infringing alternatives, and yet Dr. Slottje still failed to consider such alternatives and has yet to issue a supplemental opinion. Dr. Slottje's refusal to <u>even consider</u> the evidence that SS/L would have built a non-infringing satellite with more than his assumed ▮▮▮▮▮▮▮▮▮▮ alternative is fatal to Dr. Slottje's lost profits analysis.

    3.    <u>Dr. Slottje's "but for" 100% capture rate ▮▮▮▮▮▮▮▮▮▮▮ is completely unsupportable, as is his assumption that ViaSat can accommodate 1▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.</u>

Although ViaSat argues that Dr. Slottje did not use a 100% capture rate, a

5      No. 3:12-cv-00260-H-WVG

even cursory look at Dr. Slottje's model reveals otherwise—Dr. Slottje assumes that ViaSat-1 would capture <u>all</u> of Jupiter's available subscribers for ▇▇▇. Ex. 1 at Ex. 5A-5G. And ▇▇▇. *Id.* at Ex. 5E-5G. Although Dr. Slottje does ▇▇▇ that he assumes ViaSat-1 would have captured from Jupiter, choosing this arbitrary cap cannot overcome the unsupportable 100% capture rate he uses until the cap is reached. Nor can the other allegedly "conservative" assumptions that Dr. Slottje used overcome the other unsupported assumptions on which his lost profits model is based. *Cf. Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir. 2011) ("Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations pecific to the facts of the case nevertheless results in a fundamentally flawed conclusion.")

Dr. Slottje admitted in deposition that ViaSat-1 does not have the ability to capture all of Jupiter's subscribers on a beam by beam basis, and that ▇▇▇. Ex. 3 at 224-26:1. Yet <u>he applied a one-to-one capture rate for seven quarters</u>. Doing so renders his lost profits analysis fundamentally flawed.

ViaSat attempts to convince the Court that Dr. Slottje <u>did</u> ▇▇▇ Opp. at 16, but the deposition testimony cited in support of this proposition reveals otherwise, and even Dr. Slottje himself admitted he ▇▇▇ Ex. 3 at 266:9-11. Dr. Slottje made an unreliable, unsupported assumption that ▇▇▇

despite his admission that ▮▮▮▮▮. Ex. 3 at 225:24-226:1.

Finally, ViaSat notably fails to provide any explanation to support Dr. Slottje's assumption that ViaSat-1's subscriber capacity will ▮▮▮ despite ViaSat's own projections that ▮▮▮. Ex. 4 at 102:9-104:18; 107:9-12. ViaSat's own witness admits that ▮▮▮ – it is <u>not</u> intended to account for ViaSat's own ▮▮▮. Cannon Decl. in Support of Opp., Ex. 24 at 83:13-17. ViaSat-1's ▮▮▮ also does not justify Dr. Slottje's failure to account for ▮▮▮. Opp. at 15.

## II. DR. SLOTTJE'S PROPOSED ROYALTY MUST BE EXCLUDED

### A. A $587.1 Million Royalty Is Not Reasonable

The Federal Circuit <u>defines</u> a reasonable royalty as the amount that a licensee "would be <u>willing</u> to pay as a royalty and yet be able to manufacture … a patented article, in the market, <u>at a reasonable profit</u>." *Applied Md. Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006) (quoting *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984)) (emphasis added). Dr. Slottje altogether ignores this definition and proposes a royalty that Defendants would never have been willing to pay and that would have never permitted them to build Jupiter "at a reasonable profit" – much less without losing <u>several hundreds of millions of dollars</u>.

ViaSat incorrectly suggests that Dr. Slottje need not consider that ▮▮▮ rather than pay a $587.1 million royalty

because an "infringing satellite *was* made, and a royalty must be determined." Opp. at 19. That flies in the face of decades of authority that <u>require</u> the consideration of what a willing licensor would be willing to pay and the alternatives the licensor would have considered. *See id., see, e.g.*, *Apple, Inc. v. Motorola, Inc.*, No. 1:11-cv-08540, 2012 WL 1959560 (N.D. Ill. May 22, 2012).

ViaSat readily admits that Dr. Slottje based his royalty on the assumption that SS/L would have been facing reputational harm that is ██████████ ██████ but cites to no authority suggesting that it is proper to base a royalty on such an unquantifiable threat – a threat that Dr. Slottje simply made up and for which he cites absolutely no evidentiary support. Opp. at 20. Such a theory is not "based on sound economic and factual predicates" and must be excluded. *LaserDynamics, Inv. v. Quanta Computer, Inc.*, 694 F.3d 51, 61 (Fed. Cir. 2012).

ViaSat's misreads *Trans-World Manufacturing Corp.* in its attempt to convince the Court that *Trans-World* <u>supports</u> Dr. Slottje's opinion of a royalty that is over ████████████████████████████████████████. *Trans-World* stands for the opposite proposition – that a party's <u>anticipated</u> profits <u>should be considered</u> when determining the amount the party would have been <u>willing to pay</u> for a royalty in the hypothetical negotiation. 750 F.2d at 1568. Where evidence of anticipated profits is lacking, evidence of actual profits generally are admissible. Dr. Slottje's failure to consider Defendants' anticipated profits and their willingness to pay renders his opinion unreliable.

