William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:  (212) 336-8330
Facsimile:   (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:   (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIASAT, INC.,<br><br>　　　　　Plaintiff,<br>vs.<br>SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC.,<br><br>　　　　　Defendants/Counterclaim Plaintiffs. | Case No. 3:12-cv-00260-H-WVG<br>Hon. Marilyn L. Huff<br>**PUBLIC**<br>**DEFENDANTS' MOTION IN LIMINE #1 TO EXCLUDE EXTRANEOUS INFRINGEMENT ALLEGATIONS**<br><br>Date: February 19, 2014<br>Time: 10:30 a.m.<br>Place: Courtroom 15A |

Defendants and Counterclaim Plaintiffs Space Systems/Loral, LLC ("SS/L") and Loral Space & Communications Inc. ("Loral") move to preclude ViaSat from arguing or presenting evidence of (1) infringement of intellectual property ("IP") not asserted in this litigation and (2) infringement of any alleged ViaSat IP by products not accused in this action. The patents ViaSat should be precluded from asserting in this litigation include, but are not limited to, the patents asserted by ViaSat only in its separate suit against SS/L: U.S. Patent No. 8,213,929 ("the '929 Patent") (Ex. 10); No. 8,254,832 ("the '832 Patent") (Ex. 11); No. 8,285,202 ("the '202 Patent"), (Ex. 12); No. 8,548,377 ("the '377 Patent") (Ex. 13); No. 7,230,908 ("the '908 Patent") (Ex. 14); and No. 7,684,368 ("the '368 Patent") (Ex. 15). *See generally* 3:13-cv-2074-H-WVG ("13-2074 matter"), First Amended Complaint (Ex. 16). ViaSat should similarly be prohibited from asserting infringement of any of its patents by any products other than the accused satellites in this litigation, Jupiter-1, NBN Co 1A and NBN Co 1B; for example, ViaSat should be precluded from introducing evidence that the Jupiter-2 satellite infringes any ViaSat IP.

## I. UNASSERTED PATENTS

### A. ViaSat's Unasserted Patents Are Irrelevant

Any evidence that the accused satellites infringe ViaSat's unasserted patents is plainly irrelevant to whether those satellites infringe ViaSat's patents-in-suit, or whether Defendants breached any asserted NDA, and should be excluded under Rule 402. Any infringement of unasserted patents by the accused satellites also cannot form the basis for damages in this litigation. *Cf. McCreary v. Pennsylvania Canal Co.*, 141 U.S. 459 (1891) (plaintiff cannot recover damages for infringement of patent without making it basis of suit).

ViaSat's supplemental expert reports indicate it will attempt to introduce evidence that certain non-infringing alternative designs for the accused satellites were not available to SS/L because those designs would infringe other patents ViaSat has not asserted in this litigation—namely, certain patents asserted only in the 13-2074 matter. But ViaSat's unasserted patents are irrelevant for this purpose as well. As the court held in *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, at *3 (N.D. Cal. Mar. 2, 2004), previously-unasserted patents offered to rebut non-infringing alternatives are irrelevant under Rule 402 where the patentee has not sought to amend its complaint to add such a claim for infringement, there has been no exchange of claim charts, and there has been no hearing on claim construction as required by the patent local rules.[1] *Cf.* S.D. Cal. Patent L.R. 1.4, 3, 4. ViaSat attempts to insert its previously-unasserted patents in just this procedural posture.

