William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:  (212) 336-8330
Facsimile:   (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:   (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC.,<br><br>           Plaintiff,<br>     vs.<br><br>SPACE SYSTEMS/LORAL, INC.,<br>LORAL SPACE &<br>COMMUNICATIONS INC.,<br><br>           Defendants/Counterclaim<br>           Plaintiffs. | Case No. 3:12-cv-00260-H-WVG<br><br>Hon. Marilyn L. Huff<br>**[PUBLIC-REDACTED]**<br><br>**[PROPOSED] DEFENDANTS' MOTION TO STRIKE DR. SLOTTJE'S NEW OPINIONS**<br><br>Date: February 21, 2014<br>Time: 1:30 p.m.<br>Place: Telephonic Hearing |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................2

II. FACTUAL BACKGROUND ..............................................................................3

    A. Dr. Slottje's Opening Report......................................................................3

        1. Dr. Slottje Included "Reasonableness Checks" that the Court Later Excluded. ..................................................................................3

        2. Dr. Slottje Assumed No Delay for a Non-Infringing Alternative Satellite, Despite Recognizing Possbile 24-36 Month Delay. ................................................................................3

        3. Dr. Slottje Did Not Perform a Beam-by-Beam Analysis and Included Spokane Subscribers. .......................................................5

    B. Dr. Slottje's "Sur-Rebuttal" Report........................................................6

III. ARGUMENT ......................................................................................................7

    A. Dr. Slottje's New Opinions on Lost Profits Should Be Stricken..........8

    B. Dr. Slottje's New "Reasonableness Check" Should be Stricken. .......9

IV. CONCLUSION ..............................................................................................10

## I.  INTRODUCTION

ViaSat was granted limited leave to respond to Mr. Chan's opinions regarding non-infringing alternatives. Yet on February 6, 2014, ViaSat served a "sur-rebuttal" expert report by Dr. Slottje that does much more. Instead, Dr. Slottje's "sur-rebuttal" includes (1) a new "reasonableness check" of Hughes's expected revenue of ▮▮▮▮ during a two-year period and (2) an entirely new—and significantly higher—lost profits calculation of over ▮▮▮▮.

Despite acknowleding in his original report that his assumed 32 Gbps non-infringing alternative satellite could cause a two-to-three year delay in launch, Dr. Slottje elected in his opening report to neither (a) assume any delay in launching such a non-infringing satellite nor (b) quantify the effect of any such delay for either lost profits or on a hypothetical negotiation in a reasonable royalty analysis. In his "sur-rebuttal" report, Dr. Slottje acknowledges that Mr. Chan's opinions on non-infringing alternatives have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. A at 2 (emphasis added). And yet Dr. Slottje goes on to recalculate lost profits by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, Dr. Slottje calculates the revenues that Hughes would have lost during that period as a new "reasonableness check" to replace the ones the Court excluded. Dr. Slottje has no explanation for why he now assumes and calculates the impact of a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nor can ViaSat explain why Dr. Slottje's new lost profits calculation excludes Spokane users, which his previous calculation erroneously included.

The Court should not permit ViaSat to quantify just how "conservative" Dr. Slottje's assumptions in his initial report may haver been, given that he (a) consciously elected not to do so and (b) admits that such analysis is not responsive to Mr. Chan's disclosure.

## II. FACTUAL BACKGROUND

### A. Dr. Slottje's Opening Report

#### 1. Dr. Slottje Included "Reasonableness Checks" that the Court Later Excluded.

As the Court is aware, Dr. Slottje included several so-called "reasonableness checks" in his opening damages report served on October 25, 2013. Those checks included ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. C at 62-63. The Court excluded "ViaSat's evidence on reasonableness checks under Federal Rule of Evidence 403," because ViaSat "has not demonstrated that it is sufficiently probative of the value of ViaSat's patented technology to outweigh the risk of prejudicial effect on a jury." Feb. 11, 2014 Order at 16-17.[1]

#### 2. Dr. Slottje Assumed No Delay for a Non-Infringing Alternative Satellite, Despite Recognizing Possbile 24-36 Month Delay.

