William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:   (212) 336-8330
Facsimile:    (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:   (310) 789-3100
Facsimile:    (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., <br><br>                 Plaintiff, <br>        vs. <br><br> SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC., <br><br>                 Defendants/Counterclaim Plaintiffs. | Case No. 3:12-cv-00260-H-WVG <br><br> Hon. Marilyn L. Huff <br><br><br> **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT LORAL IS NOT LIABLE** <br><br> Date: March 25, 2014 <br> Time: 9:00 a.m. <br> Place: Courtroom 15A |

1
2
3
4
5

Pursuant to F.R.C.P. 50, Defendants Space Systems/Loral, LLC, and Loral Space & Communications, Inc., move for judgment as a matter of law that ViaSat has failed to establish any liability on the part of Loral.[1]  Loral's involvement in this litigation has always been tenuous, but the evidence presented at trial confirms that ViaSat has no viable theory against Loral.

6
7
8
9
10
11

The Court has already dismissed ViaSat's claims that Loral is liable under an alter ego theory, along with ViaSat's claims for direct infringement by Loral as to the Jupiter-1 satellite.  Doc. No. 41.  ViaSat's claims against Loral are thus limited to: (1) indirect infringement as to Jupiter-1; (2) direct and indirect infringement as to the NBN satellites; and (3) ViaSat's claim for breach of the January 28, 2008 NDA between ViaSat and Loral.

12

## I.     LEGAL STANDARD

13
14
15
16

The Court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," Fed. R. Civ. P. 50(a).

17

## II.     INDUCEMENT LIABILITY AS TO JUPITER-1

18
19
20
21

35 U.S.C. 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  The term "actively" means that "the inducement must involve the taking of affirmative steps to bring about the desired result." *Commil USA, LLC v. Cisco Sys., Inc.*, 737 F.3d 699 (Fed. Cir. 2013).  The

22
23
24

---

[1] Defendants do not waive any other motions for judgment as a matter of law they may file before the close of evidence in accordance with F.R.C.P. 50(a). The arguments raised in this motion are not meant imply that arguments raised in other motions would not also relieve Loral of any liability.

"specific intent necessary to induce infringement 'requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement.'" *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1354 (Fed. Cir. 2008) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc)). The Supreme Court has recently held that, to satisfy that standard, the plaintiff must either show actual knowledge of the patent or willful blindness to its existence, a standard that "surpasses recklessness and negligence." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011). There is no evidence that Loral actively induced SS/L (or Hughes, for that matter) to infringe ViaSat's patents, nor that Loral even knew of ViaSat's patents until this lawsuit was filed.

As to every element of inducement liability, ViaSat has failed to provide sufficient evidence to support a jury verdict in ViaSat's favor. Indeed, Loral's awareness of—let alone involvement in—any aspect of the Jupiter-1 program at any time after the issuance of the patents is wholly unsubstantiated. The Court has recognized the Federal Circuit's clear admonition that "as a matter of law § 271(b) does not reach actions taken before issuance of the adverse patent." *Nat'l Presto Indus. v. W. Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996). And the earliest issuance date for the patents-in-suit is August 2011. (V-1291). Any involvement by Loral in the Jupiter-1 program prior to the issuance of any of the patents is thus irrelevant as a matter of law to the inducement analysis.

At most, Loral's involvement in the Jupiter-1 program culminated with the signing of the Build Contract between Hughes and SS/L in June 2009. (V-791). ViaSat might make much of the fact that Loral served as the Guarantor for SS/L's

1   financial obligations under the Hughes contract.  (V-791).  The Guaranty, however,

2   is also from June 2009 and again irrelevant for purposes of proving inducement.

3   The fact that Loral did not attempt to rescind the Guaranty or otherwise try to stop

4   SS/L from building the Jupiter-1 satellite <u>after</u> ViaSat's patents issues is also

5   insufficient to prove inducement.  *See A. Stucki Co. v. Worthington Indus., Inc.*, 849

6   F.2d 593, 596-97 & n.2 (Fed. Cir. 1988) (mere "failure to stop" alleged

7   infringement by subsidiary inadequate as a matter of law to establish direct liability

8   or inducement liability of parent company).

9        ViaSat has not even introduced evidence that Loral was aware of ViaSat's

10  patents prior to the filing of this lawsuit.  As courts within the Ninth Circuit have

11  held, "'knowledge after filing of the present action is not sufficient for pleading the

12  requisite knowledge for indirect infringement.'" *Proxyconn Inc. v. Microsoft Corp.*,

13  No. SACV 11-1681 DOC (ANx), 2012 WL 1835680, at*6 (C.D. Cal. May 16,

14  2012) (internal quotation marks and citation omitted).

15       In any event, ViaSat's only evidence post-dating the issuance of the ViaSat

16  patents (which, again, post-dates the filing of this lawsuit) shows that Loral had no

17  specific intent to infringe or to induce infringement of ViaSat IP.  In V-1050, for

18  example, Mr. Targoff wrote in a February 2012 email to the Loral Board (just after

19  this lawsuit was filed): "we believed those issues [regarding IP disputes related to

20  the Jupiter-1 sale] had been resolved from a legal perspective and our total focus

21  has been on finding a path to go forward and continue to do business with them on

22  their future requirements."  Mr. Targoff goes on to say "I have not been under a

23  serious concern prior to the lawsuit that Viasat had meritorious claims in this regard

24  that would impose a material risk to SS/L."  This email unequivocally shows that,

1   by the time ViaSat's patents issued, Loral either believed any issues with ViaSat IP

2   were resolved or at least believed that the Jupiter-1 satellite did not infringe any

3   valid ViaSat patent.  *Cf. Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361,

4   1367-68 (Fed. Cir. 2013) (good faith belief of non-infringement or invalidity may

5   negate specific intent necessary for inducement).

