Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:   (310) 789-3100
Facsimile:   (310) 789-3150
Email:       mseltzer@susmangodfrey.com

William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:   (212) 336-8330
Facsimile:   (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

[Additional counsel listed below signature line.]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> *vs.* <br><br> SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC., <br><br> Defendants. | Case No. 3:12-cv-00260-H-WVG <br> Hon. Marilyn L. Huff <br><br> **DEFENDANTS' RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW ON NON-INFRINGEMENT** <br><br> Date: April 10, 2014 <br> Time: 9:00 a.m. <br> Place: Courtroom 15A |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  LEGAL STANDARD ................................................................................1

III. ARGUMENT ..............................................................................................2

  A. SS/L Does Not Infringe the '875 Patent. ..............................................3

    1. All of the Proximate Gateway and User Beams in the Jupiter-1
       Satellite System Share a "Same" Color, which Negates
       Infringement as a Matter of Law. .......................................................3

    2. Jupiter-1 Does not "Allocate" Colors, which Claims 1 and 12 of
       the '875 Patent Require. ......................................................................6

    3. ViaSat has Failed to Present Evidence Sufficient for a
       Reasonable Juror to Find By a Preponderance of the Evidence
       on the Remaining Claim Elements. ....................................................7

  B. SS/L Does Not Infringe the '827 Patent. ..............................................8

    1. Claim 7. ...............................................................................................8

    2. ViaSat has Failed to Present Evidence Sufficient for a
       Reasonable Juror by a Preponderance of the Evidence on the
       Remaining Claim Elements. ..............................................................11

  C. SS/L Does Not Infringe the '043 Patent. ............................................12

    1. Claims 1 and 3 of the '043 Patent. ...................................................12

      a. Beam Spacing. ................................................................................13

      b. Number of Colors. ..........................................................................15

    2. Claims 7 and 8. .................................................................................17

      a.  ViaSat has Failed to Present Evidence Sufficient for a Reasonable Juror to Find by a Preponderance of the Evidence on the Remaining Claim Elements. ...............................................18

**D. Territoriality.**...........................................................................**19**

**E. Indirect and Contributory Infringement.**............................................**20**

**F. Doctrine of Equivalents.** ...........................................................**21**

**G. The Un-Asserted Claims, and the '942 Patent.**....................................**22**

**IV.   CONLUSION** ........................................................................**23**

# TABLE OF AUTHORITIES

## Cases

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*,
   501 F.3d 1307 (Fed. Cir. 2007) ................................................................20

*Advance Transformer Co. v. Levinson*,
   837 F.2d 1080 (Fed. Cir. 1988) .........................................................22, 23

*Centricut, LLC v. Esab Group, Inc.*,
   390 F.3d 1361 (Fed. Cir. 2005) ..................................................................2

*Ford v. Cimarron Ins. Co.*,
   230 F.3d 828 (5th Cir. 2000) ......................................................................1

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ................................................................20

*Hagan v. Echostar Satellite, L.L.C.*,
   529 F.3d 617 (5th Cir. 2008) ......................................................................2

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
   450 F.3d 1350 (Fed. Cir. 2006) ..................................................................2

*Kim v. ConAgra Foods, Inc.*,
   465 F.3d 1312 (Fed. Cir. 2006) ................................................................13

*Kim v. ConAgra Foods, Inc.*,
   465 F.3d 1312, 1316 (Fed. Cir. 2006) ........................................................5

*Microsoft Corp. v. AT & T Corp.*,
   127 S. Ct. 1746 (U.S. 2007) ......................................................................19

*Nomos Corp. v. Brainlab USA, Inc.*,
    357 F.3d 1364 (Fed. Cir. 2004) ........................................................................2

*Southwest Efuel Network, LLC v. Transaction Tracking Techs., Inc.*,
    No. 2:07-cv-311 (E.D. Tex. Jan. 13, 2010) ......................................................2

*Summit Tech, Inc. v. Nidek Co.*,
    363 F.3d 1219 (Fed. Cir. 2004) ........................................................................1

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ...................................................................21, 22

*TGIP, Inc. v. AT&T Corp.*,
    527 F. Supp. 2d. 561 (E.D. Tex. 2007) .............................................................2

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ............................................................................................2

**Statutes**

35 U.S.C.A. § 271 .............................................................................................19

**Rules**

Fed. R. Civ. P. 50 ..........................................................................................1, 5

# I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50, defendants Space Systems, Loral, LLC and Loral Space & Communications, Inc., ("SS/L") hereby move the Court for entry of judgment as a matter of law on non-infringement in their favor.

ViaSat, Inc. ("ViaSat") asserts that SS/L infringes claims 1 and 12 of the '875 patent, claims 7 and 8 of the '827 patent, and claims 1, 3, and 7 of the '043 patent, but ViaSat has not carried its burden of proof as to these claims. Because there is no legally sufficient evidentiary basis for a reasonable jury to find that any of SS/L's accused products meet each and every claim limitation of the asserted claims, SS/L is entitled to judgment as a matter of law.

