William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:   (212) 336-8330
Facsimile:    (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:   (310) 789-3100
Facsimile:    (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC.,<br><br>                 Plaintiff,<br><br>     vs.<br><br>SPACE SYSTEMS/LORAL, INC.,<br>LORAL SPACE &<br>COMMUNICATIONS INC.,<br><br>                 Defendants/Counterclaim<br>                 Plaintiffs. | Case No. 3:12-cv-00260-H-WVG<br><br>Hon. Marilyn L. Huff<br><br>**[PUBLIC-REDACTED]**<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (6 of 12), REGARDING INVENTORSHIP OF THE '827 PATENT**<br><br>Date: July 22, 2014<br>Time: 9:00 a.m.<br>Place: Courtroom 15A |

# TABLE OF CONTENTS

**Page**

I.    LEGAL STANDARDS ................................................................................2

    A.  Law of Inventorship ........................................................................2

    B.  Judgment as a Matter of Law ........................................................3

    C.  Motion for New Trial .....................................................................3

II.   ARGUMENT .............................................................................................4

    A.  SS/L's Conception of Claim 8 .......................................................6

        1.   Clear Evidence of Conception ............................................6

        2.   ViaSat Introduced No Evidence to the Contrary ...............8

        3.   Chan and Mendelsohn's Contributions Were Significant ................9

        4.   The Patent Must Be Invalidated or Inventorship Corrected ...........10

    B.  SS/L's Conception of Claim 7 .....................................................11

    C.  Developments Since Summary Judgment .....................................13

III.  CONCLUSION ........................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001) ........................................................................ 13

*Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001) ........................................................................ 13

*City Solutions, Inc. v. Clear Channel*,
    Commc'ns, 365 F.3d 835 (9th Cir. 2004) ............................................................ 3

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) .................................................................... 2, 11

*Ethicon, Inc. v. U.S. Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998) ............................................................... 2, 9, 11

*Hedgewick v. Akers*,
    497 F.2d 905 (C.C.P.A. 1974) ........................................................................... 2

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
    909 F.2d 1464 (Fed. Cir. 1990) ........................................................................ 13

*In re Schreiber*,
    128 F.3d 1473 (Fed. Cir. 1997) ........................................................................ 12

*Lucent Techs., Inc. v. Gateway Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) .......................................................................... 3

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
    244 F.3d 1365 (Fed. Cir. 2001) .......................................................................... 3

*Murphy v. City of Long Beach*,
    914 F.2d 183 (9th Cir. 1990) .............................................................................. 4

*Nartron Corp. v. Schukra U.S.A. Inc.*,
    558 F.3d 1352 (Fed. Cir. 2009) ................................................................ 9, 10, 14

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998) .................................................................. 2

*Pavao v. Pagay*,
   307 F.3d 915 (9th Cir. 2002) ..................................................................... 3

*Stark v. Advanced Magnetics, Inc.*,
   119 F.3d 1551 (Fed. Cir. 1997) .................................................................. 3

*The Johns Hopkins Univ. v. Datascope Corp.*,
   543 F.3d 1342 (Fed. Cir. 2008) .................................................................. 3

*United States v. 4.0 Acres of Land*,
   175 F.3d 1133 (9th Cir. 1999) ..................................................................... 4

*United States v. Kellington*,
   217 F.3d 1084 (9th Cir. 2000) ..................................................................... 4

*William Inglis v. ITT Cont'l Baking Co.*,
   668 F.2d 1014 –7 (9th Cir. 1981) ............................................................... 3

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) .................................................................. 4

*Z4 Techs., Inc. v. Microsoft Corp.*,
   507 F.3d 1340 (Fed. Cir. 2007) .................................................................. 3

**Statutes**

35 U.S.C. § 102(f) ......................................................................................... 1, 2

35 U.S.C. § 256 .......................................................................................... 1, 11

**Rules**

Fed. R. Civ. P. 50 ............................................................................................. 1

Fed. R. Civ. P. 59 ........................................................................................... 1, 3

Defendants Space Systems/Loral, LLC, and Loral Space & Communications Inc. move for judgment as a matter of law that the '827 patent is invalid for improper inventorship and derivation, 35 U.S.C. § 102(f), and that inventorship should be corrected pursuant to 35 U.S.C. § 256 to name Hampton Chan and Aaron Mendelsohn as co-inventors and/or to strike Mark Miller and John Tchorz as inventors.[1] Without the consent of co-inventors Chan and Mendelsohn, ViaSat lacked standing to bring its claim for infringement of the '827 patent.

