William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:  (212) 336-8330
Facsimile:    (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:    (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC.,<br><br>          Plaintiffs,<br>      vs.<br><br>SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC.,<br><br>          Defendants/Counterclaim<br>          Plaintiffs. | Case No. 3:12-cv-00260-H-WVG<br><br>Hon. Marilyn L. Huff<br><br>**SS/L'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR ALTERNATIVELY FOR A NEW TRIAL (4 OF 12), REGARDING DOUBLE COUNTING OF DAMAGES**<br><br>Date: July 22, 2014<br>Time: 9:00 a.m.<br>Place: Courtroom 15A |

3157528v1/013090

# CONTENTS

I.     LEGAL STANDARD ..............................................................................1

II.    BACKGROUND ....................................................................................3

III.   THE JURY'S FINDING OF ONLY A SINGLE INFRINGEMENT
PRECLUDES THE AWARD OF BOTH LOST PROFITS AND A
REASONABLE ROYALTY ..................................................................4

IV.   FEDERAL CIRCUIT LAW PRECLUDES THE AWARD OF
BOTH LOST PROFITS AND A REASONABLE ROYALTY FOR
A SINGLE INFRINGING SALE...........................................................6

V.    DR. SLOTTJE'S TESTIMONY IS INSUFFICIENT TO
SUPPORT THE AWARD OF BOTH LOST PROFITS AND A
REASONABLE ROYALTY ..................................................................9

VI.   CONCLUSION ...................................................................................14

3157528v1/013090

# AUTHORITIES

**Cases**

*Arlington Indus., Inc v. Bridgeport Fittings, Inc.*,
   2010 WL 815466 (M.D. Pa. Mar. 3, 2010) ......................................................7

*City Solutions, Inc. v. Clear Channel Commc'ns*,
   365 F.3d 835 (9th Cir. 2004) ..........................................................................2

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ......................................................................8

*DeGregorio v. Phillips Elecs. N. Amer. Corp.*,
   2007 WL 4591966 (N.D. Ill. Jan. 7, 2008) ...................................................13

*DSU Medical Corp. v. JMS Co.*,
   296 F. Supp.2d 1140 (N.D. Cal. 2003) ...........................................................7

*Engineered Prods. Co. v. Donaldson Co.*,
   335 F. Supp.2d 973 (N.D. Iowa 2004) ............................................................7

*Foster v. American Machine & Foundry*,
   492 F.2d 1317 (2d Cir. 1974) ..................................................................10, 11

*Goss Int'l Americas, Inc. v. MAN Roland, Inc.*,
   2008 WL 3823705 (D.N.H. Aug. 15, 2008)..............................................12, 13

*Itex, Inc. v. Westex, Inc.*,
   2011 WL 856583 (N.D. Ill. Mar. 9, 2011) ....................................................13

*King Instruments Corp. v. Perego*,
   65 F.3d 941 (Fed. Cir. 1995) ..........................................................................8

*Leesona Corp. v. United States*,
   599 F.2d 958 (Ct. Claims 1979) ......................................................................6

3157528v1/013090

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

*Lucent Techs., Inc. v. Gateway Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................... 1, 6

*Minco, Inc. v. Combustion Engineering, Inc.*,
    95 F.3d 1109 (Fed. Cir. 1996) ....................................................................... 8

*Mitutoyo Corp. v. Central Purchasing, LLC*,
    499 F.3d 1284 (Fed. Cir. 2007) .................................................................... 11

*Murphy v. City of Long Beach*,
    914 F.2d 183 (9th Cir. 1990) ......................................................................... 2

*Pavao v. Pagay*,
    307 F.3d 915 (9th Cir. 2002) ......................................................................... 1

*Reeves v. Sanderson Plumbing Prods.*,
    |530 U.S. 133 (2000) ....................................................................................... 2

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995) ....................................................................... 8

*State Indus. Inc. v. Mor-Flo Indus.*,
    883 F.2d 1573 (Fed. Cir. 1989) ..................................................................... 8

*The Johns Hopkins Univ. v. Datascope Corp.*,
    543 F.3d 1342 (Fed. Cir. 2008) ..................................................................... 2

*TWM Mnf'g v. Dura Corp.*,
    789 F.2d 895 (Fed. Cir. 1986) ....................................................................... 8

