William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:   (212) 336-8330
Facsimile:    (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:   (310) 789-3100
Facsimile:    (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC.,<br><br>                    Plaintiffs,<br>          vs.<br><br>SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC.,<br><br>                    Defendants/Counterclaim Plaintiffs. | Case No. 3:12-cv-00260-H-WVG<br><br>Hon. Marilyn L. Huff<br><br>**REDACTED**<br><br>**SS/L'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (11 OF 12), REGARDING NON-INFRINGEMENT**<br><br>Date: July 22, 2014<br>Time: 9:00 a.m.<br>Place: Courtroom 15A |

# CONTENTS

I.   INTRODUCTION ...........................................................................................1

II.  LEGAL STANDARD ....................................................................................2

III. THE '043 PATENT .......................................................................................4

   A.  As a Threshold Matter, there Can be No Infringement by Jupiter-1 Before it Launched. .....................................................................4

   B.  Jupiter-1 Does not Infringe Claim 1 of the '043 Patent............................5

      1.  The '043 Patent Requires Maximization Over Alternate Beam Spacings AND Alternate Numbers of Colors. ..................................5

         i.   Jupiter-1 Does not Maximize Over Alternate Numbers of Colors. ........................................................................6

         ii.  Jupiter-1 Does Not Maximize Over Alternate Beam Spacings.........................................................................7

         iii. No Reasonable Juror Could Look at Two Numbers and Conclude that the Smaller Number is the "Maximum." ............9

      2.  The Jury's Finding is Incurably Tainted by ViaSat's Improper Claim Construction Arguments to the Jury. ..................................10

      3.  ViaSat Failed to Present Evidence of Two Overlapping Spot Beams Emanating from the Same Antenna, as the '043 Patent Requires. .....................................................................11

      4.  ViaSat Failed to Present Evidence that Jupiter-1 Implements ACM, as Claim 8 Requires. .............................................................13

      5.  ViaSat Failed to Present Evidence to Show that Jupiter-1 is "Operated" to Maximize Capacity....................................................13

   C.  Jupiter-1 Does Not Infringe Claim 7 of the '043 Patent..........................14

IV.  THE '827 PATENT ......................................................................................15

   A.  Jupiter-1 Does Not Operate "Based on Information," as the '827 Patent Requires. ....................................................................15

   B.  Jupiter-1 Does Not Perform Dynamic Switching. ..................................16

V.    THE '875 PATENT ......................................................................................... 18

    A.   There Can be No Infringement By Jupiter-1 Before its Launch. ............ 18

    B.   Jupiter-1 Does Not Infringe Claims 1 and 12 of the '875 Patent. ........... 19

    C.   ViaSat Did Not Establish that Jupiter-1 "Allocates" Colors as
        Claims 1 and 12 Require. ...................................................................... 20

VI.   THERE IS NO EVIDENCE TO SUPPORT ANY FINDING OF
     INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS .......... 21

    A.   ViaSat Has Not Carried its Burden as to the '043 Patent. ...................... 22

    B.   ViaSat Has Not Carried its Burden as to the '827 Patent. ...................... 23

    C.   ViaSat Has Not Carried its Burden as to the '875 Patent. ...................... 24

VII.  IN THE ALTERNATIVE, SS/L IS ENTITLED TO A NEW TRIAL .......... 25

VIII. CONCLUSION ............................................................................................. 25

1

# AUTHORITIES

2

3

## Cases

*Allied Chem. Corp. v. Daiflon*,
4    449 U.S. 33 (1980) ........................................................................... 25

5
*American Calcar, Inc. v. American Honda Motor Co., Inc.*,
6    651 F.3d 1318 (Fed. Cir. 2011) .................................................. 22, 24

7
*Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac
     Solutions, P.C.*,
8    482 F.3d 1347 (Fed. Cir. 2007) ....................................................... 16

9
*Centricut, LLC v. Esab Group, Inc.*,
10    390 F.3d 1361 (Fed. Cir. 2005) ......................................................... 3

11
*Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
     424 F.3d 1293 (Fed. Cir. 2005) ................................................... 4, 18

12
*Every Penny Counts, Inc. v. American Express Co.*,
13    563 F.3d 1378 (Fed. Cir. 2009) ....................................................... 11

14
*Ex Parte Ruddy & Becker*,
     103 U.S.P.Q. 245 (BPAI 1953) ......................................................... 6
15

16
*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
     450 F.3d 1350 (Fed. Cir. 2006) ......................................................... 3

17
*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
18    382 F.3d 1354 (Fed. Cir. 2004) .................................................. 21, 23

19
*Lucent Techs., Inc. v. Gateway Inc.*,
     580 F.3d 1301 (Fed. Cir. 2009) ......................................................... 2
20

21
*Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*,
     515 F.3d 1331 (Fed. Cir. 2008) ....................................................... 21

22
*Millenkamp v. Davisco Foods Int'l, Inc.*,
23    562 F.3d 971 (9th Cir. 2009) ........................................................... 25

24

*Molski v. M.J. Cable, Inc.*,
    471 F.3d 724 (9th Cir. 2007) ............................................................................. 25

*Montgomery Ward & Co. v. Duncan*,
    311 U.S. 243 (1940) ........................................................................................... 25

