William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:   (212) 336-8330
Facsimile:    (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:   (310) 789-3100
Facsimile:    (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC., <br><br> Defendants/Counterclaim Plaintiffs. | Case No. 3:12-cv-00260-H-WVG <br><br> Hon. Marilyn L. Huff <br><br> **SS/L'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR ALTERNATIVELY FOR A NEW TRIAL (1 Of 12), REGARDING BREACH OF CONTRACT DAMAGES** <br><br> Date: July 22, 2014 <br> Time: 9:00 a.m. <br> Place: Courtroom 15A |

## <u>CONTENTS</u>

I.  LEGAL STANDARD ...................................................................................2

II.  BACKGROUND ........................................................................................4

III.  THERE IS NO EVIDENCE TO SUPPORT SEPARATE BREACH
     OF CONTRACT DAMAGES OF $102 MILLION .......................................7

    A.  Insufficient Evidence Supports Separate Breach of Contract
        Damages as to Jupiter-1...............................................................7

    B.  Insufficient Evidence Supports Separate Breach of Contract
        Damages as to NBN. ...................................................................9

    C.  To Award Both Patent and Breach of Contract Damages Would
        Lead to an Improper Double Recovery. ......................................12

IV.  VIASAT FAILED TO ESTABLISH ANY BREACH OF
     CONTRACT DAMAGES...........................................................................13

    A.  ViaSat Presented Insufficient Evidence of Contract Damages. ..............13

    B.  JMOL is Appropriate as to ViaSat's Contract Claim Because
        ViaSat Failed to Prove Contract Damages. ...............................20

V.  ALTERNATIVELY, SS/L IS ENTITLED TO A NEW TRIAL .................21

VI.  CONCLUSION .........................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
    466 F.3d 1000 (Fed. Cir. 2006) ...................................................................... 12

*Ash v. N. Am. Title Co.*,
    223 Cal. App. 4th 1258 (2014) ...................................................................... 14

*Awards.com, LLC v. Kinko's, Inc.*,
    42 A.D. 3d 178 (N.Y. 2007) .......................................................................... 15

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ...................................................................................... 12

*Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*,
    150 F.3d 1354 (Fed. Cir. 1988) ............................................................... 18, 19

*City Solutions, Inc. v. Clear Channel Cmmc'ns*,
    365 F.3d 835 (9th Cir. 2004) ........................................................................... 3

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ...................................................................................... 12

*Goodstein Constr. Corp. v. City of New York*,
    604 N.E.2d 1356, 1361 (N.Y. 1992) ......................................................... 14, 15

*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.*,
    170 Cal. Rptr. 3d 581 (Ct. App. 2014) .......................................................... 18

*Grp. One, Ltd. v. Hallmark Cards, Inc.*,
    254 F.3d 1050 (Fed. Cir. 2001) ...................................................................... 17

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (Fed. Cir. 1996) ......................................................................... 4

*Junker v. Eddings*,
    396 F.3d 1359 (Fed. Cir. 2005) ...................................................................... 12

*Kenford Co., Inc. v. Erie County*,
   493 N.E.2d 234 (1986) .................................................................................. 14

*Lakeside–Scott v. Multnomah County*,
   556 F.3d 797 (9th Cir. 2009) ........................................................................ 4

*Louiseau v. VISA USA Inc.*,
   2010 WL 4542896 (S.D. Cal. Feb. 10, 2010) ................................................ 21

*Lucent Techs., Inc. v. Gateway Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................ 3, 10

*Lucent Techs., Inc. v. Microsoft Corp.*,
   837 F. Supp. 2d 1107 (S.D. Cal. 2011) ......................................................... 4

*Murphy v. City of Long Beach*,
   914 F.2d 183 (9th Cir. 1990) ....................................................................... 4

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996) ..................................................................... 4

*Olsenhaus Pure Vegan, LLC v. Elec. Wonderland, Inc.*,
   983 N.Y.S. 2d 506 (App. Div. 2014) ........................................................... 15

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
   64 Cal. Rptr. 187 (Ct. App. 1967) ............................................................. 20

*Pavao v. Pagay*,
   307 F.3d 915 (9th Cir. 2002) ....................................................................... 3

*Proper v. State Farm Mut. Auto Ins. Co.*,
   63 A.D.3d 1486 (N.Y. App. Div. 2009) ................................................. 20, 21

*Reeves v. Sanderson Plumbing Prods.*,
   530 U.S. 133 (2000) .................................................................................... 3

*Seidman v. Indus. Recycling Props., Inc.*,
   106 A.D.3d 983 (N.Y. 2013) ...................................................................... 14

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
  101 Cal. App. 4th 1038 (2002) .................................................................. 14, 20

*Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*,
  909 F.Supp. 1353(C.D .Cal. 1995), .............................................................. 17

*The Johns Hopkins Univ. v. Datascope Corp.*,
  543 F.3d 1342 (Fed. Cir. 2008) ...................................................................... 3

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ...................................................................... 4

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
  69 F.3d 512 (Fed. Cir. 1995) ........................................................................... 4

*United States v. 4.0 Acres of Land*,
  175 F.3d 1133 (9th Cir. 1999) ......................................................................... 3

*United States v. Kellington*,
  217 F.3d 1084 (9th Cir. 2000) ......................................................................... 4

