William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:   (212) 336-8330
Facsimile:    (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:   (310) 789-3100
Facsimile:    (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC.,<br><br>              Plaintiff,<br>    vs.<br><br>SPACE SYSTEMS/LORAL, INC.,<br>LORAL SPACE &<br>COMMUNICATIONS INC.,<br><br>              Defendants/Counterclaim<br>              Plaintiffs. | Case No. 3:12-cv-00260-H-WVG<br><br>Hon. Marilyn L. Huff<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (7 OF 12), REGARDING THE PRIORITY DATE AND INVALIDITY OF THE '875 PATENT**<br><br>Date: July 22, 2014<br>Time: 9:00 a.m.<br>Place: Courtroom 15A |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    LEGAL STANDARD .........................................................................................2

III.   ARGUMENT .....................................................................................................3

    A.     **SS/L is Entitled to JMOL that the '875 Patent is Invalid. ...............3**

        1.     It is Undisputed that ViaSat-1 Anticipates Claim 12. .................3

        2.     ViaSat Presented Zero Evidence at Trial on the 2007 PCT
            Application. ...................................................................................5

        3.     ViaSat Failed to Present Substantial Evidence of Written
            Description Support in the '038 Provisional Application. ..........7

    B.     **Alternatively, SS/L is Entitled to a New Trial. ...............................23**

        1.     The Written Description Jury Instruction Was Incomplete .......23

        2.     The Verdict is Against the Weight of the Evidence. .................24

IV.    CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anascape, Ltd. v. Nintendo of Am., Inc.*,
  601 F.3d 1333 (Fed. Cir. 2010) ....................................................................21, 22

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc) ....................................................7, 23

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
  181 F.3d 1291 (Fed. Cir. 1999) ...........................................................................20

*Biodex Corp. v. Loredan Biomed., Inc.*,
  946 F.2d 850 (Fed. Cir. 1991) .............................................................................23

*Centocor Ortho Biotech, Inc. v. Abbott Labs*,
  636 F.3d 1341 (Fed. Cir. 2011) ...........................................................................22

*Display Sys., Inc. v. Kent State Univ.*,
  212 F.3d 1272 (Fed. Cir. 2000) ...........................................................................24

*Glaxo Inc. v. Novopharm Ltd.*,
  52 F.3d 1043 (Fed. Cir. 1995) .............................................................................15

*Hockerson-Halberstadt, Inc. v. Converse, Inc.*,
  183 F.3d 1369 (Fed. Cir. 1999) ...........................................................................21

*Hollmer v. Harari*,
  681 F.3d 1351 (Fed. Cir. 2012) .............................................................................6

*Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) .......................................................................5, 21

*Lockwood v. Am. Airlines, Inc.*,
  107 F.3d 1565 (Fed. Cir. 1997) ...................................................................passim

*Lucent Techs., Inc. v. Gateway Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ........................................................................2, 3

*Magnivision, Inc. v. Bonneau Co.*,
  115 F.3d 956 (Fed. Cir. 1997) .............................................................................24

*Murphy v. City of Long Beach*,
914 F.2d 183 (9th Cir. 1990) ............................................................... 25

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
723 F.3d 1336 (Fed. Cir. 2013) ....................................................... 2, 14

*Pavao v. Pagay*,
307 F.3d 915 (9th Cir. 2002) ................................................................. 2

*Pfaff v. Wells Elecs., Inc.*,
525 U.S. 55 (1998) ........................................................................... 3, 5

*Power Oasis*,
522 F.3d at 1305 ............................................................................... 5, 7

*Reeves v. Sanderson Plumbing Prods.*,
530 U.S. 133 (2000) ............................................................................. 3

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
627 F.3d 859 (Fed. Cir. 2010) ................................................... passim

*In re Ruschig*,
54 C.C.P.A. 1551 (1967) ..................................................................... 15

*Schering Corp. v. Geneva Pharms., Inc.*,
339 F.3d 1373 (Fed. Cir. 2003) ..................................................... 3, 17

*Special Devices, Inc. v. OEA, Inc.*,
270 F.3d 1353 (Fed. Cir. 2001) ....................................................... 3, 5

*The Johns Hopkins Univ. v. Datascope Corp.*,
543 F.3d 1342 (Fed. Cir. 2008) ........................................................... 3

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
822 F. Supp. 2d 1020 (N.D. Cal. 2011),
*aff'd*, 475 Fed. Appx. 334 (Fed. Cir. 2012) (per curiam) ........... 14, 16

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998) ......................................... 7, 15, 19, 20

*TurboCare Div. v. Gen. Elec. Co.*,
264 F.3d 1111 (Fed. Cir. 2001) ..................................................... 17, 18

*United States v. 4.0 Acres of Land*,
   175 F.3d 1133 (9th Cir.1999) ........................................................................... 24

*United States v. Kellington*,
   217 F.3d 1084 (9th Cir. 2000) ......................................................................... 25

*William Inglis v. ITT Continental Baking Co.*,
   668 F.2d 1014 –7 (9th Cir. 1981) ..................................................................... 24

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed.Cir.2010) ......................................................................... 24

## **Statutes**

35 U.S.C. § 102 ..................................................................................................... 3

35 U.S.C. § 112 ............................................................................................. 5, 6, 7

35 U.S.C. § 120 ..................................................................................................... 6

## I.    INTRODUCTION

Defendants Space Systems/Loral, LLC and Loral Space & Communications Inc. (collectively, "SS/L") move for entry of judgment as a matter of law that (1) March 25, 2009 is the priority date for the asserted Claim 12 of U.S. Patent No. 8,107,875 (the "'875 patent") and (2) the '875 patent is therefore invalid as anticipated by ViaSat-1. Alternatively, SS/L moves for a new trial.[1]

