William Christopher Carmody
(Admitted *pro hac vice*)
Jacob W. Buchdahl
(Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone:  (212) 336-8330
Facsimile:   (212) 336-8340
Email: bcarmody@susmangodfrey.com
Email: jbuchdahl@susmangodfrey.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:   (310) 789-3150
Email: mseltzer@susmangodfrey.com

[Additional counsel listed below signature line]

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC.,<br><br>        Plaintiff,<br>   vs.<br><br>SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS INC.,<br><br>        Defendants/Counterclaim Plaintiffs. | Case No. 3:12-cv-00260-H-WVG<br><br>Hon. Marilyn L. Huff<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED) (8 OF 12) REGARDING INDEFINITENESS**<br><br>Date: July 22, 2014<br>Time: 9:00am<br>Place: Courtroom 15A |

## CONTENTS

I.      INTRODUCTION ........................................................................... 1

II.     LEGAL FRAMEWORK .................................................................. 1

III.    ARGUMENT ................................................................................ 2

        A.   The Asserted Claims of the '043 Patent Are Indefinite. ........................... 2

             1.   Claim 1 Is Invalid as Indefinite Because It Is an Apparatus
                  Claim that Recites Use of the Claimed Apparatus. ........................ 3

             2.   The Problematic Language in Claim 1 Describes a Method of
                  Use and Is Not "Functional Language." ........................... 6

             3.   Interference-Domination Is Not "Fixed." ........................... 7

             4.   "Operated" Does Not Mean "Configured." ........................... 8

             5.   Dependent Claim 3 of the '043 Patent is Invalid as Indefinite
                  Because It Incorporates Claim 1 ........................... 9

             6.   Claims 7 and 8 of the '043 Patent Are Invalid as Indefinite ........... 9

        B.   Claim 7 of the '827 Patent Is Indefinite. ........................... 10

             1.   The "Information Indicating a Presence or an Absence of an
                  Interference Situation" Limitation Renders Claim 7
                  Indefinite. ........................... 10

             2.   The "Transmitter" Limitation Renders Claim 7 Indefinite. ........... 13

IV.     CONCLUSION ........................................................................... 16

# AUTHORITIES

**Cases**

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
   715 F.3d 891 (Fed. Cir. 2013) ....................................................................2

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
   224 F.3d 1308 (Fed. Cir. 2000) ...................................................................9

*Chef America, Inc. v. Lamb-Weston, Inc.*,
   358 F.3d 1371 (Fed. Cir. 2004) .................................................................16

*Crane Co. v. Sandenvendo Am., Inc.*,
   2009 WL 1586704 (E.D. Tex. June 5, 2009) ..............................................11

*Datamize LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005) .................................................11, 12, 13

*Exxon Research & Eng'g Co. v. United States*,
   265 F.3d 1371 (Fed. Cir. 2001) .................................................................15

*Fin Control Sys. Pty., Ltd. v. OAM, Inc.*,
   265 F.3d 1311 (Fed. Cir. 2001) ...................................................................8

*Geneva Pharm., Inc. v. GlaxoSmithKline PLC*,
   349 F.3d 1373 (Fed. Cir. 2003) .................................................................13

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
   607 F.3d 776 (Fed. Cir. 2010) ...................................................................16

*Halliburton Energy Services, Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) .................................................................15

*Interactive Gift Exp., Inc., v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) ...................................................................4

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) .........................................................2, 4, 5

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) .............................................................1, 6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ........................................................................2, 10, 16

*NTP, Inc. v. Research In Motion, Ltd.*,
    417 F.3d 1282 (Fed. Cir. 2005) ..................................................................9

*Rembrandt Data Techs., LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011) ........................................................5, 6, 9, 10

*Romala Stone, Inc. v. Home Depot U.S.A., Inc.*,
    2007 WL 2904110 (N.D. Ga. Oct. 1, 2007) ...................................................11

