1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   Sean S. Pak (Bar No. 219032)
3  seanpak@quinnemanuel.com
   50 California Street, 22nd Floor
   San Francisco, California  94111
4  Telephone:   (415) 875 6600

5  Yury Kapgan (Bar No. 218366)
   yurykapgan@quinnemanuel.com
6  Adam B. Wolfson (Bar No. 262125)
   adamwolfson@quinnemanuel.com
   865 S Figueroa Street 10th Floor
7  Los Angeles, California 90017
   Telephone:   (213) 443-3000

8  Attorneys for Plaintiff ViaSat, Inc.

9

10                UNITED STATES DISTRICT COURT

11               SOUTHERN DISTRICT OF CALIFORNIA

12

13  VIASAT, INC.,                          CASE NO. 3:12-cv-00260-H-WVG

              Plaintiff,                   **PLAINTIFF VIASAT, INC.'S**
14                                         **OPPOSITION TO DEFENDANTS'**
        vs.                                **MOTION FOR JUDGMENT AS A**
15                                         **MATTER OF LAW (RENEWED), OR**
    SPACE SYSTEMS/LORAL, INC.,             **A NEW TRIAL (7 OF 12),**
16  LORAL SPACE &                          **REGARDING THE PRIORITY DATE**
    COMMUNICATIONS,                        **AND INVALIDITY OF THE '875**
    INC.,                                  **PATENT**
17
              Defendants.                  **[REDACTED]**
18
                                           Date: August 11, 2014
19                                         Time: 9:00 a.m.
                                           Place: Courtroom 15A
20
                                           Hon. Marilyn L. Huff
21

22

23

24

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
(RENEWED). OR A NEW TRIAL (7 OF 12), REGARDING THE PRIORITY DATE OF THE '875 PATENT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION .................................................................................... 1

II.    FACTUAL & PROCEDURAL BACKGROUND ............................................ 2

III.   STANDARD OF REVIEW .................................................................... 4

IV.   ARGUMENT .......................................................................................... 5

     A.    Substantial Evidence Shows That The '875 Patent Is Entitled To The September 26, 2006 Priority Date Of Its Provisional Patent Application. ........................................................................................ 5

         1.    A Reasonable Jury Could Conclude That The '038 Provisional Provides Sufficient Written-Description Support For Claim 12. ............................................................... 7

             (a)    Figure 2B Discloses That A First Feeder Beam Is Proximate To A Differently Colored Service Beam. ............. 7

             (b)    Figure 2B Discloses That The First Feeder Beam Is Non-Proximate To Other, Same-Color Service Beams. ........ 8

             (c)    Figure 2B Discloses That A Second Feeder Beam Is Non-Proximate To All Service Beams And Uses All Colors. .............................................................................. 10

         2.    The Experts From Both Sides Agree That Embodiments Of Claim 12 Are Consistent With The '038 Provisional Application.............................................................................. 12

         3.    Dr. Bartone Did Not Engage In An Obviousness Analysis. ........... 14

     B.    Defendants Are Not Entitled To JMOL On The Basis That The 2007 PCT Application Was Not A Trial Exhibit. ............................................. 17

         1.    Defendants' Argument Is Waived.............................................. 17

         2.    Expert Testimony Shows That Every Application Leading To The '875 Contained The Priority-Establishing Disclosures............ 17

         3.    Defendants Failed To Raise Any Defect In The 2007 PCT Application At Trial And Are Therefore Estopped From Doing So Now. ....................................................................... 19

     C.    The Addition Of Material To The '315 CIP Application Cannot Establish A Lack Of Written-Description Support In The Earlier Applications. ...................................................................................... 20

D.   Substantial Evidence Shows That Defendants Failed To Prove That The ViaSat-1 PRR Anticipates Claim 12....................................................22

E.   Defendants Are Not Entitled To A New Trial...........................................24

V.   CONCLUSION .................................................................................................25

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (7 OF 12), REGARDING THE PRIORITY DATE OF THE '875 PATENT

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
  228 F.3d 1338 (Fed. Cir. 2000) ...................................................................... 19

*In re Alton*,
  76 F.3d 1168 (Fed Cir. 1996) .............................................................. 6, 9, 18

*Anascape, Ltd. v. Nintendo of America, Inc.*,
  601 F.3d 1333 (Fed. Cir. 2010) ...................................................................... 21

*Ariad Pharm., Inc. v. Eli Lily & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ........................................................... 5, 6, 8, 16

*Centocor Ortho Biotech, Inc. v. Abbot Labs*,
  636 F.3d 1341 (Fed. Cir. 2011) ................................................................. 13, 21

*Cordis Corp. v. Medtronic AVE, Inc.*,
  339 F.3d 1352 (Fed. Cir. 2003) ...................................................................... 10

*Crown Packing Tech. v. Ball Metal Beverage Container Corp.*,
  635 F.3d 1373 (Fed. Cir. 2011) ........................................................................6

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
  484 Fed. App'x 499 (Fed. Cir. 2012) ................................................................6

*Eisai Co. Ltd. v. Dr. Reddy's Labs., Ltd.*,
  533 F.3d 1353 (Fed. Cir. 2008) ...................................................................... 13

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
  370 F.3d 1131 (Fed. Cir. 2004) ...................................................................... 22

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  No. 00-20905, 2009 WL 230039 (N.D. Cal. Jan. 27, 2009) ........................ 19

*Johnson v. Paradise Valley Unified Sch. Dist.*,
  251 F.3d 1222 (9th Cir. 2001) ..........................................................................5

*Kolmes v. World Fibers Corp.*,
  107 F.3d 1534 (Fed. Cir. 1997) ...................................................................... 14

*Lifshitz v. Walter Drake & Sons, Inc.*,
  806 F.2d 1426, 1428 (9th Cir. 1986) .............................................................. 17

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005) ........................................................................6

-iii-

Case No. 3:12-cv-00260-H-WVG

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
(RENEWED). OR A NEW TRIAL (7 OF 12). REGARDING THE PRIORITY DATE OF THE '875 PATENT

*Lockwood v. American Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ................................................................ 15

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
    579 F.3d 1363 (Fed. Cir. 2009) ........................................................ 5, 9, 12

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
    723 F.3d 1336 (Fed. Cir. 2013) ........................................................ 13, 16

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55, 67-68 (1998) ........................................................................ 23

*In re Rusching*,
    379 F.2d 990 (C.C.P.A. 1967) .......................................................... 13, 14

*Scaltech Inc. v. Retec/Tetra, L.L.C.*, ,
    178 F.3d 1378 (Fed. Cir. 1999) ................................................................ 24

*In re Skvorecz*,
    580 F.3d 1262 (Fed. Cir. 2009) .......................................................... 1, 14

*Space Systems/Loral, Inc. v. Lockheed Martin Corp.*,
    271 F.3d 1076 (Fed. Cir. 2001) ................................................................ 22

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    655 F.3d 1364 (Fed. Cir. 2011) .................................................................. 5

*Symbol Technologies, Inc. v. Opticon*,
    935 F.2d 1569 (Fed. Cir. 1991) ........................................................ 18, 19

