QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California   94111
Telephone:  (415) 875 6600

Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Vincent M. Pollmeier (Bar No. 210684)
vincentpollmeier@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
865 S Figueroa Street 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000

Attorneys for Plaintiff ViaSat, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC.,<br><br>            Plaintiff,<br><br>        vs.<br><br>SPACE SYSTEMS/LORAL, INC.,<br>LORAL SPACE &<br>COMMUNICATIONS,<br>INC.,<br><br>            Defendants. | CASE NO. 3:12-cv-00260-H-WVG<br><br>**PLAINTIFF VIASAT, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (10 OF 12), REGARDING THE INVALIDITY OF THE ASSERTED CLAIMS OF THE '827 AND '875 PATENTS IN LIGHT OF THE PRIOR ART**<br><br>Date: August 11, 2014<br>Time: 9:00 a.m.<br>Place: Courtroom 15A<br><br>Hon. Marilyn L. Huff |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT .................................................................... 1

II.    LEGAL STANDARD .............................................................................. 2

III.    ARGUMENT ...................................................................................... 3

    A.    Defendants Are Not Entitled To JMOL That Claim 12 Of The
        '875 Patent Is Obvious ................................................................ 3

        1.    Defendants' Obviousness Combinations Do Not Disclose
            All Claim Elements of Claim 12 ................................................ 4

        2.    A Person of Ordinary Skill In The Art Would Not Have
            Been Motivated To Combine These References ...................... 10

        3.    Objective Indicia Demonstrate Claim 12's
            Nonobviousness ................................................................ 13

    B.    Defendants Are Not Entitled To JMOL That Claim 7 Of The
        '827 Patent Is Invalid ............................................................... 15

        1.    A Reasonable Jury Could Conclude That AtContact
            (2004) Did Not Anticipate Claim 7 ............................................ 15

        2.    A Reasonable Jury Could Conclude that Claim 7 Is Not
            Obvious ............................................................................ 17

    C.    Defendants Fail to Establish that the AtContact (2004),
        SkyBridge, Mitre, and Asato are "Printed Publications" Under
        § 102 .................................................................................... 24

    D.    Defendants Are Not Entitled To A New Trial. .................................... 25

IV.    CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ......................................................... 11, 15, 18, 22

*Allergan, Inc. v. Barr Labs., Inc.*,
   808 F. Supp. 2d 715 (D. Del. 2011) *aff'd on other grounds*,
   501 F. App'x 965 (Fed. Cir. 2013) .................................................................. 18

*Apple Inc. v. Int'l Trade Comm'n*,
   725 F.3d 1356 (Fed. Cir. 2013) .................................................................. 5, 15

*Broadcom Corp. v. Emulex Corp.*,
   732 F.3d 1325 (Fed. Cir. 2013) .................................................................. 13

*CNET Networks, Inc. v. Etilize, Inc.*,
   584 F. Supp. 2d 1260 (N.D. Cal. 2008) .................................................... 25

*Carella v. Starlight Archery & Pro Line Co.*,
   804 F.2d 135 (Fed. Cir. 1986) .................................................................. 25

*Compaer Corp. v. Antec, Inc.*,
   539 Fed. App'x 1000 (Fed. Cir. 2013) ..................................................... 3

*Cordis Corp. v. Boston Scientific Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009) .................................................................. 24

*First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*,
   631 F.3d 1059 (9th Cir. 2011) .................................................................. 2

*InTouch Techs. Inc. v. VGO Commc'n*,
   751 F.3d 1327 (Fed. Cir. 2014) ......................................................... 2, 11, 21

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008) .................................................................. 11

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
   688 F.3d 1342 (Fed. Cir. 2012) ......................................................... 4, 7, 12, 21

*In re Lister*,
   583 F.3d 1307 (Fed. Cir. 2009) .................................................................. 24

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) .................................................................. 2

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F. Supp. 2d 1016 (S.D. Cal. 2008),
   *vacated in part on other grounds*, 580 F.3d 1301 .................................... 4

*Lucent Techs., Inc. v. Microsoft Corp.*,
   No. 06-CV-0678, 2008 WL 2872738 (S.D. Cal. Jul. 23, 2008) ..................... 3, 4

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) .................................................. 2

*N. Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990) ..................................................................... 24

*Norian Corp. v. Stryker Corp.*,
  363 F.3d 1321 (Fed. Cir. 2004) .................................................................... 24

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013) *cert. denied*, 134 S. Ct. 900 (U.S. 2014) .......... 14

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ..................................................................... 25

*Ex parte Suozzi*,
  125 U.S.P.Q. 445 (P.O. Bd. App. 1959) ........................................................ 24

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
  734 F.3d 1332 (Fed. Cir. 2013) ...................................................................... 2

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
  699 F.3d 1340 (Fed. Cir. 2012) .................................................................... 13

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) *cert. denied*, 133 S. Ct. 1291 (2013) .............. 12, 22

## **Statutes**

35 U.S.C. § 102 ............................................................................................ 2

35 U.S.C. § 102(a) ...................................................................................... 24

35 U.S.C. § 102(b) ...................................................................................... 24

## **Rules**

Fed. R. Civ. P. 50(a) ................................................................................... 18

# I.    <u>PRELIMINARY STATEMENT</u>

Defendants attempt to invalidate the asserted claims of the '875 and '827 patents by repeating arguments the jury rejected at trial having considered the ample evidence adduced by ViaSat.   Defendants also set forth ***new arguments they have waived*** by failing to previously raise them.   Under the JMOL standard, Defendants simply cannot show that clear and convincing evidence adduced at trial, construed in the light most favorable to ViaSat, permits only one reasonable conclusion— invalidity—and that the jury clearly got it wrong when it found to the contrary.

With respect to the '875 patent, Defendants attempt to resuscitate arguments they made at trial that certain references could be combined in a manner to invalidate claim 12 of the patent.   ViaSat provided substantial evidence rebutting those alleged combinations and further demonstrated why the prior art actually taught away from ViaSat's innovative approach to spatial separation and full color reuse.   Certainly the jury was entitled to credit the substantial evidence ViaSat presented and come to the reasonable conclusion it did.

Defendants take a different tack with the '827 patent.   First, they argue that a specific reference anticipates claim 7 of the patent and that the jury could not have properly found otherwise, despite the mountain of evidence ViaSat presented at trial which demonstrated that the reference did not contain all of the elements of claim 7. Second, they argue that claim 7 is invalid based on obviousness combinations they ***never raised*** at trial.   The time to raise such arguments has long passed, and they are waived.   At trial, ViaSat presented substantial evidence that the alleged obviousness combinations which Defendants did present at trial failed to demonstrate invalidity.   Again, the jury was entitled to credit ViaSat's evidence and

conclude reasonably that claim 7 is valid.   There is no substantial evidence to the contrary, and Defendants do not even argue otherwise now with respect to the combinations they actually presented at trial.   A motion for JMOL should not be treated as a "do-over."

