1  William Christopher Carmody
   (Admitted *pro hac vice*)
2  Jacob W. Buchdahl
   (Admitted *pro hac vice*)
3  SUSMAN GODFREY L.L.P.
   560 Lexington Avenue, 15th Floor
4  New York, New York  10022
   Telephone:  (212) 336-8330
5  Facsimile:  (212) 336-8340
   Email:  bcarmody@susmangodfrey.com
6  Email:  jbuchdahl@susmangodfrey.com

7  Marc M. Seltzer (54534)
   SUSMAN GODFREY L.L.P.
8  1901 Avenue of the Stars, Suite 950
   Los Angeles, CA  90067-6029
9  Telephone:  (310) 789-3100
   Facsimile:  (310) 789-3150
10 Email:  mseltzer@susmangodfrey.com

11

   *Attorneys for Defendants*
12

13
                **UNITED STATES DISTRICT COURT**
14
                **SOUTHERN DISTRICT OF CALIFORNIA**
15

16                                   Case No.  3:12-cv-00260-H-WVG

17                                   Hon. Marilyn L. Huff
   VIASAT, INC.
18

19            Plaintiff,            **DECLARATION OF
                                     DR. CHRISTINE MEYER IN
20 v.                                SUPPORT OF DEFENDANT
                                     SPACE SYSTEMS/LORAL, LLC'S
21 SPACE SYSTEMS/LORAL INC.,         OPPOSITION TO MOTION FOR
   LORAL SPACE &                     PERMANENT INJUNCTION**
22 COMMUNICATIONS INC.,

23            Defendants/
              Counterclaim Plaintiffs.
24

25

26

27

28

1

2      I, Dr. Christine Meyer, declare as follows:

3      **A.      Conditional Submission.**

4          1.      This declaration responds to the Declaration of Daniel J. Slottje filed

5   in support of ViaSat's Motion for Permanent Injunction ("Slottje Declaration").  I

6   understand that Defendant Space Systems/Loral, Inc. ("SS/L") has moved to strike

7   the Slottje Declaration.  I offer the following opinions in response to the Slottje

8   Declaration in the event the Court denies Defendants' Motion to Strike and

9   considers the Slottje Declaration.

10     **B.      Qualifications.**

11         2.      I was retained by counsel for Defendants in this matter to conduct

12  analyses and to provide expert testimony regarding certain damages issues in this

13  matter.  I submitted a report on November 25, 2013 regarding the damages suffered

14  by ViaSat, Inc. ("ViaSat") as a result of alleged infringement by SS/L and/or Loral

15  of ViaSat's U.S. Patent Nos. 8,010,043; 8,068,827; and 8,107,875 (collectively, the

16  "asserted patents"); and/or the damages due to Defendants' alleged breach of the

17  Non-Disclosure Agreement between ViaSat and SS/L dated March 8, 2006, as

18  amended, as well as the Contract between ViaSat and Space Systems/Loral, Inc. for

19  the ViaSat Satellite Program dated January 7, 2008.

20         3.      My deposition in this matter was taken on December 3-4, 2013.  I

21  submitted a supplemental expert report regarding damages in this matter on January

22  20, 2014.  I testified at the trial of this matter on April 9, 2014.

23         4.      On June 13, 2014, following the trial, ViaSat filed a Motion for

24  Permanent Injunction against SS/L.  ViaSat submitted the Slottje Declaration in

25  support of that Motion.  Counsel for Defendants has asked me to review the Slottje

26  Declaration and to provide my response to the opinions expressed by Dr. Slottje.

27     **C.      Opinions.**

28         5.      In his declaration, Dr. Slottje expresses the opinion that ViaSat has

suffered irreparable injury attributable to the infringement of the asserted patents by

SS/L.  *See* Slottje Declaration ¶¶ 6-15.  He asserts that as a result of that infringement, ViaSat lost customers to its competitor Hughes Network Systems ("Hughes") and that "the loss of these subscribers also represents lost market share, which has value beyond the profits from these specific customers."  *See* Slottje Declaration ¶ 12.  Dr. Slottje further opines, in a conclusory fashion, "greater market share can enable increasing economies of scale, increased brand recognition, and long-term customer relationships. . . . This harm to ViaSat would be difficult, if not impossible, to quantify or to compensate retroactively, as the opportunity for prolonged market leadership is now lost."  *Id.*

6.     In preparing my rebuttal reports and trial testimony, I thoroughly reviewed the two expert reports submitted by Dr. Slottje prior to trial.  I also was in attendance at trial when Dr. Slottje testified on damages.  The opinions he now expresses in his declaration were not set forth in any of his expert reports or in his trial testimony.  To the contrary, Dr. Slottje testified at trial that monetary damages would put ViaSat in the same position it would have occupied had there been no infringement by SS/L.  *See* Trial Trans. 1760:24 – 1761:8.  In other words, Dr. Slottje's opinion was that monetary damages would make ViaSat whole.

7.     I disagree with Dr. Slottje's new and inconsistent opinions.  Lost profits and lost market share can be quantified in damages.  Dr. Slottje asserted this and quantified these damages at trial.