*Rite-Hite* also cannot save Dr. Slottje's opinion – in that case, the Federal Circuit held that a royalty "based on a significant <u>portion</u> of the patentee's profits" was not unreasonable. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed.

Cir. 1995).

Finally, ViaSat also attempts to justify the extraordinary royalty that Dr. Slottje proposes by suggesting—<u>for the first time</u>—that ███████████ ███████████████████████████████████████████████ Opp. at 19. That figure baffles the mind, when even Dr. Slottje admits that ███████████████████████████████████████████████ Even three such satellites would cost less than the whopping ███████████

**B.     Dr. Slottje's Royalty Is Based on Irrelevant Capacity Leases That Do Not Reflect the Value of the Patented Technology**

Dr. Slottje considered five actual and proposed capacity leases that ranged from █████████████████████████████████████████ ███████████████████████████████████████ as the value of ViaSat's technology. Ex. 1 at 61. ViaSat apparently overlooked this language in Dr. Slottje's report when it proclaimed that Dr. Slottje "does not simply adopt the effective per-Gbps prices in these transactions as his royalty rate" because ███████████████████ █████████████████████████████████████████████████ ████████ in the two leases he selected as benchmarks. Opp. at 24 (emphasis added). Indeed, this was the only basis on which ViaSat attempts to distinguish *DataQuill*—which excluded an expert's reliance on a revenue sharing agreement that, similar to the capacity leases and proposals at issue here, was "not comparable in any way to the license that would have been reached at the hypothetical agreement," even though the expert purported to consider the agreement under *Georgia-Pacific* factor 11—as does Dr. Slottje. *DataQuill Ltd. v. High Tech Computer Corp.*, No. 08-cv-543, 2012 WL 1284381, at *6 (S.D. Cal. Apr. 16, 2012).

Dr. Slottje cites to no evidence suggesting that the price of leasing capacity on a launched, insured satellite is a valid benchmark for valuing the patented technology or that it would have been a relevant consideration at the hypothetical negotiation. He cites to no patent license that is based on the market value of satellite capacity, and he fails to consider the differences in value between capacity on a completed, launched, insured satellite on the one hand, and a patent license that allegedly would permit a manufacturer to build a satellite with increased capacity on the other hand.

Finally, ViaSat attempts to justify Dr. Slottje's reliance on the capacity leases and proposals by pointing to Defendants' expert's report – which is not the subject of this Motion or any *Daubert* motion, for that matter. Suffice it to say that ViaSat's allegations concerning Defendants' expert's analysis are baseless.

### C. ViaSat Does Not Justify Dr. Slottje's Alleged "Reasonableness Checks"

ViaSat makes no attempt to distinguish Dr. Slottje's alleged reasonableness checks with those excluded in *Uniloc*, and again attempts to justify Dr. Slottje's improper analysis by offering a baseless criticism of Defendants' expert's opinion. ViaSat cannot justify a $587.1 million royalty by pointing to irrelevant data points such as the acquisition price of entire companies, Hughes's expected profits, or ViaSat's total subscriber income. These data points are not at all relevant to the value of the patented technology and must be excluded.

### CONCLUSION

For the reasons stated above and in Defendants' opening Motion, Defendants respectfully request that the Court exclude Dr. Slottje's unreliable lost profits and reasonable royalty opinions.

| | | |
|---|---|---|
| 1 | Dated: January 13, 2014 | By:   */s/ Rachel S. Black* |

Marc M. Seltzer
Amanda K. Bonn
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
Email: abonn@susmangodfrey.com

William Christopher Carmody
(Admitted *Pro Hac Vice*)
Jacob W. Buchdahl
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340

Joseph S. Grinstein
(Admitted *Pro Hac Vice*)
William R. H. Merrill
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:   713-653-7856
Facsimile:    713-654-6666
Email: jgrinstein@susmangodfrey.com
Email: bmerrill@susmangodfrey.com

Ian B. Crosby
(Admitted *Pro Hac Vice*)
Rachel S. Black
(Admitted *Pro Hac Vice*)
Patrick C. Bageant (275135)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800

| | |
|---|---|
| 1 | Seattle, WA 98101 |
| 2 | Telephone: (206) 516-3861 |
|   | Fax: (206) 516-3883 |
| 3 | Email: icrosby@susmangodfrey.com |
|   | Email: rblack@susmangodfrey.com |
| 4 | Email: pbageant@susmangodfrey.com |

*Attorneys for Defendants/Counterclaim Plaintiffs Space Systems/Loral, LLC (f/k/a Space Systems/Loral, Inc.) and Loral Space & Communications Inc.*

12                    No. 3:12-cv-00260-H-WVG

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 13, 2014, I caused the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS OF VIASAT'S DAMAGES EXPERT DR. DANIEL SLOTTJE** to be served on opposing counsel via the Court's CM/ECF system.

Dated: January 13, 2014         By:   */s/ Rachel S. Black*