ViaSat's unasserted patents are even more clearly irrelevant in this case for two reasons. **First,** Defendants' non-infringing alternatives entail only modest changes from the actual design of the accused satellites. To undermine those non-infringing designs, though, ViaSat seeks to assert the very same intellectual property against Defendants' proposed <u>alternatively-designed</u> Jupiter-1 and NBN satellites in this litigation as it has asserted against those satellites <u>as designed</u> in the 13-2074 matter. *Compare* Ex. 16 *with* Ex. 23 (Sturza Sur-Rebuttal Report) *and* Ex. 24. (Bartone Sur-Rebuttal Report). ViaSat's supplemental expert reports confirm that it is not Defendants' proposed design changes to the Jupiter-1 and NBN

---

[1] Indeed, one could never effectively defend against any company with a large patent portfolio if a patentee could simply assert any number of its additional patents in this fashion, late in the litigation and without any procedural protections.

satellites (for purposes of creating a non-infringing alternative to the patents-in-suit in this litigation) that ViaSat argues causes those satellites to infringe the patents asserted only in the 13-2074 matter. Rather, according to ViaSat, it is the actual designs of the Jupiter-1 and NBN satellites that infringe the 13-2074 patents.[2] Defendants' proposal of <u>alternative</u> designs which avoid infringement of the patents-in-suit does not suddenly render relevant additional claims of infringement of additional patents by the Jupiter-1 or NBN satellites' <u>actual</u> design.

*Second,* at least as to the Jupiter-1 satellite, the patents asserted by ViaSat in the 13-2074 matter all issued well after any design decisions were being made, given that the satellite launched in July 2012. *See* Ex. 13 (issued Oct. 1, 2013); Ex. 11 (issued Aug. 28, 2012); Ex. 12 (issued Oct. 9, 2012); Ex. 10 (issued July 3, 2012). Accordingly, these patents are irrelevant to whether Defendants' alternative non-infringing designs were available at any time relevant to this case, because any alternative available during the process of designing the Jupiter satellite could not have infringed.[3]

---

[2] ViaSat's experts repeatedly relied upon their prior opinions about the features of the accused satellites discussed in their original reports, which applied "by extension" to the same features in Defendants' non-infringing alternative designs. *See* Ex. 23 (Sturza Sur-Rebuttal Report) ¶¶ 26-36, 59-60, 96-108 (opining Jupiter-1 as-designed infringes '202 patent); *id.* ¶¶ 78, 126-138, (opining NBN satellites as-designed infringe '202 patent); *id.* ¶ 169-181 (opining Jupiter-1 as-designed infringes '929 patent); Ex. 24 (Bartone Sur-Rebuttal Report) ¶¶ 28-39, 83-85, 123-25 (opining Jupiter-1 as-designed infringes '832 patent).

[3] The only patents from the 13-2074 matter even potentially relevant to this litigation are ViaSat's '908 Patent (Ex. 14), which issued in June 12, 2007, and its '368 Patent (Ex. 15), which issued in March 23, 2010. Both of those patents are the subject of a motion to dismiss by SS/L in the 13-cv-2074 action, and ViaSat has not shown any intention of asserting those patents at trial in this case.

ViaSat has previously suggested that any patent applications filed prior to 2012 underlying its unasserted patents might have affected Hughes' view of the acceptability of alternative non-infringing designs for Jupiter-1. That argument, however, goes at most to the relevance of the patent <u>applications</u> and not any of the later-issued patents themselves, and thus still does not support ViaSat's introduction of its unasserted patents as evidence that any alternative design was unavailable due to infringement of the unasserted patents. Moreover, ViaSat has presented no evidence that SS/L or Hughes were aware of the applications underlying ViaSat's unasserted patents, or that the claims in those patents remained substantially unchanged prior to issuance, let alone that those applications would have affected Hughes' position on the acceptability of SS/L's non-infringing alternative designs.

In any event, as discussed below, any marginal relevance of the applications underlying ViaSat's unasserted patents (or the unasserted patents themselves, if the court finds them relevant) is dwarfed by their prejudicial effect.

### B.   The Court Should Exclude Evidence of Infringement of ViaSat's Unasserted Patents Under Rule 403

To the extent ViaSat's unasserted patents (or underlying patent applications) are relevant, the court should nevertheless exclude evidence of infringement of those unasserted patents because their "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." F.R.E. 403.