In his opening report, Dr. Slottje opined that SS/L could have built a 32 Gbps non-infringing alternative to the Jupiter-1 satellite. Ex. B at 27. Dr. Slottje noted that his "assumptions are conservative, as it is far from certain that Hughes could have obtained the capital necessary to support the re-design and delayed

---

[1] SS/L requested that all four of ViaSat's "reasonableness checks" be stricken, although it listed three of the more egregious checks in a bullet-point list while discussing the fourth in a separate paragraph. *See* Dkt. 535 at 22 (discussing acquisition price reasonableness checks) & 24 (discussing "Dr. Slottje's other 'reasonableness check' which considers ViaSat's projected per-subscriber revenue"). The Court's order only specifically discussed "reasonableness checks" 2-4 above, but did not expressly mention the first "reasonableness check." SS/L submits that the Court's Order excludes all reasonableness checks (and explicitly referenced that injecting overall revenue numbers is inappropriate), but seeks clarification to the extent SS/L has misapprehended the Court's Order.

1  construction of a satellite with significantly lower capacity as compared to ViaSat-1
2  as it became aware it could not use ViaSat's patents-in-suit." *Id.* at 29. More
3  specifically, Dr. Slottje opined as follows:

[redacted block]

11  *Id.* at 28 n.142 (emphasis added). In other words, despite believing in submitting
12  his initial report that it [redacted]
13  [redacted], Dr. Slottje nevertheless (a) decided to
14  assume no delay to be "conservative" and (b) therefore did not quantify the costs
15  associated with any delay in launching a non-infringing satellite.
16     Dr. Slottje confirmed as much during his deposition, noting that seeing Dr.
17  Meyer's report concerning non-infringing alternatives had no impact on his
18  opionion because he had already " [redacted]
19  [redacted] Bonn Decl. Ex. C at 16:16-17:3.

[redacted block]

28  Ex. C at 18:25-19:16 (emphasis added).

In other words, despite understanding that a non-infringing satellite could supposedly cause a two or three year delay in launch at the the time he submitted his opening report, Dr. Slottje chose (a) not to assume any delay and (b) not to quantify the costs associated with any such delay. Dr. Slottje did so intentionally in order to supposedly "be conservative."[2]

### 3. Dr. Slottje Did Not Perform a Beam-by-Beam Analysis and Included Spokane Subscribers.

In his opening expert report, Dr. Slottje did not perform a beam-by-beam analysis to determine which subscribers ViaSat could have captured had Hughes launched a 32 Gbps non-infringing satellite. Instead, Dr. Slottje simply assumed that ViaSat and Hughes are ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. B at 21. Yet, as Dr. Meyer pointed out in her responsive report, ████████████████████████████████████ ████████ For example, "████████████████████████████████████████ ████████████████████████████████████████████████████████████ Ex. E at 42. During his deposition, Dr. Slottje defended his failure to take into account the fact that ViaSat (unlike Hughes) lacks a user beam in the Spokane area by pointing to his other supposedly "conservative" assumptions, including his assumption that there would have been no delay in the launch of a non-infringing satellite:

████████████████████████████████████████
████████████████
████████████████████████████████████████
████████████████████████████
████████████████████████

---

[2] As discussed below, Dr. Slottje subsequently defended other, unrelated opinions by pointing to this "conservative" assumption. ViaSat also pointed to this supposedly "conservative" assumption in *Daubert* briefing to overcome various methodological issues that Defendants raised concerning Dr. Slottje's analysis.



Ex. C at 225:24-226:19 (emphasis added). In short, Dr. Slottje failed to take into account ▮▮▮▮▮ and justified his failure to do so in part based on his supposedly "conservative" assumption that there would be no delay in launching a 32 Gbps non-infringing satellite.

**B.    Dr. Slottje's "Sur-Rebuttal" Report**

On February 6, 2014, Dr. Slottje served a "sur-rebuttal" report, which the Court permitted only to the extent it responded to Mr. Chan's non-infringing alternatives. Dr. Slottje's "sur-rebuttal" opens with the following opinion:



Ex. A at 2 (emphasis added). Dr. Slottje then goes on for several pages to explain in greater detail why Mr. Chan's design arounds had no impact on the damages Dr. Slottje calculated in his original report. SS/L takes no procedural issue with these opinions, as they are responsive to Mr. Chan's disclosure.[3]

However, beginning on Page 6, Dr. Slottje injects new opinions that he could have and should have included in his opening report, attempting to belatedly (1) replace his stricken "reasonableness checks" with other inflated numbers; (2)

---

[3] SS/L of course disagrees with these opinions on the merits, but will reserve its critique for trial.

quantify the supposedly "conservative" assumption of no launch delay that he consciously made in his initial report, by re-calculating lost profits assuming nine months worth of delay; and (3) address the criticism raised during his deposition that he failed to take into account the lack of a ▮▮▮▮▮▮ on ViaSat-1. Despite Dr. Slottje's acknowledgement that Mr. Chan's disclosure had "no effect on the damages [he] calculated in [his] previous report," Dr. Slottje then goes on to offer these new damages opinion that increases alleged lost profits by $▮▮▮▮▮.