6          These examples are indicative of the lack of any relevant evidence from

7   which the jury could conclude Loral actively aided any infringement of ViaSat's

8   patents after they issued.

9                     **III.   INFRINGEMENT AS TO NBN SATELLITES**

10          There is no dispute that Loral did not make or use the NBN satellites, leaving

11   the alleged "sale" or "offer to sell" the satellites as the only basis for direct

12   infringement by Loral.  The sale to NBN, however, was made by SS/L, not Loral.

13   Loral could not make the sale merely by virtue of being SS/L's parent company.

14   Neither is there any evidence that Loral made such a sale or offer for sale, even if it

15   could.

16          The Federal Circuit has made clear that these provisions of 35 U.S.C. §

17   271(a) should be given their ordinary meaning in contract law.  *Rotec Indus., Inc. v.*

18   *Mitsubishi Corp.*, 215 F.3d 1246, 1255-56 (Fed. Cir. 2005); *see id.* at 1256 n.5

19   (citing the Restatement and U.C.C. as authoritative sources for meaning of the term

20   "sale").  Under UCC 2-106, a sale "consists in the passing of title from the seller to

21   the buyer for a price"; no title passed between Loral and NBN, and Loral could not

22   make an offer for such passage of title either.  For ViaSat to argue otherwise would

23   simply return to the alter ego theories of liability which the Court has already

24   dismissed.  Doc. No. 41.

As to inducement, ViaSat has again introduced no evidence of Loral's specific intent to aid infringement.  There is no evidence in the record that would support a similar Guaranty argument to that made by ViaSat as to Jupiter-1, and in any event such a Guaranty does not constitute sufficient evidence of inducement for the reasons discussed above.  And there is, again, no evidence that Loral even knew ViaSat's patents had issued before this lawsuit commenced. *Proxyconn*, 2012 WL 1835680, at *6.

## IV.   WILLFUL INFRINGEMENT

ViaSat has failed to meet both the objective and subjective prongs of the willfulness test.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012); *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007).  Defendants incorporate by reference their separate motion for a judgment as a matter of law that neither SS/L nor Loral willfully infringed any of ViaSat's patents.  Defendants' position is briefly summarized below.

As to the objective portion of the test, Defendants' substantial defenses preclude a finding of willful infringement.  There can be no willful infringement where a "reasonable litigant could realistically expect" to succeed on defenses of non-infringement or invalidity.  *Id.* at 1008.  As to the subjective portion, many of the same arguments undermining the notion that Defendants had a specific intent to induce infringement also prevent a finding of willful infringement.  So too does Defendants' reasonable belief that ViaSat waived any intellectual property protection to the extent SS/L was working to satisfy another customer's requirements.  *See* V-291, V-398.

## V.   BREACH OF LORAL NDA

ViaSat also has no evidence that Loral breached its January 28, 2008 NDA with ViaSat.  (V-1265).  Indeed, there is scant evidence that Loral even received ViaSat proprietary information.  There is also no evidence in the record that anyone at Loral even interfaced with anyone at Hughes, let alone disclosed proprietary information to anyone at Hughes.

The best indication of ViaSat's complete lack of evidence as to breach of the Loral NDA was ViaSat's insistence on questioning Mr. Targoff about irrelevant and highly prejudicial evidence from 2008.  V-1046, V-1047.  These documents, reflecting Mr. Targoff's discussions about a potential Loral investment in the ViaSat project with another Loral employee (Mr. Currier), simply are not probative of whether Loral breached any non-disclosure agreements with ViaSat by disclosing alleged proprietary information to Hughes or NBN.  Because ViaSat lacks any actual evidence of breach, it must turn to evidence that, at most, serves as evidence of "bad acts" unrelated to the allegations of breach actually at issue in the case.  This is insufficient as a matter of law to establish liability for breach of contract.[2]

## VI.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter judgment as a matter of law against ViaSat on all of its claims against Loral.

---

[2] ViaSat also acknowledges that Loral is not a signatory to the January 2008 Build Contract between ViaSat and Loral, and so ViaSat's more expansive arguments under Article 39 of the Build contract do not apply to Loral.  ViaSat also has not alleged separate claims against Loral based on some sort of inducement for SS/L to breach its contractual obligations.

Dated: April 9, 2014          By:    /s/ Mark Musico

Marc M. Seltzer
Amanda K. Bonn
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
Email: abonn@susmangodfrey.com

William Christopher Carmody
(Admitted *Pro Hac Vice*)
Jacob W. Buchdahl
(Admitted *Pro Hac Vice*)
Mark Musico
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340

Joseph S. Grinstein
(Admitted *Pro Hac Vice*)
William R. H. Merrill
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  713-653-7856
Facsimile:   713-654-6666
Email: jgrinstein@susmangodfrey.com
Email: bmerrill@susmangodfrey.com

Ian B. Crosby
(Admitted *Pro Hac Vice*)
Rachel S. Black
(Admitted *Pro Hac Vice*)
Patrick C. Bageant
SUSMAN GODFREY L.L.P.

1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3861
Fax: (206) 516-3883
Email: icrosby@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: pbageant@susmangodfrey.com

*Attorneys for Defendants/Counterclaim
Plaintiffs Space Systems/Loral, LLC (f/k/a
Space Systems/Loral, Inc.) and Loral Space
& Communications Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 9, 2014, I caused the foregoing **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT LORAL IS NOT LIABLE** to be served on opposing counsel via the Court's CM/ECF system.


Dated: April 9, 2014                    By:   */s/ Mark Musico*_____