# II.     LEGAL STANDARD

The "grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Summit Tech, Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) (internal quotations omitted). Judgment as a matter of law is appropriate when a party has been fully heard on an issue and "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed. R. Civ. P. 50(a). To avoid judgment as a matter of law, the non-moving party must set forth "substantial evidence" on each claim or issue. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D.

Tex. 2007). "A mere scintilla is insufficient to present a question for the jury." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 622 (5th Cir. 2008).

Because each element contained in a patent claim is deemed material to defining the scope of the patented invention, to prove infringement, it is Plaintiff's burden to prove by a preponderance of the evidence that Defendants' accused products contain every limitation in the asserted claims. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *see also Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1357-58 (Fed. Cir. 2006); *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2005). "[F]ailure to meet a single limitation is sufficient to negate infringement of the claim. . . ." *Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1367 n.1 (Fed. Cir. 2004) (citation omitted). Where, as here, the patentee fails to present the jury with evidence of infringement, judgment as a matter of law is appropriate. *Southwest Efuel Network, LLC v. Transaction Tracking Techs., Inc.*, No. 2:07-cv-311 (E.D. Tex. Jan. 13, 2010).

## III.   ARGUMENT

As a threshold matter, there can be no infringement of the '875, '827, or '043 patents prior to the launch of the satellites because each patent reads on how a satellite functions or what a satellite does <u>in operation</u>. S-81; V-1290; V-1289. Setting that aside, the trial evidence shows SS/L does not infringe the '875, '827, or '043 patents for the additional reasons set forth below.

1

**A.      SS/L Does Not Infringe the '875 Patent.**

2

      *1.      All of the Proximate Gateway and User Beams in the Jupiter-1*
                *Satellite System Share a "Same" Color, which Negates*
                *Infringement as a Matter of Law.*

3

4

     The claims of the '875 patent <u>require</u> gateway beams that are proximate to

5

user beams, as well as gateway beams that are <u>not</u> proximate to user beams. V-

6

1291. They further require that the gateway beams that are proximate to user

7

beams cannot share a same color as the user beams to which they are proximate.

8

*Id*. The Court has ruled that "proximate" means "at least partially overlapping, such

9

that color re-use among the beams is not permitted." Doc. No. 206 at 8.

10

     The proximate gateway and user beams in the Jupiter-1 satellite system are

11

those identified in red below:

12



13

14

15

16

17

18

19

20

21

22

23

24

*See*, e.g., Ex. V-240; April 7, 2014, Tr. T. at 1982-84. Thus, under the claim language of the '875 patent, Jupiter-1 cannot infringe if—for each proximate gateway and user beam identified above—the gateway shares a color with the proximate user beam. *E.g.*, April 7, 2014, Tr. T. at 1970.

They do. For example, Dr. Helgert testified, based upon the Jupiter-1 technical design documents (e.g., Ex. V-240), that the proximate gateway and user beams in the Jupiter-1 satellite system <u>do</u> share a color:

> Q: So these overlapping gateway and user beams are using the same colors, sir?
>
> A: That's correct.
>
> Q: Wouldn't these beams interfere?
>
> A: Yes, they would.
>
> Q: Wouldn't that be a problem?
>
> A: It would be a problem unless you did something about it, and what you have to do basically has to be done on the ground. . . .
>
> Q: Professor Helgert, is that the way that the Jupiter satellite system avoids interference?
>
> A: Well, the Jupiter satellite system plays absolutely no role in any of this because it is a fixed constellation. It doesn't know whether you transmitted in FB2 or not. It doesn't change its behavior when you transmit in FB2 or when you [do] not transmit in FB2. So this entire interference prevention is done on the ground and is, therefore, not germane to the patent, which is purely a satellite patent.
>
> Q: Well, how about how the patent solve interference, is this -- the solution you just described on the ground, is that the idea taught in claim one of the '875 patent?
>
> A: The '875 patent teaches the idea that there not be any overlap period in the whole design of the system.
>
> Q: Wen you say overlap in the whole design of the system what do you mean sir? Do you mean that there'd be -- well –

A: It means simply that when you have overlapping gateway and user beams, you do not transmit the same colors. That's what the patent demands.

Q: I see. Thank you. So what's your ultimate conclusion on claim one of the '875 patent? Does the Jupiter-1 satellite infringe that claim?

A: My conclusion is it does not.

Q: And why is that?

A: Simply because it does not satisfy the requirement that when you have overlapping gateway and user beams, it uses different colors. It uses the same color as we just demonstrated here.

Q: And is that true of every overlapping gateway and user beam in the Jupiter-1 satellite system?

A: Yes. If you look at the beam plan for Jupiter-1, then you'll find that there are five gateways, and these five gateways overlap with three user beams. So there is a certain number of combinations of gateways and user beams that have this overlap situation.

Q: And in every case is there a shared color between the two of them?

A: Yes. In every case there is a shared color between the two of them.

April 7, 2014, Tr. T. at 1979-81. That disposes of any potential jury finding of infringement of claim 1 of the '875 patent, and entitles SS/L to judgment as a matter of law under Rule 50.