Strikingly, ViaSat failed to provide <u>any evidence</u> whatsoever regarding the inventorship of Claim 8 of the patent, despite SS/L's clear and undisputed evidence that Chan and Mendelsohn at the very least contributed to the conception of that claim. Indeed, ViaSat successfully objected to any testimony regarding Claim 8 as <u>outside the scope</u> of the testimony of its validity expert. The inescapable conclusion from this record is that Chan and Mendelsohn contributed significantly to conception of the '827 patent but were not named as inventors; the patent must accordingly be invalidated or its inventorship must be corrected. SS/L's conception of Claim 7 is also clear from the record, but ViaSat's evidentiary default as to Claim 8 is especially stark and calls for entry of judgment as a matter of law.

_____

[1] Defendants hereby move for judgment as a matter of law ("JMOL") pursuant to Rule 50(a) and, pursuant to Rule 50(b), renew the motion for JMOL that they made before the close of evidence. Alternatively, Defendants move for a new trial pursuant to Rule 59.

Defendants also incorporate by reference the arguments made in their Motion for Summary Judgment of Non-Infringement or, in the Alternative, Invalidity of U.S. Patent No. 8,068,827, now supported by the trial record. *See* Dkt. Nos. 503 & 612.

# I.     LEGAL STANDARDS

## A.     Law of Inventorship

A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998) ("section 102(f) still makes the naming of the correct inventor or inventors a condition of patentability; failure to name them renders a patent invalid").

Accordingly, a patent is invalid if someone not named as an inventor contributed to the conception of <u>even just one claim of the patent</u>. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1361-62 (Fed. Cir. 2004) ("the law of inventorship does not hinge co-inventor status on whether a person contributed to the conception of all the limitations in any one claim of the patent. Rather, the law requires only that a co-inventor make a contribution to the conception of the subject matter of a claim" of the patent); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("[A] co-inventor need not make a contribution to every claim of a patent. … A contribution to one claim is enough.").

Consonantly, a patent is invalid if the patentee did not invent the patented subject matter. 35 U.S.C. § 102(f). To invalidate a patent because it was derived from another invention, the challenger must show "a prior, complete conception of the claimed subject matter and communication of the complete conception to the party charged with derivation." *Hedgewick v. Akers*, 497 F.2d 905, 908 (C.C.P.A. 1974).

Correction of inventorship is appropriate where "through error an inventor is not named in an issued patent and such error arose without any deceptive

intention." *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1553 (Fed. Cir. 1997).

### B.   Judgment as a Matter of Law

Judgment as a matter of law ("JMOL") should be granted and a jury verdict overturned "'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Lucent Techs., Inc. v. Gateway Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "[O]n posttrial JMOL motions, district court judges must scrutinize the evidence carefully to ensure that the 'substantial evidence' standard is satisfied." *Id.* at 1336. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1348 (Fed. Cir. 2008) (quoting *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1353 (Fed. Cir. 2007)). Judgment as a matter of law should enter for the party bearing the burden of proof where that party "has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor." *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001).

### C.   Motion for New Trial

Whether to grant a new trial on some or all issues, pursuant to Fed. R. Civ. P. 59, is a matter of the trial court's discretion. *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 843 (9th Cir. 2004). Courts apply a lower standard of proof to motions for new trial than they do to JMOL motions. *William Inglis v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1026–7 (9th Cir. 1981) "[T]he trial court may

grant a new trial, even though the verdict is supported by substantial evidence, if 'the verdict is contrary to the clear weight of the evidence or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)). In deciding a motion for new trial, the court "has the right, and indeed the duty, to weigh the evidence" and may evaluate the credibility of the witnesses. *Murphy v. City of Long Beach*, 914 F.2d 183 (9th Cir. 1990); *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000). The court is not required to view the evidence from the perspective most favorable to the prevailing party. *Kellington*, 217 F.3d at 1095.

## II.   ARGUMENT

There can be no dispute based on the trial record that SS/L's Hampton Chan and Aaron Mendelsohn were the first to completely conceive the subject matter claimed in the '827 patent, and communicated their invention at least to John Tchorz, a named co-inventor on the patent. At the very least, Chan and Mendelsohn contributed significantly to the conception of the '827 patent but were improperly omitted as inventors.