*United States v. 4.0 Acres of Land*,
    175 F.3d 1133 (9th Cir. 1999) ....................................................................... 2

*United States v. Kellington*,
    217 F.3d 1084, 1095 (9th Cir. 2000) ............................................................. 2

3157528v1/013090

*Versata Software, Inc. v. SAP America, Inc.*,
 717 F.3d 1255 (Fed. Cir. 2013) ........................................................................8

*William Inglis v. ITT Cont'l Baking Co.*,
 668 F.2d 1014 (9th Cir. 1981) .........................................................................2

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*,
 609 F.3d 1308 (Fed. Cir. 2010) ........................................................................2

*Zygo Corp. v. Wyko Corp.*,
 79 F.3d 1563 (Fed. Cir. 1996) .........................................................................8

**Rules**

Fed. R. Civ. P. 50(a) ..................................................................................................1

Fed. R. Civ. P. 59......................................................................................................1

Rule Fed. R. Civ. P. 50(b) .........................................................................................1

3157528v1/013090

As set forth in SS/L's other motions, the jury's damages award should be set aside because ViaSat presented insufficient evidence and flawed expert testimony to support its lost profits and reasonable royalty calculations. SS/L files this separate motion[1] in the event that this Court nevertheless is inclined to uphold both the jury's lost profits and royalties awards, whether in whole or in part. In that scenario, ViaSat is not entitled to recover lost profits and reasonable royalties simultaneously, because there is no legal basis permitting the award of <u>both</u> forms of damages from a single infringing act (here, SS/L's sale of the Jupiter-1 satellite).

Even if this Court finds sufficient evidence to award both lost profits and a reasonable royalty, this Court cannot award both. It should vacate either the lost profits award or the reasonable royalty award to avoid an impermissible double recovery. Alternatively, the Court should grant a new trial on damages.

## I.   LEGAL STANDARD

Judgment as a matter of law ("JMOL") may be granted and a jury verdict can be overturned "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Lucent Techs., Inc. v. Gateway Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "[O]n posttrial JMOL motions, district court judges must scrutinize the evidence carefully to ensure that the 'substantial evidence' standard is satisfied." *Id.* at 1336.

---

[1] SS/L hereby moves for judgment as a matter of law ("JMOL") pursuant to Rule 50(a) and, pursuant to Rule 50(b), renews the motion for JMOL that it made before the close of evidence. Alternatively, SS/L moves for a new trial pursuant to Rule 59.

Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1348 (Fed. Cir. 2008) (quotation marks and citation omitted). "Under Rule 50, a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000).

Whether to grant a new trial on some or all issues, pursuant to Fed. R. Civ. P. 59, is a matter of the trial court's discretion. *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 843 (9th Cir. 2004). Courts apply a lower standard of proof to motions for new trial than they do to JMOL motions. *William Inglis v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1026-7 (9th Cir. 1981) "[T]he trial court may grant a new trial, even though the verdict is supported by substantial evidence, if 'the verdict is contrary to the clear weight of the evidence or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)). In deciding a motion for new trial, the court "has the right, and indeed the duty, to weigh the evidence" and may evaluate the credibility of the witnesses. *Murphy v. City of Long Beach*, 914 F.2d 183 (9th Cir. 1990); *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000). The court is not required to view the evidence from the perspective most favorable to the prevailing party. *Kellington*, 217 F.3d at 1095.

1

## II.   BACKGROUND

2   At trial, ViaSat accused two SS/L satellite projects of infringing its patents –

3   the Jupiter-1 project (which consisted of the single Jupiter-1 satellite) and the NBN

4   project (which consisted of two satellites for the Australian firm NBN Co.). As to

5   Jupiter-1, ViaSat's damages expert, Dr. Slottje opined that both lost profits and a

6   reasonable royalty could be awarded by dividing the lifespan of Jupiter-1 into

7   yearly periods, and then ascribing different measures of damages to each period:

8
> Q.     Why do you think ViaSat is entitled to both lost
> profits and reasonable royalty damages for Jupiter-1
9   > satellite?