*Muniauction v. Thomson*,
    532 F.3d 1318 (Fed. Cir. 2008) ......................................................................... 13

*Nomos Corp. v. Brainlab USA, Inc.*,
    357 F.3d 1364 (Fed. Cir. 2004) ................................................................... passim

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    521 F.3d 1351 (Fed. Cir. 2008) ......................................................................... 11

*Ortho-McNeil Pharm., Inc. v. Mylan Labs.*, Inc.,
    520 F.3d 1358 (Fed. Cir. 2008) ........................................................................... 6

*Pavao v. Pagay*,
    307 F.3d 915 (9th Cir. 2002) ............................................................................... 2

*Reese Bros., Inc. v. United States*,
    447 F.3d 229 (3d Cir. 2006) ................................................................................ 5

*Reeves v. Sanderson Plumbing Prods.*,
    530 U.S. 133 (2000) ............................................................................................. 3

*Southwest Efuel Network, LLC v. Transaction Tracking Techs., Inc.*,
    No. 2:07-cv-311 (E.D. Tex. Jan. 13, 2010) .................................................. 4, 16

*Summit Tech, Inc. v. Nidek Co.*,
    363 F.3d 1219 (Fed. Cir. 2004) ........................................................................... 3

*Sun Microsystems, Inc. v. Network Appliance, Inc.*,
    2010 WL 682422 (N.D. Cal. 2010) ................................................................... 21

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
    358 F.3d 870 (Fed. Cir. 2004) ................................................................... 5, 6, 10

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ........................................................................... 22

*TGIP, Inc. v. AT&T Corp.*,
  527 F. Supp. 2d. 561 (E.D. Tex. 2007) .............................................................3

*The Johns Hopkins Univ. v. Datascope Corp.*,
  543 F.3d 1342 (Fed. Cir. 2008) ........................................................................2

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ..........................................................................5

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ............................................................................................3

**Rules**

Fed. R. Civ. P. 50.................................................................................................2

Fed. R. Civ. P. 50(a) .......................................................................................1, 3

Fed. R. Civ. P. 50(b) .....................................................................................1, 25

Fed. R. Civ. P. 59.................................................................................................1

# I.    INTRODUCTION

Space Systems/Loral, LLC, ("SS/L") hereby moves for judgment as a matter of law pursuant to Rule 50(a) and, pursuant to Rule 50(b), renews the motion for judgment as a matter of law that it made before the close of evidence. Alternatively, SS/L moves for a new trial pursuant to Rule 59.

The jury in this case, having been overwhelmed with irrelevant evidence purportedly relating to SS/L's alleged NDA misconduct, returned findings that the Jupiter-1 satellite infringed all of the asserted patents in this case. But when examined closely and independently, the evidence with regard to each patent is insufficient to find infringement, and SS/L is thus entitled to judgment as a matter of law on all asserted claims.

*First*, with respect to the '043 patent, the jury's infringement finding depended upon (1) a reading of the evidence that was contrary to the patent's plain language and to basic, incontrovertible facts about numbers, and (2) findings about claim elements about which ViaSat presented no evidence. The jury's finding also relied upon claim construction arguments that, under controlling law, render it invalid.

*Second*, with respect to the '827 patent, no reasonable juror could find infringement because ViaSat presented no evidence to satisfy the essential "based on information" claim element, and because the undisputed evidence shows that Jupiter-1 does not engage in "dynamic switching."

*Third*, as to the '875 patent, no reasonable juror could find infringement because Jupiter-1 uses the same color for proximate gateway and user beams, not

"different colors" as the patent's claims expressly require, and because Jupiter-1 does not "allocate" colors, as the patent's claims expressly require.

*Finally*, the jury's findings under the doctrine of equivalents are also unsupported by the trial record—although ViaSat's experts mentioned the doctrine of equivalents in their presentations to the jury they did not provide "particularized testimony" or "linking arguments" or analysis on a "limitation-by-limitation basis," *all* of which are required before the Federal Circuit will uphold a jury verdict under the doctrine of equivalents. SS/L respectfully requests judgment as a matter of law in its favor.

## II.   LEGAL STANDARD

Judgment as a matter of law ("JMOL") may be granted and a jury verdict can be overturned "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Lucent Techs., Inc. v. Gateway Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "[O]n posttrial JMOL motions, district court judges must scrutinize the evidence carefully to ensure that the 'substantial evidence' standard is satisfied." *Id.* at 1336. Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1348 (Fed. Cir. 2008) (quotation marks and citation omitted). "Under Rule 50, a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally

sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000).

The "grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Summit Tech, Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). Judgment as a matter of law is appropriate when a party has been fully heard on an issue and "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed. R. Civ. P. 50(a). To avoid judgment as a matter of law, the non-moving party must set forth "substantial evidence" on each claim or issue. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007).

Because each element contained in a patent claim is deemed material to defining the scope of the patented invention, to prove infringement, it is Plaintiff's burden to prove by a preponderance of the evidence that Defendants' accused products contain every limitation in the asserted claims. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *see also Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1357-58 (Fed. Cir. 2006); *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2005). "[F]ailure to meet a single limitation is sufficient to negate infringement of the claim. . . ."*Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1367 n.1 (Fed. Cir. 2004) (citation omitted). Where, as here, the patentee fails to present the jury with evidence of infringement, judgment as a matter of law is appropriate. *Southwest*

*Efuel Network, LLC v. Transaction Tracking Techs., Inc.*, No. 2:07-cv-311 (E.D. Tex. Jan. 13, 2010).