*Whitserve, LLC v. Computer Pkgs., Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ......................................................................... 10

*William Inglis v. ITT Cont'l Baking Co.*,
  668 F.2d 1014-7 (9th Cir. 1981) ...................................................................... 3

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010) ................................................................. 3, 21

**Statutes**

Cal. Civ. Code §§ 3300 & 3301 ........................................................................ 14

Cal. Civ. Code § 3426.3 ..................................................................................... 19

1  **Rules**

2  Fed. R. Civ. P. 59...................................................................................................3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The jury in this case returned a $123 million breach-of-contract verdict against SS/L, which it divided into (1) $102 million in separate, non-overlapping contract damages and (2) $21 million in damages that overlapped with its patent damages. There is no basis in the evidence to support either figure.[1]

After receiving the jury's verdict, this Court commented that "the 102,000,000, that's sort of a surprise to the Court." 4/24/14 Trial Tr., at 3218:14-15. And for good reason. ViaSat advanced no evidence whatsoever at trial to justify any amount of separate breach-of-contract damages, much less $102 million. Rather, its damages expert presented ViaSat's contract claims solely as an alternative justification for identical damages in the event that ViaSat did not prevail on its patent claims:

> Q. If the jury finds both patent infringement and breach of contract, will ViaSat get both patent infringement and breach of contract damages, adding those two numbers together?
>
> A. No.
>
> Q. What will happen in that scenario?
>
> A. You only get - - you get one or the other. You don't get them both.

4/3/14 Trial Tr., at 1806:10-17. But once the jury awarded ViaSat compensation on each of its patent claims, there was no evidentiary basis upon which to award $102

---

[1] SS/L hereby moves for judgment as a matter of law ("JMOL") pursuant to Rule 50(a) and, pursuant to Rule 50(b), renews the motion for JMOL that it made before the close of evidence. Alternatively, SS/L moves for a new trial pursuant to Rule 59.

1    million more to ViaSat as contract damages. This Court should vacate the jury's

2    award of $102 million in contract damages.

3    Granting JMOL as to the $102 million, however, ought not to end this

4    Court's inquiry into the breach-of-contract damages. In the event that this Court

5    grants JMOL as to ViaSat's <u>patent</u> claims, ViaSat may seek refuge in the jury's

6    finding of $21 million in overlapping patent/contract damages. Moreover, ViaSat

7    must establish the existence of damages, whether overlapping or not, as an element

8    of its contract claims. ViaSat's contract-damages presentation, however, was almost

9    non-existent; of the fifty pages of trial transcript consumed by the direct

10   examination of its damages expert, ViaSat devoted just a single page to contract

11   damages. ViaSat's expert was able to say so little about contract damages because

12   he simply assumed that contract damages could be calculated the same way as

13   patent damages. That assumption, however, overlooks critical distinctions between

14   contract and patent claims, including that the Build Contract bars lost profits as

15   damages (absent a finding of intent that was not made here) and that, unlike patent

16   claims, the protections of both asserted contracts end upon the publication of the

17   proprietary concepts claimed by ViaSat.

18   As a result, the Court should enter JMOL for SS/L on ViaSat's breach of

19   contract claim or, in the alternative, on ViaSat's breach of contract damages. At the

20   very least, SS/L is entitled to JMOL that there are no separate breach of contract

21   damages, let alone any that would total $102 million.

22                              **I.    LEGAL STANDARD**

23   Judgment as a matter of law ("JMOL") may be granted and a jury verdict can

24   be overturned "if the evidence, construed in the light most favorable to the

1   nonmoving party, permits only one reasonable conclusion, and that conclusion is

2   contrary to the jury's verdict." *Lucent Techs., Inc. v. Gateway Inc.*, 580 F.3d 1301,

3   1309 (Fed. Cir. 2009) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

4   "[O]n posttrial JMOL motions, district court judges must scrutinize the evidence

5   carefully to ensure that the 'substantial evidence' standard is satisfied." *Id.* at 1336.

6   Substantial evidence is "more than a mere scintilla" and is "such relevant evidence

7   as a reasonable mind might accept as adequate to support a conclusion." *The Johns*

8   *Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1348 (Fed. Cir. 2008) (quotation

9   marks and citation omitted). "Under Rule 50, a court should render judgment as a

10  matter of law when a party has been fully heard on an issue and there is no legally

11  sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

12  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000).

13      Whether to grant a new trial on some or all issues, pursuant to Fed. R. Civ. P.

14  59, is a matter of the trial court's discretion. *City Solutions, Inc. v. Clear Channel*

15  *Commc'ns*, 365 F.3d 835, 843 (9th Cir. 2004). Courts apply a lower standard of

16  proof to motions for new trial than they do to JMOL motions. *William Inglis v. ITT*

17  *Cont'l Baking Co.*, 668 F.2d 1014, 1026–7 (9th Cir. 1981) "[T]he trial court may

18  grant a new trial, even though the verdict is supported by substantial evidence, if

19  'the verdict is contrary to the clear weight of the evidence or is based upon evidence

20  which is false, or to prevent, in the sound discretion of the trial court, a miscarriage

21  of justice.'" *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308,

22  1313 (Fed. Cir. 2010) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133,

23  1139 (9th Cir. 1999)). In deciding a motion for new trial, the court "has the right,

24  and indeed the duty, to weigh the evidence" and may evaluate the credibility of the

1  witnesses. *Murphy v. City of Long Beach*, 914 F.2d 183 (9th Cir. 1990); *United*
2  *States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000). The court is not required
3  to view the evidence from the perspective most favorable to the prevailing party.
4  *Kellington*, 217 F.3d at 1095.