The '875 patent issued from a chain of applications: (1) Application No. 12/411,315, filed March 25, 2009 (the " March 2009 CIP"), a continuation-in-part application of; (2) Application No. PCT/US2007/079567, filed on Sep. 26, 2007 (the "2007 PCT"); and (3) Provisional application No. 60/827,038, filed on Sep. 26, 2006 (the "'038 Provisional").[2] Bonn Decl. Ex. A ('875 patent). It is undisputed that ViaSat-1—which was on-sale more than one year before the March 2009 CIP—anticipates Claim 12. The ViaSat-1 contract was effective January 7, 2008, Dr. Schindall testified the design was updated to practice Claim 12 by February 6, 2008, and ViaSat's expert agreed. Trial Tr. at 1475-1476, 2228-2232, 2242-2243; *see also* Exs. B & K. Thus, ViaSat's only chance to escape invalidity was to establish it was entitled to an earlier priority date.

But ViaSat failed to introduce substantial evidence at trial that "each" patent application in the chain of priority had written description support for Claim 12, as

---

[1] SS/L hereby moves for judgment as a matter of law ("JMOL") pursuant to Rule 50(a) and, pursuant to Rule 50(b), renews the motion for JMOL that it made before the close of evidence. Alternatively, SS/L moves for a new trial pursuant to Rule 59.

[2] The face of the patent also cites five other provisional applications, but the '038 provisional is the one ViaSat has relied on at trial for its priority date argument.

required by Federal Circuit law. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997). To the contrary, ViaSat did not even introduce the 2007 PCT Application into evidence or offer any testimony about it whatsoever. As such, there is literally zero evidence on which the jury could have concluded that each application in the priority chain has written description support. At best, ViaSat's expert offered an obviousness analysis of the written description in a single provisional application in the chain—a standard that the Federal Circuit has repeatedly rejected. *Id.* at 1572 ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification."); *see also Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1338 (Fed. Cir. 2013) (reversing denial of JMOL where the plaintiff's expert attempted to "derive written description support from an amalgam of disclosures plucked selectively from the 2000 application").

The Court ruled pretrial that there were disputed fact issues on this written description support question. But based on the evidence actually presented at trial—or, more accurately, ViaSat's failure to introduce any evidence whatsoever from the 2007 PCT application—there is no substantial evidence to support the jury's verdict. SS/L is entitled to entry of judgment as a matter of law that the '875 patent is invalid as anticipated by ViaSat-1.

## II.     LEGAL STANDARD

Judgment as a matter of law ("JMOL") may be granted and a jury verdict can be overturned "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is

contrary to the jury's verdict." *Lucent Techs., Inc. v. Gateway Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "[O]n posttrial JMOL motions, district court judges must scrutinize the evidence carefully to ensure that the 'substantial evidence' standard is satisfied." *Id.* at 1336. Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1348 (Fed. Cir. 2008) (quotation marks and citation omitted). "Under Rule 50, a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000).

## III.   ARGUMENT

### A.   SS/L is Entitled to JMOL that the '875 Patent is Invalid.

#### 1.   It is Undisputed that ViaSat-1 Anticipates Claim 12.

Clear and convincing evidence demonstrates that ViaSat-1 anticipates Claim 12. "A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). "[T]he on-sale bar under 35 U.S.C. § 102(b) applies when (1) the invention at issue had become the 'subject of a commercial offer for sale' more than one year before the filing of the patent application; and (2) the invention was ready for patenting, either by, for example, having that invention reduced to practice or by preparing 'drawings or other descriptions of the invention' that would enable one skilled in the art to practice the

invention.'" *Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1354-55 (Fed. Cir. 2001) (quoting *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998)).

The contract for the sale of ViaSat-1 was signed in January 2008. *E.g.*, Ex. K. SS/L offered to update the design to practice Claim 12 of the '875 patent during the February 2008 Program Readiness Review (PRR). *See generally* Ex. B. Professor Schindall offered detailed testimony demonstrating why the February 2008 PRR practices each limitation of Claim 12. Trial Tr. 2228-32; 2241-43. There can be no doubt that the PRR for ViaSat-1 discloses every element of Claim 12 based on its combination of (1) remote, 4-color feeder beams that use all of the colors of the beam pattern and (2) 3-color feeder beams that use all colors except those allocated to proximate service beams. *See, e.g.*, Ex. B at SSL0085472, SSL0085509-10, SSL0085520, SSL0085524.  In fact,  ViaSat's own expert testified that he agreed with Professor Schindall's analysis that ViaSat-1 practiced Claim 12 as of the date of the PRR.

> Q. And turn to PDX5-24. What does SS/L's own expert say about whether ViaSat-1 practices the asserted claim 12 of the '875 patent?
>
> A. So both of the Defendants' experts agreed with me that ViaSat-1 does indeed practice the asserted claims of the '875 patent. That was clearly stated in Doctor Helgert's report, and you see the passage. Doctor Schindall's report basically goes on, talks about maps to the claims, you know, in this part of the report, and this is <u>one thing we agree on.</u>
>
> Q. So all three of you <u>agree on this issue</u>?
>
> A. <u>Yeah</u>.

*E.g.*, Trial Tr. at 1476 (emphases added); *see also, e.g.*, *id.* at 2687.