*STX, Inc. v. Brine, Inc.*,
    37 F. Supp. 2d 740 (D. Md. 1999) ..............................................................11

**Statutes**

35 U.S.C. § 112..........................................................................................1, 2, 4, 5

**Rules**

Fed. R. Civ. P. 50(a) ...............................................................................................1

Fed. R. Civ. P. 50(b) ...............................................................................................1

# I.    INTRODUCTION

Defendants Space Systems, Loral, LLC and Loral Space & Communications Inc. (collectively, "SS/L" or "Defendants") move for judgment as a matter of law that the asserted claims of U.S. Patent No. 8,068,827 (the "'827 Patent") and U.S. Patent No. 8,010,043 (the "'043 Patent") are invalid as indefinite.[1] Indefiniteness is a pure question of law. Because the asserted claims of the '043 and '827 Patents fail to inform with reasonable certainty those skilled in the art about the scope of the claimed invention, judgment as a matter of law is appropriate.

# II.    LEGAL FRAMEWORK

Under 35 U.S.C. § 112, ¶ 2, the claims of a patent must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 (2). Any claim that fails to meet this definiteness requirement is invalid. 35 U.S.C. § 282(b)(3)(A). Indefiniteness is a question of law. *Microprocessor Enhancement Corp. v. Tex. Instruments Inc*., 520 F.3d 1367, 1374 (Fed. Cir. 2008).

Although the Federal Circuit has previously ruled that a claim is indefinite "only when it is 'not amenable to construction' or 'insolubly ambiguous,'" *Biosig*

---

[1] S/L hereby moves for judgment as a matter of law ("JMOL") pursuant to Rule 50(a) and, pursuant to Rule 50(b), renews the motion for JMOL that it made before the close of evidence.

In denying Defendants' motions for summary judgment that the '827 and '043 patents are invalid as indefinite, the Court initially indicated it would submit the issue of indefiniteness to the jury. *See* Dkt. No. 358 at 8; Dkt. No. 209 & 1/17 Hearing Tr. at 35-36. However, the Court later acknowledged that indefiniteness is a question of law appropriate for resolution by the court and thus declined to submit the issue to the jury. The Court instead directed Defendants to brief the issue in post-trial motions in the event the patents were found valid and infringed. *See* Trial Tr. at 1120-21, 1123.

*Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 898 (Fed. Cir. 2013), *vacated by* 134 S. Ct. 2120 (U.S. 2014), the Supreme Court recently rejected the Federal Circuit's test for indefiniteness as "more amorphous than the statutory definiteness requirement allows." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2131 (2014). In place of the "insolubly ambiguous" standard, the Supreme Court held that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124.

## III.   ARGUMENT

### A.   The Asserted Claims of the '043 Patent Are Indefinite.

A patent claim that recites both an apparatus <u>and</u> use of that apparatus is invalid as indefinite. When a claim combines "two separate statutory classes of invention"—apparatus and method claims—"a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). Such a claim therefore "is not sufficiently precise to provide competitors with an accurate determination of the 'metes and bounds' of protection involved and is 'ambiguous and properly rejected' under section 112, paragraph 2." *Id.* (quotation marks and citation omitted).

As explained below, Claims 1 and 7 of the '043 Patent recite both a satellite and use of that satellite and are therefore indefinite as mixed method/apparatus claims. Claim 3 (which depends from Claim 1) and Claim 8 (which depends from

Claim 7) include the same mixed format limitations and are likewise indefinite.