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013) .................................................................. 5

*Tec Air, Inc. v. Denso Mfg. of Michigan Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999) ................................................................ 23

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) ..................................................... 4, 18, 21

*Therma-Tru Corp. v. Peachtree Doors, Inc.*,
    44 F.3d 988 (Fed. Cir. 1995) ................................................................... 20

*Tortu v. Las Vegas Metro. Police Dept.*,
    556 F.3d 1075 (9th Cir. 2009) ................................................................. 25

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
    595 F.3d 1340 (Fed. Cir. 2010) ................................................................ 25

Case No. 3:12-cv-00260-H-WVG
VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
(RENEWED), OR A NEW TRIAL (7 OF 12), REGARDING THE PRIORITY DATE OF THE '875 PATENT

*Trans Video Electronics, Ltd. v. Sony Electronics., Inc.*,
   822 F. Supp. 2d 1020 (N.D. Cal. 2011) ........................................................ 15

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) .................................................................. 14

*TurboCare Div. v. Gen. Elec. Co.*,
   264 F.3d 1111 (Fed. Cir. 2001) .................................................................. 15

*Union Oil Co. of Cal. v. Atl. Richfield Co.*,
   208 F.3d 989 (Fed. Cir. 2000) ............................................................... 5, 15

*Vas-Cath Inc. v. Mahurkar*,
   935 F.2d 1555 (Fed. Cir. 1991) .................................................................. 11

*Waldemar Link v. Osteonics Corp.*,
   32 F.3d 556 (Fed. Cir. 1994) ............................................................... 20, 21

*Wallace v. City of San Diego*,
   479 F.3d 616 (9th Cir. 2007) ....................................................................... 5

*Wang Labs, Inc. v. Toshiba Corp.*,
   993 F.2d 858 (Fed. Cir. 1991) ..................................................................... 9

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) .................................................................. 17

## Statutes

35 U.S.C. § 111(b) ........................................................................................... 5

35 U.S.C. § 119(e)(1) ...................................................................................... 5

35 U.S.C. § 112 ................................................................................... 5, 22, 23

## Other Authorities

Fed. R. Evid. 705 ....................................................................................... 2, 18

Federal Circuit Bar Association Model Jury Instructions § 4.2a ...................... 14

1

# I.    <u>INTRODUCTION</u>

2      For the second time in this case, Defendants seek to deprive Claim 12 of the '875

3   Patent of its provisional patent-application filing date on the grounds that the earliest-

4   filed application does not provide written-description support for the claimed invention

5   *as a matter of law*.    Prior to trial, Defendants moved for summary judgment on the issue

6   of the '875 Patent's priority date, raising the same arguments presented in their current

7   Motion.   (Dkt. 306-1.)   The Court denied summary judgment, pointing out that the

8   written-description inquiry was factual in nature, and that the outcome turned on the

9   credibility of expert witnesses from both sides.   (Dkt. 433.)   Since then, the only thing

10  that has changed is that the jury, as finder of disputed matters of fact, has sided with

11  ViaSat in finding that the '875 Patent is not invalid, thus rendering Defendants' burden

12  even more formidable than the one they faced on their prior, failed motion.

13      First, the crux of Defendants' priority-date argument is that Dr. Bartone engaged

14  in an "obviousness" analysis because he allegedly "combined embodiments" from the

15  provisional application.   There is no basis in law or fact for this argument.   The Federal

16  Circuit has never suggested that written-description for a claimed invention must be

17  wholly self-contained in one discrete embodiment of a specification.   Rather, the Court

18  has instructed that in determining whether the inventors had "possession" of the claimed

19  invention, a person of skill in the art should naturally read the specification *as a whole*.

20  *E.g.*, *In re Skvorecz*, 580 F.3d 1262, 1269-70 (Fed. Cir. 2009).   In any event, Dr.

21  Bartone did not "combine embodiments," but rather explained that the teachings of the

22  provisional application, read together in context, comprise "a very thorough description

23  of the invention."   The jury was entitled to, and did, agree.

24

Second, Defendants are not entitled to JMOL simply because ViaSat did not enter into evidence an intervening patent application that was filed between its provisional patent application and the issuance of the '875 Patent.   ViaSat offered expert testimony from Dr. Chris Bartone that explicitly relied upon the entire "chain" of applications, as specifically permitted by the Federal Rules of Evidence.   *See* Fed. R. Evid. 705.   This was sufficient to shift the burden of producing evidence rebutting Dr. Bartone's testimony to Defendants.   If Defendants believed there was some defect in the intervening application, they were obligated to highlight that fact to the jury through cross-examination or by entering the application into evidence themselves.

Finally, Defendants' argument that they are entitled to a new trial because the Court gave a "prejudicially incomplete" instruction is a manufactured issue.   Instruction No. 37 closely tracks the AIPLA model, and Defendants twice stipulated to an instruction that was materially identical.   Further, the Federal Circuit has expressly rejected the argument that a priority-date instruction must, as a matter of law, include the same "obviousness-is-not-enough" caveat that Defendants seek to require here.   For all these reasons and those set forth below, Defendants' Motion should be denied.

## II.   FACTUAL & PROCEDURAL BACKGROUND

The '875 Patent, titled "Placement of Gateways Near Service Beams," relates to an invention for "utilizing subscriber terminal and gateway terminal positioning and frequency re-use."   (V-1291 at col. 2, ll. 3-6.)[1]   In general, a satellite communications system includes a network, interfaced with a "gateway" that is configured to communicate with one or more "subscriber terminals," via the satellite.   (V-1291 at col.

---

[1]   Citations to "Tr." refers to the trial transcript.   Citations to "V-__" and "S-__" refer to admitted trial exhibits.

3, ll. 60-64.)   In the "forward," or "downstream," direction, the satellite provides a connection between a feeder-beam uplink originating from a gateway, and one or more service-beam downlinks that provide service to subscriber terminals.   (*See* V-1291 at col. 6, ll. 38-67 & Fig. 12A.)   In the "return," or "upstream," direction, the satellite connects one or more service beam uplinks with the feeder beam downlink.   (V-1291 at col. 7, ll. 1-13 & Fig. 12B.)

At trial, expert witness Dr. Chris Bartone testified that prior-art satellite systems were designed to provide "ubiquitous" coverage to a desired region (for systems in the United States, "full-CONUS coverage").   (Tr. 1451:13-20.)   Although such systems provided the broadest possible coverage, they necessarily required that gateways be placed within the coverage area of the service beams.   (Tr. 1451:19-21.)   To avoid interference between co-located feeder and service beams, prior-art satellite designers were required to "take whatever frequency spectrum that [was] available, and . . . divide it up," between the two different types of beams.   (Tr. 1451:21-22.)   This division of the available spectrum "inherently limit[ed] the overall capacity of the system."   (Tr. 1451:23-24; *see also* V-1291 at col. 1, l. 42-44 ("[T]he design of [star network services using Ka band satellites] ***inherently limits the number of customers that may be adequately served***.") (emphasis added).)