Finally, Defendants failed to adequately qualify many of their key references as "printed publications"—and thus prior art—under 35 U.S.C. § 102.   This includes each of the cited secondary combination references for the '875 patent and the only cited allegedly anticipatory reference for the '827 patent.

For these reasons, Defendants' JMOL on invalidity of the '875 and '827 patents (Dkt. 1051) must be denied.

## II.   <u>LEGAL STANDARD</u>

Under the JMOL standard, Defendants must meet the high standard of showing that—contrary to the jury's verdict—the evidence only permits the reasonable conclusion that Defendants proved invalidity by clear and convincing evidence. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1316 (Fed. Cir. 2009); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011); *InTouch Techs. Inc. v. VGO Commc'n*, 751 F.3d 1327, 1338 (Fed. Cir. 2014).   The court draws "all reasonable inferences in favor of the jury's verdict, and the evidence is viewed in the light most favorable to the non-moving party."   *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1340-41 (Fed. Cir. 2013) (citing *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1059, 1067 (9th Cir. 2011)).   "The jury's verdict will be upheld if it is supported by substantial evidence, even if it is also possible to draw a contrary conclusion."   *Id.* at 1341 (internal quotations omitted).   The standard for "substantial evidence" requires only "such relevant evidence as a reasonable mind

1   might accept as adequate to support a conclusion." *Lucent Techs., Inc. v. Microsoft*

2   *Corp.*, No. 06-CV-0678, 2008 WL 2872738, at *4 (S.D. Cal. Jul. 23, 2008) (Huff, J.)

3   (quoting *Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987)).

### III.   ARGUMENT

**A.   Defendants Are Not Entitled To JMOL That Claim 12 Of The '875 Patent Is Obvious[1]**

6         Defendants move for JMOL that claim 12 of the '875 patent is obvious, but not

7   that it is anticipated.   However, none of the alleged references, alone or in

8   combination, disclose all of claim 12's elements.   Moreover, a person of ordinary skill

9   in the art would not have been motivated to combine the references.   Finally, objective

10  indicia confirm claim 12's nonobviousness.   Backed by extensive trial testimony and

11  evidence, each of these points independently support the verdict.   *See*, *e.g.*, *Compaer*

12  *Corp. v. Antec, Inc.*, 539 Fed. App'x 1000, *1004 (Fed. Cir. 2013) ("The record shows

13  again that the jury verdict of nonobviousness has ample support.   Among other things,

14  the verdict finds support in the clear differences between each claim and the prior art

15  along with testimony about the lack of motivation to combine, the discovery of the

16  specific problem, objective criteria, and other facts.")

17        ViaSat notes that SS/L's arguments regarding the constructions of "feeder beam"

18  and "service beam," in particular, were already raised in Defendants' claim

19  construction briefs, which the Court considered and rejected.   The Court properly

20  construed these claims for the reasons already discussed in its May 29, 2013 Claim

21  Construction Order (Dkt. 206) and ViaSat's claim construction briefing (Dkts. 154

---

[1]   ViaSat notes that Defendants rely on 37 pages of claim charts to support their motion—itself 25 pages—in clear violation of the 25-page limit set by L.R. 7.1(h). ViaSat reserves the right to respond to any assertions in Defendants' charts, whether raised in this opposition or otherwise.

1   and 178).[2]

2     **1.    Defendants' Obviousness Combinations Do Not Disclose All Claim Elements of Claim 12**

3

4       (a)    Mitre combined with Sharon or Asato and the ITU Regulations do not disclose the asserted claim limitations

5     Defendants concede that Mitre does not anticipate claim 12.   Accordingly,

6 Defendants rely on secondary references Sharon, Asato, and the ITU Regulations in an

7 attempt to find the missing limitations.   Sharon, Asato, and the ITU Regulations,

8 however, do not disclose every claim limitation for the reasons presented at trial.

9 Further, because Mitre also fails to disclose limitations of independent claim 1—on

10 which claim 12 depends—Defendants' combinations still fall far short of acting as an

11 invalidating combination, as the jury correctly found.   *Kinetic Concepts, Inc. v. Smith*

12 *& Nephew, Inc.*, 688 F.3d 1342, 1363 (Fed. Cir. 2012) ("whether the prior art discloses

13 the limitations of a particular claim is a question of fact to be determined by the jury.)

14     First, Sharon does not disclose claim 12's limitations.   Claim 12 requires, *inter*

15 *alia*, that "at least one feeder beam is allocated ***all of the colors of the beam pattern***."

16 "[C]olors generally are defined by a unique combination of ***frequency and***

17 ***polarization***."   ('875 patent at 1:55-59 (emphasis added); *see also* claim 1 ("signals

18 associated with different colors differ by a frequency band, a polarization, or both a

19 frequency band and a polarization").)   However, Sharon fails to disclose ***any*** color

20

21       [2]   To the extent Defendants request that their construction be reconsidered now, the Court has previously noted it is inappropriate to use a motion for judgment as a

22 matter of law to seek reconsideration of prior claim constructions.   *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F. Supp. 2d 1016, 1048 (S.D. Cal. 2008) (Huff, J),

23 *vacated in part on other grounds*, 580 F.3d 1301.   Further, for the same reasons provided in ViaSat's concurrently-filed opposition to Defendants' JMOL on

24 indefiniteness, Defendants do not satisfy the standard for reconsideration.

1   allocation.   Sharon only discusses frequency ranges and makes no mention of

2   polarization.   Without that critical information, Sharon fails to disclose that the feeder

3   beam "is allocated all of the colors of the beam pattern."   (S-1845 at 6:49-54, 7:55-64,

4   8:9-14.)   Defendants and their expert never offered any testimony or other evidence as

5   to any colors that Sharon may have disclosed (which it did not), and instead limited

6   their evidence to frequency ranges, which is insufficient to satisfy the claim

7   requirements.   (Tr. at 2269:18-2270:5.)   This is not clear and convincing evidence, as

8   the jury concluded.

9        The Asato reference similarly fails to disclose claim 12's requirement that the

10   feeder beam "is allocated *all of the colors of the beam pattern.*"   Defendants allege

11   that Asato "expressly discloses that the remote *feeder beam* is allocated the 27.5 GHz

12   to 31.0 GHz bands in two polarizations" (Mot. at 19), but Asato is silent as to whether

13   those feeder beam colors account for "all the colors of the beam pattern."   (S-1180 at

14   SSL0085066.)   Additionally, Asato does not specify the frequency ranges or

15   polarizations used by the *service beams*, making it impossible to determine whether its

16   feeder beams have been allocated all of the colors of the beam pattern.   (S-1180.)