8.     In a conclusory fashion, Dr. Slottje now states that the loss of customers prevented ViaSat from "fully achieving" "increasing economies of scale, increased brand recognition, and long-term customer relationships." *See* Slottje Declaration ¶12.  However, he provides no support or evidence for this statement.

9.     To start with, Dr. Slottje does not describe exactly how ViaSat would have benefited from economies of scale or how SS/L's infringement prevented ViaSat from reaping such benefits from economies of scale.  Even if SS/L's infringement did impact ViaSat's ability to benefit from economies of scale, such

Meyer Decl. ISO SSL's Opp. to Perm. Inj.
Case No. 3:12-cv-00260-H-WVG

1

2    harm is typically in the form of lost cost savings, which is both quantifiable and

3    reparable.  I note that ViaSat-1 has a maximum capacity of 1.1 million customers

4    and is expected to reach maximum capacity in the middle of 2016.  *See* Trial Trans.

5    1773:1-8, 1828:6-11.  As such, ViaSat will not gain any additional benefits from

6    economies of scale once ViaSat-1 reaches maximum capacity, and the harm

7    suffered by ViaSat, if any, could be quantified by analyzing the delay in obtaining

8    any cost savings from economies of scale.

9           10.    Similarly, Dr. Slottje provides no evidence that ViaSat has suffered –

10   or will suffer – a decrease in brand recognition due to SS/L's infringement.  First,

11   Dr. Slottje does not even identify what brand would have suffered a decrease in

12   brand recognition.  Because his assertion is so conclusory, it is unclear if he is

13   referring to ViaSat's brand as related to satellite ground equipment, the brand of its

14   Exede satellite internet service, or some other brand.  In any event, Dr. Slottje has

15   cited no evidence to support his opinion.

16          11.    Furthermore, there is no evidence that SS/L's infringement damaged

17   long-term customer relationships or that the damage to long-term customer

18   relationships irreparably harmed ViaSat.  Again, Dr. Slottje does not indicate what

19   customers he is referring to: customers for ViaSat's Exede Internet service or

20   customers such as Dish Network that rebrands ViaSat's internet services.

21   Regardless of what Dr. Slottje may have had in mind, he cites no evidence of

22   irreparable harm from damaged long-term customer relationships.

23          12.    Dr. Slottje further opines that the profits that ViaSat has foregone due

24   to its loss of customers "cannot be reinvested in further research and development."

25   *See* Slottje Declaration ¶ 13.  However, Dr. Slottje provides no evidence supporting

26   his statement and does not describe what research and development ViaSat was

27   unable to undertake.  In fact, according to ViaSat's Annual Report, expenditures on

28   independent research and development, which "comprises research and

development not directly funded by a third party," increased from $25.0 million in

Meyer Decl. ISO SSL's Opp. to Perm. Inj.
Case No. 3:12-cv-00260-H-WVG

fiscal year 2012 to $35.4 million and $60.7 million in fiscal years 2013 and 2014, respectively.  *See* ViaSat Form 10-K Annual Report, Filed May 27, 2014, p. 9.  Additionally, the amount of independent research and development pales in comparison with the amount of research and development funded by government and commercial customers.  ViaSat  received $228.2 million and $286.4 million in research expenses funded by government and commercial customers in fiscal years 2012 and 2013, respectively.  *See* ViaSat Form 10-K Annual Report, Filed May 24, 2013, p. 9.

13.     Dr. Slottje also seems to imply that ViaSat-2 has been delayed two years due to Jupiter-1, but he cites no evidence to support such an implication, and there was no evidence of such provided in his reports.  *See* Slottje Declaration ¶ 13.

14.     Dr. Slottje next takes the position that "[a]lthough the consequences I have described above flowed from the manufacture and sale of the infringing Jupiter-1 satellite, such consequences are likely to recur if SS/L is permitted to sell other satellites not colorably different from the Jupiter-1 satellite."  *See* Slottje Declaration ¶ 14.  That is unsupported speculation.  Dr. Slottje cannot predict the future market landscape of the changing satellite internet industry or the larger broadband internet industry.

15.     Dr. Slottje further takes the position that ViaSat is attempting to enter the satellite design market to compete with SSL.  *See* Slottje Declaration ¶ 15.  He bases this statement on "ViaSat's efforts to design a satellite solution for NBN," and cites his October 25, 2013 expert report at pages 13-14.  Those pages of Mr. Slottje's expert report discuss an instance in which NBN solicited bids for the design of a satellite broadband system including both ground and space components.  According to Mr. Slottje's expert report, ViaSat submitted a bid according to which ViaSat would provide "long term ground network support and satellite services," and would partner with satellite manufacturer Astrium to construct the satellite.  This anecdote does not support Mr. Slottje's argument that

Meyer Decl. ISO SSL's Opp. to Perm. Inj.
Case No. 3:12-cv-00260-H-WVG

1

2   ViaSat and SSL now compete in the satellite design market or that such

3   "competition" weighs in favor of a finding of irreparable harm.

4

5       I declare under penalty of perjury under the laws of the United States that the

6   foregoing is true and correct.

7

8       Executed this 11th day of July, 2014 at_____White Plains_____, New York.

9

10

11   _____

12                   Christine Meyer

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Meyer Decl. ISO SSL's Opp. to Perm. Inj.
                                     Case No. 3:12-cv-00260-H-WVG