Litigating infringement of ViaSat's unasserted patents would not be possible without undue delay and/or wasting time at trial. There would need to be *Markman* briefing and constructions by the Court, and the parties would need to exchange infringement and invalidity contentions. An already-complex patent trial would also be bogged down by additional expert testimony on these extraneous patents—as confirmed by the large portions of ViaSat's sur-rebuttal reports dedicated to previously-unasserted patents. *See* footnote 1, above. ViaSat has no justification holding a trial-within-a-trial on the patents not asserted in this litigation until now.

*CollegeNET, Inc. v. ApplyYourself, Inc.*, CV-02-484-HU, 2006 WL 2524238 (D. Or. Aug. 30, 2006), relied upon by ViaSat in prior briefing as an example of a case rejecting a Rule 403 challenge to evidence that alternatives infringed, actually provides a helpful contrast to the circumstances presented here. Although the court in *CollegeNET* was unconcerned with holding a mini-trial regarding non-infringing alternatives, the issue was whether certain non-infringing alternatives sold by third-parties actually avoided infringement of the patent-in-suit, not other unasserted patents. Moreover, the only real dispute between the parties was whether plaintiff's damages expert or an independent infringement expert would be allowed to opine on the infringement, the resolution of which would have had no effect on the burden of the mini-trial.

ViaSat has argued that Defendants overstate the burden of litigating several additional patents in this case because a lesser burden applies to show infringement by (and thus unavailability/unacceptability of) a non-infringing alternative. This proposition is derived entirely from a single district court case, *Parker-Hannifin Corp. v. Champion Labs., Inc.*, 2008 WL 3166318, at *7 (N.D. Ohio Aug. 4, 2008),

which permitted the plaintiff to use its unasserted patents for purposes of rebutting non-infringing alternatives; the court reasoned that, in order to recover lost profits in the face of non-infringing alternatives, the patentee "need only establish a 'reasonable probability' that but for the infringement" it would have captured certain sales from the alleged infringer. *Parker-Hannifin*, however, is an opinion riddled with errors, having based its entire approach on a passing comment in *State Industries, Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989), that the non-infringing alternatives offered by third parties would not have been available if they infringed "one or the other" of plaintiff's patents, despite the Federal Circuit in the next breath making clear that its statements on that point were dictum. *See* 883 F.2d at 1578 ("the presence or absence of acceptable noninfringing alternatives [did] not matter" to the court's analysis). *Parker-Hannifin* also provides a poor benchmark for evaluating the risk of delay or confusion attributable to litigating infringement of unasserted patents, given the court's apparent view of the simplicity of the claims at issue there. *Cf. Parker-Hannifin*, 2008 WL 3166318, at *7 (discussing "straightforward claims at issue").

Moreover, both *Parker-Hannifin* and *State Industries* are distinguishable because they involved an accused infringer's reliance on <u>third-party</u> products as non-infringing alternatives. ViaSat's attempt to sneak into this lawsuit its allegations from the 13-2074 matter against SS/L's own Jupiter-1 and NBN satellites <u>as-designed</u> (particularly under some lesser burden of proving infringement) is uniquely prejudicial for several reasons.

*First*, if ViaSat had ever sought to amend its complaint to include allegations of infringement of its other patents against the Jupiter-1 or NBN satellites, or

sought to consolidate the 13-2074 matter with this one, there would be no question about the procedures (dictated by, among other things, the Local Patent Rules) necessary before this case could be tried. But ViaSat never did amend or seek to consolidate, and it should not be permitted to do so now under the guise of responding to non-infringing alternatives, while depriving Defendants the benefit of at least *Markman* constructions, receipt of infringement contentions, and an opportunity to prepare invalidity contentions.

*Second,* there is the potential for inconsistent findings on infringement of ViaSat's unasserted patents by the Jupiter-1 and NBN satellites. Using the relaxed standards for infringement ViaSat proposes for purposes of assessing the availability of non-infringing alternatives, the jury might increase damages based on a finding of "probable" infringement of ViaSat's unasserted patents by the alternatively-designed Jupiter-1 in this litigation. But, following standard procedures and applying proper burdens for proving infringement, the court or jury in the 13-2074 matter could still find non-infringement by the Jupiter-1 or NBN satellites, based on features of the actual Jupiter-1 or NBN satellites <u>no different</u> from the alternatively-designed Jupiter-1 or NBN satellites in this action. There is no reason to allow the possibility of an unjustifiably-inflated damages award hanging like the sword of Damocles over SS/L's head, especially when ViaSat will have every opportunity in the 13-2074 matter to obtain recovery for any infringement of its other patents by the Jupiter-1 or NBN satellites.