First, Dr. Slottje states ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 7. This is a consideration Dr. Slottje also included in his opening report.

Second, Dr. Slottje estimates that Hughes' projected revenue during a two-year delay period would be ▮▮▮▮▮▮ *Id.* Dr. Slottje's original report (a) recognized the possibility of a two-to-three year delay in launching a non-infringing satellite, (b) consciously assumed no delay to be "conservative," and (c) did not calculate the impact of any delay.

Third, Dr. Slottje estimates that if the delay ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Once again, ViaSat did so despite consciously choosing not to factor any delay into lost profits in Dr. Slottje's original report.

Finally, Dr. Slottje does an entire re-calculation of lost profits for the entire purported lost-profits period that (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This, too, is material that Dr. Slottje could and should have included in his original report but did not.

### III.   ARGUMENT

As Dr. Slottje recognizes on the first page of his "sur-rebuttal" report, the disclosure of Mr. Chan's opinions on non-infringing alternatives had "no effect" on

1  Dr. Slottje's "calculation" of damages from his original report. That should have
2  been the beginning and the end of Dr. Slottje's "sur-rebuttal." Instead, Dr. Slottje
3  used his sur-rebuttal to skirt the Court's ruling on "reasonableness checks,"
4  quantify assumptions he made in his original report, and perform a re-calculation of
5  lost profits that increases alleged lost profits by over ███████████.

### A. Dr. Slottje's New Opinions on Lost Profits Should Be Stricken.

In his original report, Dr. Slottje assumed that SS/L would have to build a non-infringing satellite (albeit one that he estimated to be only 32 Gbps). Dr. Slottje ackwnowledged that this could cause a ███████████████. And yet Dr. Slottje deliberately elected not to factor that delay into his lost profits analysis or to quantify the effects of any such delay. Similarly, Dr. Slottje failed to take into account the fact that ViaSat-1 ███████████, justifying his failure to do so in part by pointing to his so-called "conservative" assumption that there would be no launch delay for a non-infringing satellite. Dr. Slottje apparently regrets these choices and elected to use his rebuttal report as an opportunity to instead ███████████████████████████████████████████████████████████ as Dr. Slottje's "sur-rebuttal" candidly recognizes on the very first page, these changes are in no way necessitated by Mr. Chan's disclosure, which had "no effect" on Dr. Slottje's analysis. Ex. A at 2.

In its prior letter to the Court, ViaSat tried to paint Dr. Slottje's analysis not as a new lost profits opinion, but rather as an attempt to demonstrate that "ViaSat would still have tremendous leverage in the hypothetical negotiation even assuming – against all of the evidence – that these undisclosed and undocumented 'alternatives' were available." Dkt. 824-1 at 3. But the same dynamic would have been true for the 32 Gbps alternative satellite that Dr. Slottje addressed in his opening report—and yet he chose to nonetheless assume no delay and never quantified any lost profits during that period for ViaSat or any expected revenue for Hughes.

In truth, Dr. Slottje's opinions on delay and resulting lost profits to ViaSat are not an attempt to address the "hypothetical negotaition" for a reasonable royalty analysis in response to Mr. Chan's disclosure. Neither ViaSat nor Dr. Slottje can explain why re-calculating lost profits based on nine months of delay is necessary to justify Dr.Slottje's opinion that there would be no "downward adjustment" to his assumed ▮▮▮▮▮ (or why such delay was not factored into Dr. Slottje's original analysis). Instead, Dr. Slottje's new opinions are a thinly-veiled attempt to respond to SS/L's criticism of his lost profits analysis by (a) correcting his erroneous inclusion of ▮▮▮▮▮ and (b) quantifying the purportedly "conservative" nature of his prior lost profits number by comparison to his new and even higher number.

ViaSat has no explanation whatsoever how these lost profit opinions are responsive to Mr. Chan's disclosure, when Dr. Slottje himself admits on the first page of his "sur-rebuttal" that Mr. Chan's non-infringing alternatives had "no effect on the damages [he] calculated in [his] previous report." Ex. A at 2. Nor can ViaSat explain why these calculations could not have been included in Dr. Slottje's opening report, given his recognition at that time that a non-infringing satellite alternative could cause a two-to-three year delay.