Dr. Helgert's infringement analysis applies to claim 12 as well. It is black-letter law that if an independent claim is not infringed, then a dependent claim cannot be infringed as a matter of law. *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims are not infringed when independent claim not infringed). And that is the case here:

Q: Is it your understanding that Claim 12 is also a dependent claim?

A: Yes. It's my understanding that claim 12 depends on claim one and that because of that, claim 12 could not be infringed if claim one was not infringed. . . .

*Id.* at 1981-82; see also V-1291.

Further, ViaSat's expert, Dr. Bartone, did not identify sufficient evidence to support ViaSat's infringement allegation. For example, he did not identify a set of beam colors that comply with the purported teachings of the '875 patent or provide any support for his proposed color assignment, which would be required to show infringement. The coloring scheme discussed by Dr. Helgert, however, showed the Jupiter-1 satellite does not comply with the limitation of Claim 12 that "the second at least one feeder beam is allocated all of the colors of the beam pattern" because it would not be allocated any of the service beam colors, and therefore Jupiter-1 does not infringe Claim 12 for this additional reason.

No reasonable juror looking at these facts could conclude that the Jupiter-1 satellite infringes claims 1 or 12 of the '875 patent. The patent undisputedly requires that proximate gateway and user beams be allocated <u>different</u> colors, yet the Jupiter-1 beam plan and Dr. Helgert's testimony plainly show that—for Jupiter-1—the proximate gateway and user beams are allocated a <u>same</u> color. V-1291; *see also, e.g.*, April 7, 2014, Tr. T. at 1980-81. SS/L is therefore entitled to judgment as a matter of law.

### 2. *Jupiter-1 Does not "Allocate" Colors, which Claims 1 and 12 of the '875 Patent Require.*

Claim 1 of the '875 patent claims a "satellite" wherein colors are "allocated" to spot beams. V-1291. But the uncontroverted facts at trial show that Jupiter-1 is

a bent-pipe satellite, which is to say that it does no processing or assigning of frequencies or colors to beams in orbit. Any "allocation" of colors aboard the Jupiter-1 satellite is done either by the FCC prior to licensing, or by design engineers prior to manufacture. Once that subjective design process is complete the allocation is "fixed" and immutable. April 7, 2014, Tr. T. at 1973-75. A reasonable jury, looking at these facts, cannot conclude that the Juptier-1 satellite "allocates" colors; a point upon which infringement of the '875 patent depends and upon which SS/L is therefore entitled to judgment as a matter of law.

### 3.  *ViaSat has Failed to Present Evidence Sufficient for a Reasonable Juror to Find By a Preponderance of the Evidence on the Remaining Claim Elements.*

ViaSat has failed to carry its burden of proof with respect to the remaining elements of claims 1 and 12 of the '875 patent. As to claim 1, ViaSat has failed to produce sufficient evidence to show that Jupiter-1 meets each claim limitation.

As an example, as to claim 1, ViaSat's expert, Dr. Bartone, offered no testimony on the "antenna" element or how Jupiter-1 is actually "configured to receive" signals from feeder and user terminals. April 2, 2014, Tr. T. at 1485-87. As to the second limitation, he offered no evidence that the coverage areas are "proximate" to each other within the meaning of this Court's claim construction. April 2, 2014, Tr. T. at 1486-87. The same is true for his discussion of the second element's requirement that beams not be proximate. April 3, 2014, Tr. T. at 1529-40. As to claim 12, Dr. Bartone testified to "groupings" of feeder beams— terminology that is not within the claim—but did not offer testimony as to what is in the claim: a satellite "configured to receive" data from proximate and non-

proximate user and feeder beams. April 2, 2014, Tr. T. at 1481-1483. He offered no testimony about the actual configuration of the satellite at all. *Id*. Nor did he offer evidence to show that the "at least one feeder beam is allocated all of the colors of the beam pattern" as the claim required. He merely announced it. *Id*.

**B.     SS/L Does Not Infringe the '827 Patent.**

>    *1.     Claim 7.*

No reasonable juror could review the facts in evidence and conclude that SS/L infringes the '827 patent, because it is beyond serious dispute that the Jupiter-1 satellite does not include a switch configured to operate based on the presence or absence of interference information—ViaSat's expert testified only to commands sent to the satellite, and not to "circuitry" on the satellite as the patent requires.

Claim 7 of the '827 patent requires that the satellite be equipped with "circuitry configured to" operate "based on information indicating a presence or an absence of an interference situation with an NGSO satellite system." V-1290. In its claim construction order (Doc. 206 at 21) the Court identified the patent's specification as setting forth the types of information that constitute "information indicating a presence or an absence of an interference situation." *Id*. citing '827 col. 8:1-60 (explaining that "the interference severity can be measured using RF equipment, estimated using known data, or simulated using known simulation models."). *See also* April 7, 2014, Tr. T. at 1985-86.

Dr. Helgert's testimony and the Jupiter-1 design documents show that <u>none</u> of this information is present on the Jupiter-1 satellite, nor is any of the Jupiter-1 circuitry configured to operate "based on" it:

Q: What type of switch does Jupiter-1 have?