Chan and Mendelsohn conceived of the invention claimed in the '827 patent in their "Flexible Frequency Plan" or "FFP." Ex. B[2] (S-303); Ex. C (S-749). Early in September 2007, ViaSat had requested the ability to select frequency plans as

---

[2] Unless otherwise stated, all exhibits referenced herein are attached to the Declaration of Mark Musico in Support of Defendants' Motion for Judgment as a Matter of Law (Renewed), or a New Trial (6 of 12), Regarding Inventorship of the '827 Patent, filed concurrently herewith. References to "Trial Tr." are included in Exhibit A.

1    late as possible during the construction phase of the satellite. Ex. D (S-794); Trial

2    Tr. 2485-86. ViaSat had been considering a "drop-in filter" approach, which would

3    allow selection of a frequency plan until shortly before launch. *Id.* Chan and

4    Mendelsohn, however, went above and beyond ViaSat's request for flexibility late

5    in the build process by using a switch on-board the satellite to provide flexibility

6    even after launch. Trial Tr. 2486-87. Chan and Mendelsohn memorialized this

7    option in the FFP, which Dr. Schindall confirmed disclosed every element of both

8    Claims 7 and 8 of the '827 patent and corroborated Chan and Mendelsohn's

9    conception of the invention. *See* Trial Tr. 2290-2308. As discussed below, ViaSat

10   introduced no substantial evidence to the contrary with respect to either claim.

11   It is also undisputed that Chan and Mendelsohn presented the FFP to John

12   Tchorz, named co-inventor of the '827 patent, on September 19, 2007, as reflected

13   in Mr. Tchorz's notes of that day and in Mr. Chan's testimony. Ex. E (S-302); Trial

14   Tr. 2485-2489; Trial Tr. 2449; *see generally* Trial Tr. 2442-51. But Mr. Tchorz and

15   Mr. Miller did not file their application for the '827 patent until October 9, 2007.

16   *See* Ex. F (V-1132); Ex. G (V-1290).

17   There is no evidence to corroborate conception of the claimed invention by

18   ViaSat prior to Chan and Mendelsohn's September 19 presentation. Before ViaSat

19   contrived earlier conception dates for purposes of this litigation, ViaSat COO

20   Richard Baldridge admitted to SS/L President John Celli that "the use of NGSO

21   switching appears for the first time in revision 1.4 of the satellite specification

22   prepared by ViaSat." Ex. H (S-1540). Revision 1.4 of the specification is dated

23   October 2, 2007, nearly two weeks after SS/L presented the FFP to ViaSat on the

24   preceding September 19. Ex. I (V-1199). And ViaSat's expert Mr. Sturza admitted

that Revision 1.3 of the ViaSat specification, dated September 17, 2007, did not contain an NGSO switch. Trial Tr. 2733-34.

**A.      SS/L's Conception of Claim 8**

The evidence introduced at trial indisputably establishes that Chan and Mendelsohn were the sole inventors of Claim 8. ViaSat failed to introduce any evidence whatsoever to the contrary.

**1.      Clear Evidence of Conception**

The circuitry disclosed in the FFP is <u>identical</u> to the circuitry disclosed in Claim 8 of the '827 patent. Trial Tr. 2303-2306; *compare* Ex. B (S-303) at VST03637705 *with* Ex. G (V-1290) fig. 5. As Dr. Schindall explained, the FFP discloses ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Trial Tr. 2303; Ex. B (S-303) at VST03637705. Two weeks later, identical circuitry appeared in Miller and Tchorz's application for the '827 patent (and eventually Claim 8 of the patent), including "the low noise amplifier ["LNA"] followed by the mixer ["circle with an X" shape] followed by the power divider or splitter ["power

divider"], followed by the two filters ["boxes with waves" shape], followed by a switch ["switch"]. It's exactly the same -- it's actually the same capability implemented in exactly the same way":



Trial Tr. 2303; Ex. G (V-1290) fig. 5; *see also* Ex. F (V-1132) at VST00002564 (provisional application). There could not be clearer evidence that Chan and Mendelsohn conceived of the invention disclosed in Claim 8.