10
> A.     Well, as you can see on this graphic, the period of
> time in which lost profits transpired is a relatively short
11   > period of time. We have to remember that these satellites
> are up there in the sky for 15 years. So we have to make
12   > an adjustment for the fact that even though the lost profit
> period may be four and a quarter years, there's another
13   > 11.75 years where that thing is still up in the sky
> infringing. And we have to adjust for that.
14

15   4/3/14 Trial Tr., 1762:20 to 1763:5. This question-and-answer exchange was the

16   only analysis that Dr. Slottje provided at trial to justify the award of both lost

17   profits and a reasonable royalty on Jupiter-1.

18   Ultimately, Dr. Slottje concluded that ViaSat was owed $175.2 million in lost

19   profits and $459.9 million in reasonable royalties for SS/L's alleged Jupiter-1

20   infringement. *Id.* at 1803:20 to 1804:1. If lost profits were not to be awarded, he

21   pegged reasonable royalties at $587.1 million. *Id.* at 1797:14-18.

22   Before the close of evidence, SS/L moved for judgment as a matter of law

23   under Rule 50(a) on the ground that the recovery of both lost profits and a

24

reasonable royalty on the same sale is impermissible. Doc. No. 966, at 10. The jury eventually returned a verdict finding that SS/L directly infringed ViaSat's three patents with respect to the Jupiter-1 satellite. Doc. No. 1014, at 2-3. The jury also found, however, that SS/L did not induce or contribute to infringement of any ViaSat patents, that SS/L did not infringe with respect to the NBN satellites, and that Loral did not infringe at all. *Id.* at 2-5. With respect to SS/L's direct infringement of Jupiter-1, the jury awarded $58 million in lost profits and $123 million in reasonable royalties. *Id.* at 9.

### III.   THE JURY'S FINDING OF ONLY A SINGLE INFRINGEMENT PRECLUDES THE AWARD OF BOTH LOST PROFITS AND A REASONABLE ROYALTY

Over SS/L's objection (Doc. No. 965, at 3-4), the Court instructed the jury as to the circumstances by which it could award both lost profits and a reasonable royalty. Doc. No. 1013, at 77-86 (Instruction Nos. 53-58). Instruction No. 55 specifically explained the circumstances under which a verdict might encompass both measures of damages:

> If you find that the Plaintiff has not proven its claim for lost profits, then you must consider the issue of a reasonable royalty if you have found a patent to be infringed and valid. If you find that the Plaintiff has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty but may determine that the lost profits fully compensates the plaintiff for the infringing sales. For the remaining claims of patent infringement, you must consider the issue of a reasonable royalty. You must decide whether the party has proven an amount as a reasonable royalty that it could have earned on any infringing sales for which you have not already awarded lost profit damages. A royalty is a payment made to a

patent owner by someone else in exchange for the rights
to make, use, sell, or import a patented product.

*Id.* at 81 (emphases added). Instruction No. 55 thus informed the jury that if ViaSat proved a claim for lost profits "for only a portion of the infringing sales" – with "sal*es*" in the plural – then the jury must consider a reasonable royalty for the remainder of any infringing sales. Instruction No. 55 further counseled the jury that this royalty is to apply to "any infringing sales for which you have not already awarded lost profit damages" – again with the term "sal*es*" in the plural.

Although SS/L objected that the jury instructions failed adequately to protect against double-counting (Doc. No. 965, at 3-4), theoretically the jury could have applied them appropriately to ViaSat's claims. For example, the jury could have found that for one "infringing sale" by SS/L – *e.g.*, Jupiter-1 – ViaSat was entitled to lost profits, and that for other "infringing sales" by SS/L, – *e.g.*, the two NBN satellites – ViaSat was entitled to a reasonable royalty. In that situation, the jury would have awarded ViaSat lost profits on a "portion of the infringing sales," and then a reasonable royalty "on any infringing sales for which [the jury has] not already awarded lost profit damages."

According to the jury's verdict, however, there was only one infringing sale by SS/L. The jury found that SS/L infringed ViaSat's patents as to the Jupiter-1 satellite, but found no liability for the NBN satellites. Nor may one conclude from the jury's verdict that Hughes's future use of the Jupiter-1 satellite constituted "infringing sales." Hughes was not a party to the case, and no jury findings were made as to Hughes. More importantly, while the jury found that SS/L directly infringed, it returned a verdict of "no" on the question of whether SS/L induced

anyone to infringe or contributed to anyone else's infringement. Accordingly, there is no basis in the jury's verdict to include Hughes's activities within the ambit of "infringing sales." The jury found one and only one infringing act – SS/L's manufacture/sale of the single Jupiter-1 satellite.