### III.   THE '043 PATENT

#### A.   As a Threshold Matter, there Can be No Infringement by Jupiter-1 Before it Launched.

As a matter of law, the Jupiter-1 satellite cannot have infringed '043 Patent at any point before it was launched. Infringement "requires that each and every limitation set forth in a claim appear in an accused product." *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

Claims 1 and 7 require that the satellite have a beam that "*is affected* by interference from other signal sources" and that some location in that beam "*is interference-dominated* such that C/I is less than C/N." Ex. B ('043 Patent) at 20:50-59, 21:42-51 (emphasis added).[1] Claim 7 further requires that the satellite utilize two different coding and modulation combinations within a single beam and claim 8— which depends upon claim 7—recites that these combinations "*are selected* according to an adaptive coding and modulation (ACM) scheme." *Id*. at 21:52-67 (emphasis added).

Those limitations cannot be met until the satellite is launched and operational. Only then could a jury find that a satellite beam "is affected by interference from other signals sources," such that C/I is less than C/N. '043 Patent, 20:50-59, 21:42-51 And only then can a satellite beam include coding and

---

[1] All citation to "Ex." refer to exhibits to the Declaration of Patrick C. Bageant filed herewith.

modulation combinations, let alone one selected according to an ACM scheme. *See* Ex. B ('043 Patent) at 21:52-67.

**B.**    **Jupiter-1 Does not Infringe Claim 1 of the '043 Patent.**

1.    The '043 Patent Requires Maximization Over Alternate Beam Spacings AND Alternate Numbers of Colors.

Claim 1 of the '043 patent recites:

> . . . the satellite is operated to maximize data-carrying capacity of the plurality of spot beams as measured in bits/Hz, by utilizing a beam pattern having a specific number of color(s) of frequency and polarization and specific beam spacing that results in higher data-carrying capacity of the plurality of spot beams than achieved with other alternative numbers of color(s) of frequency ***and*** polarization and beam spacings.

Under controlling Federal Circuit law, claim terms—including the term "and"—are to be given their ordinary and customary meaning in the absence of strong evidence to the contrary. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Reese Bros., Inc. v. United States*, 447 F.3d 229, 235 (3d Cir. 2006) (construing the "plain language" meaning of "and").

Indeed, the Federal Circuit has refused to deviate from the "plain and ordinary" conjunctive meaning of "and" in the absence of prosecution history that "clearly and explicitly define[s] the term 'and' to mean something other than ordinary conjunctive meaning of the word: "and." *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 888 (Fed. Cir. 2004). And when the Federal Circuit has deviated from the ordinary conjunctive meaning of "and," it has done so because it faced situations in which the conjunctive reading would produce a "nonsensical result"

and "render[] several other dependent claims meaningless," *Ortho-McNeil Pharm., Inc. v. Mylan Labs.*, Inc., 520 F.3d 1358, 1363 (Fed. Cir. 2008), or in which explicit evidence shows that the patentee clearly meant to claim disjunctive alternatives, *e.g.*, *Ex Parte Ruddy & Becker*, 103 U.S.P.Q. 245, 246 (BPAI 1953).

Here, the '043 patent requires a satellite configured in a way that "results in higher data-carrying capacity of the plurality of spot beams than achieved with other alternative numbers of color(s) of frequency and polarization ***and*** beam spacings." Ex. B claim 1 (emphasis added). That means—as a matter of law—that there can be no infringement by a satellite that is configured to maximize over only one or the other. Put another way, in the '043 patent "and" means "and." *SuperGuide Corp.*, 358 F.3d at 888.

> i.     *Jupiter-1 Does not Maximize Over Alternate Numbers of Colors.*

It is undisputed that the Jupiter-1 satellite does not maximize over alternate numbers of colors. Even ViaSat's expert admitted, as he must, that this is true:

> Q: Mr. Sturza, your analysis did not show that Jupiter-1 had a maximization of capacity by adjusting both the number of colors and beam spacing, correct?
>
> A: That is correct.
>
> Q: What you did focus on in your analysis was beam spacing, correct?
>
> A: That is correct.

Ex. A at 1789. It is self-evident that by analyzing only beam spacing, but not "alternate numbers of colors," Mr. Struza's opinion failed to contain any evidence as to alternate number of colors. And from that it follows that ViaSat did not

present evidence to satisfy all of the claim elements. The reason, of course, is that Jupiter-1 does not maximize over alternate number of colors.

Lacking any evidence that Jupiter-1 maximizes over alternate numbers of colors (because Jupiter-1 does not), ViaSat resorted to proving this element by citing to SS/L documents that use the word "maximum" with reference to Jupiter-1. *See e.g.*, Ex. G (V-190) at 9. But these documents do not establish the claim limitation of maximum over "alternate numbers of colors" because they do not reference alternate numbers of colors, *id.*; they simply describe an aspiration to maximize Jupiter-1's capacity generally. In other words, they do not show that capacity was maximized ***in the way the '043 patent describes*** which is, of course, required to show infringement of the '043 patent.