5       Damages awards cannot be based on guesswork or "speculation or optimism,
6  but must be established by evidence." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119
7  (Fed. Cir. 1996); *see Lakeside–Scott v. Multnomah County*, 556 F.3d 797, 803 (9th
8  Cir. 2009) (judgment as a matter of law "is appropriate when the jury could have
9  relied only on speculation to reach its verdict"); *Oiness v. Walgreen Co.*, 88 F.3d
10  1025, 1031 (Fed. Cir. 1996) (jury's damages award cannot be "based only on
11  speculation or guesswork"). Nor can a damages award stand if any part of the
12  calculation leading to it is unsupported or contrary to law. *Uniloc USA, Inc. v.*
13  *Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). That is, "[b]eginning from a
14  fundamentally flawed premise and adjusting it based on legitimate considerations
15  specific to the facts of the case nevertheless results in a fundamentally flawed
16  conclusion." *Lucent Techs., Inc. v. Microsoft Corp.*, 837 F. Supp. 2d 1107, 1112
17  (S.D. Cal. 2011) (quoting *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517
18  (Fed. Cir. 1995)).

19             **II.   BACKGROUND**

20       ViaSat asserted both patent and breach-of-contract claims against SS/L
21  relating to two satellite projects, Jupiter-1 and NBN. At trial, ViaSat sponsored its
22  damages model through the testimony of its economic expert, Dr. Daniel Slottje.
23  The fifty pages of the trial transcript encompassing his direct examination focused
24  almost entirely on <u>patent</u> damages, 4/3/14 Trial Tr., at 1757 to 1807 – which he

calculated at $635.1 million for infringement by Jupiter-1, *id.* at 1803:20 to 1804:1, and $24.9 million for infringement by NBN, *id.* at 1804:21-25.

Dr. Slottje's testimony about the purported breach-of-contract damages against SS/L spans only a single page of those fifty. *Id.* at 1804:2-20 & 1805:17-24. And even what testimony he did provide was sparse and conclusory (quoted below in its entirety):

> Q.    Let's turn to ViaSat's breach of contract claim for the Jupiter-1 satellite. In your opinion, what are the damages that ViaSat should be awarded for its breach of contract claim?
>
> A.    Six hundred and thirty-five point one million dollars.
>
> Q.    And why is that?
>
> A.    Because my understanding is that the -- the contracts covered the primary -- what you've been hearing a lot of talk about the primary technology of capacity maximization, NGSO blanking and frequency reuse, and those same things, if they're not covered under the patent, it's my understanding that if the contract's breached and covers those same things, then the same economic harm would be done to ViaSat. So total contract damages would be the same amount of money which, again, is to put ViaSat back the position it would be in if its technology hadn't been breached by the contract.
>
> Q.    Is your opinion the same even if the jury doesn't find for ViaSat on its patent claims for some reason?
>
> A.    Yes, for the reasons I just explained.
>
> …
>
> Q.    And would you please summarize your opinion as to the damages that ViaSat should receive with respect to its breach of contract claim for the -- with respect to the

1    breach of -- with respect to the NBN satellite and capacity
2    tool?

3    A.    It would be exactly the same with respect to the
     satellites and then the capacity tool would also add $4.3
4    million more, for a total of $29.2 million.

5    *Id*.

6        Dr. Slottje's testimony provided <u>no</u> basis for non-overlapping patent and

7    breach of contract damages for Jupiter-1. Rather, Dr. Slottje explained that breach

8    of contract damages for Jupiter-1 should represent "the same economic harm" and

9    therefore be "the same amount of money." *Id.* Breach of contract damages for

10   Jupiter-1 would come into play only "if [the asserted technologies are] not covered

11   under the patent, it's my understanding that if the contract's breached and covers

12   those same things." For example, under ViaSat's damages theory, if the jury had

13   found the '827 NGSO patent to be invalid, but had found ViaSat to possess

14   contractual rights to the NGSO switch described in the '827 patent, then the jury

15   could have awarded ViaSat as breach of contract damages the same measure of '827

16   patent damages that would have been denied to ViaSat. Indeed, so as to leave no

17   doubt that the alleged damages for patent infringement and breach of contract were

18   entirely overlapping and identical, Dr. Slottje explicitly testified that "you only get

19   one or the other. You don't get them both." *Id.* at 1806:10-17.

20       As to NBN, Dr. Slottje again indicated that breach-of-contract damages

21   "would be exactly the same" as patent damages. *Id.* at 1805:17-24. For NBN,

22   however, Dr. Slottje identified a single category of contract damages that did not

23   overlap with his patent damages: for misappropriation of the NBN capacity tool.

24

His entire testimony relating to those damages, however, amounted to 11 words: "and then the capacity tool would also add $4.3 million more." *Id.*

Before the close of evidence, SS/L moved for judgment as a matter of law as to ViaSat's breach-of-contract damages. Doc. No. 966. The jury later returned a verdict finding that SS/L directly infringed ViaSat's three patents with respect to the Jupiter-1 satellite, and also that SS/L breached its contracts with ViaSat. Doc. No. 1014, at 2-3, 8. As to Jupiter-1, the jury awarded patent damages of $58 million in lost profits and $123 million in reasonable royalties. *Id.* at 9. The jury further awarded $123 million in breach of contract damages, *id.* at 12, $102 million of which it indicated were non-overlapping with the patent damages, *id.* at 13.