Thus, the ViaSat-1 PRR from February 2008 is on-sale bar prior art to the '875 patent because (1) the invention was the subject of a "commercial offer for

sale" more than one year before the filing of the patent application and (2) the invention was "ready for patenting" via preparation of "'drawings or other descriptions of the invention that would enable one skilled in the art to practice the invention.'" *Special Devices,* 270 F.3d at 1355 (quoting *Pfaff*, 525 U.S. at 67-68).

### 2. ViaSat Presented Zero Evidence at Trial on the 2007 PCT Application.

Because ViaSat-1 anticipates Claim 12 and is on-sale bar prior art preceding the March 2009 CIP application by more than one year, ViaSat can only escape invalidity by demonstrating that it is entitled to an earlier priority date. But ViaSat failed to satisfy its burden of production on that score at trial and, thus, there is no substantial evidence supporting the jury's finding that Claim 12 is valid.

"[O]nce a challenger (the alleged infringer) has introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted, prior art that is dated earlier than the apparent effective date of the asserted patent claim, the patentee has the burden of going forward with evidence and argument to the contrary." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008). In such circumstances, "the burden [is] on the [patentee] to come forward with evidence to prove entitlement to claim priority to an earlier filing date." *Power Oasis,* 522 F.3d at 1305-06. *See also, e.g.*, *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 871 (Fed. Cir. 2010) ("The district court therefore correctly placed the burden on [the patentee] to come forward with evidence to show entitlement to an earlier filing date.").

Where a patentee files a continuation-in-part application, "[o]nly the claims of the continuation-in-part application that are disclosed in the manner provided by

the first paragraph of 35 U.S.C. § 112 in the prior-filed application are entitled to the benefit of the filing date of the prior-filed application." M.P.E.P. § 201.11(1)(B) (discussing priority date under 35 U.S.C. § 120). "To gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, <u>each application in the chain</u> leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Lockwood*, 107 F.3d 1565, 1571 (Fed. Cir. 1997) (emphasis added). "Thus, if <u>any application in the priority chain</u> fails to make the requisite disclosure of subject matter, the later-filed application is not entitled to the benefit of the filing date of applications preceding the break in the priority chain." *Hollmer v. Harari*, 681 F.3d 1351 (Fed. Cir. 2012) (emphasis added). "Whether the intervening patents in a chain of priority maintain the requisite continuity of disclosure is a question of law . . . ." *Id.*

ViaSat introduced <u>zero evidence at trial</u> concerning the 2007 PCT Application to which the '875 patent claims priority. Indeed, the 2007 PCT Application <u>is not in evidence</u>, nor did ViaSat's experts or fact witnesses discuss it. Instead, it appears that ViaSat's expert Dr. Bartone misapprehended the relevant legal question altogether, believing that written description support could be established based on a single application, *e.g.*, Trial Tr. at 1461-62; 1583, rather than continuous written description support in "each" application in the priority chain. *Lockwood*, 107 F.3d 1565, 1571 (Fed. Cir. 1997). There is thus a complete absence of proof that would enable ViaSat to claim priority to any date prior to the March 2009 CIP. On that basis alone ViaSat failed to meet its burden of production and SS/L is entitled to JMOL. *See, e.g.*, *Research Corp. Techs.*, 627 F.3d at 871.

### 3.    <u>ViaSat Failed to Present Substantial Evidence of Written Description Support in the '038 Provisional Application.</u>

Apart from ViaSat's failure of proof regarding the 2007 PCT Application—which alone defeats its claim to an earlier priority date—ViaSat failed to present substantial evidence that the '038 Provisional has written description support. Under the written description requirement, the "specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . ." 35 U.S.C. § 112, ¶ 1. "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (quotation marks and citation omitted). "This requires that the written description <u>actually or inherently</u> disclose the claim element." *Power Oasis, Inc.*, 522 F.3d at 1306 (emphasis added). "In order for a disclosure to be inherent, however, the missing descriptive matter must <u>necessarily be present</u> in the parent application's specification . . . ." *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (emphasis added). "The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification." *Lockwood*, 107 F.3d at 1572. *See also, e.g.*, *Research Corp. Techs.*, 627 F.3d at 870 ("Entitlement to a filing date extends only to subject matter that is disclosed; not to that which is obvious.").

ViaSat failed to present substantial evidence that the '038 Provisional expressly or inherently discloses a single embodiment containing every limitation of Claim 12.

        a.    <u>The '038 Provisional Does Not Expressly Disclose an Embodiment of Claim 12.</u>

Claim 12 of the '875 patent requires a spot beam satellite system with at least two feeder beams. The first feeder beam must (1) be <u>proximate</u> to at least one service beam and use <u>different colors</u> from that service beam and also (2) be <u>non-proximate</u> to at least one service beam and use <u>a same color</u> from the set of colors allocated to each <u>non-proximate service beam</u>. The second feeder beam must be remote from all service beams and use "all of the colors of the beam pattern." Ex. A at Claim 12. Figure 16 from the new mater in the 2009 CIP illustrates an embodiment of Claim 12, wherein feeder beam 225-5 is the first feeder beam satisfying the limitations of Claim 1 and feeder beam 225-1 is the second beam satisfying the additional limitations of Claim 12:



*Id.* at Fig. 16.

1    The '038 Provisional—which is almost entirely directed to its titled "Piggy-

2    Back Satellite Payload" invention that is wholly unrelated to Claim 12—mentions

3    frequency reuse in four contexts (in contrast to the 50 or so references in the new

4    matter). Ex. C at Title (referencing piggy-back payload); Claim 1 (claiming piggy-

5    back payload concept); ¶¶ 13, 19, 24-25, 74-75, 80 (referencing frequency reuse).