1.   Claim 1 Is Invalid as Indefinite Because It Is an Apparatus
Claim that Recites Use of the Claimed Apparatus.

Claim 1 of the '043 Patent is an apparatus claim drawn to "[a] satellite." It explicitly recites three components of the satellite: a power source, an antenna and a plurality of spot beams. Various details of the spot beams are also recited, including "the plurality of spot beams includes … the first spot beam illuminates a first region . . . the second spot beam illuminates a second region . . . the first and second regions overlap … the first spot beam as sent . . . the first spot beam as . . . ." Ex. B (V-1289).[2]

Claim 1 also describes the _use_ of the satellite, including how the claimed satellite is operated and how a spot beam is received by a subscriber terminal. For example, Claim 1 recites that "the satellite is operated to maximize data-carrying capacity of the plurality of spot beams as measured in bits/Hz, by utilizing a beam pattern having a specific number of color(s) of frequency and polarization and specific beam spacing that results in higher data-carrying capacity of the plurality of spot beams than achieved with other alternative numbers of color(s) of frequency and polarization and beam spacings." Ex. B (emphasis added).[3] The phrase "the

---

[2] Arguably, Claim 1 only recites two structures, a power source and an antenna, as "[t]he term spot beam refers to a directional radiation pattern provided by a satellite antenna in which the area of the geographical coverage is constrained to a footprint having a direct line of sight to the satellite." Ex. B, 1:40-44. _See also_ Claim Construction Order, Dkt. No. 206 at 10 ("[T]he Court construes 'spot beam' as "a focusing of electromagnetic radiation to permit communication with terminals in a geographical region that is a portion of the satellite's coverage area.").

[3] All references to "Ex." herein refer to exhibits to the Declaration of Mark M. Musico, filed herewith.

satellite is operated" unambiguously requires the satellite to be used.[4] Claim 1 also recites "whereby <u>reception of signals</u> from the first spot beam <u>by the at least one of the first plurality of subscriber terminals</u> is interference-dominated such that C/I is less than C/N." Ex. B (emphasis added). This limitation clearly requires the first spot beam to be received by a user (subscriber terminal).

The recitation in Claim 1 of how the claimed satellite is operated and details about users' reception of a spot beam both fit within the Federal Circuit rule from *IPXL Holdings* that reciting both an apparatus and a method of using the apparatus renders a claim indefinite. 430 F.3d at 1384. In *IPXL Holdings*, claim 25 recited:

> The <u>system of claim 2</u> [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and <u>the user uses the input means</u> to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*Id.* (emphasis and alterations in original). The Court concluded that because claim 25 recited both a system and a method for using that system, "it is unclear whether infringement of claim 25 occurs when one creates a system that allows the user to change the predicted transaction information . . . or whether infringement occurs when the user actually uses the input means to change transaction information . . . ." *Id.* Thus, the Court held that "[b]ecause claim 25 recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art

---

[4] If the claim merely meant that the satellite was <u>capable of</u> being operated, it would have recited "the satellite is oper<u>able</u> to…." *Cf. Interactive Gift Exp., Inc., v. Compuserve Inc.*, 256 F.3d 1323, 1336 (Fed. Cir. 2001) (proffered claim constructions that appear illogical in view of the ordinary meaning of the claim term are rarely proper).

of its scope, and it is invalid under section 112, paragraph 2." *Id.*

Similarly, in *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339-1340 (Fed. Cir. 2011), the challenged claim 3 recited "[a] data transmitting device … comprising … first buffer means … fractional encoding means … second buffer means … trellis encoding means … and transmitting the trellis encoded frames." (emphasis added). The Federal Circuit explained that the first four elements of the claim recited apparatus elements and the final element recited method of use limitations. *Id.* at 1339 (discussing the limitation "transmitting the trellis encoded frames"). The court held the asserted claims invalid, explaining that "reciting both an apparatus and a method of using the apparatus renders a claim indefinite under section 112, paragraph 2." *Id.* (citing *IPXL Holdings, L.L.C.*, 430 F.3d at 1384). Notably, the method of use limitations in claim 3 did not explicitly refer to a user or require an action by a user. *Id.* Nonetheless, the Federal Circuit concluded that claim 3 was indefinite because the "transmitting" element is clearly a method step. *Id.*

Claim 1 of the '043 Patent suffers from the same problems identified in *IPXL Holdings* and *Rembrandt Data Technologies* by reciting:

> (1) "the satellite is operated to maximize data-carrying capacity of the plurality of spot beams …"; and

> (2) "reception of signals from the first spot beam by the at least one of the first plurality of subscriber terminals is interference-dominated such that C/I is less than C/N."