The invention of the '875 Patent involves a satellite that foregoes service-beam coverage to selected regions, and thus allows gateways to be strategically placed in areas that are "spatially isolate[ed]" from the service beams.   (Tr. 1456:24-1457:4, 1458:22-1459:5.)   This spatial diversity "allows the gateways and the [service] beams to reuse all [of the available] frequency," which "drastically increase[s] the overall system capacity."   (Tr. 1457:3-6; *see also* V-1291 at Claim 12.)   Dr. Bartone also testified that, according

1  to the '875 Patent, "there may be certain areas with[in] the gateway regions where you

2  still want to provide some service."   (Tr. 1460:25-1461:2.)   In such cases, the color re-

3  use is "back[ed] off a little bit" to avoid interference.   (Tr. 1461:14-15; *see also* V-1291

4  at Claim 1.)   Upon learning of this invention in late 2006, Defendants viewed it to be "a

5  very radical design concept."   (V-472.)

6      At trial, the inventors of the '875 Patent provided further insight into the concepts

7  and benefits underlying the '875 Patent and demonstrated that the core ideas of spatial

8  separation and feeder-service beam frequency re-use were developed in the summer of

9  2006.   (Tr. 1347:5-1352:7 (Miller); 145:23-147:2, 162:2-164:17 (Dankberg); *see also*

10  V-517.)   Shortly thereafter, the six provisional patent applications to which the '875

11  Patent claims priority were filed with the PTO, the earliest of which was application

12  number 60/827,038 (the "'038 Provisional Application" ) (V-1115) filed on September

13  26, 2006.   The non-provisional application that ultimately led to the '875 Patent was

14  filed on March 25, 2009 as application number 12/411,315 (the "'315 CIP Application).

15                      **III.    <u>STANDARD OF REVIEW</u>**

16      A party challenging the validity of a duly issued patent bears the burden of

17  persuasion, by clear and convincing evidence, that purported prior art predates the

18  earliest date to which the patent claims priority.   *See Tech. Licensing Corp. v. Videotek,*

19  *Inc.*, 545 F.3d 1316, 1326-29 (Fed. Cir. 2008) ("[I]t is a long-standing rule of patent law

20  that, because an issued patent is by statute presumed valid, a challenger has the burden of

21  persuasion to show by clear and convincing evidence that the contrary is true.   ***That***

22  ***ultimate burden never shifts*** . . . .") (emphasis added).   Whether the issued patent is

23  entitled to the priority date of some earlier-filed application is a question of ***fact***,

24

1    determined from the perspective of a person skilled in the art.   *See Martek Biosciences*

2    *Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1369 (Fed. Cir. 2009).

3          Once a jury determines that an earlier-filed application—such as a provisional

4    patent application—is sufficient to establish priority, that determination is reviewed only

5    for substantial evidence.   *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1377-78

6    (Fed. Cir. 2013); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir.

7    2000) ("This court will not substitute its judgment for that of the fact finder.").

8    "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is

9    also possible to draw a contrary conclusion from the same evidence."   *Johnson v.*

10   *Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).   The Court is

11   required to view the evidence in the light most favorable to ViaSat and disregard all

12   evidence favorable to Defendants that the jury was not required to believe.   *See Wallace*

13   *v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007).

14                                      **IV.   ARGUMENT**

15   **A.    Substantial Evidence Shows That The '875 Patent Is Entitled To The
           September 26, 2006 Priority Date Of Its Provisional Patent Application.**

16

17          Defendants are not entitled to JMOL because a reasonable jury could conclude

     that the '038 Provisional Application adequately supports Claim 12 of the '875 Patent.

18   "Claims deserve the provisional application's earlier filing date so long as that

19   application contains adequate written description under 35 U.S.C § 112."   *Star*

20   *Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1371 (Fed. Cir. 2011); *see*

21   *also* 35 U.S.C. §§ 111(b), 119(e)(1).   The test is whether the earlier-filed application

22   "describe[s] an invention understandable to [a] skilled artisan and show[s] that the

23   inventor actually invented the invention claimed."   *Ariad Pharm., Inc. v. Eli Lily & Co.*,

24

598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*).   The inquiry will "necessarily vary depending on context," and should account for "the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue."   *Id.*[2]

No particular form of disclosure is required to satisfy the written-description requirement.   *Id.*   It is also "unnecessary to spell out every detail of the invention in the specification."   *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005); *In re Alton*, 76 F.3d 1168, 1175 (Fed Cir. 1996) (holding that written description can be satisfied even when "every nuance of the claims is not explicitly described in the specification").   Instead, the written-description requirement is met— and priority to an earlier-filed application is established—so long as the earlier-filed application "reasonably convey[s] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date . . . ."   *Crown Packing Tech. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1380 (Fed. Cir. 2011).

If the prior-art status of a reference turns on the priority date of a Patent, and the jury declines to find the Patent invalid, "the court must presume that the jury resolved the underlying factual disputes in favor of the verdict winner," including factual findings regarding how person of skill in the art would understand the disclosures of an earlier-filed specification.   *Cummins-Allison Corp. v. SBM Co., Ltd.*, 484 Fed. App'x 499, 507-08 (Fed. Cir. 2012) (*reversing* district court grant of JMOL contrary to jury verdict).

---

[2]   The contextual nature of the written-description analysis is particularly relevant in this case, where Defendants' expert Dr. Schindall opined that "ordinary" skill in this field would require at least a Master's degree in electrical engineering or an equivalent discipline plus industry experience in satellite architecture and communication payload design.   (Tr. 2164:22-2165:19.)

**1.    A Reasonable Jury Could Conclude That The '038 Provisional Provides Sufficient Written-Description Support For Claim 12.**

According to Defendants, an adequate written-description disclosure for Claim 12 would show: (1) A first feeder beam allocated different colors from a proximate service beam; (2) the first feeder beam further allocated at least one same color as non-proximate service beams; and (3) a second feeder that is non-proximate to all service beams and which is allocated all of the colors of the beam pattern.   (*See* Mot. at 8.)   A reasonable jury could, and did, find that a person of skill in the art would understand all three features to be ***expressly*** disclosed by the '038 Provisional Application as a whole.

(a)    Figure 2B Discloses That A First Feeder Beam Is Proximate To A Differently Colored Service Beam.

Figure 2B of the '038 Provisional Application depicts an "example[] of a multibeam system 200 configured according to various embodiments of the invention . . . ."   (V-1115 ¶ 24.)   The larger coverage circles, labeled 225, represent feeder beam coverage areas, and the smaller coverage circles, labeled 205, represent service beam coverage areas.   (*Id.*)   Both the feeder and service beam coverage areas are created by "isolating antenna directivity to certain regions of [the] country," which permits the "reuse[] of frequency bands."   (*Id.*)   The specification teaches that in Figure 2B, "the gateway terminals 210 may be located in a region covered by a service spotbeam (e.g., the first, second and fourth gateways 210-1, 210-2, 210-4)."   (*Id.* ¶ 25; *see also* Tr. 1464:6-10.)   Defendants do not seriously dispute that Figure 2B and its accompanying description disclose a first feeder beam proximate to a service beam.