17        Faced with this reality, SS/L tries to "incorporate by reference" (*see* Mot. at 18-

18   20) a separate reference—the ITU Regulations.   But, as an initial matter, Defendants

19   are wrong that that the ITU Regulations are incorporated by reference in Asato.   "To

20   incorporate [prior art] material by reference, the host document must identify with

21   detailed particularity what specific material it incorporates and clearly indicate

22   where that material is found in the various documents."   *See Apple Inc. v. Int'l

23   Trade Comm'n*, 725 F.3d 1356, 1362 (Fed. Cir. 2013).

24        The jury also could have concluded reasonably that Asato neither specifies any

1   incorporated material from the ITU Regulations nor clearly indicates where any

2   material it relies on can be found in the reference.   For example, Asato states that

3   "[f]or International Telecommunications Union ITU regions 1 through 3, 1.5 GHz has

4   been allocated for mobile satellite service (MSS) at 30-/20-GHz."  (S-1180 at

5   SSL0085064.)   It then discloses that there are two 30-/20-GHZ frequency bands:   a

6   commercial band and a military band.   (*Id.*)   However, Asato does not actually adopt

7   the ITU bands, says nothing about which specific regulation(s) it would adopt, and is

8   silent as to whether it would use the ITU's commercial or military frequency bands

9   (which Asato itself states are different).   (S-1180 at SSL0085064; Tr. at 2692:1-24

10  (Bartone).)   Each of these deficiencies could have been the basis for the jury's finding.

11  Additionally, Defendants' "ITU Regulations" consist of three, untitled tables excerpted

12  from an ITU document with no guidance as to whether they are the same ITU

13  regulations referenced in Asato.   Defendants' observation (at 19) that both Asato and

14  the tables coincidentally include a "1.5 GHz of MSS bandwidth" is hardly clear and

15  convincing evidence that the colors disclosed in the ITU excerpts Defendants cite have

16  any bearing on Asato's service beams as explained by Dr. Bartone.   (*See also* Tr. at

17  2692:20-24 (Bartone) ("Doctor Schindall has not demonstrated and this reference

18  doesn't teach how that bandwidth is distributed and whether it may or may not overlap

19  and whether or not it may or may not use all of the colors of the beam pattern.").)   The

20  jury was certainly free to credit Dr. Bartone's testimony, over that of Dr. Schindall.

21          Even if the jury had determined that Sharon or Asato and the ITU Regulations

22  disclosed the unique elements of dependent claim 12, however, they still could have

23  found that the combination with Mitre would fail to render the claim obvious because

24  Mitre fails to disclose every limitation of independent claim 1, from which claim 12

1   depends.   First, Mitre does not disclose proximate feeder and service beams.   Rather,

2   Defendants point to a *single* beam and argue that that one beam should be considered a

3   beam that is "proximate to itself" (*e.g.*, because the beam could be considered two

4   completely overlapping beams).   (Tr. at 2249:23-24 (Schindall); *see also id.* at 2343:3-

5   8.)   This makes no sense as reflected in the jury's finding.   Besides being tautological,

6   Defendants' argument contradicts the plain reading of claim 1, the Court's

7   constructions, and Mitre itself.   Mitre states, for

8   example, that in the figure to the left, "region 1 ["R1"]

9   is covered by *four beams*"—*i.e.*, each circle is one

10   beam.   (S-1165 at SSL0083912.)   Each "beam is

11   generated by *a single horn*," and not as two beams

12   generated by separate feed horns in the satellite.   (*Id.*)

13   Defendants nevertheless argued at trial that each of

14   these circles actually represents two beams.   (Tr. at 2249:14-2250:5 (Schindall).)

15   Such credibility and factual inconsistencies are substantial evidence supporting the

16   jury's rejection of this prong of SS/L's invalidity defense.   *Kinetic Concepts, Inc. v.*

17   *Smith & Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012) ("In light of the jury's

18   determination that S & N failed to prove obviousness, we must infer that the jury found

19   Wake Forest's experts to be credible and persuasive on this point.")

20        Second, Defendants did not provide any evidence at trial that, under the plain

21   meaning of "each" from claim 1, Mitre discloses the "set of colors allocated to a service

22   beam associated with *each* of the one or more service beam coverage areas not

23   proximate to the feeder beam coverage area includes at least one same color allocated

24   to the at least one feeder beam."   Indeed, Dr. Schindall admitted as much before the

1   jury.   (Tr. at 2341:6-16.)   Again, this failure alone would justify the jury's finding of

2   nonobviousness.

3          Third, the Court construed "feeder beam" to require "communication of

4   information between the satellite and one or more *gateway terminals*."   Defendants

5   argue that Mitre's "trunking" terminals are gateways, but this is incorrect.   At trial,

6   Defendants' expert admitted that, when Mitre was written, "there were no gateways."

7   (Tr. at 2248:3-5.)   This is not simply a matter of using "different nomenclature" from

8   claim 1.   (*See* Mot. at 12.)   As Mitre teaches, trunking terminals are essentially larger

9   versions of user or customer terminals.   (S-1165 at SSL0083911 ("The size of the

10   terminals varies from small CPS terminals to quite large trunking terminals . . . the

11   largest CPS terminal supports 240 voice channels, 22 data channels, 1 video (6.3 Mb/s)

12   and 15 low-rate video channels.   The smallest trunking terminal supports 12.6 Mb/s.");

13   Tr. at 2696:19-21 (Bartone) ("It talks about different types of terminals, these CPS

14   terminals and trunking terminals, but they're still all just terminals.").)   Under any

15   proposed construction, a beam that communicates between a satellite and a customer

16   terminal is a service beam, *not* a feeder beam.   (*See* Dkt. 208-1 at 8-9, 13.)   Mitre's

17   trunking terminals therefore cannot read on claim 1 as gateways, as the jury properly

18   concluded.

19          Fourth, as the '875 patent teaches—and the Court correctly construed—the

20   feeder beam communicates information "received from or relayed to subscriber

21   terminals located in one of the plurality of service beam coverage areas."   (Dkt. 208-1

22   at 13.)   At trial, Dr. Schindall alleged that Mitre's San Francisco beam and New York

23   city beam satisfied the claimed service and feeder beam, respectively.   (Tr. at 2250:12-

24   51:3.)   He failed to demonstrate, however, that the San Francisco beam and the New

VIASAT'S OPPOSITION TO DEFENDANTS' JMOL REGARDING THE INVALIDITY OF THE ASSERTED
CLAIMS OF THE '827 AND '875 PATENTS IN LIGHT OF THE PRIOR ART

York beam actually satisfy the Court's construction.   (*Id.*)   This is another of Mitre's failings as anticipatory or even relevant prior art, which is yet another basis for the jury's finding.