*Third,* allowing ViaSat to use its unasserted patents in this litigation would also result in a nonsensical analysis for purposes of damages. Assume, for example, that Defendants can demonstrate alternative Jupiter-1 and NBN designs that avoid

infringement of the patents asserted in this litigation (as Defendants' experts demonstrate they can and will, as necessary), but not the patents asserted in the 13-2074 litigation. Under those circumstances, allowing ViaSat to recover any (additional) damages based on its unasserted patents in this litigation would be completely unjustified. It would compensate ViaSat not for the value of the patents-in-suit, but rather the value of the other unasserted patents. ViaSat will have ample opportunity to assert its other patents and establish their value with respect to the Jupiter-1 and NBN satellites in the 13-2074 matter, following the proper course for litigating a patent infringement case.

*Fourth,* whereas an accused infringer's provisional positions on infringement of a third-party's products could not be held against the third-party in its litigation against the plaintiff, the same may not be true of any positions taken by SS/L as to non-infringement by the Jupiter-1 and NBN satellites of the patents asserted by ViaSat in the 13-2074 matter. And it would be highly prejudicial regardless to force SS/L to take positions in this litigation on the patents asserted against it in the 13-2074 matter prior to any discovery, or even claim construction, in that new lawsuit. It is only fair for SS/L's position on non-infringing alternatives to the patents asserted against it in the 13-2074 matter to await the appointed time for such discovery in that case.

*Fifth*, asking the jury to distinguish between the patents ViaSat actually asserts against the accused satellites in this case from those it asserts only to undermine Defendants' non-infringing alternatives is likely to mislead the jury and/or result in confusion.  This is especially true given that, as discussed above, (1) ViaSat apparently believes the design features of the Jupiter-1 and NBN

satellites that would infringe its unasserted patents are on <u>both</u> the actual- and alternatively-designed Jupiter-1 satellite (as discussed above), and (2) ViaSat wishes to use two different standards of proof in an effort to avoid the obvious burden of litigating infringement of a whole new set of patents in this case.

ViaSat, meanwhile, cannot claim any prejudice from excluding the unasserted patents from this litigation because ViaSat's new suit against SS/L would still provide an adequate opportunity for ViaSat to recover damages based on any of the unasserted patents for which SS/L could not demonstrate a design-around. *Cf. Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 717 (D. Del. 1993), *aff'd* 16 F.3d 421 (Fed. Cir. 1993) (proper to exclude evidence of unasserted patents that would cause prejudice, delay and burden, particularly where patentee has alternative measure of damages available). The 13-2074 matter is the only appropriate forum for ViaSat to recover any damages based on Jupiter's alleged infringement of (and SS/L's hypothetical inability to design-around) the newly-asserted patents in that case. ViaSat might have chosen to consolidate the 13-2074 matter with this one, but never did so.

ViaSat cannot justify the potential prejudice to SS/L, confusion to the jury, delay, or waste of time in this litigation that would result from holding a trial-within-a-trial on any of its unasserted patents, and particularly the very same patents ViaSat has asserted against SS/L and the Jupiter-1 and NBN satellites in the 13-2074 matter.

## II. UNACCUSED PRODUCTS

Defendants also move to preclude ViaSat from introducing evidence that products not accused in this litigation, including the Jupiter-2 satellite, infringe any

of ViaSat's intellectual property. ViaSat's experts have offered no opinions as that infringement of any ViaSat IP by an unaccused product like Jupiter-2 could have any bearing on whether Jupiter-1 or the NBN satellites infringe the patents-in-suit. Neither have ViaSat's experts opined that infringement by non-accused products like Jupiter-2 are relevant in determining the proper damages for any such infringement.