### B. Dr. Slottje's New "Reasonableness Check" Should be Stricken.

Equally troubling is Dr. Slottje's attempt to inject yet another "reasonableness check" with an exceedingly high dollar amount of ▮▮▮▮▮ for the apparent purpose of getting around the Court's Order striking his other reasonableness checks.[4] ViaSat attempts to justify this opinion by arguing that the Court did not strike Dr. Slottje's other "reasonableness check" of an overall revenue figure. Dkt. 824-1 at 2-3. That is a misreading of the Court's Order.

---

[4] Moreover, the document Dr. Slottje relies on for this number is dated 2013. Hughes's expected revenue in 2013 is entirely irrelevant to a hypothetical negotiation that allegedly would have occurred in 2011. Ex. A at Attachment B.

SS/L moved to exclude all four of Dr. Slottje's reasonableness checks, including overall revenue. Dkt. 535-1 at 22 & 24. Although the Court only explicitly discussed three of Dr. Slottje's four checks, it recognized that "figures used as benchmarks for a reasonable royalty are admissible only if they are 'commensurate with what the <u>defendant has appropriated</u> . . . .'" Feb. 11, 2014 Order at 16 (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010)) (emphasis added); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011). The Court further acknowledged that "in *Uniloc*, the plaintiff sought to use a $19 billion <u>total revenue figure</u> as a similar check, but the court determined that the real purpose of the check was to 'lend[] legitimacy to the reasonableness of [the plaintiffs'] $565 million damages calculation." Feb. 11, 2014 Order at 16 (quoting *Uniloc*, 632 F.3d at 1231) (emphasis added). The Court's Order was clear that <u>all</u> of Dr. Slottje's "reasonableness checks" were stricken, including his overall "revenue" figure pursuant to *Uniloc*, 632 F.3d at 1231.

SS/L respectfully requests that Dr. Slottje's consideration of yet another "reasonableness check," this time in the form of Hughes' overall expected revenue during a so-called period of delay, should be stricken based on the Court's prior Order. This overall revenue number—which focuses on the value to Hughes and not to SS/L—is equally suspect under *Uniloc*, 632 F.3d at 1231, and subject to exclusion under Rule 403.

## IV.   CONCLUSION

This Court granted Dr. Slottje leave to address Mr. Chan's opinions on non-infringing alternatives. Dr. Slottje did so in recognizing that Mr. Chan's opinions should have had "no effect" on his damages calculation. The Court should reject ViaSat's attempt to nonetheless offer brand new lost profit opinions that entirely re-do Dr. Slottje's original analysis and attempt to reinject highly prejudicial "reasonableness checks" into the case that the Court previously excluded.

| | | |
|---|---|---|
| Dated: February 20, 2014 | By: | */s/ Amanda K. Bonn* |

Marc M. Seltzer
Amanda K. Bonn
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
Email: abonn@susmangodfrey.com

William Christopher Carmody
(Admitted *Pro Hac Vice*)
Jacob W. Buchdahl
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340

Joseph S. Grinstein
(Admitted *Pro Hac Vice*)
William R. H. Merrill
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  713-653-7856
Facsimile:   713-654-6666
Email: jgrinstein@susmangodfrey.com
Email: bmerrill@susmangodfrey.com

Ian B. Crosby
(Admitted *Pro Hac Vice*)
Rachel S. Black
(Admitted *Pro Hac Vice*)
Patrick C. Bageant
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3861

| | |
|---|---|
| 1 | Fax: (206) 516-3883 |
| 2 | Email: icrosby@susmangodfrey.com |
|   | Email: rblack@susmangodfrey.com |
| 3 | Email: pbageant@susmangodfrey.com |

*Attorneys for Defendants/Counterclaim Plaintiffs Space Systems/Loral, LLC (f/k/a Space Systems/Loral, Inc.) and Loral Space & Communications Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 20, 2014, I caused the foregoing **[PUBLIC-REDACTED] [PROPOSED] DEFENDANTS' MOTION TO STRIKE DR. SLOTTJE'S NEW OPINIONS** to be served on opposing counsel via the Court's CM/ECF system.

Dated: February 20, 2014            By:   */s/ Amanda K. Bonn*