A: Jupiter-1 is a simple on/off switch, and we can see that in the diagram that is shown here on the slide which happens to be gateway four, but similar diagrams area available for other kinds of gateways and other situations.

Q: Does this diagram sort of represent any information that indicates the presence or absence of an interference situation with an NGSO satellite?

A: Well, if we look to the switch, which is indicated there in yellow and shown as a kind of baseball as a witness called it the other day, yesterday I guess, we see what that switch does is something very simple. It is basically a toggle switch. It can switch to one position where it allows the passing of energy that is within the NGSO band, and then it can switch to the opposite direction where it blocks the transmission of the energy in the NGSO band. So it's that simple toggle back and forth, and there is nowhere in that entire circuit diagram where there is any indication of why that switching is being done. So the satellite itself has no idea why a particular switch flips to one side or the other and plays absolutely no role in that decision.

Q: Well, then does this circuitry infringe claim seven of the '827 patent?

A: It does not, and the reason it does not is because the switches don't switch based on the presence or absence of an interference situation.

April 7, 2014, Tr. T. at 1988-89. Indeed, it bears noting that the ViaSat's best evidence on this is a mere letter of _intent_ Hughes sent to the FCC four years before Jupiter-1 was even launched—not the _actual design documents_ that describe the actual, launched satellite. Similarly, ViaSat's expert, Mr. Sturza, implied that Juptier-1 infringes because it _could_ be programmed to operate dynamically in response to interference information—but that testimony amounts only to testimony that Juipter-1 might infringe under a configuration different than the one

1   it has. This does not carry ViaSat's burden of proof on actual infringement of the

2   current configuration.[1]

3       More fundamentally, the fatal flaw in ViaSat's infringement analysis is that

4   Juptier-1 is not configured for "dynamic switching," which ViaSat concedes the

5   '827 patent claims. Jupiter-1 is not equipped with hardware capable of repeated

6   on/off switching and includes no redundancy or back-up switching mechanism to

7   act as a contingency in the event its switch fails. April 7, Tr. T. at 1989-1993.

8   Fundamentally, as recognized by Mr. Sturza, the '827 claims a switch with

9   circuitry that operates at a higher level of complexity than what is aboard Jupiter-1.

10      No reasonable juror could review that testimony and the Jupiter-1 design

11  documents and conclude that they somehow describe circuitry that is in fact

12  entirely absent from those documents or the satellite—there is nothing in evidence

13  to suggest that Jupiter-1's NGSO switch is configured to operate "based on" the

14  type of information the '827 patent identifies, because it is not. *Id.*

15      In fact, there is no evidence in the record that Juptier-1 switches "based on"

16  anything at all—the evidence shows that Jupier-1 has a switch that can be activated

17  for any reason at all. April 7, 2014, Tr. T. at 1988-89. It does not "select" (to use

18  the Court's claim construction language, Doc. No. 206) "based on" anything—it

19

20  ――――――――――――――

21      [1] In addition, the circuitry on the Jupiter-1 satellite does not "establish an
    activated frequency mode to activate one of a GSO frequency band mode and an

22  extended frequency spectrum mode" because the GSO frequency spectrum is
    never activated or deactivated. Instead Jupiter-1 only activates or deactivates an

23  NGSO frequency band in addition to the GSO frequency spectrum (which is
    always active). *See* April 7, Tr. T. at 1985.

24

merely operates whenever a person on the ground tells it to, and for whatever reason the person on the ground decides to send the instruction. April 7, 2014, Tr. T. at 1988-89. No reasonable jury could conclude that this design is "circuitry configured to" operate "based on the presence or absence" of actual information. SS/L is therefore entitled to judgment as a matter of law as to non-infringement of claim 7.

> **2.    ViaSat has Failed to Present Evidence Sufficient for a Reasonable Juror by a Preponderance of the Evidence on the Remaining Claim Elements.**

ViaSat has failed to carry its burden of proof with respect to the remaining elements of claims 7 and 8 of the '827 patent. As to those claims, ViaSat has failed to produce sufficient evidence to show that Jupiter-1 meets each claim limitation. [2]

For example, as to the first limitation, ViaSat's expert, Mr. Sturza, did not put on any evidence of the "receiver" or how it is actually configured to receive in the GSO band and the extended frequency spectrum. April 3, 2014, Tr. T. at 1677-78. As to the second limitation, he did not explain where the circuitry "configured" to "activate" actually was in the Jupiter-1 design documents—he identified a "switch" but no circuitry that acts upon the switch. April 3, 2014, Tr. T. at 1677-79. And as to the third limitation, he offered no testimony about the actual

---

[2] ViaSat has purported to assert infringement of claim 8 but it offered no evidence of infringement of any element of that claim at all; this is a clear failure of proof that warrants judgment as a matter of law in SS/L's favor on this claim. *See* April 3, 2014, Tr. T. at 1677-80.

"transmitter" that transmits in the "GSO frequency band" or in the "NGSO frequency spectrum." April 3, 2014, Tr. T. at 1680.