Meanwhile, Mark Miller, purported inventor of the '827 patent, admitted he did not invent the circuitry disclosed in the FFP:

> Q:   Sir, my question, this is not a circuit design that you invented, is it, sir?
>
> A:   This is not a circuit that I designed, no.
>
> Q:   And it's dated 19 days before you filed your first application for the NGSO switching patent on October 9th, 2007, correct?
>
> A:   Correct.
>
> Q:   And it's dated 12 days before version 1.4 of the ViaSat-1 specification where Mr. Baldridge told SS/L that the use of NGSO switches appeared for the first time, correct?
>
> A:   Correct.

1   Trial Tr. at 1408-09. And John Tchorz, the other purported inventor of the '827

2   patent, admitted to copying SS/L's block diagrams into his lab notebook when they

3   were presented to him by Hampton Chan on September 19, 2007:



12   Trial Tr. 2442-51; *compare* Ex. E (S-302) at VST00003943 *with* Ex. B (S-303) at

13   VST03637704-05.[3] There could not be clearer evidence that ViaSat <u>did not invent</u>

14   the circuitry disclosed in Claim 8.

2.      <u>ViaSat Introduced No Evidence to the Contrary</u>

16         ViaSat left this clear record undisturbed. Mr. Sturza admitted that he "only

17   mentioned Claim 7" during his direct examination regarding the validity of the '827

18   patent. Trial Tr. 2738. Indeed, during SS/L's cross-examination of Mr. Sturza,

19   ViaSat's counsel successfully objected that circuit diagrams were <u>outside the scope</u>

20   of Mr. Sturza's direct examination on validity, as was any testimony whatsoever

21   regarding Claim 8. Trial Tr. 2737-38. There is simply <u>no evidence</u> anywhere in the

22   record to rebut Chan and Mendelsohn's conception of the invention in Claim 8.

---

[3]          ████████     Mr. Chan explained that he made the switch in his presentation to ViaSat, Trial
Tr. 2487-88, and Mr. Tchorz confirmed ████████████████     Trial Tr. 2446, 2449.

### 3.   Chan and Mendelsohn's Contributions Were Significant

Chan and Mendelsohn's contributions to conception were also significant. "[E]ach of the joint inventors need not 'make the same type or amount of contribution' to the invention. … Rather, each needs to perform only a part of the task which produces the invention." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Whether Chan and Mendelsohn's undisputed contribution to the conception of the patent is sufficient to establish their status as co-inventors is a question of law for the court. *Id.*

Chan and Mendelsohn's contributions to the conception of the '827 patent clearly were "not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1354 (Fed. Cir. 2009) (internal quotation omitted); *see also id.* ("a joint inventor must contribute in some significant manner to the conception or reduction to practice of the invention"). This was not a case of "simply provid[ing] the inventor with well-known principles or explain[ing] the state of the art without ever having a firm and definite idea of the claimed combination as a whole." *Id.* Rather, Chan and Mendelsohn's contribution to Claim 8, which included conception of the entire implementation of the circuitry described more generally in Claim 7, was significant. And it is a fundamental contribution to a person of ordinary skill in the art's ability to reduce the invention to practice without undue experimentation, as might be required if one had merely conceived of the dynamic switching concept described in Claim 7.

Additionally, despite being a dependent claim, Claim 8 is not merely a tweak or minor addition to Claim 7. A comparison to the *Nartron* case is useful in this

respect. In *Nartron*, the Federal Circuit found that a "sole feature of a dependent claim" was insufficient to make the contributor of that feature a co-inventor of the patent. 558 F.3d at 1358. But, importantly, the feature at issue was a minor "extender" feature, which added little to the complex lumbar support system for automobile seats described in the independent claim from which it depended. *Id.* The "extender" feature was barely even described in the specification. *Id.* Here, by contrast, Claim 8 supplies all of the complexity and detail of the invention.  The circuitry in Claim 8 is even specifically depicted as Figure 5 of the specification.

Also central to the Federal Circuit's holding in *Nartron* was the fact that the "extender" feature in dispute already existed in the prior art, specifically in the context of automobile seats that were the focus of the patent. *Nartron*, 558 F.3d at 1357. Here, by contrast, there is no evidence to suggest that Chan and Mendelsohn's circuitry existed in the prior art. At most, Mark Miller suggested in passing that satellites had used the various component parts such as filters and amplifiers included in Chan and Mendelsohn's circuitry. Trial Tr. 1408. But there is no evidence whatsoever that the particular combination of parts and arrangement of the circuitry conceived by Chan and Mendelsohn existed in the prior art, let alone in the context of an NGSO-switch on a satellite. Chan and Mendelsohn's contribution to conception through Claim 8 alone was thus fundamental to the inventive act and significant enough to require that they be credited as inventors of the patent.