As such, the jury's own findings demonstrate that there was insufficient evidence to support the award of both lost profits and a reasonable royalty. The Court's instructions allowed the jury to award a reasonable royalty only on those "infringing sales for which you have not already awarded lost profit damages." Given that the jury found that only <u>one</u> infringing sale occurred, it would be impossible to faithfully apply Instruction No. 55 and still award <u>two</u> measures of damages. This Court should therefore vacate the jury's award of either lost profits or reasonable royalties, or, in the alternative, grant a new trial on damages.

## IV.   FEDERAL CIRCUIT LAW PRECLUDES THE AWARD OF BOTH LOST PROFITS AND A REASONABLE ROYALTY FOR A SINGLE INFRINGING SALE

The Federal Circuit has consistently applied the understanding that lost profits and a reasonable royalty are two <u>alternate</u>, not complementary, measures of damages. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("Two <u>alternative</u> categories of infringement compensation are the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining." (emphasis added); *see also Leesona Corp. v. United States*, 599 F.2d 958, 971 (Ct. Claims 1979) ("<u>Awarding lost profits in addition to the royalty would</u> <u>be double-counting</u>, and the profits, especially those based on plaintiff's own projection, are over and above the reasonable and entire compensation for plaintiff's

loss.") (emphasis added). To the extent this Court finds them instructive, numerous district court cases have likewise endorsed the principle that a reasonable royalty and lost profits may not be awarded on the same, single sale. As the Northern District of California has explained, "[a] patent owner may recover lost profits damages or a reasonable royalty on each infringing sale, but not both." *DSU Medical Corp. v. JMS Co.*, 296 F. Supp.2d 1140, 1149 (N.D. Cal. 2003), *aff'd*, 471 F.3d 1293 (Fed. Cir. 2006) (emphasis added). District courts have thus vacated portions of damages awards that would amount to a double recovery of lost profits and a reasonable royalty. *E.g.*, *Engineered Prods. Co. v. Donaldson Co.*, 335 F. Supp.2d 973, 980 (N.D. Iowa 2004) ("Nevertheless, it would be manifest error, and substantially unjust, to allow EPC to recover both 'lost profits' and a 'reasonable royalty' for sales that *actually* involved the NG GMT-800.") (citations omitted and emphasis in original), *reversed in part on other grounds*, 147 Fed. Appx. 979 (Fed. Cir. 2005); *Arlington Indus., Inc v. Bridgeport Fittings, Inc.*, 2010 WL 815466, *4 (M.D. Pa. Mar. 3, 2010) (analyzing Federal Circuit double recovery law and vacating reasonable royalty award of $666,278.54, which was "duplicative" of jury's lost profits award of $2,772,373).

To be sure, patentholders frequently recover both lost profits and a reasonable royalty in the same lawsuit. When they do, however, it is always in the context of multiple infringing sales, some of which may relate to lost profits and some to a reasonable royalty:

> The Patent Act permits damages awards to encompass both lost profits and a reasonable royalty on that portion of an infringer's sales not included in the lost profit calculation. A segment of the infringer's sales may not

warrant a lost profits award because the patentee cannot establish causation for that segment. For instance, a patent owner may not operate in the specific geographical area covered by the infringer or may not have had the manufacturing or marketing capacity to make the infringer's sales. However, the patentee would still be entitled to a reasonable royalty on each of those sales.

*Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996) (citations omitted and emphasis added). For example, if an infringer sold 100 infringing widgets, and the patentholder's marketshare for widgets generally was 40%, then it may be proper to award the patenholder lost profits for 40 lost widget sales and a reasonable royalty on the remaining 60 infringing sales made by the infringer. Thus, each time the Federal Circuit has permitted both lost profits and a reasonable royalty in the same case, it has done so in a context where the accused infringer made multiple infringing sales or used an infringing apparatus multiple times.[2]

Here, by contrast, SS/L made only one allegedly infringing satellite sale— that of Jupiter-1—and it never "used" that satellite (at least not during Dr. Slottje's