Absence of evidence on this essential claim element entitles SS/L to judgment as a matter of law. "[F]ailure to meet a single limitation is sufficient to negate infringement of the claim. . . ." *Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1367 n.1 (Fed. Cir. 2004)  (citation omitted); *see also Southwest Efuel Network, LLC v. Transaction Tracking Techs., Inc.*, No. 2:07-cv-311 (E.D. Tex. Jan. 13, 2010) (where the patentee fails to present the jury with evidence of infringement, judgment as a matter of law is appropriate).

> ii.    *Jupiter-1 Does Not Maximize Over Alternate Beam Spacings.*

In addition to maximizing over alternate number of colors, claim 1 of the '043 patent also requires that the satellite maximize over alternate beam spacings. ViaSat's own evidence shows that Jupiter-1 does not do so:



Ex. H (V-1811). Indeed, Mr. Sturza's own testimony concedes the point:

> Q But if we just look at the curve itself, Mr. Sturza, that red
> line is not at the top of the curve, is it? And . . . the red line
> is right there, right? And two dots over it kicks up a little bit,
> doesn't it?

> A Looking at the original, it looks flat to me, but that's the
> blow-up. It does look like something's happening. The line is
> -- doesn't seem flat anymore.

Ex. A at 1736. The line "doesn't seem flat" because it is not flat; Mr. Sturza's own

analysis proved that that alternative configurations of Jupiter-1 would have resulted

in higher capacity, and accordingly that capacity was not maximized. It is apparent

from ViaSat's own infringement evidence that Jupiter-1's capacity measurement is

.5178, whereas it could have been configured for capacity of .5199:

> Q Sir, does the Jupiter-1 satellite operate at a lower capacity
> than the maximum capacity on this -- this graph?

1
2
3
4
5

A Well, again, as the curve itself shows that blue dot is a little bit lower than the dot inside that red circle. So that's one indication, but I can also go to the table itself and see that at a beam spacing of minus 3.5, which is what Jupiter operates,; the capacity there is .5178, which, of course, less than the capacity of .5199. So that indicates to me that Jupiter-1 does not operate at maximum capacity, even for a four color system.

6

7

*Id*. at 2005. When comparing .5199 and .5178, .5178 simply is not the maximum—no reasonable juror could disagree with the numbers.

8

9

10

11

12

13

14

15

Faced with numbers that irrefutably proved non-infringement, ViaSat attempted to create a fact issue with respect to the last two decimal places by simply urging the jury to ignore them; it argued to the jury that it should ignore those two decimal places, which are fatal to infringement, by rounding them away. *See id*. at 1737-38. But there is no evidence from which to conclude that the capacity measurements of Jupiter-1 should be rounded off, nor is there any support for that notion in the patent's claims. Bluntly put, it is a notion that Mr. Stuza made up during his deposition, as he admitted on the stand. *Id*. at 1738-39.[2]

16

17

*iii.      No Reasonable Juror Could Look at Two Numbers and Conclude that the Smaller Number is the "Maximum."*

18

19

20

ViaSat cannot overcome the "heavy presumption" that Claim 1 carries its ordinary meaning—i.e., that "maximum" does not mean "something less than maximum." *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 874

21

22

23

24

[2] ViaSat also argued that SS/L may have changed Mr. Sturza's model in order to achieve favorable results but not only did ViaSat fail to produce any evidence that such changes occurred—the evidence shows that it was not changed. Ex. A at 2003 ("This model was not changed in any way, shape or form"); (*id*. at 2505-06 (same).

(Fed. Cir. 2004). The only way to conclude based on the evidence at trial that Jupiter-1 "maximizes" capacity is by contradicting basic facts about math: no reasonable juror could dispute that .5199 is not .5178. And no reasonable juror could conclude that those numbers are the same without violating immutable rules about how numbers work. The jury's finding that .5187 is the maximum when compared to .5199 must be set aside.

        2.    <u>The Jury's Finding is Incurably Tainted by ViaSat's Improper Claim Construction Arguments to the Jury.</u>

The only basis for the jury's finding was improper claim construction arguments by ViaSat to the jury. Through its expert, Mr. Sturza, ViaSat argued that the jury should construe the patent's claims in light of the specification from the perspective of a person of skill in the art—not according to the plain and ordinary meaning of the claim term itself:

> Q What are you showing here?
>
> A Okay. So here what Doctor Helgert is alleging is that Jupiter 1 is not maximized, because if Jupiter 1 had been designed with three colors, you could get more capacity with a three-color system than you could with a four. And that's, in my opinion, totally misrepresenting the claim language. What the claim language is telling us -- and I looked at the claim language in light of the specification, all that technical stuff in the patent. And as a person skilled in the art, I understand what the requirement of the claim limitation is is -- one way to satisfy that is to select a number of colors and maximize by adjusting beam spacing.

Ex. A at 1647. It is black-letter law that juries are not to engage in claim construction. "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond*

*Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("the court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury."). This finding is an example of why: only by leading the jury away from the claim's plain meaning was ViaSat able to obtain an infringement finding. That line of argument was impermissible under *O2Micro*, and consequently invalidates the jury's verdict. *Every Penny Counts, Inc.*, 563 F.3d at 1383.