## III.   THERE IS NO EVIDENCE TO SUPPORT SEPARATE BREACH OF CONTRACT DAMAGES OF $102 MILLION

Putting aside the infirmities of ViaSat's breach-of-contract damages theories generally (discussed below), there simply was no record evidence from which a reasonable jury could have awarded ViaSat $102 million in breach-of-contract damages <u>separate</u> from its patent damages. ViaSat expressly recognized that its patent and contract damages models covered the same ground. The jury award of $102 million grants ViaSat damages that it did not (and could not) seek. This Court must correct that error and prevent ViaSat from receiving a double recovery.

### A.   Insufficient Evidence Supports Separate Breach of Contract Damages as to Jupiter-1.

The only evidence offered by ViaSat to support its breach-of-contract damages request is the testimony of Dr. Slottje. And Dr. Slottje confined his breach-of-contract damages analysis to the two satellite projects at issue in this trial – Jupiter-1 and NBN. In other words, Dr. Slottje did not opine that SS/L's alleged

1    breach of contract caused harm from other satellite projects or to other parts of

2    ViaSat's satellite business; he was asked only about contract damages arising from

3    Jupiter-1 and NBN. 4/3/14 Trial Tr., at 1804-05.

4         With respect to Jupiter-1, Dr. Slottje provided literally <u>zero</u> evidence of how

5    SS/L's breach caused any separate, non-overlapping contract damages. Rather, he

6    testified that he understood ViaSat's Jupiter-1 breach-of-contract theories to relate

7    to the same technologies as its patent claims, and to come into play only to the

8    extent those patent claims were unsuccessful: "[T]he contracts covered the primary

9    -- what you've been hearing a lot of talk about the primary technology of capacity

10   maximization, NGSO blanking and frequency reuse, and those same things, if

11   they're not covered under the patent, it's my understanding that if the contract's

12   breached and covers those same things, then the same economic harm would be

13   done to ViaSat." *Id.* at 1804:8-14.[2] Dr. Slottje thus provided no opinion that ViaSat

14   suffered any contract damages that did not overlap with its patent damages. To the

15   contrary, he was clear that ViaSat was not attempting to recover separate contract

16   damages were it to prevail on both its patent and contract claims. *Id.* at 1806:10-17

17   ("[Y]ou only get one or the other. You don't get them both.").

18        In light of this testimony, there is no evidentiary basis for awarding ViaSat

19   any separate contract damages relating to any harm Jupiter-1 supposedly caused to

20   ViaSat. ViaSat's expert was clear that his contract damages arose from the same

21   _____

22   [2] SS/L has separately filed JMOLs with respect to ViaSat's asserted lost profits and
     royalty damages for its patent claims, as well as a JMOL challenging the

23   recoverability of both lost profits and a reasonable royalty on the same patent
     claims. To the extent that the methodologies ViaSat used to calculate its patent

24   damages are relevant to this motion, SS/L incorporates herein those other damages
     JMOLs.

1  technologies as his patent damages and were not to be awarded in the event ViaSat

2  was successful in its patent claims. The jury <u>did</u> award damages for each of

3  ViaSat's patent claims. Accordingly, the jury's separate $102 million verdict for

4  contract damages has no evidentiary support with respect to Jupiter-1.

### B.   Insufficient Evidence Supports Separate Breach of Contract Damages as to NBN.

Analytically, the NBN contract-damages situation is different, but the ultimate consequence is the same – ViaSat presented insufficient evidence of any non-overlapping contract damages attributable to NBN. Dr. Slottje testified that contract damages for NBN would be $24.9 million that overlapped with NBN patent damages, plus an additional non-overlapping $4.3 million to account for the NBN capacity tool. *Id.* at 1804-05.

The jury found that SS/L did <u>not</u> infringe with respect to NBN. This does not mean, however, that there is an evidentiary basis to replace the absent NBN patent damages with contract damages. Dr. Slottje purported to apply the *Georgia-Pacific* factors in his analysis of NBN patent damages, *id.* at 1805:1-4, and he then concluded that his NBN contract damages were calculated "exactly the same" as were its patent damages, *id.* at 1805:17-24. Yet he provided <u>no</u> detailed analysis of his NBN royalty model – whether for patent damages or contract damages. His only comment about the NBN model was to explain that NBN damages would be less than Jupiter-1 damages because ViaSat did not compete with NBN. *Id.* at 1805.