6    None of these disclosures, standing alone, is an embodiment of Claim 12.

7    First, the '038 Provisional notes that "[i]n one embodiment, the satellite 105

8    operates in a multibeam mode, transmitting a number of narrow beams each

9    directed at a different region of the earth, allowing for frequency re-use." *Id.* at ¶

10   13. This embodiment, which generally discloses frequency reuse between isolated,

11   downlink service beams, does not come close to satisfying the limitations of Claim

12   12. *See also id.* at ¶ 74 (similarly disclosing "one embodiment" in which "[t]he

13   plurality of forward link service beams may be associated with different earth

14   surface coverage areas and employ frequency re-use"). Dr. Bartone did not even

15   reference such disclosures at trial.

16   Second, Figure 1B depicts "a particular embodiment [which] employs a

17   multibeam satellite with spatial diversity between the gateways and subscriber spot

18   beams, and configured to permit reuse of the frequency on the various links 135,

19   140, 145, 150." *Id.* at ¶ 19; *see also id.* at ¶ 75 (similarly disclosing "one

20   embodiment" in which "the plurality of forward link service beams and the at least

21   one forward link feeder beam are associated with different earth surface coverage

22   areas and employ frequency re-use to utilize at least one common frequency

23   channel") (emphasis added). This embodiment explicitly includes only separated

24

9                                          No. 3:12-cv-00260-H-WVG

feeder and service beams and does not disclose any feeder beam that (1) is <u>proximate</u> to at least one service beam, (2) uses different colors from each proximate service beam, (3) is <u>not proximate</u> to at least one service beam, and (4) reuses a same color from the set of colors allocated to each non-proximate service beam, as required by Claim 1 (and thus Claim 12). Ex. A at Claim 12. Once again, Dr. Bartone did not even reference such disclosures at trial.

        Third, paragraph 80 describes "[o]ne implementation" in which "[t]he system may have four color re-use with 2 of the 10 spot beams for feeder links." Ex. C at ¶ 80. There is no explanation as to how the four color re-use pattern is implemented, whether there is any reuse between feeder and service beams at all (as opposed to all feeder beams sharing one color and the service beams using the other three), or whether the feeder beams are proximate or non-proximate to service beams.

        Fourth, Figure 2B depicts a beam map that has some isolated feeder beams, some feeder beams overlapping with service beams, and some service beams overlapping each other:



FIG. 2B

*Id.* at Fig. 2B. Paragraph 24 explains that "[i]n this embodiment, a satellite 215 reuses frequency bands by isolating antenna directivity to certain regions of country

(e.g., United States, Canada or Brazil)." *Id.* at Fig. 2B & ¶ 24. Nothing in this generalized disclosure expressly teaches that the type of frequency reuse must be such that (1) a feeder beam with an overlapping service beam is reusing a color from the set of colors allocated to each of the non-proximate service beams and (2) a remote feeder beam is using all of the colors of the beam pattern. Indeed, for all the reader knows, this description could relate to frequency reuse between service beams only. And, indeed, paragraph 24 explains that "[t]here may in some instances be service spot beam overlap (e.g., 205-c, 205-d, 205-e)" and that, in such cases, "[a] four color pattern allows avoiding interference even when there is some overlap between service beams." *Id.* (emphasis added).

Paragraph 25 further states in reference to Figure 2B that "[b]y locating gateway terminals 210 outside of the spotbeam regions (e.g., the third gateway 210-3), spatial diversity is achieved to allow for greater re-use of the allocated frequencies." *Id.* at ¶ 25. Once again, this merely discloses that a system in which all feeder beams are located away from service beams achieves "greater" frequency reuse than alternative systems. Nothing in this disclosure expressly teaches the limitations of Claim 1—that one feeder beam be proximate to some service beams, not proximate to others, use different colors from the proximate service beams, and use a same color from the set of colors allocated to the non-proximate service beams. And nothing in this disclosure expressly teaches the limitations of Claim 12—that a second feeder beam is remote from all service beams and uses "all of the colors of the beam pattern" (as opposed to "greater" reuse than the alternative).

Therefore, there is not a single embodiment in the '038 Provisional that expressly discloses the limitations of Claim 12. There is no express disclosure of all of the claim elements <u>anywhere</u>, and what few references there are to frequency re-use at all are scattered in different embodiments, none of which practices all of the limitations of Claim 12.

     b. <u>The '038 Provisional Does Not Inherently Disclose an Embodiment of Claim 12.</u>

Because the '038 Provisional lacks an express disclosure of Claim 12, Dr. Bartone attempted to cobble together an argument for written description support on the grounds that one of skill in the art (1) would  be motivated to combine various different embodiments in the '038 Provisional, none of which alone practices each limitation of Claim 12 and (2) could, upon combining such embodiments, color the beam map in Figure 2B "consistent[ly]" with Claim 12. *See, e.g.*, Trial Tr. at 1463-64, 2683-84. This approach, as a matter of law, cannot suffice to establish written description support.