Ex. B (emphases added). The language "reception of signals from the first spot beam by the at least one of the first plurality of subscriber terminals," describes an action by a user or subscriber terminal to use the spot beam, just like the limitation "user uses the input means" in *IPXL Holdings*. In addition, the language "the

satellite is operated to maximize," clearly describes a method step like the "transmitting" limitation in *Rembrandt Data Technologies*, regardless of whether the user or operator is expressly mentioned. Under the Federal Circuit's reasoning, it is unclear whether infringement of Claim 1 of the '043Patent occurs when one builds a satellite, when one operates the satellite, or when a user receives signals from the satellite. Because Claim 1 thus fails to inform with reasonable certainty those skilled in the art about the scope of the claimed invention, the Court should conclude that Claim 1 is indefinite.

> 2.   The Problematic Language in Claim 1 Describes a Method of Use and Is Not "Functional Language."

Claim 1 does not merely describe the claimed structure using "functional language." *Compare Microprocessor Enhancement Corp.*, 520 F.3d at 1374. That argument must fail in light of the Federal Circuit's holding in *Rembrandt Data Technologies*. In that case, the Court invalidated a claim as indefinite because it claimed a "data transmitting device for transmitting signals," but then recited "transmitting the trellis encoded frames." 641 F.3d at 1339. Although the recited action of "transmitting" was performed by the claimed transmitting device, the Federal Circuit nonetheless invalidated the claim under the *IPXL Holdings* rule -- thereby declining to conclude that the "transmitting" limitation was merely "functional language" describing the claimed apparatus.

Here, the reasons for invalidating Claim 1 are even stronger than they were in *Rembrandt*, as the "reception of signals" in Claim 1 of the '043 Patent cannot possibly be performed by the claimed satellite, as the satellite cannot receive its own signals. Instead, Claim 1 makes clear that the "reception of signals" is

performed not by the satellite but "by the at least one of the first plurality of subscriber terminals . . . ." Thus, the "reception of signals" limitation cannot be describing the functionality of the satellite, but rather must be claiming methods performed by the unclaimed subscriber terminals.[5] *See* Dkt. No. 955-2 (Schindall Report) at 202. This mixes methods and an apparatus and thus renders the claim invalid.

### 3.   Interference-Domination Is Not "Fixed."

The trial record also belies the argument ViaSat previously used to avoid indefiniteness—namely, that "satellite design aspects that determine beam placement, interference levels, and noise levels are well set before the satellite launches and cannot be changed once in orbit." Dkt. No. 316 at 17-18. But, for example, Mark Miller admitted that interference levels depend in large part on ground data, not any configuration of the satellite. Trial Tr. 1337. And, in order to prove that the reception of signals by one of the subscriber terminals is interference-dominated, Mr. Sturza relied on "other interference sources" including "adjacent satellite interference." Trial Tr. 1630-31. Whether a satellite satisfies the "reception of signals" limitation is thus not determined by the satellite itself but by its mode of use in combination with ground terminals and even other satellites. In other words, a manufacturer like SS/L could build a satellite and fully believe, based on information available to it, that C/I exceeds C/N (i.e. that there are no interference-dominated locations). But through no fault of its own, in the future, another satellite could launch, increasing the interference (and thus making C/I lower). Or,

---

[5] The inventors of the '043 Patent could have claimed, but did not claim, a "satellite communication system" (the satellite and its ground equipment) in Claim 1.

1  unbeknownst to the manufacturer, ground terminals could improve in the future,

2  making N lower (and thus C/N higher).