The description accompanying Figure 2B also teaches that feeder beams must use different colors from the service beams to which they are proximate.   Paragraph 24 contrasts Figure 2A, which shows "complete geographic exclusivity between the feeder

and service spot beams," and Figure 2B, which shows "instances of service beam overlap."   (V-1115 ¶ 24.)   "[W]ith overlap," the specification teaches, "there are certain interference issues which may inhibit frequency band re-use in the overlapping regions." (*Id.*; *see also id.* ¶ 20 ("Two frequencies and two polarizations allow four separate downstream uplinks . . . .").)

Dr. Bartone explained to the jury that these and other disclosures indicate to a person of skill in the art that "when you have these partially overlapping or proximate beams, you may have certain interference issues, and [the specification] teaches you to use what's called a four-color system so that you can get around those issues of interference . . . ."   (Tr. 1464:11-17, 2682:8-12; *see also* V-1115 ¶ 24 ("A four color pattern allows avoiding interference even where there is some overlap . . . .").).)   Even Defendants' own expert, Dr. Schindall, testified that a person of skill in the art would understand that the same type of interference that occurs when two service beams are proximate also occurs when a feeder beam and a service beam are proximate, and that different colors are required to avoid such interference.   (Tr. 2218:25-2219:10.); *see Ariad,* 598 F.3d at 1351 (noting that in evaluating the adequacy of disclosure the Court must account for "existing knowledge in the particular field").   As such, a reasonable jury could find that the '038 Provisional conveys to a person of skill in the art the concept of proximity between a feeder beam and a differently colored service beam.

          (b)     Figure 2B Discloses That The First Feeder Beam Is Non-Proximate To Other, Same-Color Service Beams.

Substantial evidence also shows that the '038 Provisional Application discloses the first, proximate feeder of Figure 2B reusing at least one same color as other, non-proximate service beams.   Paragraph 25 draws a contrast between the three feeder

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED). OR A NEW TRIAL (7 OF 12). REGARDING THE PRIORITY DATE OF THE '875 PATENT

1   beams that are proximate to a service beam (*i.e.*, feeder beams 225-1, 225-2, and 225-4)

2   and the one feeder that is not proximate to any service beams (*i.e.* feeder beam 225-3).

3   (V-1115 ¶ 25 ("However, a gateway may also be located outside of a region covered by

4   a service spotbeam.").)   As taught by the specification, "[b]y locating gateway [210-3]

5   outside of the spotbeam regions . . . , spatial diversity is achieved to allow for ***greater*** re-

6   use of the allocated frequencies."   (*Id.* (emphasis added).)

7        Dr. Bartone testified that a person of skill in the art would understand the "greater

8   re-use" language to mean that "when you have partially overlapping [feeder beam and

9   service beams], that you have a certain degree of frequency reuse, and then when you

10   isolate those gateways, you have greater frequency reuse."   (Tr. 2682:13-18.)   Put

11   differently, because the spatially isolated feeder beam (*i.e.*, 225-3 in Figure 2B) achieves

12   "greater re-use of the allocated frequencies" than is achieved in the case where the feeder

13   beam is proximate to one or more service beams, there must be some, lesser degree of

14   frequency re-use in the proximate cases.   Dr. Bartone's expert testimony is exactly the

15   type of evidence, regarding how a person of skill in the art would interpret the

16   specification, that the Federal Circuit has found highly relevant to the written-description

17   analysis.   *In re Alton*, 76 F.3d at 1175-76; *Wang Labs, Inc. v. Toshiba Corp.*, 993 F.2d

18   858, 866 (Fed. Cir. 1991).   Indeed, where an expert "relie[s] on specific statements [in

19   an earlier-filed application] and explain[s] how, in his opinion, a person of ordinary skill

20   in the art would understand those statements," that evidence alone is sufficient for a

21   reasonable jury to find that a patent claim is entitled to the priority date of the earlier-filed

22   application.   *Martek*, 579 F.3d at 1371.

23        Although Dr. Bartone's testimony is enough to satisfy the substantial-evidence

24   standard on this fact-intensive question, ViaSat also demonstrated that Defendants' own

1   expert, Dr. Schindall *agreed* with Dr. Bartone's analysis when he was confronted with

2   the "greater" re-use language for the first time at his deposition:

> Q.      "Greater reuse" means that there is actually reuse of the frequencies
> allocated going on even when you have gateway beams that are
> overlapping with service beams, correct?
> A.      *Correct.*

5   (Tr. 2324:10-2325:6 (emphasis added); *see also* Tr. 2322:10-2323:10, 2323:12-2324:8.)

6   For all of these reasons, the jury could reasonably find that the '038 Provisional

7   Application sufficiently disclosed to a person of skill in the art the concept of the first

8   feeder beam re-using colors with other, non-proximate service beams.

9                     (c)      Figure 2B Discloses That A Second Feeder Beam Is Non-Proximate
10                             To All Service Beams And Uses All Colors.

11          Finally, the record contains sufficient evidence for the jury to conclude that the

12   '038 Provisional Application, as understood by a person of skill in the art, disclosed a

13   second, isolated feeder beam that uses all the colors of the beam pattern.   As described

14   above, Figure 2B and its accompanying description teach a "four color pattern" for

15   "avoiding interference" wherein "spatial diversity" between feeder beams and service

16   spot beams allows for "greater re-use of the allocated frequencies."   (V-1115 ¶¶ 24, 25.)

17   A feeder beam that is isolated from all service beams and which is allocated "all of the

18   colors of the beam pattern," is simply one example of the "greater re-use" specifically

19   described in paragraph 25.   The written-description requirement can be satisfied by a

20   description of the invention in such broad terms, even though all conceivable and

21   possible future embodiments are not specifically spelled out.   *Cordis Corp. v. Medtronic*

22   *AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003).   As such, the "greater re-use" language

23   of paragraph 25 adequately conveys to a person of skill in the art that ViaSat possessed

24   the additional limitation of Claim 12.

1    In addition, the '038 Provisional Application discloses an isolated feeder beam

2    that is allocated "all of the colors of the beam pattern."   Figure 12A discloses "a forward

3    link distribution system," comprising four "downstream uplinks," each using one of four

4    combinations of frequency band and polarization.   (V-1115 ¶ 20.)   Figure 12B discloses

5    the "return link distribution system," comprising four "upstream uplinks" that use the

6    same four combinations of frequency band and polarization.   (*Id.* ¶ 23.)   Because

7    Figure 12A allocates the same four colors to the feeder beam as Figure 12B allocates to

8    the four service beams, Figure 12A depicts a feeder beam that is "allocated all of the

9    colors of the beam pattern."