        (b)      AMC-17 combined with Sharon or Asato and the ITU Regulations do not disclose the asserted claim limitations

      Similar to Mitre, Defendants attempt to combine AMC-17 with Sharon or Asato and the ITU Regulations to establish a supposed obviousness combination to claim 12. As discussed above, Sharon, Asato, and the ITU Regulations do not disclose every limitation of claim 12 and thus, do not cure AMC-17's deficiencies.   Defendants' combinations fail for the additional reason that AMC-17, like Mitre, does not disclose all of the elements of independent claim 1, and thus all of the purported combinations involving AMC-17 suffer from the same deficiency.

      AMC-17's primary failing is that it does not disclose a feeder beam that shares a color with each of its associated non-proximate service beams, as required by claim 1. (Tr. at 2695:3-24 (Bartone).)   Defendants rehash the same arguments from their Motion to Strike (Dkt. 562-1) and argue for an interpretation of the Court's constructions that cuts any ties between the feeder and service beams.   (Mot. at 15-16.)[3]   As the Court already held, however, its construction was intended to "reflect the relationship between the feeder beam, the gateways, the satellite and the subscriber terminals" and that its "construction reflects the patent's requirement that feeder beams connect the satellite to gateways, and that the information communicated is 'received from or relayed to subscriber terminals.'"   (Dkt. 206 at 13.)   Defendants' argument

---

   [3]    Under the Court's construction, a feeder beam communicates information "***received from or relayed to*** subscriber terminals located in one of the plurality of service beam coverage areas."   (Dkt. 208-1 at 13 (emphasis added).)

VIASAT'S OPPOSITION TO DEFENDANTS' JMOL REGARDING THE INVALIDITY OF THE ASSERTED
CLAIMS OF THE '827 AND '875 PATENTS IN LIGHT OF THE PRIOR ART

1   thus fails now for the same reasons as before.

2       Faced with this reality, Defendants now apparently argue that "each" means "at

3   least one" such that claim 1 only requires that the feeder beam reuse *one color* from

4   *any* colors allocated to *any* non-proximate service beam in the system.   (Mot. at 15.)

5   Claim 1, however, reads, "wherein a set of colors *allocated to a service beam*

6   *associated with each of the one or more service beam coverage areas not proximate*

7   *to the feeder beam coverage area* includes at least one same color allocated to the at

8   least one feeder beam."   ('875 patent at 24:10-14.)   The "set of colors" refers to the

9   colors allocated to a non-proximate service beam and "each" of the non-proximate

10  service beams must share a color with the at least one feeder beam.   (*Id.*)   Defendants

11  failed at trial (and continue to fail) to provide any evidence that AMC-17 satisfies this

12  limitation under the plain meaning of "each."   (Tr. at 2695:3-24 (Bartone).)

13      Defendants therefore fail to demonstrate any basis to overturn the jury's

14  finding that AMC-17, on its own or in combination with other references, render

15  claim 12 obvious.

16      **2.    A Person of Ordinary Skill In The Art Would Not Have Been
             Motivated To Combine These References**

17

18      Defendants also (and in any event) failed to provide evidence of motivation to

    combine these disparate references.[4]   The sole, conclusory piece of testimony

19

20      [4]    At trial, Defendants' expert only testified as to four combinations:   1) Mitre
    with Sharon, 2) Mitre with Asato, 3) AMC-17 with Sharon, and 4) AMC-17 with

21  Asato.   In their motion, Defendants also add (at 19) that one of ordinary skill would

22  be motivated to combine Asato with the ITU references, which results in two
    additional combinations, 5) Mitre with Asato and the ITU Regulations and 6) AMC-

23  17 with Asato and the ITU Regulations.   Defendants' expert never testified
    regarding the motivation to combine Asato with the ITU Regulations, but to the

24  extent the Court finds otherwise, combinations 5 and 6 also fail for the same reasons

Defendants' expert provided at trial was:

> Q And what would be the motivation of one of ordinary skill in the art to combine either MITRE FDMA or SS/L ANC-17 [sic] with on the other hand Sharon or Asato?
>
> A One of ordinary skill in the art would be quite familiar with the full frequency reuse described in Sharon and Asato.   They're multi-beam communication satellites doing the same thing.   People are well aware of this.   So they would be motivated to combine them.

(Tr. at 2276:3-9.)   The jury could have reasonably concluded that Dr. Schindall's perfunctory allegation had no probative value as to whether one of skill would be motivated to combine these particular references.   *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) ("[K]nowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references to reach the particular claimed method.").   Indeed, ViaSat offered evidence exactly to the contrary through its own expert, Dr. Bartone.   (Tr. at 2691:15-19, 2692:1-9 (Bartone).)

Moreover, conclusory statements such as those Dr. Schindall provided at trial fall far short of the clear and convincing standard necessary to prove motivation to combine.   *See, e.g., InTouch Techs.*, 751 F.3d at 1348 (finding non-obviousness because the expert failed to "identify sufficient reasons or motivations to combine the asserted prior references" or "focus on the relevant time frame of 2001"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012) (rejecting testimony regarding a general desire for building something cheaper, more efficient, better, and more attractive to customers); *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 24 (Fed. Cir. 2012) *cert. denied*, 133 S. Ct. 1291 (2013) ("Because general and conclusory testimony is not enough to be even substantial discussed in this section.

1  evidence in support of a verdict, it is certainly not enough to require us to overturn a

2  jury's finding of no invalidity.").

3         In any event, Sharon and Asato both teach away from combining with Mitre and

4  AMC-17, which supports the jury's finding of nonobviousness.  *See Kinetic Concepts,*

5  *Inc. v. Smith & Nephew, Inc*., 688 F.3d 1342, 1362 (Fed. Cir. 2012) ("A reference may

6  be said to teach away when a person of ordinary skill, upon reading the reference,

7  would be discouraged from following the path set out in the reference, or would be led

8  in a direction divergent from the path that was taken by the applicant.")