To the extent ViaSat may offer a reason why infringement by unaccused products like Jupiter-2 are relevant to this case, the probative value of such evidence will inevitably be outweighed by its prejudicial effect. Jupiter-2, in particular, has been accused of infringing the patents ViaSat asserts in the 13-2074 matter. For reasons similar to those discussed above, it would be wholly inappropriate for ViaSat to import the disputes of the 13-2074 matter into this case. Doing so would again prejudicially force SS/L defend against claims without the benefit of claim constructions, infringement contentions, or invalidity contentions because the 13-2074 matter is still in its preliminary stages. If ViaSat wanted to present arguments or evidence regarding the alleged infringement of its patents or IP by Jupiter-2 in this case, it again could have sought to consolidate. It did not. ViaSat will have its adequate opportunity to assert infringement by Jupiter-2 in its separate suit against SS/L.

### III. CONCLUSION

For the foregoing reasons, the Court should preclude ViaSat from arguing or presenting evidence of (1) infringement of intellectual property not asserted in this litigation and (2) infringement of any alleged ViaSat IP by products not accused in this action.

1

2    Dated: February 7, 2014         By:    /s/ Amanda K. Bonn

3

4                                    Marc M. Seltzer
                                     Amanda K. Bonn
5                                    SUSMAN GODFREY L.L.P.
                                     1901 Avenue of the Stars, Suite 950
6                                    Los Angeles, CA 90067-6029
                                     Telephone: (310) 789-3100
7                                    Fax: (310) 789-3150
                                     Email: abonn@susmangodfrey.com
8

9                                    William Christopher Carmody
                                     (Admitted *Pro Hac Vice*)
10                                   Jacob W. Buchdahl
                                     (Admitted *Pro Hac Vice*)
11                                   SUSMAN GODFREY L.L.P.
                                     560 Lexington Avenue, 15th Floor
12                                   New York, NY 10022
                                     Telephone: (212) 336-8330
13                                   Fax: (212) 336-8340

14
                                     Joseph S. Grinstein
15                                   (Admitted *Pro Hac Vice*)
                                     William R. H. Merrill
16                                   (Admitted *Pro Hac Vice*)
                                     SUSMAN GODFREY L.L.P
17                                   1000 Louisiana Street, Suite 5100
                                     Houston, Texas 77002-5096
18                                   Telephone:  713-653-7856
                                     Facsimile:   713-654-6666
19                                   Email: jgrinstein@susmangodfrey.com
                                     Email: bmerrill@susmangodfrey.com
20

21

22

23

24

|   |   |
|---|---|
| 1 | Ian B. Crosby |
|   | (Admitted *Pro Hac Vice*) |
| 2 | Rachel S. Black |
|   | (Admitted *Pro Hac Vice*) |
| 3 | Patrick C. Bageant |
| 4 | SUSMAN GODFREY L.L.P. |
|   | 1201 Third Avenue, Suite 3800 |
| 5 | Seattle, WA 98101 |
|   | Telephone: (206) 516-3861 |
| 6 | Fax: (206) 516-3883 |
| 7 | Email: icrosby@susmangodfrey.com |
|   | Email: rblack@susmangodfrey.com |
| 8 | Email: pbageant@susmangodfrey.com |
| 9 | *Attorneys for Defendants/Counterclaim* |
| 10 | *Plaintiffs Space Systems/Loral, LLC (f/k/a* |
|   | *Space Systems/Loral, Inc.) and Loral Space* |
| 11 | *& Communications Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 7, 2014, I caused the foregoing **[PUBLIC] DEFENDANTS' MOTION IN LIMINE #1 TO EXCLUDE EXTRANEOUS INFRINGEMENT ALLEGATIONS** to be served on opposing counsel via the Court's CM/ECF system.

Dated: February 7, 2014          By:   */s/ Amanda K. Bonn*