## C.    SS/L Does Not Infringe the '043 Patent.

There are a multitude of reasons that no reasonable juror could conclude that SS/L infringes the '043 patent but the most fundamental is that ViaSat's own infringement data proves it: no reasonable juror, reviewing ViaSat's own evidence and the testimony in this case, could arrive at any other conclusion.

### 1.    *Claims 1 and 3 of the '043 Patent.*

Claim 1 of the '043 patent requires that a satellite be operated to "maximize" capacity by using a beam pattern with "a specific number of color(s)" and "specific beam spacing that results in higher data-carrying capacity" than is "achieved with other alternative numbers of color(s) of frequency and polarization <u>and</u> beam spacings."[3] V-1289 (emphasis added). Under the plain language of the patent's claim—i.e., the "and" emphasized above—that means that the satellite must "maximize" capacity in light of both variables: number of colors, <u>and</u> beam spacing. April 6, 2014, Tr. T. at 1731; April 7, 2014, Tr. T. at 1995-97. ViaSat's infringement claim fails because the SS/L satellites fail to maximize under either variable—that is, even if the "and" meant "or" (as ViaSat has occasionally

---

[3] Claim 1 also requires that "the first spot beam as sent to at least one of the first plurality of subscriber terminals is affected by interference from other signal sources including the second spot beam at a signal-to-interference ratio C/I." ViaSat's expert provided no evidence of interference from other signal sources, that <u>include</u> "the second spot beam" which "illuminates a second region...adjacent to the first region...whereby the first and second regions overlap." This is also a failure of proof on claim 1.

suggested during this trial) SS/L still would not infringe because its satellite do not maximize over <u>either</u> variable.[4] *See* April 7, 2014, Tr. T. at 1996-97; April 6, 2014, Tr. T. at 1733 ("Q: Mr. Sturza, your analysis did not show that Jupiter-1 had a maximum of capacity by adjusting <u>both</u> the number of colors <u>and</u> beam spacing, correct? A: That's correct.") (emphasis added).

a.    <em>Beam Spacing.</em>

No reasonable juror could look at the evidence ViaSat has put forward in this case and conclude that the Jupiter satellite—the beam spacing of which is measured at -3.5 dB—maximizes capacity over alternate beam spacings. That is because ViaSat's own model proves that the beam spacing Jupiter-1 has results in less capacity than other beam spacings with which it could be configured:




| Beam Spacing (dB) | 4 Color Capacity |
|---|---|
| -0.5 | 0.0558 |
| -1 | 0.2772 |
| -1.5 | 0.4338 |
| -2 | 0.5024 |
| -2.5 | 0.5199 |
| -3 | 0.5178 |
| -3.5 | 0.5178 |
| -4 | 0.5159 |
| -4.5 | 0.516 |
| -5 | 0.5128 |
| -5.5 | 0.5057 |
| -6 | 0.5009 |
| -6.5 | 0.4919 |
| -7 | 0.4917 |
| -7.5 | 0.4864 |
| -8 | 0.4743 |
| -8.5 | 0.449 |
| -9 | 0.4425 |
| -9.5 | 0.4376 |

*Ex. V-1811*
*Ex. V-1849*

---

[4] Claim 3 is not infringed for the same reason. *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312 (Fed. Cir. 2006) (dependent claims are not infringed when independent claim not infringed).

Q: Okay. So going back to this model, you were testifying what this graph depicts moving from the left to the right. Can you explain that?

A: Yes. It depicts the average capacity that is achieved as a function of the separation of the beams shown on the horizontal scale.

Q: And can you explain to the jury where the maximum capacity is?

A: Looking at the graph, as well as looking at the table, it appears that the -- in fact, it's certain that the maximum occurs at a beam spacing of minus 2.5, and its value is at .5199.

Q: How do you know that that's the maximum capacity?

A: Again, I can look at the graph, and I see that the red dot there is the peak of the whole curve, but I can also look at the table and see that there is no number in the table for any of the other beam spacings that's bigger than .5199.

Q: So .5199 is the highest capacity on the table?

A: That's exactly right.

Q: Where's the Jupiter-1 satellite?

A: The Jupiter-1 satellite operates at a beam spacing of minus 3.5 DB. That is to say, it's separated by one DB from the minus 2.5 DB level.

April 7, 2014, Tr. T. at 2004-05.

On these facts the only way to conclude that Jupiter "maximizes" capacity is by contradicting basic facts about math: no reasonable juror could dispute that .5199 is not .5178. And no reasonable juror could conclude that those numbers are the same without violating immutable rules about how numbers work.

Indeed, ViaSat's only response to this argument is its expert's testimony that the model he created has "fidelity" only to two decimal places—that is, ViaSat has asked the jury to "round" the numbers and to keep rounding them until .5199 and

1    .5178 turn into the same thing. There is no basis in logic or reason to round these

2    numbers—ViaSat's expert announced that his tool's "fidelity" for the first time at

3    his deposition and, as Dr. Helgert pointed out:

> A. Well, you can round off to anything you like. If you [r]ound off, let's say, to one decimal digit, then you have a whole series of beam spacings that give you the same answer. For example, all the way down to -- oh, my goodness, it does down to maybe minus seven DB and all the way up to minus two DB. So, rounding off, you can manipulate the data to prove anything. What you really have to do is look at the data, and the data clearly shows that .5178, which is the Jupiter operating point, is less than .5199. And so Jupiter, therefore, does not operate at its maximum value, even for a four color system.