### 4.      The Patent Must Be Invalidated or Inventorship Corrected

Chan and Mendelsohn are thus undisputed contributors to the conception of the '827 patent who were not named as inventors. The failure to name as inventors those who contributed to <u>even just one claim</u> of the patent invalidates the entire

patent. The Federal Circuit has left no doubt that "the law of inventorship does not hinge co-inventor status on whether a person contributed to the conception of all the limitations in any one claim of the patent. Rather, the law requires only that a co-inventor make a contribution to the conception of the subject matter of a claim" of the patent. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1361-62 (Fed. Cir. 2004). The failure to name Chan and Mendelsohn as inventors of the '827 patent despite their undisputed inventorship of Claim 8 invalidates the patent, and judgment as a matter of law should enter accordingly.

Alternatively, the Court may correct the inventorship of the patent to add Hampton Chan and Aaron Mendelsohn as inventors pursuant to 35 U.S.C. §256, given that the record currently lacks any indication that their omission was deliberate and/or deceptive. The result, however, is no different. Entry of judgment as a matter of law should still enter in favor of SS/L on ViaSat's claims for infringement of the patent because, without the consent of both Chan and Mendelsohn, ViaSat lacked standing to pursue its infringement claims. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit. Consequently, one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." (internal quotation and citation omitted)).

## B.     SS/L's Conception of Claim 7

The testimony and evidence offered by ViaSat at trial also do not rebut SS/L's showing of conception of Claim 7 of the '827 patent by Chan and Mendelsohn. In its opening statement, ViaSat traced the invention of the '827

1   patent to August 24, 2007, citing the presentation marked as V-1130 (Ex. J). But

2   named '827 inventor Mark Miller did not claim that V-1130 disclosed a "dynamic

3   NGSO switch," and in fact admitted that the circuitry depicted in the document did

4   not disclose such a switch. Trial Tr. 1368-69.

5   ViaSat's only attempt to rebut SS/L's conception of Claim 7 thus is the

6   argument that the FFP does not disclose the *use* of a switch to dynamically avoid

7   in-line interference. Such disclosure is unnecessary, however, to demonstrate

8   SS/L's prior (or at least partial) conception of an apparatus capable of dynamism

9   needed to invalidate the patent. *Cf. In re Schreiber*, 128 F.3d 1473, 1477-78 (Fed.

10   Cir. 1997) (finding that a patentee's "contention that his structure will be used to

11   [perform an allegedly new function] does not have patentable weight if the structure

12   is already known, regardless of whether it has ever been used in any way in

13   connection with [the allegedly new function]").

14   Indeed, for ViaSat to argue otherwise would be inconsistent with its position

15   that Jupiter-1 infringes the '827 patent. ViaSat provided no evidence that any

16   circuitry on Jupiter-1 is dynamic. Rather, Mr. Sturza's position was that the NGSO

17   switch on Jupiter-1 – the same switch disclosed in the FFP, Trial Tr. 2494 – is

18   dynamic simply because it is <u>capable</u> of being used in that way, at least for a limited

19   time before failure. *See* Trial Tr. 1716. In fact, Mr. Sturza admitted that ViaSat's

20   <u>only</u> evidence that the circuitry of Jupiter-1 dynamically responds to interference

21   was an FCC application filed by Hughes in 2008 stating that "[t]here will be

22   sufficient additional spectrum on [Jupiter-1] to allow Hughes to dynamically shift

23   operations out of the NGSO spectrum for the duration of any in-line events." Ex. K

24

(V-522) at SSL0397453. Mr. Sturza could point to no circuit diagrams even mentioning "interference." Trial Tr. 2737.

Putting aside the fact that Hughes' FCC application seeking broad authority to operate the satellite in a certain manner is inconsistent with Hughes' more limited intended mode of operation[4], Hughes' alleged intended mode of operating Jupiter-1 cannot distinguish its circuitry from that disclosed in the FFP. The Federal Circuit has held that whether a patent claim is infringed cannot "depend[] on the state of mind of the accused infringer" and that the courts should not "inject[] subjective notions into the infringement analysis." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1353 (Fed. Cir. 2001). ViaSat's arguments about the intent to use the FFP or Jupiter-1 dynamically (or not) are thus irrelevant—what matters is what the structures are, not how or why they might be used. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("apparatus claims cover what a device *is*, not what a device *does*") (emphasis in original). The same NGSO switch cannot be both adequate to show Jupiter-1's infringement of the invention yet inadequate to show Chan and Mendelsohn's prior conception of the invention. *Cf. Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier.").