---

[2] *See, e.g.*, *TWM Mnf'g v. Dura Corp.*, 789 F.2d 895 (Fed. Cir. 1986) (sales of multiple vehicle suspension devices); *State Indus. Inc. v. Mor-Flo Indus.*, 883 F.2d 1573 (Fed. Cir. 1989) (sales of multiple water heaters); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995) (sales of multiple vehicle restraints); *King Instruments Corp. v. Perego*, 65 F.3d 941 (Fed. Cir. 1995) (sales of multiple machines for loading magnetic tape); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563 (Fed. Cir. 1996) (sales of multiple interferometers); *Minco*, 95 F.3d 1109 (yearly sales of fused silica arising from use of infringing furnace); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001) (sales of multiple audio chips); *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255 (Fed. Cir. 2013) (sales of multiple software programs).

damages period, after its launch). No support exists in the patent statute or the caselaw for the proposition that SS/L should be required to compensate ViaSat <u>both</u> for the lost profits and reasonable royalties arising from that single sale.

## V.   DR. SLOTTJE'S TESTIMONY IS INSUFFICIENT TO SUPPORT THE AWARD OF BOTH LOST PROFITS AND A REASONABLE ROYALTY

SS/L expects ViaSat to argue in response that it has not sought a double recovery of damages. To do so, ViaSat must concoct a way to transform what is obviously a single infringing act – the sale of Jupiter-1 – into multiple acts of infringement, which it then can slice and dice into various components of lost profits and reasonable royalties. So ViaSat will rely upon Dr. Slottje, who divided the usage by Hughes of Jupiter-1 into yearly increments and assigned lost profits to certain of those years and a reasonable royalty to others. 4/3/14 Trial Tr., 1762:20 to 1763:5. Invoking his analysis, ViaSat will argue that in no single year is it recovering both lost profits and a reasonable royalty.

The problems with this argument are legion. Most fundamentally, they ignore the nature of the alleged infringement. ViaSat presented no evidence at trial to suggest that SS/L uses or employs the Jupiter-1 satellite. SS/L is a satellite manufacturer, and pursuant to its contract with Hughes, title to Jupiter-1 passed to Hughes upon launch. Grinstein Decl., Ex. A, at 44. ViaSat presented no evidence suggesting that SS/L uses Jupiter-1 or that it will do so in the future. Thus, to the extent the jury found infringement by SS/L, that infringement concluded with the sale of Jupiter-1. This is a single act of infringement, and, as discussed above, lost profits and a reasonable royalty may not be awarded for a single infringing act.

Perhaps if SS/L had been accused of infringing method patents, ViaSat could conceivably fashion a damages model that imposed damages for each year the method was employed. But all the asserted patent claims were <u>apparatus</u> claims, and, in any event, SS/L cannot be performing any "method" with respect to a satellite over which it has no ownership or control. Or, perhaps if SS/L owned Jupiter-1, ViaSat could generate some damages theory based upon SS/L's yearly infringing "use" of the satellite. But SS/L cannot be said to be "using" Jupiter-1 now, or in the future, because Hughes owns Jupiter-1. And perhaps if SS/L had induced or contributed to Hughes's infringement of ViaSat's patents, ViaSat might attempt to argue that SS/L is somehow liable for the yearly impact of Hughes' infringement. The jury, however, found SS/L <u>not</u> liable on all indirect infringement theories.

ViaSat is thus left with the amorphous argument that SS/L somehow must still be liable for the extent of Hughes's yearly use of the Jupiter-1 satellite, which would then permit division into lost profits and reasonable royalties. Given the jury's finding, however, that SS/L did not induce or contribute to infringement by Hughes (or anyone else), there is no legal support for looking to SS/L's <u>customer</u>'s yearly usage of the infringing device and attributing that usage to SS/L as the <u>manufacturer</u>.