        3.     <u>ViaSat Failed to Present Evidence of Two Overlapping Spot Beams Emanating from the Same Antenna, as the '043 Patent Requires.</u>

Claims 1 and 7 of the '043 Patent require:

> . . . a ***plurality of spot beams emanating from the antenna*** to service a plurality of service links, wherein: the plurality of spot beams includes a first spot beam and a second spot beam, ***the first spot beam illuminates a first region within the geographic area,*** in order to send information to a first plurality of subscriber terminals, ***the second spot beam illuminates a second region within the geographic area*** and adjacent to the first region, in order to send information to a second plurality of subscriber terminals, ***whereby the first and second regions overlap*** . . .

Ex. B ('043 patent) claim 1 (emphasis added). The plain meaning of this language—which was not subject to special construction under the Court's claim construction order, Doc. No. 206—is that there must be two spot beams coming from the same antenna that overlap in a geographic region.

     ViaSat did not put forward any evidence to show that Jupiter-1 has two spot beams coming from the same antenna that overlap, as the patent's claim requires. It

is undisputed that ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████:[3]



Ex. F (V-176) at 29.

     ViaSat thus failed to establish—because it could not—that a plurality of spot beams emanate from the same antenna and overlap as claim 1 and 7 require. "[F]ailure to meet a single limitation is sufficient to negate infringement of the

───────────────────────────

[3] █████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████ Ex. F (V-176) at 29.

claim. . . ." *Nomos Corp.*, 357 F.3d at 1367 n.1. SS/L is thus entitled to judgment of non-infringement as a matter of law.

> 4.   ViaSat Failed to Present Evidence that Jupiter-1 Implements ACM, as Claim 8 Requires.

Claim 8 of the '043 patent requires that the satellite implement adaptive coding and modulation ("ACM"):

> The satellite for illuminating a geographic area with signals of claim 7, wherein the first coding and modulation combination and second coding and modulation combination are selected according to an adaptive coding and modulation (ACM) scheme.

Ex. B ('043 patent) claim 8. Although claim 8 requires ACM to be implemented, ViaSat failed to present any evidence on this element because the Jupiter-1 satellite does not implement ACM. While it may be true that the Hughes ground terminals use ACM, the satellite does not. Therefore, SS/L does not practice all elements in the claim, and cannot be a direct infringer. *See Muniauction v. Thomson*, 532 F.3d 1318 (Fed. Cir. 2008). SS/L is entitled to judgment as a matter of law.

> 5.   ViaSat Failed to Present Evidence to Show that Jupiter-1 is "Operated" to Maximize Capacity.

Claim 1 of the '043 patent specifically requires the satellite be "operated" in a particular fashion:

> . . . the satellite ***is operated to*** maximize data-carrying capacity of the plurality of spot beams as measured in bits/Hz, by utilizing a beam pattern having a specific number of color(s) of frequency and polarization and specific beam spacing that results in higher data-carrying capacity of the plurality of spot beams than achieved with other alternative numbers of color(s) of frequency and polarization and beam spacings.

Ex. B ('043 patent) claim 1. To prove infringement, it was ViaSat's burden to put forward evidence on each limitation of claim 1, including evidence on how Jupiter-1 is operated. But ViaSat put forward no evidence about ground terminals, or how Jupiter-1 is being "operated" at all—this entitles SS/L to judgment of no infringement as a matter of law. "[F]ailure to meet a single limitation is sufficient to negate infringement of the claim. . . ." *Nomos Corp.*, 357 F.3d at 1367 n.1.

### C.      Jupiter-1 Does Not Infringe Claim 7 of the '043 Patent.

Claim 7 of the '043 patent requires ground terminal equipment:

> . . . the first spot beam including a second portion sent to a second subscriber terminal in the first plurality of subscriber terminals utilizing a second coding and modulation combination, the first coding and modulation combination being different from the second coding and modulation combination.

*Id.* claim 7. But ViaSat put forward no evidence that Jupiter-1 ever sent any beams to subscriber terminals at any time when it was made, used, or sold by SS/L, and expressly found that SS/L did not induce infringement of this claim by Hughes. Nor did it introduce any evidence of a first coding and modulation, a second coding and modulation combination, or how they are different. In the absence of evidence that a claim element is present, there can be no finding of infringement as a matter of law. *Nomos Corp.*, 357 F.3d at 1367 n.1 ("[F]ailure to meet a single limitation is sufficient to negate infringement of the claim. . . .").

# IV.   THE '827 PATENT

## A.   Jupiter-1 Does Not Operate "Based on Information," as the '827 Patent Requires.

Claim 7 of the '827 patent requires circuitry configured to operate "based on" information that indicates the presence or absence of an interference situation with an NGSO satellite:

> circuitry configured to establish an activated frequency mode to activate one of a GSO frequency band mode and an extended frequency spectrum mode ***based on information*** indicating a presence or an absence of an interference situation with an NGSO satellite system; . . .

Ex. C ('827 patent) claim 7. As explained in the Court's claim construction order, this claim requires "circuitry configured to select one or more appropriate frequency bands based on information indicating the presence or absence of an interference situation with an NGSO satellite system." Doc. No. 206.