Putting aside SS/L's other complaints about Dr. Slottje's Jupiter-1 analysis, at least for that satellite he attempted to describe and apply a methodology to

damages. For NBN, on the other hand, Dr. Slottje said next to nothing.[3] He provided no explanation for his royalty, no specific analysis of the *Georgia-Pacific* factors, nor any analysis of the alleged capacity increase for NBN attributable to ViaSat's technologies.[4] As the Federal Circuit observed in *Whitserve, LLC v. Computer Pkgs., Inc.*, 694 F.3d 10 (Fed. Cir. 2012), more than just cursory analysis is necessary for an expert to invoke *Georgia Pacific*:

> We do not require that witnesses use any or all of the *Georgia–Pacific* factors when testifying about damages in patent cases. If they choose to use them, however, reciting each factor and making a conclusory remark about its impact on the damages calculation before moving on does no more than tell the jury what factors a damages analysis could take into consideration. *See Lucent*, 580 F.3d at 1329 (explaining that a "damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers" and jurors cannot rely on "superficial testimony" with "no analysis"). Expert witnesses should concentrate on fully analyzing the applicable factors, not cursorily reciting all fifteen. And, while mathematical precision is not required, some explanation of both why and generally to what extent the particular factor impacts the royalty calculation is needed.

_____

[3] Dr. Slottje's entire NBN damages analysis appears on pages 1804 and 1805 of the transcript.

[4] ViaSat's technical expert, Mr. Sturza, testified about alleged capacity increases provided to Jupiter-1 through the use of ViaSat's '043 technology. 4/3/14 Trial Tr., at 1663:16 to 1664:10. He was conspicuously <u>silent</u>, however, about any NBN capacity increases. And the alleged Jupiter-1 capacity increases were central to Dr. Slottje's reasonable royalty analysis. *E.g.*, 4/3/14 Trial Tr., at 1795:21-24; 1801:6-25. Accordingly, ViaSat cannot simply adopt the Jupiter-1 reasonable royalty analysis as a proxy for an absent NBN royalty analysis, because there is no record evidence of a critical NBN fact – the alleged NBN capacity increase attributable to ViaSat's technology.

*Id.* at 31. The Federal Circuit would surely find Dr. Slottje's analysis to have been insufficient to support patent damages for NBN had the jury found NBN infringement. Because Dr. Slottje admitted his patent analysis was the same as his contract analysis, his contract analysis must therefore also fail.

Moreover, even assuming that Dr. Slottje's NBN patent damages were calculated based on capacity increases attributable to the '043 patent – which neither he nor ViaSat's technical expert ever mentioned – the jury found that the NBN satellites did <u>not</u> infringe the '043 patent. There is therefore no evidence identifying how SS/L's alleged breaches caused ViaSat to suffer the same $24.9 million in claimed NBN patent damages.

The only item of contract damages in the entire trial for which ViaSat articulated a non-overlapping damages theory is for $4.3 million arising from the NBN capacity tool. Yet as ViaSat argued at trial, the capacity tool and the '043 patent are the same technology. 3/25/14 Trial. Tr., at 80:17-20 ("And this is -- this is another word for the technology that's embodied in this ['043] patent. It's coding and capacity management [tool]. Maximization tool is another phrase that you'll see in the documents.") (ViaSat opening statement). Because the jury found that the NBN satellites did <u>not</u> infringe the '043 patent, there is no basis for any assertion that SS/L employed ViaSat's technologies in the NBN capacity tool.

In any event, the record is wholly lacking to support an award of even $4.3 million in NBN capacity tool damages. Dr. Slottje's analysis of the $4.3 million amounted to 11 words in the transcript: "and then the capacity tool would also add $4.3 million more." *Id.* at 1806:23-24. Dr. Slottje presented no explanation and no evidence as to how he arrived at this $4.3 million figure. The $4.3 million is simply

*ipse dixit*, appearing from thin air. This is easily insufficient evidence to support an award of $4.3 million: "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (finding that expert testimony was not sufficient to defeat JMOL because expert's opinion was not based on sufficient facts to support jury verdict); *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

### C.    To Award Both Patent and Breach of Contract Damages Would Lead to an Improper Double Recovery.

"Generally, the double recovery of damages is impermissible." *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017 (Fed. Cir. 2006). One scenario in which a double recovery may occur is when "claims arise out of the same set of operative facts." *Id.* at 1020. In that situation, "there may be only one recovery." *Id.*

Here, undeniably ViaSat's contract and patent damages arose from the same set of operative facts.[5] Dr. Slottje cited no technologies allegedly misappropriated by SS/L in breach of contract that were <u>not also</u> allegedly covered by ViaSat's patents. Instead, he expressly premised his contract damages model on the

_____

[5] By separate JMOL, which is incorporated herein, SS/L has challenged ViaSat's double recovery of lost profits and reasonable royalty damages on its patent claims. The present motion differs in that it seeks vacatur of the $102 million in separate contract damages, which overlap with the patent claims.

assumption that if certain concepts were "not covered under the patent, it's my understanding that if the contract's breached and covers those same things." 4/3/13 Trial Tr., at 1804:11-14. It thus cannot be disputed that ViaSat's contract and patent claims arose from the "same set of operative facts," rendering a double recovery between them improper. *See Junker v. Eddings*, 396 F.3d 1359, 1368 (Fed. Cir. 2005) ("Furthermore, the dollar amount that Junker now seeks as damages for breach of contract is identical to the dollar amount the jury awarded him for infringement. Both claims arose out of the same set of operative facts regarding Galt's unauthorized use of the design Junker had developed. The circumstances at least suggest that awarding Junker the damages he seeks on his breach-of-contract claim would constitute a double recovery."). Accordingly, this Court must vacate the jury's $102 million contract award as a double recovery with its patent damages.