Dr. Bartone testified that Figure 2B in the '038 Provisional depicts some isolated feeder beams and some feeder beams overlapping with service beams. Trial Tr. at 1463-64. Dr. Bartone testified that one would be motivated to combine Figure 2B with the disclosures of Figures 12A and 12B because they "talk[] and teach[] how to do the frequency or the color reuse and how you can attain <u>maximum reuse</u> when you have a spatially isolated gateway." Trial Tr. at 1463 (emphasis added). Thus, one of skill in the art would understand that the isolated feeder beams in Figure 2B would practice the additional limitations of Claim 12 because they "have available to use all of the frequency, which is taught in these Figures 12(a) and

12(b), along with the associated text." Tr. at 1464. Dr. Bartone testified that one of skill in the art would understand the overlapping service beams depicted in Figure 2B satisfy the coloring limitations of Claim 1 by virtue of a single sentence that discloses "[b]y locating gateway terminals 210 outside of the spotbeam regions (e.g., the third gateway 210-3), spatial diversity is achieved to allow for greater re-use of the allocated frequencies."  Ex. C at ¶ 25. Dr. Bartone testified that this reference to "greater" reuse teaches "that you have reuse, when you have proximity, and then when you move a gateway, for example, to a case of non-proximity so it's spatially isolated all by itself, you have greater frequency reuse." Trial Tr. at 1463. In rebuttal, he likewise stated that "greater reuse implies that when you have partially overlapping, that you have a certain degree of frequency reuse, and then when you isolate those gateways, you have greater frequency reuse." *Id.* at 2682. Finally, Dr. Bartone went on to testify that, having combined the above embodiments, one of skill in the art <u>could</u> color the beam maps in the '038 Provisional in such a way that would be "consistent" with these combined teachings of the '038 Provisional and also "consistent" with Claim 12. *E.g.*, *id.* at 2683-85. This testimony does not constitute substantial evidence for several reasons.

<u>First</u>, the Federal Circuit has held as a matter of law that <u>obviousness</u>—*i.e.*, combining distinct embodiments, none of which alone satisfies every claim limitation—is  insufficient to establish written description support. *Lockwood*, 107 F.3d at 1572 ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification."). Dr. Bartone proposed combining distinct embodiments from Figures 2B, 12A, 12B and their associated

text, in order to make a case for written description support of Claim 12. *See, e.g.*, Trial Tr. at 1463-64; *see also, e.g.*, Ex. C at ¶ 20 ("With reference to <u>FIG. 12A</u>, <u>an embodiment</u> of a forward link distribution system 1200 is shown."); *id.* at ¶ 23 ("Referring next to <u>FIG. 12B</u>, <u>an embodiment</u> of a return link distribution is shown."); *id.* at ¶ 24 ("<u>In this embodiment</u>, the gateway terminals 210 are also shown along with their feeder beams 225 . . . [a]s shown <u>in FIG. 2B</u> . . . .") (emphases added).

    In *Novozymes*, 723 F.3d at 1338, the trial court granted defendant's motion for judgment as a matter of law that the asserted patent was invalid for lack of written description support. The Federal Circuit affirmed, rejecting the patentee's expert's analysis because he attempted to find individual limitations of the claim in distinct embodiments littered throughout the alleged priority application. *Id.* at 1349. The Federal Circuit held that the asserted claim must be taken "as an integrated whole rather than as a collection of independent limitations," meaning that the written description must disclose that combination rather than simply implying "a slew of competing possibilities" among which the infringing combination might be found. *Id.* The Federal Circuit thus roundly criticized the patentee's expert's attempt to "derive written description support from an <u>amalgam of disclosures plucked selectively</u> from the [alleged priority] application." *Id.* (emphasis added). That is precisely what Dr. Bartone did in this case and it is insufficient under binding Federal Circuit case law. *See also, e.g.*, *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 822 F. Supp. 2d 1020, 1027-28 (N.D. Cal. 2011), *aff'd*, 475 Fed. Appx. 334 (Fed. Cir. 2012) (per curiam) (noting the lack of "any

authority" that "the written description requirement may be met where the combination of elements comprising the invention is not described at all and instead requires a person of ordinary skill in the art to synthesize elements from different embodiments to come up with the claimed invention.").

Second, the Federal Circuit has also held <u>as a matter of law</u> that it is insufficient to establish written description support because one of skill in the art could practice the claim "consistent" with the written description. *In re Ruschig*, 54 C.C.P.A. 1551, 1557, 379 F.2d 990 (1967) (finding lack of written description support where the priority application left open "myriads of possibilities encompassed by the broad disclosure, with no guide <u>indicating or directing</u> that this particular [infringing] selection should be made rather than the many others which could also be made") (emphasis added). Instead, the disclosure must be express or inherent, meaning <u>necessarily present</u>. *Tronzo*, 156 F.3d at 1159. Dr. Bartone's approach of combining distinct embodiments and then opining that one of skill in the art could practice the claims "consistent" with such disclosures is legally insufficient. *Cf. Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995) (finding no inherent (meaning necessary) disclosure in prior art reference because while the defendant argued "the practice of Example 32 [in the prior art reference] <u>always</u> yields ranitidine hydrochloride in its Form 2 polymorph" the "district court found that the practice of Example 32 <u>could</u> yield crystals of either polymorph") (emphasis added).

Third, even if in theory it were possible to combine different embodiments to establish written description support—and it isn't—such an approach would

1   nonetheless fail here because even the combination does not teach every limitation

2   of Claim 12. The combination Dr. Bartone proposed includes Figures 2B, 12A, 12B

3   and their associated text. *See, e.g.*, Trial Tr. at 1463-64. But contrary to Dr.

4   Bartone's testimony, nothing in Figures 12A or 12B in the '038 Provisional or their

5   associated text says <u>anything at all</u> about frequency reuse—let alone "maximum"

6   reuse by isolated feeder beams as Dr. Bartone testified.[3] *See, e.g.*, Ex. C at Figs.