3  ### 4.   "Operated" Does Not Mean "Configured."

4  ViaSat has also argued that "is operated to" means the same thing as "is

5  configured to." Putting aside the fact that this reading is flatly contrary to the plain

6  meaning of the claim language, ViaSat itself used the verb "to operate" in Claim 17

7  of the'043 Patent precisely to convey a <u>method of use</u>. Claim 17 is the method claim

8  counterpart to claim 1, and claims "[a] <u>method for operating a satellite</u>

9  <u>communications system</u>," including the method steps of (among others) (1)

10 "sending a plurality of spot beams from a satellite to service a plurality of service

11 links" and (2) "maximizing the data-carrying capacity . . . by utilizing" a particular

12 beam pattern. Ex. B at 23:36-60 (emphasis added). It is undisputable "that the same

13 terms appearing in different portions of the claims should be given the same

14 meaning unless it is clear from the specification and prosecution history that the

15 terms have different meanings at different portions of the claims." *Fin Control Sys.*

16 *Pty., Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001). Here there is no basis

17 to overcome the presumption—ViaSat used the term "operate" to describe a method

18 of <u>using</u> a satellite to maximize capacity in Claim 17, and ViaSat impermissibly

19 combined that <u>same method</u> of use with an apparatus in Claim 1.

20 ViaSat knew how to use the phrase "configured to" when it wished to

21 describe a satellite that had been designed in a particular way, and knew how to use

22 the phrase "operated to" when describing how a satellite is used after it is launched.

23 ViaSat filed a continuation to the '043 Patent based on the same specification that

24 expressly claimed a "method for <u>configuring</u> a satellite" and a "satellite designed

by" that method. *See* Dkt. No. 327-3 at B-36 ('202 Patent, claims 10, 21 (emphasis added)). *NTP, Inc. v. Research In Motion, Ltd.*, 417 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because [patentee's] patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents."). Just as the same terms are presumed to have the same meaning, "different terms in the claims connote different meanings." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). The contrast between ViaSat's claimed "method of operating a satellite communications system" in Claim 17 of the '043 and "method for configuring a satellite" in claim 10 of the '202 patent reveal that the phrase "is operated to" denotes a method of use and not a functional by-product of satellite configuration.

> 5.   Dependent Claim 3 of the '043 Patent is Invalid as Indefinite Because It Incorporates Claim 1.

Claim 3 is dependent on claim 1 and therefore incorporates all of the limitations of claim 1. To the extent claim 1 is held invalid as indefinite because the "satellite is operated" and "reception of signals" limitations, it necessarily follows that claim 3 is invalid as well. *See, e.g.*, *Rembrandt Data Techs.*, 641 F.3d at 1339-40 (invalidating dependent claims 4-11 because independent claim 3 was indefinite).

> 6.   Claims 7 and 8 of the '043 Patent Are Invalid as Indefinite.

Like Claim 1, Claim 7 also recites the "reception of signals from the first spot beam by the at least one of the first plurality of subscriber terminals . . . ." Ex. B. Once again, this limitation describes an action by a user or subscriber terminal to use the spot beam, just like the limitation "user uses the input means" in *IPXL*

*Holdings*. This "reception of signals" cannot possibly be performed by the satellite, as discussed above. Therefore, Claim 7 recites both "[a] satellite" and use of the satellite, which renders Claim 7 invalid as indefinite for the same reasons as described above with respect to Claim 1. And because Claim 8 depends from and incorporates the same limitations from Claim 7, Claim 8 is also invalid as indefinite. *See, e.g.*, *Rembrandt Data Techs.*, 641 F.3d at 1339-40.