10    Dr. Bartone relied on Figures 12A and 12B, testifying that these disclosures

11   instruct a person of skill in the art "how you can attain maximum reuse when you have a

12   spatially isolated gateway."   (Tr. 1463:7-11.)   Dr. Bartone also testified that the

13   techniques described by Figures 12A and 12B were applicable to the spatially isolated

14   feeder beam of Figure 2B, opining that "[gateway 210-3] would have available to use all

15   of the frequency which is taught in these Figures 12(a) and 12(b), along with the

16   associated text."   (Tr. 1463:19-1464:5.)[3]   Where, as here, an expert cites specific

17   portions of an earlier-filed specification, and opines on how they would be interpreted by

18   _____

          [3]   Defendants' argue that express written references to "frequency re-use" and

19   "maximum re-use" do not accompany Figures 12A and 12B in the '038 Provisional
     Application.   (Mot. at 15-17.)   But, Figures 12A and 12B themselves unquestionably

20   show that the feeder beam uplink uses exactly the same four frequency band and
     polarization combinations (*i.e.* "1UL," "1UR," "2UL," and "2UR") for the four service

21   beam uplinks.   (*Compare* V-1115 Fig. 12A, *with* Fig. 12B; *see also* V-1115 ¶ 20.)   Dr.
     Schindall admitted as much at trial.   (Tr. 2319:4-25.)   Because "drawings alone may

22   provide a 'written description' of an invention as required by § 112," *Vas-Cath Inc. v.*
     *Mahurkar*, 935 F.2d 1555, 1565 (Fed. Cir. 1991), Defendants cannot seriously dispute

23   that Figure 12 itself provides written-description support for an isolated feeder beam that

24   is allocated "all of the colors of the beam pattern."

1    a person of skill in the art, "***in light of the entire application***," the Federal Circuit has

2    affirmed denial of a motion for JMOL.   *Martek*, 579 F.3d at 1370 (emphasis added).

3    For all of these reasons, JMOL must be denied.

4        **2.      The Experts From Both Sides Agree That Embodiments Of Claim 12
                 Are Consistent With The '038 Provisional Application.**

5

6        To more clearly illustrate how a person of skill in the art would interpret the

     disclosures of the '038 Provisional Application, ViaSat introduced evidence regarding a

7    colored embodiment of Figure 2B, as shown below:

8

9

10                            

11

12

13

14

15

16   (V-1630.)   In the diagram above, there are "instances of service beam overlap," between

17   "the feeder and service spot beams," as taught by Paragraph 24 of the '038 Provisional

18   Application.   (V-1115 ¶ 24 & Fig. 2B.)   Additionally, "[a] four color pattern" is used to

19   "avoid[] interference even where there is some overlap . . . ."   (V-1115 ¶ 24.)   For

20   example, the colors allocated to gateway 210-2 for feeder beam 225-2 (green, red, and

21   blue) are different from the color allocated to proximate service beam 205-v (yellow).

22   At the same time, there is also a gateway located "outside of the spotbeam regions (e.g.,

23   the third gateway 210-3) . . . ."   (V-1115 ¶ 25.)   As compared to gateway 210-2, which

24   is allocated 3 of the 4 colors, gateway 210-3 achieves "spatial diversity," which allows

1    for the use of all 4 colors (*i.e.* "greater re-use of the allocated frequencies") as specifically

2    taught by Figure 12A.   (V-1115 ¶¶ 25, 20 & Fig. 12A.)   Importantly, ***both*** Dr. Bartone

3    and Dr. Schindall testified at trial that this colored embodiment not only practices Claim

4    12 of the '875 Patent, but that it is ***consistent*** with the teachings of the '038 Provisional

5    Application.   (2683:11-2684:14 (Bartone), Tr. 2325:7-2326:10 (Schindall).)[4]   This

6    corroborating testimony from both experts is sufficient for a reasonable jury to find that

7    the '038 Provisional Application reasonably conveys to a skilled artisan that ViaSat

8    possessed Claim 12 as of September 26, 2006.

9          Defendants cite *In re Rusching*, 379 F.2d 990, 995 (C.C.P.A. 1967), for the

10   proposition that an embodiment's consistency with the specification of an earlier-filed

11   application is insufficient to establish written-description support.   Respectfully, that is

12   not what *Rusching* held.   In *Rusching*, the Court found only that a specific, claimed

13   chemical compound was not supported by a specification encompassing a potential class

14   of at least 48 (and possibly over 1,000) different compounds.   *Id.* at 994.[5]   *Rusching*

15   actually noted that "naming [of the claimed compound] [was] not essential," and that

16   claims drawn to a single chemical compound required only "reasonably specific

17   supporting disclosure."   *Id.*   The Court acknowledged that even a broad disclosure, with

---

18   [4]   Relying on material outside the record, Defendants argue that Dr. Bartone
19   inconsistently applied his interpretation of Claim 1 for purposes of his validity and
     written-description analysis.   (Mot. 19.)   But, the colored embodiment depicted in V-
20   1630—which both experts testified is consistent with the '038 Provisional Application—
     is fully consistent with Dr. Bartone's interpretation of Claim 1.
21   [5]   It is telling that many of Defendants' cases (*e.g.*, *Novozymes*, *Ruschig*, *Centocor*)
22   involve the highly unpredictable chemical arts, where broad disclosures can encompass
     thousands of embodiments and which the Federal Circuit has characterized as "highly
23   unpredictable."   *E.g.*, *Eisai Co. Ltd. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1359
     (Fed. Cir. 2008) ("To the extent an art is unpredictable, as the chemical arts often are . . .
24   potential solutions are less likely to be genuinely predictable.").

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
(RENEWED), OR A NEW TRIAL (7 OF 12), REGARDING THE PRIORITY DATE OF THE '875 PATENT

1   sufficient "blaze marks" pointing through the "forest of the specification" to the claimed

2   invention, can provide written-description support.   *Id.* at 995.

3          *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998), is also distinguishable.   In

4   *Tronzo*, the Federal Circuit rejected the patentee's argument that a broad claim, seeking

5   to cover a cup of generic shape, was supported by a narrow disclosure that "ma[d]e clear

6   that the [earlier-filed application] discloses *only* conical shaped cups and nothing

7   broader."   *Id.* at 1159 (emphasis in original).   Defendants' argument here—that the

8   '038 Provisional Application is more general than Claim 12—is actually the exact

9   opposite of the issue presented in *Tronzo*.

10         **3.       Dr. Bartone Did Not Engage In An Obviousness Analysis.**

11         Defendants wrongly suggest that Dr. Bartone's analysis was somehow flawed,

12  because he interpreted the "greater re-use" teachings of Figure 2B of the '038 Provisional

13  Application in the context of the "full re-use" teachings of Figures 12A and 12B.   (Mot.

14  at 13-14.)   According to Defendants, Dr. Bartone conducted an "obviousness" analysis

15  because he "combin[ed] distinct embodiments" from the '038 Provisional Application.

16  (*Id.*)   But, the mere fact that an expert cites the teachings of more than one embodiment

17  of a single specification does not mean that the expert impermissibly engaged in an

18  obviousness analysis.   In fact, according to the guidance of the Federal Circuit, "the

19  specification as a whole ***must*** be considered" in conducting the written-description

20  analysis.   *In re Skvorecz*, 580 F.3d at 1269-70   (quotation and citation omitted)

21  (emphasis added); *Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1539 (Fed. Cir. 1997);

22  *see also* Federal Circuit Bar Association Model Jury Instructions § 4.2a ("The written

23  description requirement may be satisfied by ***any combination*** of the words, structures,

24  figures, diagrams, formulas, etc., contained in the patent application.") (emphasis added).