9         To this point, Sharon was trying to address the "need in the art for a SATCOM

10 system which has *a hub in every spot beam*."  (S-1845 at 3:56-37.)   It therefore

11 taught that "[t]he notion of *a hub in every spot beam is also fundamental to the notion*

12 *of high capacity, local broadcast/data service*."   (*Id.* at 6:27-30.)   This shows a

13 person would not be motivated to rely on Sharon because, as ViaSat later showed

14 through its inventive work, Sharon was incorrect that a hub in every spot beam is

15 fundamental to the notion of high capacity.   (Tr. at 2691:7-19 (Bartone).)   Placing a

16 hub in every spot beam "is actually teaching away from the inventions of the '875

17 patent" because claim 12 requires proximate and *non*-proximate service and feeder

18 beams.   (*Id.*)

19        Asato also expressly teaches away from combination with references like Mitre

20 and AMC-17, which allegedly have proximate service and feeder beams.   Asato was a

21 military system concerned with "dispersing forces over wide area to minimize mass

22 casualties" using "Split-Based Operations."   (S-1180 at SSL0085062, 63; Tr. at

23 2692:1-6 (Bartone).)   Critically, Asato places its alleged gateways ("Central Hubs")

24



1   in "sanctuaries"—*e.g.*, the U.S.—

2   away from conflict areas—*e.g.*,

3   the Middle East—such that the

4   gateways were in "a relatively

5   benign environment."  (*Id.* at

6   SSL0085063, 66.)   Non-

7   proximate gateway and service

8   beams reduce the chances of

9   hostile signal jamming (*id.* at

10  SSL0085067) and "deny signal exploitation of uplink traffic patterns to gain

11  intelligence on sensitive military operations" (*id.* at SSL0085066).   Combining Asato

12  with AMC-17 or Mitre would eliminate the benefits extolled by Asato regarding "Split-

13  Based Operations" while running straight into the disadvantages it cautions against.

14  All of these factors support the jury's finding.

15          **3.    Objective Indicia Demonstrate Claim 12's Nonobviousness**

16          Evidence of objective indicia of nonobviousness—such as commercial success,

17  industry praise, skepticism , copying, and long-felt but unsolved need—"may often be

18  the most probative and cogent evidence in the record" as it "may often establish that an

19  invention appearing to have been obvious in light of the prior art was not."

20  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.,* 699 F.3d

21  1340, 1349 (Fed. Cir. 2012); *see also Broadcom Corp. v. Emulex Corp*., 732 F.3d

22  1325, 1335 (Fed. Cir. 2013) ("Here the district court averted the trap of hindsight by

23  considering the evidence of the objective indicia as part of the obviousness analysis,

24  and not just as an afterthought.")   "Objective evidence of secondary considerations is a

factual dispute underlying obviousness" and court are "thus bound to assume that the jury resolved the evidence of secondary considerations" correctly. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1369 (Fed. Cir. 2013) cert. denied, 134 S. Ct. 900 (U.S. 2014). ViaSat provided substantial evidence of these indicia during trial.

For example, the trial record demonstrates, both qualitatively and quantitatively, claim 12's significant contribution to the capacity ViaSat-1 and Jupiter-1 achieved. (Tr. at 1544:5-23 (Bartone); Tr. at 1346:21-1351:22 (Miller); Tr. at 145:19-146:16 (Dankberg).) ViaSat-1 received wide industry praise and commercial success in large part due to this leap in capacity. (Tr. at 188:9-189:4 (Dankberg); *id.* at 2686:23-2688:23 (Bartone); *id.* at 1795:7-13 (Slottje).) Indeed, the '875 patent alone gave Jupiter-1 a *35 Gigabit per second capacity increase* (Tr. at 1544:5-45:2 (Bartone)), which is almost *three times greater* than the entire capacity of AMC-17 (*id.* at 2694:15-23) and is far more than many have ever hoped to achieve. (Tr. at 2689:12-2690:1 (Bartone).)

The mountain of evidence addressed at trial further establishes that Hughes requested, and SS/L provided, a copycat of ViaSat-1. (*See*, *e.g.*, V-418 ("he did say he was hoping that the design is identical to ViaSat and build another satellite just like it"); V-623 ("I have told them that we are doing everything we can to give them the highest capacity. We are not doing anything new on ViaSat that we are not doing for them").) In doing so, SS/L copied the beam map implementing claim 12 of the '875 patent. (*Compare* V-803.24; *with* S-709 at SSL0071770.) Defendants' single-minded focus on Mr. Burr's copying (*see generally* Dkt. 1056 and ViaSat's concurrently-filed opposition) ignores the elephant in the room: Defendants' and Hughes' copying of

-14-

claim 12 on the Jupiter-1 satellite.

Given Defendants' failure to offer clear and convincing evidence of the obviousness of claim 12, and given the jury's role as the arbiter of witness credibility, the jury's finding of validity should not be disturbed.

## B.   Defendants Are Not Entitled To JMOL That Claim 7 Of The '827 Patent Is Invalid

### 1.   A Reasonable Jury Could Conclude That AtContact (2004) Did Not Anticipate Claim 7

Anticipation is a question of fact, which the jury in this case answers in the negative after considering all of the evidence presented at trial.   *ActiveVideo*, 694 F.3d at 1327.   To anticipate a patent claim, a prior art reference must describe "each and every claim limitation."   *Id.*   As the jury correctly found, Defendants failed to demonstrate that the AtContact March 2004 and July 2004 applications ("AtContact (2004)"), separately or together, satisfy this requirement.[5]

Claim 7 of the '827 patent requires a GSO satellite that includes at least ***one receiver*** "configured to receive from one or more ground stations signals in a GSO frequency band ***and*** in an extended frequency spectrum."   Claim 7 also requires at least ***one transmitter*** configured to transmit in "one or more of the GSO frequency band ***and*** the NGSO frequency spectrum."   (Dkt. 209 at 8.)   The inventive receiver and transmitter enable the GSO satellite to "establish an activated frequency mode to activate one of a GSO frequency band mode and an extended frequency spectrum mode" in the event of an interference situation.   ('827 patent at claim 7.)

---

[5]   Defendants failed to demonstrate that the July 2004 supplement incorporated by reference the March 2004 amendment.   *See Apple Inc. v. Int'l Trade Comm'n*, 725 F.3d 1356, 1362 (Fed. Cir. 2013).   The arguments in this brief apply equally to whether these applications are treated as incorporated by reference or combined under obviousness.

1    AtContact (2004) fails to disclose any receiver or transmitter configured to

2    operate in both the GSO band and the GSO+NGSO band.   Instead, AtContact (2004)

3    discloses a satellite that includes an NGSO payload (which would have NGSO-only

4    receivers and transmitters) in addition to a GSO payload (which would have GSO-only

5    receivers and transmitters).   (*See*, *e.g.*, S-1160 at SSL0083571 ("Four GSO satellites

6    will be located at 83W, 121W, 34E, and 130E.   These satellites will also host the

7    payloads of the four non-GSO satellites."); *id.* at SSL0083537 (Table 1) (referring to an

8    "NGSO-component" and a "GSO-component"); *id.* at SSL0083543 ("The four-satellite

9    plane of geosynchronous spacecraft would not utilize the primary GSO FSS bands at

10   Ka-band as part of the non-GSO component of @contact").)   As reflected in the trial

11   exhibits admitted into evidence, AtContact even insisted that, because its satellites had

12   separate NGSO and GSO payloads, it was "logical from a functional and system design

13   point" to treat its satellites as "all non-GSO."   (S-1159 at SSL0083494.)   The jury

14   could have concluded that this evidence alone is fatal to SS/L's arguments since the

15   claims require a GSO satellite, not an NGSO satellite.