10   April 7, 2014, Tr. T. at 2005. In other words, to determine infringement the jury

11   must look at the facts and data—not change them. And any reasonable juror who

12   does must conclude that SS/L does not infringe the '043 patent.

13                    *b.    Number of Colors.*

14        Nor could any reasonable juror conclude that Jupiter-1 is configured to

15   maximize capacity across alternate numbers of colors. Again, even ViaSat's own

16   evidence proves it. Dr. Helgert, charting ViaSat's expert's tool and data, showed

17   that if Jupiter-1 were configured with three colors instead of four, it would achieve

18   higher data-carrying capacity:

| Beam Spacing (dB) | 4 Color Capacity | 3 Color Capacity |
|---|---|---|
| -0.5 | 0.0558 | 0 |
| -1 | 0.2772 | 0.1962 |
| -1.5 | 0.4338 | 0.37 |
| -2 | 0.5024 | 0.4935 |
| -2.5 | 0.5199 | 0.5387 |
| -3 | 0.5178 | 0.5691 |
| -3.5 | 0.5178 | 0.5738 |
| -4 | 0.5159 | 0.5764 |
| -4.5 | 0.516 | 0.575 |
| -5 | 0.5128 | 0.5719 |
| -5.5 | 0.5057 | 0.5441 |
| -6 | 0.5009 | 0.5347 |
| -6.5 | 0.4919 | 0.5288 |
| -7 | 0.4917 | 0.5279 |
| -7.5 | 0.4864 | 0.5201 |
| -8 | 0.4743 | 0.5197 |
| -8.5 | 0.449 | 0.5043 |
| -9 | 0.4425 | 0.5036 |
| -9.5 | 0.4376 | 0.4883 |

Q: We have been talking about beam spacing, but let's move to number of colors. Does Jupiter-1 in your opinion maximize capacity over alternate number of colors?

A: No, it does not.

. . . .

Q: Okay, can you tell us what this green line represents?

A: Yes. The green line is a plot of the results that were obtained again from Mr. Sturza's model by making one simple change, and that change is from a four color system to a three color system.

. . .

Q: Now, what does this -- what does this tell you about alternate numbers of colors and maximum capacity with respect to the Jupiter-1 satellite?

A: I think it demonstrates unambiguously that if you go to a three color system, then the average capacity is higher than if you [use] a four color system for certain ranges of beam spacing. . . . And so that tells me that Jupiter could have achieved a even higher capacity by going to a three color system rather than a four color system. And it again shows to me unambiguously that Jupiter-1

does not maximize the capacity over both beam spacing and color -
- number of colors.

April 7, 2014, Tr. T. at 2006-07. Again, no reasonable juror could dispute the math—the numbers are what the numbers are. SS/L therefore requests judgment as a matter of law of non-infringement of claims 1 and 3 of the '043 patent.

### 2.   *Claims 7 and 8.*

SS/L is also entitled judgment as a matter of law of non-infringement of claim 8 of the '043 patent. Claim 8 depends from claim 7, which requires a spot beam satellite with beams that are "sent to a first subscriber terminal from the first plurality of subscriber terminals utilizing a first coding and modulation combination." V-1289.

But, as Professor Helgert testified, the SS/L satellites at issue in this case are so-called "bent-pipe satellites," which perform no coding modulation ("ACM") on the data within the spot beams.[5] April 7, 2014, Tr. T. at 2009-11. Furthermore, claim 7 also requires that the satellite system be "interference- dominated such that *C/I* is less than *C/N*," V-1289, a point as to which ViaSat's infringement expert offered no evidence sufficient to support a jury verdict.

---

[5] In fact, SS/L does not perform the ACM within the NBN Co. satellite system at all—it is ViaSat that provides that function with respect to NBN Co. *Id*. at 2011 ("[I]t is, in fact, ViaSat that performs this function, this operation.").

*17 of 30*                    Case No. 3:12-cv-00260

1
2

        *a.*    *ViaSat has Failed to Present Evidence Sufficient for a Reasonable Juror to Find by a Preponderance of the Evidence on the Remaining Claim Elements.*

3
4
5
6

ViaSat has failed to carry its burden of proof with respect to the remaining elements of claims 1, 3, 7, and 8 of the '043 patent. As to those claims, ViaSat has failed to produce sufficient evidence to show that the accused satellites meet each claim limitation.