## C.    Developments Since Summary Judgment

The Court previously declined to enter summary judgment that the '827 patent is invalid, finding that there were factual disputes whether the FFP features

---

[4] *See* Trial Tr. 1932-37 (if ever necessary, Hughes intends to use Jupiter-1's NGSO switch as a one-time "kill switch").

dynamic switching and whether SS/L first conceived of the inventions disclosed in the '827 patent. Dkt. No. 651 at 8. The trial record, however, did not prove up what ViaSat promised.

At summary judgment, for example, ViaSat relied on an affidavit from Aaron Mendelsohn to establish the non-dynamic nature of the FFP. Dkt. No. 574-3. Mendelsohn swore that the FFP's circuitry was not capable of switching based on information about interference situations. *Id.* ¶ 10. Mendelsohn focused in particular on certain "waveguide switches" which he swore were incapable of (or at least ill-suited for) dynamic switching. Notably, however, Mr. Mendelsohn was not even at witness at trial. And the topic of "waveguide switches" does not appear anywhere in the trial record. These key pieces of purported evidence against the dynamic nature of the FFP never materialized at trial.

Moreover, nothing about the FFP's "dynamism," or lack thereof, undermines Chan and Mendelsohn's undisputed contributions to the conception of Claim 8. Those contributions are in and of themselves sufficient to invalidate the patent even if there remains room to dispute whether Chan and Mendelsohn conceived of the entire invention.

The trial record also left no doubt as to Chan and Mendelsohn's prior conception of the invention. As discussed above, the admissions from Miller, Baldridge, and Sturza regarding ViaSat's purported conception documents place SS/L's prior conception of the entire invention beyond dispute. And again, at the very least, the documents relied on by ViaSat to demonstrate its conception of the invention prior to September 19, 2007 contain <u>nothing</u> resembling the circuitry disclosed in the FFP and eventually incorporated into Claim 8 of the patent, and

thus <u>nothing</u> to undermine Chan and Mendelsohn's conception of that circuitry, which in and of itself constitutes a significant contribution to the conception of the invention.

### III.   CONCLUSION

The only reasonable conclusion based on the evidence introduced at trial is that Chan and Mendelsohn completely (and at the very least partially) conceived of the invention of the '827 patent and communicated that invention to ViaSat. The '827 patent is thus invalid at the very least for improper inventorship, in addition to derivation. Alternatively, correction of inventorship is proper based on Chan and Mendelsohn's contributions to the conception (if not complete prior conception) of Claim 7 or Claim 8, and ViaSat's infringement claims should be dismissed for lack of standing based on failure to obtain their consent prior to filing suit.

Dated: June 13, 2014          By:    */s/ Mark Musico*

Marc M. Seltzer
Amanda K. Bonn
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
Email: abonn@susmangodfrey.com

William Christopher Carmody
(Admitted *Pro Hac Vice*)
Jacob W. Buchdahl
(Admitted *Pro Hac Vice*)
Mark Musico

(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340
Joseph S. Grinstein
(Admitted *Pro Hac Vice*)
William R. H. Merrill
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  713-653-7856
Facsimile:   713-654-6666
Email: jgrinstein@susmangodfrey.com
Email: bmerrill@susmangodfrey.com

Ian B. Crosby
(Admitted *Pro Hac Vice*)
Rachel S. Black
(Admitted *Pro Hac Vice*)
Patrick C. Bageant
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3861
Fax: (206) 516-3883
Email: icrosby@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: pbageant@susmangodfrey.com

*Attorneys for Defendants/Counterclaim*
*Plaintiffs Space Systems/Loral, LLC (f/k/a*
*Space Systems/Loral, Inc.) and Loral Space*
*& Communications Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that, on June 13, 2014, I caused the foregoing **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (6 of 12), REGARDING INVENTORSHIP OF THE '827 PATENT** to be served on opposing counsel via the Court's CM/ECF system.

Dated: June 13, 2014          By:  _/s/ Mark Musico_