For example, in *Foster v. American Machine & Foundry*, 492 F.2d 1317 (2d Cir. 1974), the Second Circuit (sitting before the existence of the Federal Circuit), confronted a damages claim made by a patentholder against the manufacturer of certain welding equipment. The patentholder argued that his reasonable royalty

should be based not upon the manufacturer's revenues for the infringing product, but instead upon the revenues of the mill operators to whom the manufacturer sold the welding equipment. *Id.* at 1320. The patentholder's theory of damages was premised in large part upon his contention that the manufacturer induced infringement by the mill operators, *id.* – a factor not even present here due to the jury's liability finding. Yet even on these facts, the Second Circuit commented that "[t]his argument, which has some surface plausibility, is without merit." *Id.* As the *Foster* court reasoned, the hypothetical negotiation in that case would have been between the patentholder and the manufacturer, not the mill operators. *Id.* at 1321-22. Because no substantial evidence was presented about what the mill operators might have paid at any hypothetical negotiation, *id.* at 1322, the Second Circuit confined damages to the sales price for the devices sold by the manufacturer. Likewise, here ViaSat presented no *Georgia-Pacific* analysis as to what Hughes would have paid, and in fact that analysis would have been moot anyway in light of the jury's finding of no induced infringement by SS/L.

The Federal Circuit followed a similar approach in *Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284 (Fed. Cir. 2007). In *Mitutoyo*, the Federal Circuit deemed it to be "clear error" to include the sales of a downstream distributor in the royalty base, when the only part found to have infringed was its upstream supplier. *Id.* at 1292. Likewise, here the allegedly infringing party is SS/L, and there is no basis for dividing SS/L's single act of infringement into yearly increments based upon its downstream customer's usage of the infringing device.

Although it is a district court case from outside this district, *Goss Int'l*

*Americas, Inc. v. MAN Roland, Inc.*, 2008 WL 3823705 (D.N.H. Aug. 15, 2008), is a well-reasoned and instructive opinion on this point. In *Goss*, defendant MAN Roland was found to have directly infringed plaintiff Goss's patents by making a product called the Rotoman S press. *Id.* at *1. Like here, however, none of MAN Roland's customers was a party to the suit or the infringement finding, and "indirect infringement is not properly a part of this case." *Id.* at *2. In seeking lost profit and reasonable royalty damages, however, MAN Roland attempted to have consideration paid to the economic value to MAN Roland's customers of the Rotoman S Press. The district court, however, concluded that "the economic value of the Rotoman S press to MAN Roland's customers has no place in the proper calculation of either Goss's lost profits or a reasonable royalty as between Goss and MAN Roland, which is the only infringer in this case." *Id.* at *1. The court's reasoning in rejecting consideration of the economic value to customers of the manufacturer's infringing product, where the customers were not defendants and there was no indirect infringement, is quite relevant here:

> Section 284 provides that the damages awarded to a successful infringement claimant must be "in no event less than a reasonable royalty for the use made of the invention by the infringer." Here, the only infringer is MAN Roland, and MAN Roland's infringement consists of the manufacture and sale of the Rotoman S press. Thus, a reasonable royalty in this case would approximate the royalty MAN Roland ought to pay for making and selling the Rotoman S press. MAN Roland has not been found liable for infringing the suit patents by using the Rotoman S to perform print jobs. The economic value of the Rotoman S to customer-printers who infringe the suits-in-patent by using that press might be a proper component of a reasonable royalty that infringing printers ought to pay for using the patented invention. But there are no

> infringing printers in this case; MAN Roland's customers are not before the court. That the damages Goss seeks might be recoverable from other defendants does not make evidence of those damages relevant here.

*Id.* at \*2; *see also Itex, Inc. v. Westex, Inc.*, 2011 WL 856583, \*4 (N.D. Ill. Mar. 9, 2011) ("Accordingly, the entire amount of potential damages would be accounted for in a hypothetical royalty between the plaintiffs and the manufacturers, rendering the details of the customers' downstream sales irrelevant."); *DeGregorio v. Phillips Elecs. N. Amer. Corp.*, 2007 WL 4591966, \*1 (N.D. Ill. Jan. 7, 2008) ("Plaintiff, however, has cited no authority to establish that a calculation of royalty would depend on in any way the infringer's retail customers' profits for the accused device.").

Apart from Dr. Slottje's "yearly use by Hughes" theory (TT 4/3/14, 1762:20 to 1763:5), ViaSat offered no other evidence or explanation at trial as to how it could be entitled to both a reasonable royalty and lost profits on a single sale. And the "yearly use by Hughes" theory cannot sustain a dual damages award because there is no finding that Hughes has infringed or that SS/L is somehow responsible for Hughes's non-existent infringement. The jury found only a single act of infringement. As such, insufficient evidence exists to sustain the jury's award of both lost profits and a reasonable royalty on a single sale.