ViaSat offered no evidence of the basis on which the switching aboard Jupiter-1 operates. The closest ViaSat came was testimony that Jupiter-1's switch could be turned on or off, with no explanation of what that operation is "based on." *E.g.*, Ex. A at 1685-86; *id*. at 1701-02. The reason ViaSat offered no explanation of what information the switch operates based upon is that its expert did not believe that such an explanation was required by the claim:

> Q Information indicating the presence or absence of an interference situation is language in the claim, correct?
>
> A Yes.
>
> Q You have not identified any circuitry in the Jupiter-1 satellite that generates that sort of information, correct?
>
> MR. VERHOEVEN: Objection.

THE COURT: Overruled.

THE WITNESS: But that's not required by the claim.

*Id*. at 1701.

The failure is fatal to the jury's infringement finding because without evidence of "based on" the claim cannot be infringed. "Claims mean precisely what they say." *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007). It is beyond serious dispute that, as the Court's claim construction order recognized, an infringing satellite must include circuitry that operates based upon a specific kind of information: "***information indicating the presence or absence of an interference situation*** with an NGSO satellite system." Doc. No. 206 (emphasis added). "Where, as here, the patentee fails to present the jury with evidence of infringement, judgment as a matter of law is appropriate." *Southwest Efuel Network, LLC*, No. 2:07-cv-311 (E.D. Tex. Jan. 13, 2010); *see also Nomos Corp.*, 357 F.3d at 1367 n.1.[4]

## B.    Jupiter-1 Does Not Perform Dynamic Switching.

As ViaSat admits, claim 7 of the '827 patent requires circuitry capable of dynamic switching:

---

[4] If claim 7 did not require specific types of information based upon which the satellite switches, then it would impermissibly mix a method and apparatus claim, and consequently be invalid. *See* Defendants' Motion for Judgment as a Matter of Law (Renewed), or a New Trial (10 of 12), Regarding the Invalidity of the Asserted Claims of the '827 and '875 Patents in Light of the Prior Art, filed concurrently herewith; *see also* Ex. A at 1709: ("Q And just to be clear, Mr. Sturza, you're willing to apply the same reading of the patents for purposes of validity that you are today for purposes of infringement, correct? A Absolutely.").

Q You understand the claims that you have interpreted in this case and applied in this case to relate to dynamic switching, correct?

A Yes, that's correct.

Ex. A at 1701.

But the evidence presented to the jury shows that Jupiter-1 does not have the appropriate circuitry for dynamic switching. As the satellite's operator explained, dynamic switching was considered as a feature and expressly rejected during the design phase:

Q Now, did you ever consider having dynamic switching in and out of the NGSO spectrum?

A We did.

Q Did you include dynamic switching in the final design of Jupiter 1?

A Ultimately, no.

*Id*. at 1932.

Q Ultimately, did anyone at Hughes think that it made sense to have dynamic NGSO switching on Jupiter 1?

A At the end, we said it was not something we wanted to do.

Q Now, would it even be possible to use the Jupiter 1 NGSO switch for the purpose of dynamic switching?

A No, not at all.

*Id*. at 1933; *see also id*. at 1990-91 (explaining that the Jupiter-1 switch is not suitable for dynamic switching).

ViaSat's **only** evidence of dynamic switching is not found in any technical document, schematic, or description of the Jupiter-1 satellite. It is found in an early FCC filing made before the satellite was designed or built:

1
2
> Q Now, in your expert report, the only evidence that you cited to establish the Jupiter-1 dynamically switches is the Hughes letter of intent, is that correct?

3
> A I know that was included. It –

4
> Q I'm sorry. Did I cut you off?

5
> A No.

6
> Q That was the only evidence you cited, correct?

7
> A That's the only one I'm aware of now.

8
9
10
11
12
13
14
15
16
17
18
*Id*. at 1709. ViaSat points to FCC filings because the only true evidence demonstrating Jupiter-1's configuration—that is, the technical documents—don't prove infringement. FCC filings, which at best are evidence of designs being considered for Jupiter-1, are not evidence of what design was implemented on Jupiter-1. As fact witnesses with knowledge of the satellite design testified, the dynamic switching concept set forth in the FCC filing was rejected in favor of the design that was ultimately implemented—a non-dynamic switch that does not infringe. *E.g.*, *id*. Tr. T. at 1933. ViaSat put on no actual evidence of how the satellite actually switches dynamically (because it does not); it put on evidence of an alternate design for dynamic switching that was rejected. No reasonable jury could find infringement on that evidence.

19
## V.    THE '875 PATENT

20
### A.    There Can be No Infringement By Jupiter-1 Before its Launch.

21
22
23
24
Jupiter-1 cannot have infringed '875 patent at any point prior to its launch because, as set forth above, infringement "requires that each and every limitation set forth in a claim appear in an accused product." *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

Claims 1 and dependent claim 12 require that the satellite have a beam that is "allocated" specific colors. *See* '875 patent claims 1 & 12. That limitation cannot be met until the satellite is launched and operational. Only then can a satellite have a "beam" that is "allocated" a specific color.

**B.      Jupiter-1 Does Not Infringe Claims 1 and 12 of the '875 Patent.**

Claims 1 and 12 of the '875 patent require proximate gateway and user beams to not share the same color:

> . . . wherein the at least one feeder beam and a service beam associated with each of the one or more service beam coverage areas proximate to the feeder beam coverage area are allocated ***different colors*** from the beam pattern, such that signals associated with different colors differ by a frequency band, a polarization, or both a frequency band and a polarization . . .