## IV.   VIASAT FAILED TO ESTABLISH ANY BREACH OF CONTRACT DAMAGES

As set forth above, this Court must grant JMOL as to the jury's award of a separate $102 million in contract damages. ViaSat, however, additionally failed to establish breach of contract damages <u>in any amount</u>, whether overlapping or separate. As such, ViaSat is entitled to no additional recovery in the event that its patent claims fail, and this Court should also grant JMOL as to the jury's breach of contract finding in light of ViaSat's failure to establish an essential element of the claim.

### A.   ViaSat Presented Insufficient Evidence of Contract Damages.

ViaSat asserted that SS/L breached the March 2006 NDA, which is governed by California law, and the Build Contract, which is governed by New York law. To prove damages under either California or New York law, a plaintiff must establish

1    proximate causation – *i.e.*, the position the plaintiff would have been in but for the

2    defendant's breach. [6] And under California and New York law, breach of contract

3    damages must be reasonably foreseeable, with a high standard against awarding

4    consequential damages such as lost profits (and, in particular, future lost profits).[7]

5    Thus, the simple assertion that a contract had been breached is not sufficient to

6    establish damages. The plaintiff must instead identify the nature of the breach and

7    provide sufficient evidence that the breach proximately caused specific damages.

8        Here, ViaSat and Dr. Slottje did no such thing. In his contract analysis, Dr.

9    Slottje never identified the date of any contractual breaches – such as when SS/L

10   allegedly received information subject to the parties' contracts and when SS/L

---

11

12   [6] *See, e.g.*, Cal. Civ. Code §§ 3300 & 3301 (providing "no damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin" and the amount of damages is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby");

14   *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1060 (2002) ("Causation of damages in contract cases requires that the damages be proximately caused by the defendant's breach."); *Seidman v. Indus.*

16   *Recycling Props., Inc.*, 106 A.D.3d 983, 985 (N.Y. 2013) ("Damages are intended to return the parties to the point at which the breach arose and to place the

17   nonbreaching party in as good a position as it would have been had the contract been performed.").

18   [7] *Ash v. N. Am. Title Co.*, 223 Cal. App. 4th 1258, 1268 (2014) ("[C]ontract

19   damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by then at that time;

20   consequential damages beyond the expectations of the parties are not recoverable."); *Goodstein Constr. Corp. v. City of New York*, 604 N.E.2d 1356,

21   1361 (N.Y. 1992) ("[I]t must be shown 'that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made.'");

22   *Kenford Co., Inc. v. Erie County*, 493 N.E.2d 234, 235 (1986) ("If it is a new business seeking to recover for loss of future profits, a stricter standard is imposed

23   for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable

24   certainty.").

allegedly disclosed or used those concepts in breach of those contracts. Nor did he (or any other ViaSat expert) establish the extent to which those breaches either added capacity to the Jupiter-1 or NBN satellites that they otherwise would not have had or otherwise damaged ViaSat. Instead, Dr. Slottje's cursory contract analysis simply applied his same measure of patent damages to the contract case. *E.g.*, 4/3/14 Trial Tr., at 1804. For multiple reasons, the equivalency Dr. Slottje painted between patent and contract damages is legally improper and provides insufficient evidence to support any contract award.

First, the lost profit damages that Dr. Slottje imported from his patent analysis are not compatible with a breach of contract analysis. There is no evidence that the parties contemplated any amount – let alone $58 million – in liability for lost profits to the Jupiter satellite at the time of the execution of the contract. *Goodstein*, 604 N.E.2d at 1361. No evidence was introduced at trial to suggest that the parties could have reasonably foreseen that SS/L's liability would include ViaSat's alleged lost profits based on lost subscribers to Hughes. To recover lost profits for breach of contract, there must be evidence that the parties expected SS/L to "bear the responsibility for any lost profits sustained" by ViaSat." *Olsenhaus Pure Vegan, LLC v. Elec. Wonderland, Inc.*, 983 N.Y.S. 2d 506, 508 (App. Div. 2014). Yet neither of the agreements, nor any other evidence suggests "that lost profits were within the parties' contemplation." *Awards.com, LLC v. Kinko's, Inc.*, 42 A.D. 3d 178, 183 (N.Y. 2007); *see also id.* at 184 ("Plaintiffs' claim for $276 million in alleged lost profits, based on sheer speculation, demonstrates the unreasonableness of such an inference [of an intent to assume the risk of lost profits].")). To the contrary, the Build Contract specifically excludes the recovery of

1   lost profits as damages, Grinstein Decl., Ex. A, at § 27.1, except in cases of gross

2   negligence or willful misconduct (at which point a $100 million cap applies), *id.* at

3   § 27.3. ViaSat neither pursued nor obtained a finding that SS/L's contractual

4   conduct was willful or grossly negligent. Indeed, for purposes of patent

5   infringement, the jury specifically found that SS/L did <u>not</u> act willfully.

6   <u>Second</u>, Dr. Slottje's reasonable royalty analysis cannot support any award of

7   breach of contract damages because the date of the hypothetical negotiation he

8   selected occurred <u>after</u> publication of ViaSat's patent applications—and thus the

9   "proprietary" concepts underlying ViaSat's breach of contract claim. Dr. Slottje's

10  entire damages analysis was premised on the notion that the concepts protected by

11  the March 2006 NDA and the Build Contract "cover [the] same things" as ViaSat's

12  patents. *E.g.*, 4/3/14 Trial Tr., at 1804:7-17. Dr. Slottje therefore assumed a single

13  hypothetical negotiation date of August 2011 for a reasonable royalty award on

14  both ViaSat's patent or breach of contract claims because that was the date the first

15  of ViaSat's patents issued (and thus the date of first alleged patent infringement).