7   12A-12B & ¶¶ 20-23. The concept of "maximum" reuse appears nowhere in the

8   '038 Provisional and instead was <u>later added</u> to the patent by virtue of a subsequent

9   provisional titled "Placement of Gateways <u>Away</u> from Service Beams," which

10  contained an entirely new section of text titled "Frequency Re-use for Service and

11  Gateway Beams." Ex. D at ¶ 68 (adding language stating "[a]ccording to an

12  embodiment of the invention, a satellite system is presented that adopts multiple

13  levels of frequency re-use to <u>maximize</u> usage of available frequency bandwidth")

14  (emphasis added). Even that language about "maximizing" usage of frequency was

15  not in reference to Figures 12A and 12B. The text accompanying Figures 12A and

16  12B in the '038 Provisional, by contrast, discussed only frequency <u>conversion</u>

17  between the uplink and the downlink and not frequency <u>reuse</u> at all (let alone

18  frequency reuse between isolated feeder and service beams in particular). Ex. C at ¶

19  20-23. A sentence explaining that in Figure 12B "the same frequency pairs may be

20

21

22  ───────────────

23  [3] Dr. Bartone appears to have used the phrase "maximum" frequency re-use as a
    short-hand for the limitation in Claim 12 requiring that the remote feeder beam be
24  allocated "all of the colors of the beam pattern."

reused for both service links and feeder links" was not added until the '964 Provisional.[4] *Compare id.* at ¶ 23 *with* Ex. D at ¶ 28.

Similarly, Dr. Bartone suggested that the single reference to "greater" frequency reuse for isolated feeder beams in paragraph 25 of the '038 Provisional "implies that when you have partially overlapping, that you have a certain degree of frequency reuse, and then when you isolate those gateways, you have greater frequency reuse." Trial Tr. at 2682; *see also id.* at 1463. Dr. Schindall agreed that "greater" implies that there is <u>some type</u> of frequency reuse "going on" in the case that a feeder beam is proximate to a service beam as depicted in Figure 2B of the '038 Provisional. *Id.* at 2324-25. But that simply invites the question: what type of reuse is "going on" in the case of such feeder and service beam overlap in Figure 2B? Is it reuse between a feeder beam and the set of colors allocated to "each" of the non-proximate service beams? Or is it merely reuse with other feeder beams and not service beams at all? The '038 Provisional neither expressly nor inherently (meaning necessarily) answers the question, nor did Dr. Bartone opine that it did. Thus, the reference to the word "greater" in connection with Figure 2B does not disclose the missing coloring limitations for the "at least one feeder beam" having a proximate service beam as required by Claim 1.

In *TurboCare Div. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001), the patentee's expert made a similar argument for written description support. One

---

[4] Thus, Dr. Schindall agreed that Figure 12 "in the <u>patent</u>" refers to "a gateway [that] can be used to service fo[ur] user beams, and that gateway uses all the colors." Trial Tr. at 2319 (emphasis added). The disclosure in the patent traces its lineage to the '964 Provisional and not the '038 Provisional.

of the asserted patent claims required that a fluid turbine have a "flat spring interposed between said casing shoulders and an inner surface of said outer ring portion of said ring segment." *Id.* at 1116. TurboCare attempted to find written description support in a previously-rejected claim that mentioned a spring located "adjacent to said rings." *Id.* at 1119. TurboCare argued "that one of ordinary skill in the art would recognize that the only viable location for mounting a spring 'adjacent to said rings' would be between the casing shoulders," offering "the conclusory statements of its expert witness, Mr. Shifler, to that effect." The Federal Circuit rejected the argument, holding that there was no inherent disclosure because it was not <u>necessarily present</u> in the original specification. Instead, the Federal Circuit noted that the "original disclosure is completely lacking in any description of <u>an embodiment</u> in which the spring is located between the casing shoulders and the inner surface of the outer ring portion of the ring segment." *Id.* While the court noted that "[s]uch an embodiment may have been <u>obvious</u> from Brandon's vague reference to a 'spring located . . . adjacent to said rings,'" it held "that is not enough to satisfy the written description requirement." *Id.* (emphasis added). Here, as in *TurboCare*, Dr. Bartone offered conclusory testimony about what would be obvious to one of skill in the art upon reading the word "greater." But he never attempted to argue that the word "greater" inherently, meaning <u>necessarily</u>, requires that a feeder beam with proximate service beams reuse color with non-proximate service beams.

Finally, according to Dr. Bartone's proffered claim constructions at trial, it would not be sufficient for the proximate feeder beam to reuse color with <u>a</u> non-proximate service beam or even <u>some</u> non-proximate service beams. Instead, it

1  would be required that the proximate feeder beam reuse color with "each" of the

2  non-proximate service beams with which it communicates. *See, e.g.*, Trial Tr. at

3  1542-43 (limiting "plurality of service beams" to those "associated" with the at

4  least one feeder beam or "grouping" of feeder beams). Indeed, Dr. Bartone's expert

5  report makes clear his opinion that Claim 1 requires not that the proximate feeder

6  beam reuse color with any non-proximate service beam, but that it reuse color with

7  all of the specific non-proximate service beams with which it communicates. *see*

8  *also, e.g.*, Bonn Decl. Ex. E (Bartone Infringement Report) at ¶ 125 ("[I]t is my

9  opinion that 'plurality of service beams' in Claim 1 refers to the set of service

10  beams that 'relay information to or receive information from' the 'at least one

11  feeder beam.'"); *id.* Ex. F (Bartone Errata at ¶ 206); *id.* Ex. G (Bartone Invalidity

12  Report) at ¶¶ 184-87. And yet nothing in the '038 Provisional—or anywhere in the

13  entire specification, for that matter—discloses with which service beams the feeder

14  beams in Figure 2B communicate, let alone that the at least one proximate feeder

15  beam should reuse color with "each" of the particular non-proximate service beams

16  with which it exchanges information. In short, Dr. Bartone did not even attempt to

17  argue that written description support exists in the '038 Provisional for ViaSat's

18  interpretation of Claim 1. Instead, Dr. Bartone inconsistently applied one

19  interpretation (with additional limitations) when distinguishing SS/L's prior art, but

20  a different interpretation (with fewer limitations) when attempting to find written

21  description support.