**B.    Claim 7 of the '827 Patent Is Indefinite.**

Claim 7 of the '827 patent (Ex. C, V-1290) is also invalid as indefinite for two reasons:

> <u>First</u>, the satellite in claim 7 makes transmission determinations based on "information indicating a presence or an absence of an interference situation." But, as ViaSat would read the claim, this "information" could consist of simply the subjective opinions of a technician on the ground. A claim whose infringement turns on the subjective whims of a third-party is invalid as indefinite.
>
> <u>Second</u>, claim 7 purports to cover circuitry that feeds to a satellite's transmitter instructions either (1) to transmit in only the geostationary ("GSO") frequency band, or (2) to transmit in both the GSO and nongeostationary ("NGSO") frequency bands. But the claim is drafted nonsensically, because the transmitter then ignores these instructions and either transmits only in the GSO band or transmits only in the NGSO band.

Claim 7 thus fails to inform with reasonable certainty those skilled in the art about the scope of the claimed invention. Accordingly, this Court should hold Claim 7 invalid as indefinite. *See Nautilus*, 134 S. Ct. 2120.

> 1.    <u>The "Information Indicating a Presence or an Absence of an Interference Situation" Limitation Renders Claim 7 Indefinite.</u>

Claim 7 is directed to a GSO satellite that includes circuitry configured to activate the NGSO frequency spectrum "based on information indicating a presence or absence of an interference situation." Ex. C. Because the claim contains no

1    requirement that the circuitry be configured to switch based on objective

2    interference information, infringement of Claim 7 may turn on the subjective

3    motivations of the individual on the ground who makes the switching decision.

4    Claim 7 is thus invalid because its "circuitry" limitation lacks an objective standard

5    to determine the scope of the claimed invention and instead may depend on any one

6    person's subjective opinion.

7          Claim language that "depend[s] solely on the unrestrained, subjective opinion

8    of a particular individual purportedly practicing the invention" is indefinite.

9    *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

10   When a subjective claim term is used, "[s]ome objective standard must be provided

11   in order to allow the public to determine the scope of the claimed invention." *Id.* A

12   claim term cannot be based on a subjective construction that "would depend on the

13   unpredictable vagaries of any one person's opinion." *Id.*[6]

14         Claim 7 has this subjectivity problem in its "circuitry" limitation. As SS/L

15   urged at claim construction, the claimed GSO satellite employs on-board orbital

16   data to determine whether an interference situation is present. Dkt. No. 206. SS/L

17   proposed to construe the "circuitry" limitation consistent with this understanding:

18   "A control device that uses orbital information to select one or more appropriate

19   frequency band(s) during the presence or absence of an interference situation." *Id.*

20   _____

21   [6] Courts have often held claims indefinite where certain limitations were based on
     an individual's subjective views. *See, e.g.*, *STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d
22   740, 746 (D. Md. 1999) ("improved handling and playing characteristics"); *Romala
     Stone, Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 2904110, at *5-6 (N.D. Ga. Oct.
23   1, 2007) ("price affordable to the average consumer"); *Crane Co. v. Sandenvendo
     Am., Inc.*, 2009 WL 1586704, at *13 (E.D. Tex. June 5, 2009) ("rapidly").

24

1    The Court, however, rejected that construction and interpreted the "circuitry"

2    limitation to mean "circuitry configured to select one or more appropriate frequency

3    bands based on information indicating the presence or absence of an interference

4    situation with an NGSO satellite system." Dkt. No. 206 at 22. Like the claim

5    language, that construction provides no guidance as to <u>what</u> determines the

6    existence of an interference situation or <u>how</u> such a determination is made. *Id.*

7    Nonetheless, the jury then found infringement by the Jupiter-1 satellite, which lacks

8    "smart" on-board circuitry and instead contains a simple switch that turns the

9    NGSO spectrum "on" or "off" based on instructions from the ground.

10   If, as the jury found, Claim 7 covers a switch activated by mere binary data

11   ("on" or "off") yet also requires circuitry configured to switch "based on"

12   interference information, infringement must turn on the subjective motivations of

13   the individual who makes the switching decision or the mode of operating the

14   satellite in any given instance. Given that a bare "on" or "off" signal indicates