For example, in *Union Oil*, the Federal Circuit considered a patent that "claim[ed] its inventive products in terms of ranges of chemical properties, which work in combination with ranges of other chemical properties to produce a gasoline that reduces emissions."   208 F.3d at 997.   Although the specification did not provide the "exact chemical component of each combination" necessary to achieve the claimed result, the Federal Circuit held that the patent challenger was not entitled to JMOL of invalidity. *Id.*   According to the Federal Circuit, based on the overall teachings of the specification, "[t]he patent unmistakably inform[ed] skilled refiners to increase or decrease the various components to arrive at preferred combinations."   *Id.* at 999.

*Lockwood v. American Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997), and *TurboCare Div. v. Gen. Elec. Co.*, 264 F.3d 1111 (Fed. Cir. 2001)—both cases involving summary judgment and *not* a motion for JMOL contrary to a jury verdict—do not hold to the contrary.   In both of these cases, the Court merely held that obvious, but ***undisclosed*** subject-matter cannot provide written-description support.   Thus, in *Lockwood*, where a claim required "a computer system connected to multiple vendors," an expert declaration that the computer system disclosed in the specification ***could*** be connected to multiple vendors was not sufficient.   107 F.3d at 1572.   Similarly, in *TurboCare*, the Federal Circuit upheld a finding that a claim, requiring a specific placement for a spring, was invalid for lack of written description despite expert testimony that the placement in question was the "only viable location for mounting a spring."   264 F.3d at 1119.[6]   Neither *Lockwood* nor *TurboCare* suggest that support for

---

[6]   *Trans Video Electronics, Ltd. v. Sony Electronics., Inc.*, 822 F. Supp. 2d 1020, 1027-28 (N.D. Cal. 2011) is also distinguishable, holding merely that the claims at issue lacked support where the patentee argued that a skilled artisan could "synthesize elements from different embodiments to come up with the claimed invention."

1  an invention must be entirely self-contained in a single, discrete embodiment of the an

2  earlier-filed application.   At most, these cases merely stand for the proposition that

3  written-description may not be premised on expert testimony alone, devoid of any

4  support in the specification.

5       Additionally, Defendants' heavy reliance on *Novozymes A/S v. DuPont Nutrition*

6  *Biosciences APS*, 723 F.3d 1336 (Fed. Cir. 2013), is equally unavailing.   In *Novozymes*,

7  the Federal Circuit held that claims to certain, specific enzyme variants were invalid for

8  lack of written description because the specification described only the possibility of

9  creating variants based on 40 possible enzyme mutations, that could occur at any one of

10  33 different "promising" locations, on 7 parent enzymes.   *Id.* at 1330-41.   Citing the

11  "potentially wide range of [possible outcomes]" that could be produced, the Court held

12  that the specification provided "only generalized guidance listing several variables that

13  might, in some combination, lead to a useful result."   *Id.* at 1340, 1346.   *Novozymes*

14  bears little resemblance to the situation here.   Dr. Bartone did not rely on a broad

15  disclosure to provide only generalized guidance as to how to arrange multiple variables

16  to arrive at potentially thousands of disparate embodiments.   Instead, Dr. Bartone simply

17  made the unremarkable observation that one example of a spatially diverse feeder beam

18  employing "greater re-use" would involve the feeder beam employing "full re-use," as

19  *expressly* taught in Figures 12A and 12B.   (*See* Tr. 1463:19-1464:5.)   Even Dr.

20  Schindall testified that in the case of an isolated feeder beam, a person of skill in the art

21  would "want to use as many colors as possible," (Tr. 2219:15-25), which demonstrates

22  that even he views this field as distinguishable from the highly unpredictable chemical

23  art at issue in *Novozymes*.   *See Ariad*, 598 F.3d at 1351 (noting that the written-

24  description inquiry varies based on the relevant art).   A reasonable jury could conclude

1  that the '038 Provisional Application reasonably conveys to a person of skill in the art

2  that the inventors possessed Claim 12.

3  **B.     Defendants Are Not Entitled To JMOL On The Basis That The 2007 PCT Application Was Not A Trial Exhibit.**

4  Defendants argue they are entitled to JMOL because ViaSat did not enter into

5  evidence intervening patent application PCT/US2007/079567 (the "2007 PCT

6  Application).   This argument fails, for multiple reasons.

7  **1.     Defendants' Argument Is Waived.**

8  As an initial matter, Defendants failed to identify the 2007 PCT Application as a

9  basis for JMOL in their pre-verdict Rule 50(a) Motion.   The entire argument is therefore

10  waived.   *See Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308,

11  1316-17 (Fed. Cir. 2010).   Had Defendants timely moved on this issue, ViaSat could

12  have simply introduced the relevant exhibit.   Indeed, a primary purpose of a Rule 50(a)

13  motion is "to call the claimed deficiency in the evidence to the attention of the court and

14  to opposing counsel at a time when the opposing party is still in a position to correct the

15  deficit."   *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1428 (9th Cir. 1986).

16
17  **2.     Expert Testimony Shows That Every Application Leading To The '875 Contained The Priority-Establishing Disclosures.**

18  Contrary to the representations in Defendants' Motion (Mot. at 6), ViaSat offered

19  expert testimony from Dr. Bartone that ***all*** of the Applications leading to the '875 Patent

20  contained the key, priority-supporting disclosures.   Dr. Bartone testified that he

21  examined "the whole history of the patent from when it was first submitted to the U.S.

22  Patent Office," beginning with the '038 Provisional Application.   (Tr. 1462:20-25.)   His

23  opinions were based on the entire "prosecution history" (Tr. 1465:1-5), including all

24  relevant documents filed with the PTO from September 26, 2006 until "the Patent was

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
(RENEWED). OR A NEW TRIAL (7 OF 12). REGARDING THE PRIORITY DATE OF THE '875 PATENT

1  awarded on January 31st, 2012" (Tr. 1583:5-11).   In fact, in rebuttal to Dr. Schindall's

2  opinion that "the chain was broken from the provisional out to the '875 Patent," Dr.

3  Bartone testified that "[the chain] was never broken . . . there's a series of other

4  provisionals and applications and so on, but that eventually led to the '875 patent, so the

5  chain was never broken."   (Tr. 2684:24-2685:4.)

6         In light of this testimony, there is no doubt that ViaSat met its "burden of

7  production," by providing expert testimony that every application in the chain leading the

8  '875 Patent contained the priority-establishing disclosures.   Because the written-

9  description inquiry focuses on how the underlying applications are understood by a

10  person of skill in the art, such expert testimony was the most probative evidence for the

11  finder of fact to consider.   *See In re Alton*, 76 F.3d at 1175-76.   Indeed, in this case, the

12  jury could not be expected to have the technical qualifications necessary to

13  independently interpret the highly technical 2007 PCT Application.   Thus, once Dr.