16       As explained by ViaSat's expert, AtContact's separate GSO and NGSO

17   components means that it is missing both a single receiver and single transmitter

18   configured to operate between GSO and NGSO+GSO modes.   (*See*, *e.g.*, Tr. at

19   2721:24-2722:2 (Sturza) ("When there would be interference, ***the AtContact NGSO***

20   ***would turn off***.   ***There's no disclosure of extended frequency mode or of NGSO***

21   ***blanking***[6]").)

22       ───────────────
       [6]   Defendants' objection to the term "NGSO blanking" is simply a red herring.
23   The term was not "concocted for purposes of trial."   (Mot. at 4.)   ViaSat's design
     documents that pre-date this litigation use the term (V-1270.155-56) and even
24   Defendants' own internal documents use it (Tr. at 2055:12-16).   More importantly,

-16-

Defendants' own expert admitted that "[i]n the text of their filing it says it's for GSO satellites, but they will also host the payloads for NGSO satellites, meaning that it's *a combination of the GSO and an NGSO payload* that comprise the GSO synchronous circular orbit Plaintiff [sic] satellites." (Tr. at 2284:11-15 (emphasis added).) Tellingly, throughout his testimony, Dr. Schindall never identified the claimed receiver or transmitter in AtContact (2004). (*See* Tr. at 2283:25-2286:12.) This failing alone supports the jury's finding.

Defendants' attempt (at 3-4) to analogize the infringing Jupiter-1 satellite to AtContact (2004) is also a nonstarter. Defendants' own expert testified at trial that he did not dispute that Jupiter-1 practices claim elements 7(a) and (b), which cover the receiver and transmitter, respectively. (Tr. at 2039:3-14; *see also* Tr. at 1677:20-1687:7 (Sturza); Tr. at 939:22-940:13 (Hoeber); S-2461 at SSL2229212; V-24 at HUGHES-272948; S-372.2-3.) For all of these reasons, Defendants failed to show that the clear and convincing evidence only permits the conclusion that the AtContact (2004) anticipates claim 7.

### 2.     A Reasonable Jury Could Conclude that Claim 7 Is Not Obvious

(a)     Defendants waived their right to assert the new obviousness combinations identified in the motion

The first major problem with Defendants' obviousness attack on the '827 patent is that they raise six obviousness arguments *never presented at trial*. These include combinations based on *each* of AtContact (2004), the FCC Rules, *or* SkyBridge, alone or in combination with Weideman (2000). (Mot. at 8.) The only obviousness

---

as Dr. Sturza testified, the real issue is that AtContact (2004) failed to disclose "the *concept* of NGSO blanking" and not just the term itself. (Tr. 2723:14-15 (emphasis added).)

1  combination Defendants' expert presented at trial—which Defendants do ***not*** rely on in

2  their motion—was the specific combination of AtContact (2004), the FCC Rules, and

3  Weideman (2000).   (Tr. at 2288:25-2289:18 (Schindall).)   Having failed to

4  introduce any evidence at trial as to the combinations they raise now, Defendants

5  have ***waived these arguments***.   *Allergan, Inc. v. Barr Labs., Inc*., 808 F. Supp. 2d

6  715, 735 (D. Del. 2011) *aff'd on other grounds*, 501 F. App'x 965 (Fed. Cir. 2013).

7         Moreover, because they failed to present these combinations at trial,

8  Defendants fell far short of meeting the "clear and convincing" standard for each

9  specific combination.   *ActiveVideo*, 694 F.3d at 1327 ("To invalidate a patent claim

10  based on obviousness, a challenger must demonstrate by clear and convincing

11  evidence that a skilled artisan would have been motivated to combine the teachings

12  of the prior art references to achieve the claimed invention, and that the skilled

13  artisan would have had a reasonable expectation of success in doing so.").   For the

14  same reason, ViaSat has not been "fully heard" on these six arguments—as required

15  by F.R.C.P. Rule 50(a)—because it was not able to put up evidence against them at

16  trial due to SS/L's silence.

17         Even if the Court decides to entertain these new combinations, Defendants'

18  motion still fails because (1) AtContact (2004), the FCC Rules, SkyBridge, and

19  Weideman (2000), alone or in combination with one another, fail to disclose all of

20  claim 7's elements; (2) a person of ordinary skill in the art would not have been

21  motivated to combine these references; and (3) objective indicia of nonobviousness

22  confirm claim 7's nonobviousness.   Each of these reasons independently mandates

23  denial of JMOL.

24

VIASAT'S OPPOSITION TO DEFENDANTS' JMOL REGARDING THE INVALIDITY OF THE ASSERTED
CLAIMS OF THE '827 AND '875 PATENTS IN LIGHT OF THE PRIOR ART

   (b)   Defendants' obviousness combinations do not disclose all claim elements of claim 7

As the jury found, AtContact (2004), the FCC Rules, and SkyBridge all share the same fatal flaw:   they all fail to disclose a geostationary orbit (GSO) satellite with a receiver and transmitter configured to operate in both a GSO band or GSO+NGSO extended band based on an interference situation.   Instead, these references, at best, only disclose discrete pieces of the invention, and none of the alleged combinations exhibit all claim limitations.

For example, beginning in 1997, the FCC opened up the NGSO band to GSO satellites, allowing satellite operators to apply for a license to operate GSO satellites in the NGSO band.   The FCC dictated that GSO satellites had to operate on a secondary, non-interfering basis with other NGSO satellites—the problem was that the FCC did not tell satellite operators how to do it.   Instead, they asked the satellite operators to present their own proof that they could operate on a non-interfering basis in the NGSO band as a prerequisite for receiving a license.   (S-1210 at SSL1531121; Tr. at 2281:2-12 (Schindall).)   AtContact (2004) was an example of such a technical demonstration, although, as discussed above, it does not disclose claim 7's limitations.

For their part, the FCC Rules presented the problem, not the solution.   The FCC Rules do not disclose *any* limitation of claim 7, particularly the inventive receiver and transmitter configured to enable the GSO satellite to "establish an activated frequency mode to activate one of a GSO frequency band mode and an extended frequency spectrum mode" in the event of an interference situation.   (*See*, *e.g.*, Tr. at 2724:16-21 (Sturza) ; *id.* at 2280:6-18 (Schindall); *compare also* '827 Patent at 9:33-39; *with* S-1210 at SSL1531120-23.)