7
8
9
10
11
12
13
14
15
16

For example, as to claim 1 (from which claim 3 depends), Mr. Sturza offered no evidence about the antenna on the accused satellite., or about whether their beams "overlap" within the meaning of the patent. April 3, 2014, Tr. T. at 1626-39. He did not offer evidence of $C/I < C/N$ or whether the subject beams in the Jupiter-1 satellite are "interference dominated." April 3, 2014, Tr. T. at 1626-39. He did not explain how the satellite is "operated," or why that language is function as opposed to methodological (*see* SS/L's concurrently filed motion for judgment as a matter of law on indefiniteness). April 3, 2014, Tr. T. at 1626-39. There is thus no factual basis for a jury to find by a preponderance of the evidence for ViaSat on these claim elements.

17
18
19

As to claim 3, Mr. Sturza offered no evidence that the spot beams in Jupiter-1 "comprise" adaptive coding, how it is implemented, or where such a configuration is present on the satellite. April 3, 2014, Tr. T. at 1643-46.

20
21
22
23

As to claim 7 (from which asserted claim 8 depends), Mr. Sturza offered no testimony about the "antenna," "power source," or "regions" that are "illuminated" by the spot beams in the Jupiter-1 and NBN Co. satellites, nor did he explain how they "overlap" within the meaning of the '043 patent's claim language. April 3,

24

2014, Tr. T. at 1643-46. He did not explain how or whey the beams are "interference dominated" or how "coding and modulation" are implemented by the accused satellites. April 3, 2014, Tr. T. at 1643-46.

As to claim 8, Mr. Sturza offered no testimony that the coding on the accused satellites is ACM as opposed to other coding and modulation, what the difference may be, or how the satellite (as opposed to the ground system—which is outside the claim's scope) implements them. April 3, 2014, Tr. T. at 1643-46. No reasonable juror could find for ViaSat by a preponderance of the evidence as to these claim elements.

**D.   Territoriality.**

With respect to the NBN Co. satellites—which were contracted by the Australian government, not any domestic entity—ViaSat cannot show infringement because it has not presented evidence of infringement within the United States.[6] Under federal patent law, direct infringement only occurs when someone "makes, uses, offers to sell, or sells any patented invention, *within the United States* or imports *into the United States* any patented invention . . ." 35 U.S.C.A. § 271(a) (emphasis added). This is an essential element of patent infringement, *Microsoft Corp. v. AT & T Corp.*, 127 S. Ct. 1746, 1747 (U.S. 2007), without which ViaSat cannot prove its claim. In this case, ViaSat has introduced no

---

[6] Nor, of course, did ViaSat demonstrate that Loral (as opposed to SS/L) makes or sells satellites—it is a holding company and parent to SS/L that performs no satellite manufacture or sale. *E.g.*, March 26, 2014, Tr. T. at 404; March 28, 2014, Tr. T. at 871 & 1028; April 4, 2014, Tr. T. at 1822 & 2014.

1    evidence that the NBN. Co. satellites' manufacturing completion or sale occurred

2    within the United States. Absent any evidence in the record on this claim element,

3    no reasonable juror could find for ViaSat. SS/L is therefore entitled to judgment as

4    a matter of law.

5    **E.    Indirect and Contributory Infringement.**

6           Nor can ViaSat escape the problems with its infringement case by shifting

7    the focus to indirect or contributory infringement. For indirect or contributory

8    infringement to obtain there must be infringement in the first place—a finding that

9    no reasonable juror could make on this record for the reasons set forth above.[7]

10   *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1313-14 (Fed.

11   Cir. 2007) (reversing denial of accused infringer's motion for JMOL of no inducing

12   infringement because substantial evidence did not support the jury's infringement

13   verdict where the patentee failed to introduce any evidence that the product

14   actually was used in an infringing manner); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d

15   1321, 1326 (Fed. Cir. 2010) ("To establish contributory infringement, the patent

16   owner must show the following elements relevant to this appeal: 1) that there is

17   direct infringement, 2) that the accused infringer had knowledge of the patent, 3)

18   that the component has no substantial noninfringing uses, and 4) that the

19

20

21

22   —————————————————

23   [7] Additionally, there can be no direct infringement of the '043 patent by NBN
     Co. because it is an Australian governmental organization. 35 U.S.C.A. § 271(a).

24

1   component is a material part of the invention.").[8] *See also* April 7, 2014, Tr. T. at

2   2011-12.

3   **F.   Doctrine of Equivalents.**

4       No reasonable juror could find for ViaSat according to the doctrine of

5   equivalents because, again, ViaSat has failed to put forward trial evidence that

6   would support such a finding. To prevail on a claim under the doctrine of

7   equivalents, a patentee bears the burden of proving equivalence with competent

8   evidence, including "particularized testimony and linking arguments as to the

9   insubstantiality of the differences between the claimed invention and the accused

10  device or process . . . on a limitation by limitation basis." *Texas Instruments Inc. v.*

11  *Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

12      Here, ViaSat's testimony fails to meet that standard. The only claim for

13  which it put forward any analysis was claim 1 of the '043 patent and claim 7 of the

14  '827. But rather than provide "particularized testimony and linking arguments as to

15  the insubstantiality of the differences between the claimed invention and the

16  accused device or process … on a limitation by limitation basis," *id.*, ViaSat's

17  experts offered only conclusory testimony—with respect to only certain claims—

18  _____

19      [8] As to *Fujitsu*'s intent element, ViaSat has failed to carry its burden of proof
20  for the reasons set forth in SS/L's motion for judgment as a matter of law on
    willfulness filed concurrently herewith—there is no evidence that SS/L had
21  knowledge of ViaSat's patents and intentionally induced or contributed to
    infringement. As *Fujitsu*'s requirement that the accused component be a material
22  part of the invention, ViaSat has failed to carry its burden for the reasons set forth
    in SS/L's motion for judgment as a matter of law on damages filed herewith: the
23  inventions claimed in ViaSat's patents are trivial and easily-avoided elements of
    the satellites as a whole.