Indeed, Dr. Slottje's opinion also led to the double counting of reasonable royalties and lost profits for an additional reason. In his discussion of the *Georgia-Pacific* factors, Dr. Slottje opined that the reasonable royalty should be increased because ViaSat and Hughes were competitors:

1
2
3
4
5
6
7

> The commercial relationship between the licensor and the licensee, remember what they're going to do with the satellite that we're negotiating over. That satellite, which is Jupiter-1, is going to be sold to Hughes which is the direct competitor of ViaSat. You can think of it if you're – you're not going to want to be giving a license to – at any cheap rate to anybody that you are going to be – you know that the product is going to be competing against you. That's just common sense. So they would expect a higher rate for that as well, and that's why those two factors have up there.

8  4/3/14 Trial Tr., 1794:8-19. By arguing that the reasonable royalty should increase

9  because ViaSat's business would be harmed by indirectly licensing a competitor,

10  Dr. Slottje was essentially arguing that ViaSat's alleged lost profits should be taken

11  into account in setting the reasonable royalty. Although this might have been

12  permissible if only a reasonable royalty had been awarded, it amounts to double-

13  counting in light of the jury's verdict. Dr. Slottje's analysis effectively asked for lost

14  profits twice on the same sale—once in the traditional sense, and once again as a

15  factor to increase the reasonable royalty. For this additional reason, the jury's award

16  of both lost profits and a reasonable royalty cannot be sustained.

17  ## VI.   CONCLUSION

18       The relief sought by this motion turns on this Court's resolution of SS/L's

19  motions for JMOL as to ViaSat's lost profits and reasonable royalty models. If this

20  Court finds insufficient evidence to support either or both theories, then this

21  double-recovery issue is moot. If, on the other hand, this Court upholds damages

22  under both theories, whether in whole or in a reduced amount, this Court must

23  vacate one or the other damages award to avoid an impermissible double recovery.

24

1    Alternatively, SS/L requests a new trial on damages.

2
     Dated: June 13, 2014        By:    */s/ Joseph S. Grinstein*
3                                       Marc M. Seltzer
                                        Amanda K. Bonn
4                                       SUSMAN GODFREY L.L.P.
                                        1901 Avenue of the Stars, Suite 950
5                                       Los Angeles, CA 90067-6029
                                        Telephone: (310) 789-3100
6                                       Fax: (310) 789-3150
                                        Email: abonn@susmangodfrey.com
7

8                                       William Christopher Carmody
                                         (Admitted *Pro Hac Vice*)
9                                       Jacob W. Buchdahl
                                         (Admitted *Pro Hac Vice*)
10                                      SUSMAN GODFREY L.L.P.
                                        560 Lexington Avenue, 15th Floor
11                                      New York, NY 10022
                                        Telephone: (212) 336-8330
12                                      Fax: (212) 336-8340

13
                                        Joseph S. Grinstein
14                                       (Admitted *Pro Hac Vice*)
                                        William R. H. Merrill
15                                       (Admitted *Pro Hac Vice*)
                                        SUSMAN GODFREY L.L.P
16                                      1000 Louisiana Street, Suite 5100
                                        Houston, Texas 77002-5096
17                                      Telephone:  713-653-7856
                                        Facsimile:   713-654-6666
18                                      Email: jgrinstein@susmangodfrey.com
                                        Email: bmerrill@susmangodfrey.com
19

20
                                        Ian B. Crosby
21                                       (Admitted *Pro Hac Vice*)
                                        Rachel S. Black
22                                       (Admitted *Pro Hac Vice*)
                                        Patrick C. Bageant (275135)
23                                      SUSMAN GODFREY L.L.P.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3861
Fax: (206) 516-3883
Email: icrosby@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: pbageant@susmangodfrey.com

*Attorneys for Defendants/Counterclaim
Plaintiffs Space Systems/Loral, LLC (f/k/a
Space Systems/Loral, Inc.) and Loral Space
& Communications Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 13, 2014, I caused the foregoing **SS/L'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR ALTERNATIVELY FOR A NEW TRIAL (4 Of 12), REGARDING DOUBLE COUNTING OF DAMAGES** to be served on opposing counsel via the Court's CM/ECF system.

Dated: June 13, 2014            By:    */s/ Joseph S. Grinstein*