Ex. C ('875 patent) claim 1 (emphasis added).

But the undisputed evidence is that proximate gateway and user beams in Jupiter-1 *do* share the same color. As explained at trial by Dr. Helgert:

> . . . So now if I go down to the uplink from the -- on the user beam, up to the satellite, I see the indication of RB1and RB2, which that user beam transmits, and by simply comparing these two charts, these two frequency assignments then, polarization assignments, I see that RB1 and RB2 is identical in frequency as well as in polarization to FB2.
>
> Q So these overlapping gateway and user beams are using the same colors, sir?
>
> A That's correct.

Ex. A at 1978-79. ViaSat's expert didn't offer any evidence to refute this:

Q You don't dispute that the actual hardware on the satellite receives, amplifies and forwards the same color for both user beam 60 and gateway 10, right?

A I don't think I said color. I mean, maybe I did in the deposition. If so, please point me there. But what the satellite will do is it will take whatever signals come in, receive those, process those and retransmit those.

Q Okay. FB-1 and FB-2 are examples of colors that you have used in your report, right?

A No.

Q They correspond to colors that you use in your report, right?

A They take on a color. Those -- if they're allocated, they could take on that color.

*Id*. at 1570. In the absence of evidence, SS/L is entitled to judgment as a matter of law—using "different" colors is a claim limitation and "failure to meet a single limitation is sufficient to negate infringement of the claim." . . ." *Nomos Corp.*, 357 F.3d at 1367 n.1.

## C. ViaSat Did Not Establish that Jupiter-1 "Allocates" Colors as Claims 1 and 12 Require.

Claim 1 of the 875 patent, and claim 12 which depends upon claim 1, require that the satellite "allocate" colors to a beam pattern created by an antenna system:

. . . wherein the at least one feeder beam and a service beam associated with each of the one or more service beam coverage areas proximate to the feeder beam coverage area ***are allocated*** different colors from the beam pattern, such that signals associated with different colors differ by a frequency band, a polarization, or both a frequency band and a polarization . . .

Ex. C ('875 patent) claim 1 (emphasis added).

ViaSat failed to put forward evidence that Jupiter-1 engages in any color allocation at all. Indeed, as ViaSat's expert implicitly acknowledged, Jupiter-1 does not "allocate" because as a bent-pipe satellite it simply receives and re-transmits whatever signal it sent to it:

> Q So in any event, it does amplify the same signals, the same color, and forward them over the transponder, correct?
>
> A Well, the Jupiter satellite is a bent pipe satellite, so whatever comes into those antennas will get amplified, processed, and then retransmitted.

Ex. A at 1567. ViaSat's failure to put forward evidence of the "allocation" limitation of claim 1 and claim 12 entitles SS/L to judgment as a matter of law.

## VI.   THERE IS NO EVIDENCE TO SUPPORT ANY FINDING OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

A patentee like ViaSat bears a heavy burden in proving infringement according to the doctrine of equivalents. *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1340-41 (Fed. Cir. 2008); *see also Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1357 (Fed. Cir. 2004) (affirming district court's grant of judgment as a matter of law of non-infringement under the doctrine of equivalents to the accused infringer at the close of the patentee's case-in-chief); *Sun Microsystems, Inc. v. Network Appliance, Inc.*, 2010 WL 682422, *22 (N.D. Cal. 2010) (granting summary judgment of no infringement under the doctrine of equivalents where patentee's only evidence to support its theory were contained in two conclusory paragraphs in its expert report that relied on an erroneous claim construction).

An expert's general statements about the insubstantiality of differences between an accused product and a patent claim's requirements are ***not*** sufficient to support a jury verdict under the doctrine of equivalents. *American Calcar, Inc. v. American Honda Motor Co., Inc.*, 651 F.3d 1318, 1338-39 (Fed. Cir. 2011). Rather, the patentee's burden is to provide "***particularized testimony and linking arguments*** as to the insubstantiality of the differences between the claimed invention and the accused device or process . . . ***on a limitation by limitation basis***." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Id*. at 1567.

### A.    ViaSat Has Not Carried its Burden as to the '043 Patent.

ViaSat did not provide the jury with particularized testimony or linking arguments of any kind, much less on a limitation-by-limitation basis, with respect to the '043 patent. Rather, its expert Mr. Sturza provided only "[g]eneralized testimony as to the overall similarity between the claims and the accused infringer's product," which does "not suffice." *Id*.

> Q Please explain [your doctrine of equivalents analysis under the '043 patent] to the jury.
>
> A Okay. So you've heard a little bit about Doctrine of Equivalence before. Basically -- well, I believe the Jupiter 1 satellite literally infringes Claim 1, which means it meets every element exactly. Doctrine of Equivalence says that there's infringement if it's -- there's insubstantial difference, if it's substantially the same. And the test that's typically used is function way result. So substantially the same function, substantially the same way, substantially the same results. And that's what I see here, that it's maximized

> capacity by adjusting beam spacing, and the result is the maximum capacity. And so here I see -- you see the output from my model on the left, and here you see an excerpt from the patent where I've added some color on the right side. And this is my understanding of what Jupiter has done. They have a four-color system. They've maximized the beam spacing. They have interference dominated locations.