16  *E.g.*, *id.* at 1780:3-18.

17  But, by Dr. Slottje's hypothetical negotiation date in 2011, all three of

18  ViaSat's asserted patents had already been published years earlier, in 2009.

19  Grinstein Decl., Ex. B ('043 patent, showing publication on January 22, 2009);

20  Grinstein Decl., Ex. C ('875 patent, showing publication on March 25, 2009);

21  Grinstein Decl., Ex. D ('827 patent, showing publication on April 9, 2009). In fact,

22  ViaSat had already made several of its alleged proprietary concepts public even

23  earlier than that. For example, ViaSat asserts that it developed the partial CONUS

24  idea of placing gateways in spatially isolated regions of the United States,

1  separating them from user beams so as to permit full frequency reuse. 3/25/14 Trial

2  Tr., at 72:6-13 (ViaSat opening argument). Yet Mr. Dankberg admitted that during

3  a conference call with stock analysts on January 8, 2008, he publicly disclosed the

4  idea of a partial CONUS beam map in which there was full reuse of spectrum

5  between gateways and feeder beams. 3/26/15 Trial Tr., at 273:13-19.[8] Indeed, he

6  further admitted that he could not sue "anybody" if they had read the conference

7  call transcript and decided to implement this partial CONUS design on their own

8  satellite. *Id.* at 273:20 to 274:1.

9      Both contracts specifically <u>exclude</u> from their protection any concepts that

10  become public through no fault of the recipient. Grinstein Decl., Ex. F at ¶1;

11  Gristein Decl., Ex. A at §28.1. There is therefore absolutely zero basis on which the

12  jury could conclude that SS/L would have agreed to pay a reasonable royalty in

13  2011 on a <u>breach of contract theory</u> to license alleged "proprietary" concepts that

14  had already been publicly disclosed <u>by ViaSat</u> and therefore lost any "proprietary"

15  status no later than two years earlier.  *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254

16  F.3d at 1050 (Fed. Cir. 2001) (endorsing argument that "once formerly secret

17  material is published, it ceases to be a secret, and therefore it cannot be

18  misappropriated—regardless of whether the party accused of misappropriation was

19  aware of the publication."); *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909

20  F.Supp. 1353, 1359 (C.D .Cal. 1995), *aff'd* , 113 F.3d 1258 (Fed. Cir. 1997)

21  ("[D]isclosure of a trade secret in a patent places the information comprising the

22  secret into the public domain."). To the contrary, since the concepts were already

23  _____

24  [8] Were this not enough, ViaSat further publicly disclosed its partial CONUS beam
map via its FCC filing on June 23, 2008. Grinstein Decl., Ex. E, at VST03501751.

made public in 2009—and thus free for anyone to use (so long as they did not infringe an issued patent)—ViaSat could not have suffered <u>any</u> harm on its breach of contract theory claim after the publication date.

<u>Third</u>, ViaSat did not attempt to offer any other measure of damages for breach of contract—such as a reasonable royalty premised on an earlier hypothetical negotiation date (*i.e.*, one occurring when the "proprietary" concepts could still be considered secret) or "head start" damages stemming from pre-publication breaches. In theory, ViaSat could have attempted to argue that SS/L would have paid a reasonable royalty at an earlier hypothetical negotiation date, such as in 2007 when ViaSat alleges SS/L began breaching the March 2006 NDA. *Cf.*, *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1359-60 (Fed. Cir. 1988). But ViaSat quite consciously chose not do so because it wished to rest its inflated reasonable royalty analysis on SS/L's awareness of the non-comparable capacity leases that were only negotiated much later in 2009. 4/3/14 Trial Tr., at 1787:19 to 1788:17. Similarly, if ViaSat alleged an earlier hypothetical negotiation date, that would have provided SS/L with even more time to "design-around" ViaSat's alleged patented and proprietary concepts—a result ViaSat no doubt wished to avoid. The only evidence presented at trial shows that SS/L would not have agreed to pay <u>any</u> license for "proprietary" technology during the assumed hypothetical negotiation date of August 2011 (when all such concepts were public). And there is no evidence that SS/L would have agreed to pay anything at an earlier hypothetical negotiation date, because ViaSat elected not to present such evidence. *See, e.g., Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.*,

170 Cal. Rptr. 3d 581, 589 (Ct. App. 2014) (finding on facts before it no basis for reasonable royalty award on breach of contract theory).

Alternatively, ViaSat could have attempted to offer some sort of "head start" damages analysis, which is the statutory measure of damages in California for misappropriation of trade secrets. *Celeritas*, 150 F.3d at 1360 (noting under California's trade secrets law, "liability for . . . misappropriation of . . . trade secrets may be statutorily limited to the 'head start' period") (citing Cal. Civ. Code §3426.3). But, once again, ViaSat did not even attempt to do so because SS/L unquestionably had no "head start." SS/L did not even enter into the contracts for the sale of the Jupiter and NBN satellites until after ViaSat published its alleged proprietary concepts via its patent applications. Perhaps ViaSat could have attempted to articulate some theory of damages as to how SS/L's disclosure of any alleged proprietary information to Hughes before 2009 caused any harm to ViaSat (despite the fact that the Jupiter contract was not even entered into until after ViaSat itself published its patent applications). But ViaSat made no attempt to do so at trial and there is thus no evidence in the record to support any award of breach of contract damages on such a theory.