22        Despite all of these infirmities with Dr. Bartone's testimony, SS/L expects

23  that ViaSat will attempt to argue the Court must accept it at face value and conclude

24

that such testimony alone necessarily constitutes "substantial evidence" supporting the jury's verdict. But the Federal Circuit has refused to endorse the notion that an expert's *ipse dixit* on validity should be accepted as gospel on post-trial motions, particularly where, as here, the expert gets it wrong. In *Tronzo*, the Federal Circuit reversed the district court's denial of JMOL of invalidity in light of the fact that the plaintiff was not entitled to the earlier priority date he sought, notwithstanding expert testimony to the contrary. *Tronzo*, 156 F.3d at 1159. Instead, the Federal Circuit discounted the expert's testimony because it was plainly contrary to the disclosures on the face of the patent. *Id.* In *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1303 (Fed. Cir. 1999), the Federal Circuit affirmed the district court's grant of summary judgment for lack of written description support, notwithstanding the patentee's expert testimony to the contrary. The Federal Circuit rejected the expert's characterization of the disclosures in the alleged priority document, conducted an independent analysis, and concluded instead that "this language does not support, let alone disclose," the required claim limitations. *Id.*

ViaSat failed to carry its burden of production on the priority date issue. It failed even to introduce the 2007 PCT Application into evidence. And its expert's testimony on the '038 Provisional was a legally-insufficient obviousness analysis.

        c.     <u>Written Description Support Can Be Found Only in the New Matter Added in the 2009 CIP.</u>

By contrast, clear and convincing evidence demonstrates that the asserted claims only have written description support, if at all, in the new matter added in the March 2009 CIP. The new matter for the first time <u>expressly</u> teaches multiple embodiments that practice Claim 12, most notably in Figure 16 and the

accompanying text. Bonn Decl. Ex. A at Fig. 16 & Col. 20:24-21:58. The revisions were so substantial that they entailed re-writing the patent's title, abstract, field of the invention, and summary of the invention sections, and adding an entirely new section of text titled "Placement of Gateways in Proximity to Service Beams" along with Figures 16-18. *Compare* Bonn Decl. Ex. A *with* Bonn Decl. Ex. C. ViaSat amended the claims to overcome a rejection and, in so doing, directly quoted from the new matter (in particular the "set of colors" language found in the new material), thereby "invok[ing] the definition it assigned to the claims" in the new matter. Ex. H at VST00001405-17, VST00001428-38; *see also, e.g.*, *Hockerson-Halberstadt, Inc. v. Converse, Inc.*, 183 F.3d 1369, 1374-75 (Fed. Cir. 1999). In justifying why the claims should be allowed over the prior art, the patentee expressly relied on the new matter in Figure 16 and made no reference whatsoever to matter from the '038 Provisional. *See, e.g.*, Ex. H at VST00001312-13; *see also, e.g.*, *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1333 (Fed. Cir. 2008) (finding lack of written description support for earlier priority date where during the patent's prosecution "the only support that the inventor acknowledged for the 'other circuit' was the new matter").

The Federal Circuit has not hesitated to reverse the denial of JMOL for invalidity where, as here, disclosures in the original matter are sparse at best, the new matter entails substantial revision, and the claims draw support from the new matter. It has done so even in the face of conflicting expert testimony and, indeed, has discounted expert testimony that is either legally insufficient or contradicted by the disclosures themselves. In *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d

1333, 1335 (Fed. Cir. 2010), the Federal Circuit found it persuasive that the new matter had largely rewritten the "'Background of the Invention' and 'Summary of the Invention' Sections." *Id.* at 1338 (citations omitted). The court noted the earlier application was "directed to and describe[d] only a controller having a single input member operable in six degrees of freedom," while, "[i]n contrast, the [later] specification and claims were enlarged to cover more than single input members operable in six degrees of freedom." *Id.* The court reversed the district court's denial of the defendant's JMOL for invalidity based on its erroneous priority date ruling. *Id.* In *Centocor Ortho Biotech, Inc. v. Abbott Labs*, 636 F.3d 1341 (Fed. Cir. 2011), a case in which the jury found willful infringement and awarded $1.67 billion in damages, the Federal Circuit found no written description support justifying an earlier priority date, despite a conflict between the defendant's expert's testimony and the inventor's testimony. *Id.* at 1350-51 ("In marked contrast to the detailed description of the claimed chimeric antibodies, Dr. Ghrayeb was able to point to only a few sentences sprinkled throughout the '775 patent that mention human antibodies or human variable regions at all.").

Here, as in *Anascape*, the revisions in the new matter were so substantial that the title, abstract, summary of invention, and field of invention sections were entirely re-written. And, as in *Centocor*, while the original matter had only a bare-bones disclosure that "greater" reuse could be achieved with isolated rather than proximate feeder beams, the new matter teaches for the first time embodiments that combine (1) a feeder beam using different colors from proximate service beams and a same color from the set of colors allocated to each of the non-proximate service

beams and (2) a second, remote feeder beam using all of the colors of the beam pattern.