15   nothing about interference, the only way to determine infringement would be to

16   ascertain the reason the signal was sent, by looking beyond the claimed satellite and

17   into the mind of the satellite operator or other indications of how the satellite is

18   being operated.[7] <u>The same configuration of circuitry</u> thus may or may not infringe

19   depending on, for example, whether the satellite operator (1) instructs the GSO

20   satellite to switch off the NGSO spectrum for 5 minutes because he or she

21

_____

22   [7] Indeed, despite the fact that Claim 7 is an apparatus claim, Mr. Sturza testified –
     strikingly – that dynamic switching in response to interference events is "not a
23   satellite issue," and thus he "wouldn't expect to see anything about [dynamic
     switching in response to interference events] in the SS/L design documents." Trial
24   Tr. 1715.

1    performed a calculation and determined that the satellite would be in-line with an

2    NGSO satellite between 9:05 AM and 9:10 AM; or (2) decides to switch the NGSO

3    spectrum off permanently starting next March, simply because he or she believes an

4    NGSO satellite might be launched then. The latter determination would turn

5    entirely on the satellite operator's own beliefs rather than the presence or absence of

6    any "interference situation."[8]

7    Because Claim 7, as construed by the Court, encompasses scenarios that

8    depend merely on the "unrestrained, subjective opinion of a particular individual

9    purportedly practicing the invention," it is indefinite. *See*, *e.g.*, *Datamize*, 417 F.3d

10   at 1350. A claim that does not allow one of skill in the art to know from one use to

11   the next whether they are infringing is the "epitome of indefiniteness." *Geneva*

12   *Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003).[9]

13                    2.    The "Transmitter" Limitation Renders Claim 7 Indefinite.

14   Claim 7 of the '827 Patent essentially describes a three-component satellite.

15   The first component is identified in the first limitation of Claim 7, which provides

16   for a "receiver." Ex. C. This receiver receives two different types of signals from

17   the ground: "[1] in a GSO frequency band and [2] in an extended frequency

18   ────────────────

19   [8] Again, Mr. Sturza conceded as much at trial:
                   Q: But the presence or absence of interference would be
20                 indicated by a ground operator theoretically deciding I'm
                   going to send a signal to switch because of interference,
21                 right?
                   A: Yes, that's my understanding.
22   Trial Tr. 1709.

23   [9] Stated differently, Claim 7 is also indefinite because it is an apparatus claim, but
     infringement depends on the manner in which the apparatus is used by the operator.
24   *IPXL Holdings*, 430 F.3d at 1384.

spectrum, the extended frequency spectrum including the GSO frequency band and a non-geostationary orbit (NGSO) frequency band." Ex. C (numbering added for clarity).

The second component of this satellite, corresponding to the second limitation of the claim, is its onboard "circuitry." Ex. C. This circuitry selects an "activated frequency mode . . . based on information indicating a presence or an absence of an interference situation with an NGSO satellite system." V-1290. There are two options for this activated frequency mode: "one of [1] a GSO frequency band mode and [2] an extended frequency spectrum mode." *Id.* (emphasis and numbering added for clarity). The "extended frequency spectrum mode" in this limitation refers back to the "extended frequency spectrum" in the first limitation, which was defined to include both GSO and NGSO. So the two "activated frequency modes" here are either (1) GSO-only mode or (2) GSO+NGSO mode.