14  Bartone rendered his opinions, the burden of producing evidence that the 2007 PCT

15  Application was deficient shifted back to Defendants.   *See Videotek*, 545 F.3d at 1328

16  ("Assuming then that [the patentee's] evidence and argument in support of the earlier

17  filing date is now before the court, the burden of going forward again shifts to the

18  proponent of the invalidity defense . . . .").   The "risk of decisional uncertainty" on the

19  issue *always* remained with Defendants.   *Id.* at 1327.

20         Dr. Bartone's testimony is not "insubstantial" simply because ViaSat did not

21  introduce into evidence every single document on which he relied.   *See* Fed. R. Evid.

22  705 ("[A]n expert may state an opinion—and give the reasons for it—without first

23  testifying to the underlying facts or data.").   As the Federal Circuit explained in *Symbol*

24  *Technologies, Inc. v. Opticon*, 935 F.2d 1569, 1576 (Fed. Cir. 1991), Rule 705 serves an

-18-

1   important function of "abbreviat[ing] trials by permitting opinion testimony without

2   factual foundation," which is particularly important in patent trials which often involve

3   "lengthy testimony on complex technical issues."   *Id.* at 1576.   Thus, if Defendants

4   wished to challenge the factual basis for Dr. Bartone's opinions, they were obligated to

5   do so at trial—not in a post-trial motion.   *Id.* at 1575 ("The responsibility for challenging

6   the factual underpinnings of [expert] testimony fell squarely on [the defendant] during

7   cross-examination."); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-20905,

8   2009 WL 230039, at *17-19 (N.D. Cal. Jan. 27, 2009) (even conclusory expert testimony

9   that claims had written description support can suffice).

### 3.   Defendants Failed To Raise Any Defect In The 2007 PCT Application At Trial And Are Therefore Estopped From Doing So Now.

11          Additionally, the Federal Circuit does not reward the type of post-trial "gotcha"

12   argument advanced by Defendants here.   The 2007 PCT Application is a public

13   document, whose existence is not disputed, and Defendants were free to enter it into

14   evidence themselves if they wished to highlight some particular defect in its priority-

15   establishing disclosures.   *See Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228

16   F.3d 1338, 1343 (Fed. Cir. 2000).   In *Ajinomoto*, a defendant attempted to challenge the

17   standing of the patentee, arguing that the record lacked evidence of patent ownership

18   because the patentee did not enter a recorded assignment into evidence at trial.   *Id.*   The

19   Federal Circuit disagreed, holding that the defendant was "estopped to object that the

20   recorded assignment was not entered into evidence," because the disputed document was

21   "a public record of the [USPTO], . . . [and] its existence [was] not disputed."   *Id.*   The

22   2007 PCT Application is no different from the recorded assignment in *Ajinomoto*;

23   Defendants are estopped from arguing that it somehow breaks the chain of priority.

C.     **The Addition Of Material To The '315 CIP Application Cannot Establish A Lack Of Written-Description Support In The Earlier Applications.**

In Section II.A.3.c of their Motion, Defendants argue that "new matter" was added to the '315 CIP Application.   But, a continuation-in-part application's entitlement to a priority date turns entirely on whether a claim is adequately supported in the earlier-filed disclosure, ***not*** on whether it bears a resemblance to later-added material.   Indeed, the mere filing of a continuation-in-part application is not a concession that the invention was not originally disclosed.   *See Waldemar Link v. Osteonics Corp.*, 32 F.3d 556, 559 (Fed. Cir. 1994) (filing of continuation-in-part application did not estopp patentee from claiming earlier priority date).   Where a jury finds that a claim is entitled to the priority date of an earlier application, an infringer is not entitled to JMOL simply because a claim limitation resembles material added to the continuation-in-part application.   *See Therma-Tru Corp. v. Peachtree Doors, Inc.*, 44 F.3d 988, 992-93 (Fed. Cir. 1995).

Defendants' assertion that ViaSat "directly quoted from the [newly added] . . . 'set of colors' language" in order to "overcome a rejection" and "thereby "invoke[ed] the definition it assigned to the claims," is not well taken.   (Mot at 20.)   First, the "set of colors" language cited by Defendants was present in the claims ***as originally filed***, meaning that ViaSat could not have possibly "directly quoted" from newly added material for the purpose of overcoming a rejection.   Second, the notion of assigning a "set of colors" to an individual beam is fully supported by the '038 Provisional Application at Paragraph 20 and Figure 12A.   (*See* V-1115.)

Defendants also ascribe undue significance to ViaSat's citation of Figure 16 during prosecution.   The fact that an applicant cites to a newly added figure is not dispositive and often is not even particularly relevant to the question of whether a person

1   of skill in the art would recognize that *other* disclosures establish possession of the

2   claimed invention as of the original filing date.[7]   Indeed, an applicant may properly add

3   material to a continuation-in-part application without defeating priority to an earlier-filed

4   disclosure to help respond to rejections that may arise during prosecution.   *See*

5   *Waldemar*, 32 F.3d at 559 ("[The applicant] had good reason to believe filing a CIP

6   would enable it to further respond to the section 102 and 103 rejections.").

7     The other cases cited by Defendants are distinguishable.   In *Anascape, Ltd. v.*

8   *Nintendo of America, Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010), the Federal Circuit

9   found it significant that the patentee's original disclosure specifically noted significant

10   "disadvantages" to an embodiment claimed in a later-filed application.   *Id.* at 1337.

11   Here, there is no such similar allegation that the '038 Provisional Application was

12   inconsistent with, or taught away, from Claim 12.   In *Centocor Ortho Biotech, Inc. v.*

13   *Abbot Labs*, 636 F.3d 1341 (Fed. Cir. 2011)—a case in which the patentee failed to even

14   offer expert testimony regarding the written description of the earlier-filed application—

15   the Federal Circuit noted that the few passages identified by the inventor did not "relate

16   to the specific critical limitations in the asserted claims," but instead only happened to

17   mention a "wish or plan" for obtaining the invention as eventually claimed.   *Id.* at 1351-

18   52.   Here, Defendants do not seriously dispute that the '038 Provisional Application

19   discloses each and every limitation of Claim 12; instead, their argument boils down to

---

20
21     [7]   Unlike the patentee in *Videotek*, 545 F.3d at 1333, ViaSat did not draw the patent
    examiner's attention to any specific portion of Figure 16 that can be shown to be missing
22   from the '038 Provisional Application.   In fact, in ultimately allowing the application,
    the examiner said absolutely nothing about ViaSat's reference to Figure 16 on page 9 of
23   its Reply to Interview Summary.   Instead, the examiner noted that he relied on the "the
    applicant's remarks stated on ***pages 10-11***" of ViaSat's Reply to Interview Summary.
24   (S-734 at VST00001288 (emphasis added).)

1   the unsupportable assertion that Dr. Bartone was required to analyze the specification as

2   a series of individual, unrelated embodiments rather than as a whole.