1    SkyBridge is not a GSO satellite at all, contrary to the claim language; it is a

2    proposal for an *NGSO* satellite.   As such, and as Defendants' expert admitted at trial,

3    SkyBridge fails to disclose the concept of activating a GSO frequency mode and an

4    extended, GSO+NGSO frequency mode.   (*See*, *e.g.* Tr. at 2282:13-14 (Schindall)

5    ("It's two NGSO satellites, not a GSO and an NGSO."); *id.* at 2282:3-5 ("SkyBridge is

6    a company that proposed an *NGSO system* in 2002, and they needed to demonstrate to

7    the FCC that they could avoid interference with *other NGSO systems*") (emphasis

8    added).)   Since SkyBridge is an NGSO-only satellite, designed to use only NGSO

9    systems, it does not disclose any architecture for shifting between GSO and

10   GSO+NGSO modes, as required by the claims.

11   Recognizing the above, Defendants assert that Weideman (2000) fills in the

12   missing pieces of AtContact (2004), the FCC Rules, and SkyBridge.   Weideman

13   (2000), however, also fails to disclose the claimed receiver and transmitter of the '827

14   patent.   Specifically, Weideman (2000) merely discloses "a switch and a series of

15   different filters in order to dynamically adjust the bandwidth of a system."   (Tr. at

16   2288:15-17 (Schindall).)   "[I]t's not about sharing spectrum."   (Tr. at 2724:17-18

17   (Sturza); *see also* S-2271 at 2:52-54 ("The present invention [Weideman] seeks to

18   provide an improved system and method to optimize the power utilization on

19   satellite").)   Defendants have thus failed to demonstrate that any combination of

20   AtContact (2004), the FCC Rules, SkyBridge, and/or Weideman (2000) discloses each

21   and every limitation of claim 7, as the jury reasonably found.

22          (c)    A person of ordinary skill in the art would not have been
                   motivated to combine the alleged '827 references

23

24   Similar to the '875 patent, Dr. Schindall provided a single sentence on

VIASAT'S OPPOSITION TO DEFENDANTS' JMOL REGARDING THE INVALIDITY OF THE ASSERTED
CLAIMS OF THE '827 AND '875 PATENTS IN LIGHT OF THE PRIOR ART

motivation to combine at trial.   (Tr. at 2289:15-22.)   As relevant to this motion, however, he only addressed the combination of AtContact (2004), the FCC Rules, and Weideman (2000), which Defendants have not asserted on JMOL and the jury correctly rejected.   Since he did not address any of the other combinations, his testimony does not support the current motion.[7]   The absence of any evidence that a person of ordinary skill would have been motivated to combine AtContact (2004), the FCC Rules, or SkyBridge with Weideman (2000) precludes overturning the jury's finding of non-obviousness.

Even if the Court applies Dr. Schindall's testimony to the new combinations raised in Defendants' motion, however, his single, conclusory statement does not even come close to supporting an obviousness finding.   Dr. Schindall only stated at trial:

> Well, all of them have to do with ways of getting the maximum spectrum that you can when you're working with a geosynchronous multi-beam satellite.

(Tr. at 2289:20-22.)   This is insufficient evidence, as the jury found for the one obviousness combination presented at trial.   *See InTouch Techs.*, 751 F.3d at 1348 (finding non-obviousness because the expert failed to "identify sufficient reasons or motivations to combine the asserted prior references" or "focus on the relevant time frame of 2001").

Moreover, because Dr. Schindall testified that these references accomplish the same thing—*i.e.*, "getting the maximum spectrum"—this is evidence that a person of

---

[7]   To the extent Defendants argue that Dr. Schindall's testimony regarding the combination of AtContact (2004), the FCC Rules, and Weideman (2000) necessarily includes the motivation to combine only AtContact (2004) and Weideman (2000), ViaSat disagrees that generic statements regarding the motivation to combine multiple references provides evidence of specific motivations to combine a subset of those references.

1   ordinary skill would **not** have any reason to combine them.   *See Kinetic Concepts, Inc.*

2   *v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1369 (Fed. Cir. 2012) ("both of these

3   references independently accomplish similar functions . . . . [A] person having ordinary

4   skill in the art, who was merely seeking to create a better device . . . would have no

5   reason to combine the features of both devices into a single device.").   Accordingly,

6   Dr. Schindall's testimony "bears no relation to any specific combination of prior art

7   elements" and "fails to explain why a person of ordinary skill in the art would have

8   combined elements from specific references in the way the claimed invention does."

9   *ActiveVideo*, 694 F.3d at 1328; *see also Whitserve*, 694 F.3d at 24.

10       In any event, the evidence points away from combining these references.   For

11   example, "Weideman is about saving power on the satellite . . . it's not about sharing

12   spectrum.   It's about saving power on the satellite.   And there would be no motivation

13   to combine it with the other two."   (Tr. at 2724:16-21 (Sturza).)   AtContact (2004)

14   claimed that its solution was "***the only way*** that GSO satellites can make effective and

15   beneficial use of the 18.8-193 GHz and 28.6-29.1 GHz bands."   (S-1160 at

16   SSL0083542-43.)   SkyBridge was concerned with "NGSO/NGSO Sharing" among

17   NGSO satellites and not GSO satellites operating in the NGSO band on a secondary

18   basis.   (S-1170 at SSL0084639; Tr. at 2724:4-7 (Sturza); Tr. at 2282:13-22

19   (Schindall).)   And, as previously noted, the FCC Rules provided no guidance at all on

20   how to achieve a permissible satellite.   Thus, a reasonable jury would conclude that the

21   one of ordinary skill would not be motivated to combine any of these references.

22       (d)     Objective indicia confirm claim 7's nonobviousness

23       In the decade after the FCC opened up the NGSO band to GSO satellite

24   operators, several companies applied for licenses for the NGSO band and none

1   obtained approval except AtContact, which proposed a complex, two-payload, seven-

2   satellite system.   (*Supra* at III.B.1; *see also* V-1328 at VST03693699 (rejecting

3   Echostar's application "because EchoStar had failed to demonstrate that there would be

4   a low potential for interference into any NGSO system").)   The failure of others in the

5   satellite industry resulted in a ten-year (*i.e.*, long-felt) and unmet need.   As of 2001,

6   even the FCC was skeptical that a solution could be achieved.   (*Id.* at VST03693698

7   ("We find the record in this proceeding to be insufficient to determine whether and how

8   GSO/FSS systems can operate on a secondary basis in NGSO/FSS bands.").)   In 2008,

9   ViaSat applied for its license (V-1328) based on the invention of the '827 patent.   The

10   license was granted in 2011.   (V-524 at SSL0400220.)   Within *six months*, Hughes

11   amended its own application for the infringing Jupiter-1 satellite, expressly citing

12   ViaSat's application and the invention of the '827 patent.   (V-524 at SSL0400220

13   ("the authorization Hughes seeks here is *regulatorily indistinguishable from the*

14   *authorization for a satellite license ViaSat, Inc obtained just last year for its ViaSat-1*

15   *satellite*").)   Such copying—combined with singular success by ViaSat and long-felt

16   need by others— is all substantial objective evidence of nonobviousness.