24

1  that the accused satellites performed the same function in approximately the same

2  manner as ViaSat's patents claim. *E.g.*, April 6, 2014, Tr. T. at 1638-39 & 1687-

3  1689. ViaSat did not explain how the accused functionalities are similar or

4  equivalent, did not identify the equivalent infringing instrumentality, or do

5  anything else to explain how the accused product fell within the claim in the

6  absence of literal infringement. The closest ViaSat came was identifying similar

7  functionality—a showing that does not rise to the level of "particularized testimony

8  and linking arguments as to the insubstantiality of the differences between the

9  claimed invention and the accused device or process . . . on a limitation by

10 limitation basis." *Texas Instruments Inc.*, 90 F.3d at 1567. This testimony fails to

11 meet the legal standards required by the Federal Circuit because it is a mere

12 recitation of the elements of the doctrine of equivalents followed by a bare

13 assertion that they are present. This does not meet the *Texas Instruments* standard

14 and SS/L is therefore entitled to judgment as a matter of law.

15 **G.    The Un-Asserted Claims, and the '942 Patent.**

16      ViaSat's Fourth Amended Complaint asserted that SS/L infringed U.S.

17 Patent No. 7,773,942 (the "'942"), Doc. No. 475, but ViaSat did not assert it at

18 trial. SS/L has maintained its declaratory judgment claim for non-infringement of

19 the '942. Doc. Nos. 486 & 496. In the absence of any showing in opposition to

20 SS/L's declaratory judgment claim, SS/L is entitled to judgment as a matter of law

21 of non-infringement. *Advance Transformer Co. v. Levinson*, 837 F.2d 1080 (Fed.

22 Cir. 1988) ("affirming judgment of non-infringement where patentee had dropped

23 its claim for infringement and provided no evidence of infringement at trial and the

24

accused infringer had maintained a non-infringement declaratory judgment claim). The same is true of the additional claims of the '875, '827, and '043 patents that were not asserted at trial: ViaSat asserted that SS/L infringed, SS/L and Loral counterclaimed for declaratory judgment of non-infringement, and no evidence was put forward to support ViaSat's infringement allegations at trial. SS/L is therefore entitled to judgment as a matter of law of non-infringement of the un-asserted claims as well. *See id.*

## IV.   CONLUSION

For the foregoing reasons, SS/L respectfully moves for judgment as a matter of law of non-infringement of each claim of each patent asserted against it.

Dated: April 10, 2014          By: /s/ *Patrick C. Bageant*
                                                 Marc M. Seltzer (54534)
                                                 Amanda Bonn (270891)
                                                 SUSMAN GODFREY L.L.P.
                                                 1901 Ave. of the Stars, Suite 950
                                                 Los Angeles, CA 90067-6029
                                                 Telephone: (310) 789-3100
                                                 Fax: (310) 789-3150

                                                 William Christopher Carmody
                                                 (Admitted pro hac vice)
                                                 Jacob W. Buchdahl
                                                 (Admitted pro hac vice)
                                                 Mark Musico
                                                 (Admitted pro hac vice)
                                                 SUSMAN GODFREY L.L.P.
                                                 560 Lexington Ave., 15th Floor
                                                 New York, New York 10022
                                                 Telephone:  (212) 336-8330

1    Facsimile:    (212) 336-8340

2    Joseph S. Grinstein
     (Admitted pro hac vice)
3    William R. H. Merrill
     (Admitted pro hac vice)
4    SUSMAN GODFREY L.L.P.
5    1000 Louisiana Street, Suite 5100
     Houston, Texas 77002
6    Telephone: (713) 651-9366
     Facsimile: (713) 654-6666
7

8    Ian B. Crosby
     (Admitted pro hac vice)
9    Rachel S. Black
     (Admitted pro hac vice)
10   Patrick C. Bageant (275135)
     SUSMAN GODFREY L.L.P
11   1201 Third Ave., Suite 3800
12   Seattle, Washington 98101
     Telephone: (206) 516-3880
13   Facsimile: (206) 516-3883

14   *Attorneys for Space Systems/Loral,*
15   *LLC, and Loral Space &*
     *Communications Inc.*

16

17

18

19

20

21

22

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 10, 2014, I caused the foregoing **DEFENDANTS' RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW ON NON-INFRINGEMENT** to be served on opposing counsel via the Court's CM/ECF system.


Dated: April 10, 2014,                    By: _/s/ Patrick C. Bageant_