Ex. A at 1639. This high-level summary does not link the "equivalent" function to the patent's claims, and does not state with particularity where each claim element is found to be equivalent. It is woefully inadequate under controlling Federal Circuit law and the jury's findings based upon it must be set aside. *Lighting World, Inc.*, 382 F.3d at 1357 (Fed. Cir. 2004).

### B.   ViaSat Has Not Carried its Burden as to the '827 Patent.

ViaSat's testimony with respect to the '827 patent was similarly inadequate under Federal Circuit law:

> Q What does this show? What does this excerpt you put up here show?
>
> A So what this excerpt here is showing is two ways the Jupiter-1 satellite handles these kind of commands. So either telecommands, which is loaded from the ground -- this is like the TT and C terminal way of doing it -- and time tag commands, loaded, stored, and executed at a specific time. DHE here is the data handling equipment on the satellite.
>
> Q So, in sum, what's your opinion on doctrine of equivalence?
>
> A In my opinion, it's the same function in the same way with substantially the same result.
>
> Q All right. Let's go to -- does that complete your analysis of infringement of claim seven of the Jupiter-1 satellite?
>
> A Yes, it does.

Ex. A at 1689. This testimony does not explain what claim limitation is being established according to a theory of "equivalence" nor does it link the purportedly "equivalent" function to any specific claim limitation. It is merely an expert's general statements about the insubstantiality of differences between an accused product and a patent claim's requirements—which are not sufficient to show infringement under the doctrine of equivalents. *American Calcar, Inc.*, 651 F.3d 1318.

### C.    ViaSat Has Not Carried its Burden as to the '875 Patent.

As with the '043 and '827 patents, ViaSat's expert failed to provide particularized testimony with respect to the '875 patent as well:

> Q And on this particular limitation, do you have an opinion under the doctrine of equivalence?
>
> A Yes. The -- the doctrine of equivalence is a test that you can look at the function, you know, how a device, how it functions, the way that it implements things and the results that it eventually gets, and if it does those things in substantially the same way that's required by the claim, then that device could also infringe under this doctrine of equivalence. And the Jupiter satellite system does that. You know, these colors, you can divide these colors up however you want. You know, you can slice and dice it in lots of different ways. But however you do that, all is all. It's -- they're still using all of the available frequency spectrum.

Ex. A at 1483. Although ViaSat did at least identify a particular claim limitation, its expert did not explain how the functionality of the Jupiter-1 satellite was "equivalent" other than to baldly state that "the Jupiter satellite system does that." This falls short of the high burden the Federal Circuit has set for a finding of

infringement under the doctrine of equivalents and warrants judgment in SS/L's favor as a matter of law. *Lighting World, Inc.*, 382 F.3d at 1357 (Fed. Cir. 2004).

## VII.   IN THE ALTERNATIVE, SS/L IS ENTITLED TO A NEW TRIAL

The authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per curiam). Recognized grounds for a new trial are that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 471 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). "An erroneous ruling that affects the substantial rights of a party is grounds for reversal, unless it affirmatively appears from the whole record that it was not prejudicial." *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 976 (9th Cir. 2009).

For the forgoing reasons, with respect to each of the asserted claims in this case, ViaSat did not put forward evidence sufficient to support the jury's finding of infringement, tainted the jury's findings with improper claim construction arguments, or both. The jury's verdict is erroneous in light of those facts and plainly "affects the substantial rights of" SS/L. *Millenkamp*, 562 F.3d at 976. The jury's error is not prejudicial and a new trial is thus appropriate.

## VIII.   CONCLUSION

For the forgoing reasons, SS/L respectfully requests judgment as a matter of law in its favor under Fed. R. Civ. P. 50(b).

1

2

3

4

Dated: June 13, 2014          By:    */s/ Patrick C. Bageant*

5

6

7

8

9

Marc M. Seltzer
Amanda K. Bonn
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
Email: abonn@susmangodfrey.com

10

11

12

13

14

15

William Christopher Carmody
(Admitted *Pro Hac Vice*)
Jacob W. Buchdahl
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340

16

17

18

19

20

21

22

Joseph S. Grinstein
(Admitted *Pro Hac Vice*)
William R. H. Merrill
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  713-653-7856
Facsimile:   713-654-6666
Email: jgrinstein@susmangodfrey.com
Email: bmerrill@susmangodfrey.com

23

24

Ian B. Crosby
(Admitted *Pro Hac Vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Rachel S. Black
(Admitted *Pro Hac Vice*)
Patrick C. Bageant (275135)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3861
Fax: (206) 516-3883
Email: icrosby@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: pbageant@susmangodfrey.com

*Attorneys for Defendants/Counterclaim Plaintiffs*
*Space Systems/Loral, LLC (f/k/a Space*
*Systems/Loral, Inc.) and Loral Space &*
*Communications Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### CERTIFICATE OF SERVICE

I hereby certify that, on June 13, 2014, I caused the foregoing **SS/L'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (11 OF 12), REGARDING NON-INFRINGEMENT** to be served on opposing counsel via the Court's CM/ECF system.

Dated: June 13, 2014                    By:     */s/ Patrick C. Bageant*