Finally, both Dr. Slottje's reasonable royalty and lost profit patent analyses – which he simply imported into his contract damages – rely upon his assumptions regarding capacity increases attributable to each of the patents and the supposed value of capacity provided by non-comparable, downstream lease agreements. By separate JMOL motions (incorporated herein), SS/L has challenged the sufficiency of the evidence with respect to those analyses. In any event, Dr. Slottje simply assumed that the contractual breaches resulted in the same capacity increases as the

patent infringement, demonstrating once again that he assumed that the identical technology was involved. There is no evidence in the record regarding how the alleged contractual breaches actually impacted capacity, nor any separate application by Dr. Slottje of that evidence to damages.

## B. JMOL is Appropriate as to ViaSat's Contract Claim Because ViaSat Failed to Prove Contract Damages.

Under both California and New York law, damages is an essential element of a breach of contract claim. As such, failure to introduce competent evidence of damages defeats not only a damages award but also liability for breach of contract.[9]

For example, in *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 64 Cal. Rptr. 187, 191 (Ct. App. 1967), the California Court of Appeal held that because the plaintiff "suffered no uncompensated detriment caused by [the defendant's] breach of contract," the plaintiff's entire claim for breach of contract failed as a matter of law. The court held that "[a] breach of contract without damage is not actionable." *Id.* (emphasis added). *See also St. Paul Fire & Marine Ins. Co.*, 101 Cal. App. 4th at 1060-61 (holding that "[a]n essential element of a claim for breach of contract are damages resulting from the breach" and that a claim for breach of contract failed where it was clear that the defendant's alleged breach "caused no damage" to the plaintiff.). Similarly, in *Proper v. State Farm Mut. Auto Ins. Co.*, 63 A.D.3d 1486, 1487 (N.Y. App. Div. 2009), the court held that "[b]ecause plaintiffs failed to support their claim [for breach of contract] with admissible evidence that they suffered damages, [the] Supreme Court properly

---

[9] The present motion focuses on one missing element of ViaSat's breach claim – damages. By separate JMOL, which is incorporated herein, SS/L seeks JMOL on breach of contract liability on additional grounds.

dismissed the complaint." That is because "[f]ailure to prove the essential element of damages is fatal to a cause of action for breach of contract." *Id.* This Court has recognized the same principle previously. *Louiseau v. VISA USA Inc.*, No. 09-CV-2177-H (JMA), 2010 WL 4542896, at *2 (S.D. Cal. Feb. 10, 2010) (Huff, J.) ("Because Plaintiff failed to plead an essential element [damages] of the breach of contract action, the Court grants Defendants' motion to dismiss Plaintiff's breach of contract claim.") (citing California cases).

Here, because ViaSat utterly failed to present any competent evidence of breach of contract damages flowing from any particular contractual breach, the breach of contract claim must fail as a matter of law.

## V.   ALTERNATIVELY, SS/L IS ENTITLED TO A NEW TRIAL

Alternatively, SS/L is entitled to a new trial on ViaSat's breach of contract claim. For the reasons set forth above, SS/L is, at the very least, entitled to a new trial because the contract verdict is against the clear weight of the evidence. *Wordtech*, 609 F.3d at 1313.

## VI.   CONCLUSION

This Court should grant SS/L judgment as a matter of law on ViaSat's breach of contract claim, due to ViaSat's complete failure to introduce evidence of damages proximately caused by any breach of contract. At the very least, the Court should vacate the jury's damages award of $102 million in separate breach of contract damages. In the alternative, SS/L respectfully requests a new trial on ViaSat's breach of contract claim.

Dated: June 13, 2014          By:     */s/ Joseph S. Grinstein*

Marc M. Seltzer
Amanda K. Bonn
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
Email: abonn@susmangodfrey.com

William Christopher Carmody
(Admitted *Pro Hac Vice*)
Jacob W. Buchdahl
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340

Joseph S. Grinstein
(Admitted *Pro Hac Vice*)
William R. H. Merrill
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  713-653-7856
Facsimile:   713-654-6666
Email: jgrinstein@susmangodfrey.com
Email: bmerrill@susmangodfrey.com

Ian B. Crosby
(Admitted *Pro Hac Vice*)
Rachel S. Black
(Admitted *Pro Hac Vice*)
Patrick C. Bageant (275135)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3861
Fax: (206) 516-3883

Email: icrosby@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: pbageant@susmangodfrey.com

*Attorneys for Defendants/Counterclaim Plaintiffs Space Systems/Loral, LLC (f/k/a Space Systems/Loral, Inc.) and Loral Space & Communications Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 13, 2014, I caused the foregoing **SS/L'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR ALTERNATIVELY FOR A NEW TRIAL (1 OF 12), REGARDING BREACH OF CONTRACT DAMAGES** to be served on opposing counsel via the Court's CM/ECF system.

Dated: June 13, 2014

By:  */s/ Joseph S. Grinstein*