Binding Federal Circuit case law requires the Court to carefully scrutinize the disclosures in the relevant patent applications rather than assuming that Dr. Bartone's testimony necessarily supports the jury's verdict. Because Dr. Bartone's analysis was legally insufficient, SS/L  is entitled to judgment as a matter of law.

**B.      Alternatively, SS/L is Entitled to a New Trial.**

**1.      The Written Description Jury Instruction Was Incomplete.**

In the alternative, a new trial is warranted because the Court's Jury Instruction No. 37 was prejudicially incomplete in its discussion of the written description requirement. *Biodex Corp. v. Loredan Biomed., Inc.*, 946 F.2d 850, 854 (Fed. Cir. 1991) (holding new trial is required where "the jury instructions read in their entirety were incorrect or <u>incomplete</u> as given and . . . the suggested instruction could have cured the error") (emphasis added).   Instruction No. 37 stated that written description would be satisfied if "a person having ordinary skill reading the earlier-filed patent application would have recognized that they describe the invention as finally claimed in the patent and that the inventor actually possessed that full scope by the filing date of the patent application, although the exact words found in the claim need not be used." Ex. I at Instr. No. 37. SS/L timely objected that "[t]his instruction runs the risk of permitting a jury to find the written description was satisfied if undisclosed subject matter merely would have been <u>obvious</u>—contrary to Federal Circuit law holding that the written description requirement is not met by a disclosure that merely renders the claimed invention obvious." Ex. J at 3 (citing *Ariad Pharms., Inc.*, 598 F.3d at 1352) ("And while the

description requirement does not demand any particular form of disclosure, or that the specification recite the claimed invention in haec verba, a description that merely renders the invention obvious does not satisfy the requirement.")). SS/L proposed adding the last clause of this quote from *Ariad* to the instruction. *Id.*

The instruction is incomplete, as it states only the first portion of the relevant *Ariad* quote, but omits the important limitation that obviousness is not sufficient. The instruction was prejudicial to SS/L because, as set forth above, the entirety of Dr. Bartone's analysis was an obviousness-type argument for combining various embodiments in the '038 Provisional. As such, the jury instruction—without the limitation that obviousness does not suffice—permitted the jury to unduly credit Dr. Bartone's opinions and find an early priority date based solely on an obviousness analysis. *Adv. Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1284 (Fed. Cir. 2000) (remanding for new trial on anticipation based on erroneous jury instruction). The Federal Circuit has reversed where, as here, a jury instruction leaves an important issue "to be determined on a possibly incorrect standard" and where it reinforces the prejudicial effect of irrelevant evidence. *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 961-62 (Fed. Cir. 1997).

## 2.    <u>The Verdict is Against the Weight of the Evidence.</u>

In the alternative, SS/L is entitled to a new trial because the verdict is against the weight of the evidence. Whether to grant a new trial on some or all issues, pursuant to Fed. R. Civ. P. 59, is a matter of the trial court's discretion. *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 843 (9th Cir. 2004). Courts apply a lower standard of proof to motions for new trial than they do to JMOL motions. *William Inglis v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1026–7

(9th Cir. 1981) "[T]he trial court may grant a new trial, even though the verdict is supported by substantial evidence, if 'the verdict is contrary to the clear weight of the evidence or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)). In deciding a motion for new trial, the court "has the right, and indeed the duty, to weigh the evidence" and may evaluate the credibility of the witnesses. *Murphy v. City of Long Beach*, 914 F.2d 183 (9th Cir. 1990); *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000). The court is not required to view the evidence from the perspective most favorable to the prevailing party. *Kellington*, 217 F.3d at 1095.

For the reasons set forth above, SS/L is, at the very least, entitled to a new trial on invalidity of the '875 patent because the verdict is against the clear weight of the evidence.

## IV.  CONCLUSION

For the reasons set forth above, SS/L is entitled to entry of judgment as a matter of law that Claim 12 of the '875 patent lacks written description support prior to the March 2009 CIP and therefore is invalid as anticipated by ViaSat-1. In the alternative, SS/L is entitled to a new trial on invalidity of the '875 patent.

Dated: June 13, 2014                    By:   */s/ Amanda K. Bonn*

Marc M. Seltzer
Amanda K. Bonn
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
Email: abonn@susmangodfrey.com

William Christopher Carmody
(Admitted *Pro Hac Vice*)
Jacob W. Buchdahl
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340

Joseph S. Grinstein
(Admitted *Pro Hac Vice*)
William R. H. Merrill
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:   713-653-7856
Facsimile:    713-654-6666
Email: jgrinstein@susmangodfrey.com
Email: bmerrill@susmangodfrey.com

Ian B. Crosby
(Admitted *Pro Hac Vice*)
Rachel S. Black
(Admitted *Pro Hac Vice*)
Patrick C. Bageant (275135)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3861
Fax: (206) 516-3883

Email: icrosby@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: pbageant@susmangodfrey.com

*Attorneys for Defendants/Counterclaim Plaintiffs Space Systems/Loral, LLC (f/k/a Space Systems/Loral, Inc.) and Loral Space & Communications Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 13, 2014, I caused the foregoing **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (7 OF 12), REGARDING THE PRIORITY DATE AND INVALIDITY OF THE '875 PATENT** to be served on opposing counsel via the Court's CM/ECF system.

Dated: June 13, 2014                By:    */s/ Amanda K. Bonn*_____