The third component of the claimed GSO satellite system – and the third limitation of Claim 7 – is a "transmitter." This "transmitter" changes its transmission characteristics based upon "the activated frequency spectrum mode." Ex. C. Accordingly, the input to the transmitter is one of the two "activated frequency spectrum modes" – either (1) the GSO-only mode, or (2) the GSO+NGSO mode. But this is not the output of the transmitter. Rather, Claim 7 dictates that the transmitter will transmit "in one of [1] the GSO frequency band and [2] in the NGSO frequency spectrum." Ex. C (emphasis and numbering added for clarity). The claimed GSO satellite therefore does not actually transmit in a combined GSO+NGSO mode. Instead, it picks "one of" the GSO frequency band and the NGSO frequency spectrum. The transmitter limitation in Claim 7 is thus

nonsensical and, accordingly, renders the claim indefinite. *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Moreover, the nonsensical nature of Claim 7 makes it impossible to determine the scope of the claim with any certainty. The claim describes a satellite that determines whether it should transmit in either a GSO mode or in a GSO+NGSO mode, but, after having made that choice, the satellite then transmits either in GSO-only or in NGSO-only. One of skill in the art could not understand with reasonable certainty what was intended by this claim, insofar as it requires the satellite to make a transmission determination that the satellite then explicitly does not follow.

The Court's construction of "a transmitter configured to transmit in one of the GSO frequency band and in the NGSO frequency spectrum" as "in one or more of the GSO frequency band and the NGSO frequency spectrum," Dkt. No. 209 at 8, does not resolve the indefiniteness of Claim 7. This construction requires three modes of transmission: (1) GSO frequency band; (2) NGSO frequency spectrum; or (3) GSO frequency band and NGSO frequency spectrum. Such construction remains indefinite (and/or lacks written description support) because it still requires that the satellite be capable of transmitting in an NGSO only mode, which the patent does not teach.

Moreover, the Court based its construction of Claim 7 on the Federal Circuit's now-defunct view that "a claim is indefinite 'only if reasonable efforts at claim construction prove futile,' and 'accord[s] respect to the statutory presumption of patent validity.'" Dkt. No. 209 at 8 (citing *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). The Supreme Court in *Nautilus*

specifically made clear that the "presumption of validity does not alter the degree of clarity that § 112, ¶ 2 demands from patent applicants; to the contrary, it incorporates that definiteness requirement by reference." *Nautilus*, 134 S. Ct. at 2130 n.10. Any attempt at a "saving" construction of the nonsensical language in Claim 7 is thus plainly inappropriate in light of the Supreme Court's decision in *Nautilus. Cf. Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[W]here as here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated."); *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 782 (Fed. Cir. 2010) (stating that courts are not to "redraft claims to contradict their plain language in order to avoid a nonsensical result"). The nonsensical nature of Claim 7 is inescapable and the Claim should be ruled indefinite as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, Defemdants respectfully request judgment as a matter of law that Claims 1, 3, 7, and 8 of the '043 Patent and Claim 7 of the '827 Patent are invalid as indefinite.

Dated: June 13, 2014          By:   */s/ Patrick C. Bageant*

Marc M. Seltzer
Amanda K. Bonn
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029

Telephone: (310) 789-3100
Fax: (310) 789-3150
Email: abonn@susmangodfrey.com

William Christopher Carmody
(Admitted *Pro Hac Vice*)
Jacob W. Buchdahl
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340

Joseph S. Grinstein
(Admitted *Pro Hac Vice*)
William R. H. Merrill
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  713-653-7856
Facsimile:   713-654-6666
Email: jgrinstein@susmangodfrey.com
Email: bmerrill@susmangodfrey.com

Ian B. Crosby
(Admitted *Pro Hac Vice*)
Rachel S. Black
(Admitted *Pro Hac Vice*)
Patrick C. Bageant
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3861
Fax: (206) 516-3883
Email: icrosby@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: pbageant@susmangodfrey.com

*Attorneys for Defendants/Counterclaim Plaintiffs*
*Space Systems/Loral, LLC (f/k/a Space*

1                                                       *Systems/Loral, Inc.) and Loral Space & Communications Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 13, 2014, I caused the foregoing **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED) (8 OF 12) REGARDING INDEFINITENESS** to be served on opposing counsel via the Court's CM/ECF system.


Dated: June 13, 2014          By:   */s/ Patrick C. Bageant*_____