3   **D.    Substantial Evidence Shows That Defendants Failed To Prove That The ViaSat-1 PRR Anticipates Claim 12.**

4           Even if Defendants could somehow establish that the '038 Provisional

5   Application fails to provide adequate written-description support (which they cannot),

6   they are still not entitled to JMOL.   The *only* invalidity theory advanced by Defendants

7   that even arguably turns on the priority date of the '875 Patent is that the February 2008

8   ViaSat-1 Program Readiness Review ("ViaSat PRR") invalidates the claim under the

9   Section 102(b) "on-sale bar."   (Mot. at 3-5)   Defendants, however, failed to establish by

10  clear and convincing evidence that the concept disclosed in the ViaSat PRR (1) was

11  "ready for patenting"; or (2) anticipated each and every element of Claim 12.

12          First, Defendants failed to offer even a shred of evidence that the particular set of

13  materials found within the four corners of the ViaSat PRR was "ready for patenting"

14  prior to the March 25, 2008 critical date (*i.e.*, one-year prior to the '315 CIP Application).

15  An invention is not "ready for patenting" until it can be described in a patent application

16  that complies with 35 U.S.C. Section 112.   *See Space Systems/Loral, Inc. v. Lockheed*

17  *Martin Corp.*, 271 F.3d 1076, 1080 (Fed. Cir. 2001).   Thus, a defendant cannot

18  establish, as a matter of law, that an invention is "ready for patenting" simply by pointing

19  to drawings that are similar to an eventually issued patent.   *Honeywell Int'l Inc. v.*

20  *Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004).   In this case, ViaSat

21  proved that the invention of Claim 12 was ready for patenting and was constructively

22  reduced to practice in September 2006, when the inventors filed the '038 Provisional

23  Application fully disclosing the invention.   To the extent Defendants urge a hyper-

technical analysis of the Section 112 requirements, however, it should not go unnoticed that Dr. Schindall offered *zero* testimony that the drawings and descriptions in the ViaSat PRR would "enable one skilled in the art to practice the invention."   *See Pfaff v. Wells Elecs., Inc*., 525 U.S. 55, 67-68 (1998) (for invention to be "ready for patenting" for purposes of the on-sale bar, the defendant must prove, prior to the critical date, either "reduction to practice" or "that the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person of skilled in the art to practice the invention").  Lacking any such record evidence, much less undisputed clear and convincing evidence, Defendants are not entitled to JMOL even if they could somehow defeat entitlement to the earlier priority date.

Second, based on Defendants' arguments underlying their Motion, Defendants failed to establish as a matter of law that the ViaSat-1 PRR anticipates each and every element of Claim 12 by clear and convincing evidence.[8]   In attempting to show a feeder beam that is both proximate to a differently colored service beam and non-proximate to same-colored service beams, Dr. Schindall simply ██████████████████ ████████████████████████████████████████████████ █████████████████████████████████████ (Tr. 2230:6-21; S-1193 at SSL0085524.) ████████████████████████████████████████

---

[8]   Defendants were required to show, as a matter of law, that ViaSat-1, *as described in the ViaSat PRR*, anticipates Claim 12.  *See Tec Air, Inc. v. Denso Mfg. of Michigan Inc.*, 192 F.3d 1353, 1358 (Fed. Cir. 1999) (offer for sale did not specify that it would use the patented technique, but eventually shipped product did use the patented technique; jury could find on sale bar did not apply).   Thus, Dr. Bartone's testimony that documents prepared *after* the Section 102(b) critical date prove that ViaSat-1 practices Claim 12 (Tr. 1475:17-24) provides no support for Defendants' invalidity argument.



See Scaltech Inc. v. Retec/Tetra, L.L.C., 178 F.3d 1378, 1383 (Fed. Cir. 1999) ("[T]he first determination in the § 102(b) analysis must be whether the subject of the barring activity met each of the limitations of the claim" either expressly or inherently; "[t]he mere fact that a certain thing may result from a given set of circumstances is not sufficient to establish inherency."). Simply put, given the similarity in detail disclosed by the ViaSat PRR and the '038 Provisional Application, a reasonable jury could conclude that the adequacy of each vis-à-vis Claim 12 must rise or fall together. Either way, Defendants lose.

**E.    Defendants Are Not Entitled To A New Trial.**

Defendants are not entitled to a new trial on the grounds that Jury Instruction No. 37, which closely tracks the AIPLA model instruction, was "prejudicially incomplete in its discussion of the written description requirement." (Mot. at 23.)[9] According to Defendants, this Court abused its discretion, because Instruction No. 37 posed a "risk of permitting a jury to find the written description . . . was satisfied if undisclosed subject matter merely would have been obvious." (Bonn Ex. J at 2.) As an initial matter,

---

[9]    Defendants twice ***stipulated*** to a priority-date instruction that was materially identical to Instruction #37. (*See* Dkt. 865 at 69-70; Dkt. 892 at 70-71.)

1   Defendants' "clarification" was unnecessary because, for the reasons described above,

2   Dr. Bartone did not conduct an obviousness analysis.   Nevertheless, the Federal Circuit

3   has held that a new trial is not warranted simply because a priority-date jury instruction

4   omits the very same "clarification" sought by Defendants here.   In *Trading Techs. Int'l,*

5   *Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010), the Appellant argued that the trial

6   court's instruction was prejudicial because it permitted opposing counsel to argue that the

7   written-description requirement was satisfied by "'an obvious variant' of what was

8   disclosed."   (App. Br., 2009 WL 327983).   The Federal Circuit disagreed, noting that

9   the disputed instruction "comport[ed] with this court's law on written description," and

10  "gave the jury adequate information to make a decision based on the possession standard

11  of this court."   *eSpeed*, 595 F.3d at 1360.   The same reasoning applies here.

12        Defendants are also not entitled to a new trial on the grounds that the verdict is

13  "against the weight of the evidence."   (Mot. at 24.)   It is error for a district court to

14  substitute its judgment for that of the jury in determining whether a verdict is against the

15  clear weight of the evidence.   *Tortu v. Las Vegas Metro. Police Dept.*, 556 F.3d 1075,

16  1084 (9th Cir. 2009).   Accordingly, the Motion for a new trial should be denied.

## V.   CONCLUSION

18        Defendants' Motion for Judgment as a Matter of Law And Alternatively A New

19  Trial should be denied in its entirety.

20

21

22

23

24

DATED: July 11, 2014

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By  /s/ Sean S. Pak
Sean S. Pak

Attorneys for Plaintiff ViaSat, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 11, 2014, I caused the foregoing **PLAINTIFF VIASAT, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (7 OF 12), REGARDING THE PRIORITY DATE AND INVALIDITY OF THE '875 PATENT** to be served on Defendants' counsel via the Court's ECF system and via e-mail.

DATED:   July 11, 2014

By  */s/ Sean S. Pak*
       Sean S. Pak

VIASAT'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
(RENEWED). OR A NEW TRIAL (7 OF 12). REGARDING THE PRIORITY DATE OF THE '875 PATENT