17        Furthermore, as demonstrated at trial, claim 7 enabled both ViaSat-1 and Jupiter-

18   1 to obtain a significant capacity increase.   (Tr. at 1691:22-1692:2 (Sturza); Tr. at

19   1352:8-14 (Miller); Tr. at 147:3-149:23 (Dankberg).)[8]   These huge capacity increases,

20   in turn, generated industry-wide praise and commercial success for ViaSat-1.   (Tr. at

21   188:9-189:4 (Dankberg); Tr. at 2688:4-13 (Bartone); Tr. at 1795:7-13 (Slottje).)

22        Defendants' only rebuttal is that the FCC license, not the claimed invention, was

23   _____

[8]   The '827 patent, for example, increased Jupiter-1's capacity by 30 Gbps (Tr. at
24   1691:22-1692:2(Sturza)) and ViaSat-1's capacity by 30 Gbps (Tr. at 149:9-18
(Dankberg)).

1    responsible for the increased capacity.   (Mot. at 9.)   What this ignores, however, is

2    that the '827 patent is the only reason those licenses were approved in the first place.

3    (*See* S-1210 at SSL1531120-24; Tr. at 147:3-149:23 (Dankberg).)   Without the '827

4    patent's elegant, inventive concept for changing frequency modes based on an

5    interference event (or lack thereof), neither ViaSat nor Hughes would have received the

6    FCC license at all.

7          Given Defendants' failure to offer clear and convincing evidence of claim 7's

8    invalidity, the jury's finding of validity should not be overturned.

9    **C.    Defendants Fail To Establish that the AtContact (2004), SkyBridge, Mitre, and Asato are "Printed Publications" Under § 102**

10         Non-patent references qualify as "printed publications" under sections 102(a)

11   and 102(b) only if they are publicly accessible.   *In re Lister*, 583 F.3d 1307, 1311 (Fed.

12   Cir. 2009); *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1333 (Fed. Cir.

13   2009); *see also Ex parte Suozzi*, 125 U.S.P.Q. 445 (P.O. Bd. App. 1959).   Federal

14   Circuit law is clear that a defendant must show more than simply that an alleged prior-

15   art reference existed as of the critical date.   *See In re Lister*, 583 F.3d at 1317 (Fed. Cir.

16   2009) (holding that document was not a "printed publication" despite certificate of

17   registration from U.S. Copyright Office); *Norian Corp. v. Stryker Corp.*, 363 F.3d

18   1321, 1330 (Fed. Cir. 2004) (holding that defendant failed to provide clear and

19   convincing evidence that reference was "actually available"); *N. Telecom, Inc. v.

20   Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990) (holding references were not

21   "printed publications" where there were "uncertainties of public access").

22         At trial, Defendants failed to present ***any*** evidence of public accessibility of

23   AtContact (2004) and SkyBridge (asserted against the '827 patent) and Mitre and

24

VIASAT'S OPPOSITION TO DEFENDANTS' JMOL REGARDING THE INVALIDITY OF THE ASSERTED
CLAIMS OF THE '827 AND '875 PATENTS IN LIGHT OF THE PRIOR ART

1   Asato (asserted against the '875 patent), and thus the jury could have reasonably

2   found against invalidity based on these references.   Where, as here, the alleged

3   infringer offers "no evidence" to support the prior-art status of a reference, the Federal

4   Circuit has held that the finder of fact is justified in disregarding the reference entirely.

5   *Carella v. Starlight Archery & Pro Line Co*., 804 F.2d 135, 139 (Fed. Cir. 1986); *see*

6   *also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 866 (Fed. Cir. 2010) (finding that

7   a copyright date was not evidence of public accessibility); *CNET Networks, Inc. v.*

8   *Etilize, Inc*., 584 F. Supp. 2d 1260, 1273-74 (N.D. Cal. 2008) (finding no public

9   accessibility despite a copyright date and one declaration).   For this additional reason,

10   the jury verdict on validity should not be overturned.

11   **D.     Defendants Are Not Entitled To A New Trial.**

12        Finally, Defendants advance two reasons for a new trial, both of which fail.

13   First, Defendants allege claim construction issues limited to the '875 patent require a

14   new trial.   This request fails for all the reasons set forth above and in the Court's

15   Claim Construction Order (Dkt. 206), ViaSat's claim construction briefing (Dkts.

16   154, 178), and ViaSat's opposition to Defendants' motion regarding the construction

17   of "set of colors" and Dr. Bartone's opinions related to service beams (Dkt. 592).

18        Second, Defendants allege that the verdict is against the weight of the evidence,

19   but offer no other reason for this claim beyond those already discussed above.   For the

20   reasons already discussed at length in this brief, the substantial evidence unequivocally

21   supports the jury's verdict and Defendants are therefore not entitled to a new trial.

22               **IV.     CONCLUSION**

23        For the foregoing reasons, ViaSat respectfully requests that the Court deny

24   SS/L's motion for judgment as a matter of law and new trial.

1   DATED: July 11, 2014                    QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
2

3

4                                           By   /s/ Sean S. Pak
                                               Sean S. Pak
5

6                                           Attorneys for Plaintiff ViaSat, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

VIASAT'S OPPOSITION TO DEFENDANTS' JMOL REGARDING THE INVALIDITY OF THE ASSERTED
CLAIMS OF THE '827 AND '875 PATENTS IN LIGHT OF THE PRIOR ART

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that, on July 11, 2014, I caused the foregoing **PLAINTIFF**

3

**VIASAT, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR**

4

**JUDGMENT AS A MATTER OF LAW (RENEWED), OR A NEW TRIAL (10**

5

**OF 12), REGARDING THE INVALIDITY OF THE ASSERTED CLAIMS OF**

6

**THE '827 AND '875 PATENTS IN LIGHT OF THE PRIOR ART** to be served on

7

Defendants' counsel via the Court's ECF system and via e-mail.

8

DATED:   July 11, 2014

9

10

By  _/s/ Sean S. Pak_

11

Sean S. Pak

12

13

14

15

16

17

18

19

20

21

22

23

24