1
2
3
4
5
6
7
8
9
10

11          **UNITED STATES DISTRICT COURT**

12          **SOUTHERN DISTRICT OF CALIFORNIA**

13

14   VIASAT, INC., VIASAT                      CASE NO. 3:12-CV-00260-H
     COMMUNICATIONS, INC., f/k/a               (WVG)
15   WILDBLUE COMMUNICATIONS,
     INC.,                                     **ORDER DENYING MOTION**
16                                             **FOR JUDGMENT AS A**
                              Plaintiffs,      **MATTER OF LAW OR FOR**
17                                             **NEW TRIAL REGARDING**
             vs.                               **INVALIDITY OF THE '043**
18                                             **PATENT (9 of 12)**

19   SPACE SYSTEMS/LORAL, INC.,                **[DOC. NOS. 969, 1064]**
     LORAL SPACE &
20   COMMUNICATIONS, INC.,

21                            Defendants.

22

23          On April 10, 2014, Defendants Space Systems/Loral, Inc. and Loral Space &

24   Communications, Inc. (collectively, "SS/L") filed a motion for judgment as a matter

25   of law on invalidity of United States Patent No. 8,010,043 ("the '043 Patent").  (Doc.

26   No. 969.)  On June 13, 2014, SS/L filed a renewed motion for judgment as a matter of

27   law or for new trial regarding the invalidity of the asserted claims of the '043 Patent.

28   (Doc. No. 1064.)  On July 11, 2014, Plaintiff ViaSat, Inc. ("ViaSat") filed a response

in opposition to SS/L's motion.  (Doc. No. 1115.)  On July 25, 2014, SS/L filed a reply in support of its motion.  (Doc. No. 1148.)  On August 7, 2014, the Court held a hearing.  Charles K. Verhoeven, Sean S. Pak, Adam B. Wolfson, and Michelle A. Clark appeared for ViaSat.  William C. Carmody, Jacob W. Buchdahl, Joseph S. Grinstein, and Amanda K. Bonn appeared for SS/L.  For the following reasons, the Court denies SS/L's motion.

## I.   Background

This case arises from a dispute between two companies in the satellite communications industry over contractual provisions and intellectual property.  ViaSat is a corporation that develops commercial and military satellite and digital communication technologies.  (Doc. No. 475 ¶¶ 9-11.)  SS/L is in the business of manufacturing communications satellites and is a wholly owned subsidiary of Loral.  (Doc. No. 475 ¶ 14; Doc. No. 901 at 90.)  In 2006, ViaSat and SS/L began negotiating over the possibility of collaborating on a major satellite construction project ("ViaSat-1").  (Doc. No. 475 ¶ 32; Doc. No. 486 ¶ 32.)  Eventually, ViaSat and SS/L entered into contractual agreements, including a contract for the construction of ViaSat-1 (the "Build Contract") and multiple nondisclosure agreements ("NDAs").  (Doc. No. 475 ¶¶ 40-51; Doc. No. 486 ¶¶ 40-51.)

Around the same time, SS/L commenced a separate satellite project with Hughes Network Systems ("Hughes") to build a satellite known as the Jupiter-1.  (Doc. No. 475 ¶ 56; Doc. No. 486 ¶ 56.)  According to ViaSat, SS/L gained access to confidential information about ViaSat's technologies over the course of the ViaSat-1 project and then passed this information on to Hughes for use on the Jupiter-1.  (Doc. No. 475 ¶¶ 55-72.)

On February 1, 2012, ViaSat filed this lawsuit, and on November 14, 2013, it filed a fourth amended complaint.  (Doc. Nos. 1, 475.)  ViaSat alleged that SS/L and Loral had infringed the '043 Patent, as well as United States Patents No. 8,107,875 ("the '875 patent"), No. 8,068,827 ("the '827 patent"), and No. 7,773,942 ("the '942

Patent"). (Doc. No. 475 at 73-88, 89-104, 105-120, 121-136.) ViaSat also alleged that SS/L and Loral had breached the Build Contract and NDAs. (Id. at 137-151.) SS/L filed counterclaims alleging that ViaSat had infringed United States Patents No. 6,400,696 and No. 7,219,132. (Doc. No. 486 at 38-40, 40-41.) ViaSat later withdrew its claims based on the '942 Patent, and SS/L withdrew its counterclaims. (See Doc. No. 842 at 8-9; Doc. No. 1014.)

The '043 Patent is entitled "Capacity Maximization for a Unicast Spot Beam Satellite System." (Doc. No. 501-2 at 6.) The '043 Patent involves the effects that interference and noise in a satellite system have on the system's data-carrying capacity. According to ViaSat, prior satellite designs sought to minimize interference in a satellite system so that the signal-to-interference ratio of the system ("C/I") would be greater than the signal-to-noise ratio ("C/N"). (Doc. No. 990 at 91-92.) According to ViaSat, the key insight of the '043 Patent was to instead allow an interference-dominated environment: that is, a satellite system in which C/I is less than C/N. (Id.) The '043 Patent discloses a method for adjusting the values of interference and noise in a system in order to maximize its data-carrying capacity, rather than attempting to limit interference. (Id. at 92-95.)

Prior to trial, SS/L moved for summary judgment of non-infringement or, in the alternative, partial invalidity of the '043 Patent. (Doc. No. 501.) SS/L argued that the '043 Patent was invalid as anticipated by R. Rinaldo and R. De Gaudenzi, Capacity Analysis and System Optimization for the Forward Link of Multi-Beam Satellite Broadband Systems Exploiting Adaptive Coding and Modulation, International Journal of Satellite Communications and Networking 2004 ("Rinaldo & De Gaudenzi"). (Doc. No. 501-1 at 20.) The Court denied the motion based on genuine issues of material fact. (Doc. No. 652 at 8.)

The parties tried their case to a jury beginning on March 25, 2014. (Doc. No. 901.) The jury reached a verdict on April 24, 2014. (Doc. No. 1021 at 3.) The jury determined that SS/L was liable for breach of contract and infringement of the '043,

1   '827, and '875 patents and awarded damages.  (Doc. No. 1014.)  The jury found that

2   SS/L had not met its burden of proving by clear and convincing evidence that the '043

3   Patent was invalid.  (Id. at 7-8.)  In this motion, SS/L asks the Court to rule that, as a

4   matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, the '043 Patent

5   is invalid as anticipated or obvious.  (Doc. No. 1064 at 7-18, 18-28; see also Doc. No.

6   969.)  Alternatively, SS/L moves for a new trial on the validity of the '043 Patent

7   pursuant to Rule 59.  (Doc. No. 1064 at 28.)

8   **II.   Legal Standards**

9        *A.   Legal Standard of Judgment as a Matter of Law*

10        The law of the regional circuit, here the Ninth Circuit, governs the standards for

11   deciding a Rule 50 motion for judgment as a matter of law.  See, e.g., Leader Techs.,

12   Inc. v. Facebook, Inc., 678 F.3d 1300, 1305 (Fed. Cir. 2012).  Under Federal Rule of

13   Civil Procedure 50, a court should render judgment as a matter of law when "a party

14   has been fully heard on an issue during a jury trial and the court finds that a reasonable

15   jury would not have a legally sufficient evidentiary basis to find for the party on that

16   issue . . . ."  Fed. R. Civ. P. 50(a)(1); see Reeves v. Sanderson Plumbing Prods., 530

17   U.S. 133, 149 (2000).  In other words, the jury verdict should be overturned and motion

18   for judgment as a matter of law granted if the evidence "permits only one reasonable

19   conclusion, and that conclusion is contrary to the jury's verdict."  Pavao v. Pagay, 307

20   F.3d 915, 918 (9th Cir. 2002); accord Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d

21   1301, 1309 (Fed. Cir. 2009); see also Hangarter v. Provident Life & Accident Ins. Co.,

22   373 F.3d 998, 1005 (9th Cir. 2004) ("judgment as a matter of law should be granted

23   only if the verdict is 'against the great weight of the evidence, or it is quite clear that

24   the jury has reached a seriously erroneous result.'").

25        In deciding a motion for judgment as a matter of law, the district court must view

26   the evidence in the light most favorable to the non-moving party and draw all

27   reasonable evidentiary inferences in favor of the non-moving party.  Reeves, 530 U.S.

28   at 150; Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 802 (9th Cir. 2009).  A

district court must uphold a jury's verdict even if the record contains evidence that might support a contrary conclusion to the jury's verdict. Pavao, 307 F.3d at 918. The court "is not to make credibility determinations or weigh the evidence." Wintaro v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001). "The court must accept the jury's credibility findings consistent with the verdict." Id. (internal quotation marks omitted). Finally, the district court must "accept the jury's credibility findings consistent with the verdict" and "disregard all evidence favorable to the moving party that the jury is not required to believe" because "[w]hen two sets of inferences find support in the record, the inferences that support the jury's verdict of course win the day." Id. at 1286-87.

### B.     Legal Standard for New Trial

Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial on some or all of the issues and to any party after a jury trial. Fed. R. Civ. P. 59(a)(1). Rule 59 does not specify specific grounds for new trial, but a court is bound to grant a new trial for "grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003); Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (internal citations and quotation marks omitted).  In patent cases, the law of the regional circuit, here the Ninth Circuit, governs the standards for deciding a Rule 59 motion for new trial. Finisar Corp. v. DirecTV Grp, Inc., 523 F.3d 1323, 1328 (Fed. Cir. 2008).  In the Ninth Circuit, "a district court may not grant a new trial simply because it would have arrived at a different verdict." Wallace v. City of San Diego, 479 F.3d 616, 630 (9th Cir. 2007) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted).  But "the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 742 F.3d 377, 390 (9th Cir. 2014).

//

//

12cv260

1    *C.    Legal Standard for Anticipation*

2        A patent is presumed valid.  35 U.S.C. § 282; <u>Laryngeal Mask Co. v. Ambu</u>, 618

3    F.3d 1367, 1373 (Fed. Cir. 2010).  "[A] moving party seeking to invalidate a patent at

4    summary judgment must submit such clear and convincing evidence of facts underlying

5    invalidity that no reasonable jury could find otherwise." <u>SRAM Corp. v. AD-II Eng'g,</u>

6    <u>Inc.</u>, 465 F.3d 1351, 1357 (Fed. Cir. 2006).

7        "[I]nvalidity by anticipation requires that the four corners of a single, prior art

8    document describe every element of the claimed invention, either expressly or

9    inherently, such that a person of ordinary skill in the art could practice the invention

10   without undue experimentation." <u>Advanced Display Sys., Inc. v. Kent State Univ.</u>, 212

11   F.3d 1272, 1282 (Fed. Cir. 2000).  If a prior art reference does not expressly set forth

12   a particular claim element, the reference may still anticipate if the element is inherent

13   in the prior art.  <u>In re Robertson</u>, 169 F.3d 743, 745 (Fed. Cir. 1999).  The claim

14   element must necessarily be present in the prior art. <u>Id.</u>  "Inherency, however, may not

15   be established by probabilities or possibilities.  The mere fact that a certain thing may

16   result from a given set of circumstances is not sufficient." <u>Bettcher Indus., Inc. v.</u>

17   <u>Buznl USA, Inc.</u>, 661 F.3d 629, 639 (Fed. Cir. 2011) (quoting <u>In re Oelrich</u>, 666 F.2d

18   578, 581 (C.C.P.A. 1981)); <u>see also</u> <u>Trintec Indus., Inc. v. Top-U.S.A. Corp.</u>, 295 F.3d

19   1292, 1297 (Fed. Cir. 2002) ("Inherency does not embrace probabilities or

20   possibilities.")  Thus, if prior art potentially has all claim elements, but does not

21   necessarily have all claim elements, the prior art does not anticipate the patent claim.

22       Proving anticipation of a claim requires clear and convincing evidence that each

23   and every limitation of the claim is present in a single prior art reference. <u>Sanofi-</u>

24   <u>Synthelabo v. Apotex, Inc.</u>, 470 F.3d 1368, 1375 (Fed. Cir. 2006).  "'Clear and

25   convincing' evidence [is] evidence which produces in the mind of the trier of fact an

26   abiding conviction that the truth of a factual contention is 'highly probable.'" <u>Price v.</u>

27   <u>Symsek</u>, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (quoting <u>Buildex, Inc. v. Kason Indus.,</u>

28   <u>Inc.</u>, 849 F.2d 1461, 1463 (Fed. Cir. 1988)).

1      *D.    Legal Standard for Obviousness*

2      A patent is invalid as obvious "if the differences between the subject matter

3  sought to be patented and the prior art are such that the subject matter as a whole would

4  have been obvious at the time the invention was made to a person having ordinary skill

5  in the art to which said subject matter pertains."  35 U.S.C. § 103.  Obviousness is a

6  legal question based on underlying factual determinations.  Eisai Co. Ltd. v. Dr.

7  Reddy's Lab., Ltd., 533 F.3d 1353, 1356 (Fed. Cir. 2008).  "The factual determinations

8  underpinning the legal conclusion of obviousness include 1) the scope and content of

9  the prior art, 2) the level of ordinary skill in the art, 3) the differences between the

10  claimed invention and the prior art, and 4) evidence of secondary factors."  Id. (citing

11  Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966)).  Secondary factors include

12  "commercial success, long felt but unsolved needs, [and] failure of others . . . ."  KSR

13  Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007) (quoting Graham, 383 U.S. at 17-

14  18).  Judgment as a matter of law based on obviousness is appropriate where "the prior

15  art's content, the patent claim's scope, and the level of ordinary skill in the art are not

16  in material dispute and the claim's obviousness is apparent."  See id. at 427 (applying

17  obviousness standard on motion for summary judgment).

18      A patent is likely to be obvious if it merely yields predictable results by

19  combining familiar elements according to known methods.  Id. at 406.  "[A] patent

20  composed of several elements is not proved obvious merely by demonstrating that each

21  of its elements was, independently, known in the prior art."  Id. at 418.  "If a person of

22  ordinary skill in the art can implement a predictable variation, and would see the

23  benefit of doing so, § 103 likely bars its patentability."  Id. at 417.  In determining

24  obviousness, courts do not need to find "precise teachings directed to the specific

25  subject matter of the challenged claim, for a court can take account of the inferences

26  and creative steps that a person of ordinary skill in the art would employ."  Id. at 418.

27  A person of ordinary skill interprets the prior art "using common sense and appropriate

28  perspective."  Unigene Labs., Inc., 655 F.3d 1352, 1361 (Fed. Cir. 2011) (citing KSR

1 | Int'l Co., 550 U.S. at 421).

2 | **III.   Discussion**

3 |      In this motion, SS/L asks the Court to rule that, as a matter of law under Rule

4 | 50(b) of the Federal Rules of Civil Procedure, the '043 Patent is invalid as anticipated

5 | or obvious.  (Doc. No. 1064 at 7-18, 18-28; see also Doc. No. 969.)  Alternatively,

6 | SS/L moves for a new trial on the validity of the '043 Patent pursuant to Rule 59.  (Doc.

7 | No. 1064 at 28.)

8 |      *A.     Anticipation*

9 |      SS/L describes three bodies of prior art that it claims anticipated the '043 Patent.

10 | With respect to Rinaldo & De Gaudenzi, SS/L argues that ViaSat's expert, Mr. Sturza,

11 | testified that Rinaldo & De Gaudenzi discloses an interference-dominated system,

12 | contrary to ViaSat's assertion prior to trial.  (Id. at 10.)  SS/L argues that the evidence

13 | does not support Mr. Sturza's other testimony about Rinaldo & De Gaudenzi.  (Id. at

14 | 11-12.)  In addition, SS/L cites iPSTAR, a satellite that SS/L built, as prior art that

15 | anticipated the '043 Patent.  (Id. at 12-16.)  SS/L argues that the trial testimony of Mr.

16 | Thompson, which ViaSat's witnesses did not sufficiently rebut, proved by clear and

17 | convincing evidence that iPSTAR anticipated the '043 Patent.  (Id. at 13-14.)  Finally,

18 | SS/L argues that Nakahira et al., A Resource Allocation Scheme for QoS Provision in

19 | Multi-beam Mobile Satellite Communication Systems, IEEE 2007 ("Nakahira")

20 | anticipated the '043 Patent.  (Id. at 16-18.)  It claims that Mr. Sturza's testimony to the

21 | contrary was erroneous.  (Id.)

22 |      In its opposition, ViaSat argues that the evidence it offered at trial demonstrated

23 | that the prior art that SS/L introduced did not disclose all the elements of the '043

24 | Patent.  (Doc. No. 1115.)  In particular, ViaSat argues that SS/L failed to provide clear

25 | and convincing evidence that any of the alleged prior-art references disclosed a first

26 | spot beam that is interference-dominated.  (Id. at 11.)  ViaSat further contends that

27 | SS/L's references do not disclose a satellite configured to maximize capacity by using

28 | a beam pattern with a specific number of colors and specific beam spacing that results

in higher data-carrying capacity than that achieved with alternate numbers of colors and beam spacings.  (Id. at 17.)

A court may overturn a jury verdict and grant motion for judgment as a matter of law if the evidence presented at trial "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009); see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1005 (9th Cir. 2004) ("judgment as a matter of law should be granted only if the verdict is 'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'").  In deciding a motion for judgment as a matter of law, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable evidentiary inferences in favor of the non-moving party. Reeves, 530 U.S. at 150; Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 802 (9th Cir. 2009).

At trial, ViaSat's expert Mr. Sturza testified that the alleged prior-art references did not disclose two elements of the '043 Patent: the interference-dominated limitation and the data capacity maximization limitation.  Mr. Sturza testified that these elements were key concepts of the invention. (Doc. No. 990 at 92.) He testified that calculations of interference according to the '043 Patent exclude self-interference, whereas the models in the prior art include self-interference, and that this was an important distinction from the perspective of a person skilled in the art. (Doc. No. 975 at 291-92, 293-94, 296-97, 299.)  Mr. Sturza also testified that the prior art references do not maximize capacity in the manner that the '043 Patent does.  (Id. at 295-96, 297-98, 299.)

ViaSat presented evidence at trial that Rinaldo suggests there are no transmissions to an interference-dominated subscriber terminal, as the plain claim language requires.  (Doc. No. 975 at 296-97.)  Instead, Rinaldo disclosed a satellite designed to cut high-interference users out of the system, which is completely different

12cv260

from the concept of having interference-dominated terminals in the system to maximize capacity. (Id.) Additionally, Rinaldo does not disclose a value for the C/N ratio of any spot beam in the reference. (Doc. No. 991 at 86-87.) ViaSat also presented evidence that Rinaldo does not satisfy the maximization limitation of the '043 Patent because, while the reference has a fixed beam spacing of 4 dB, it only considered three discrete values for the numbers of colors in the beam. (Doc. No. 975 at 2712.)

With respect to iPSTAR, ViaSat presented evidence at trial that the reference does not exclude beam self-interference in its interference calculations. (Doc. No. 975 at 290-93, 311.) Moreover, contrary to the '043 patent, rather than disclosing that the use of interference-dominated environments are associated with maximum capacity, ViaSat presented evidence that iPSTAR focuses on improving the signal-to-interference ratio by reducing interference at the worst-case locations. (See S-1311 at SSL0088882.) In addition, ViaSat presented evidence that iPSTAR documentation lacks location-specific data for C/I and C/N, providing instead only percentile values. (Doc. No. 975 at 294) The jury was not required to accept the testimony of Mark Thompson, who disagreed with Mr. Sturza. (Doc. No. 991 at 28.) Mr. Sturza testified that Mr. Thompson's interference calculations appeared to improperly include self-interference, thereby yielding an unreliable C/I value. (Doc. No. 975 at 294.) ViaSat also presented testimony that Mr. Thompson's own documents showed that iPSTAR opted for a beam spacing that resulted in less capacity than an alternative beam spacing and therefore did not meet the maximization limitation of the '043 Patent. (Id. at 295-96.)

With respect to Nakahira, ViaSat presented evidence at trial that the C/I values disclosed in the reference do not exclude self-interference. (Doc. No. 975 at 290-93, 311.) ViaSat also presented evidence that Nakahira does not provide location-specific C/I and C/N data within a single spot beam. (Id. at 300) Based on this evidence, a reasonable jury could have found, as this jury did, that SS/L did not prove by clear and convincing evidence that the '043 Patent is invalid by anticipation. Accordingly, the

1   Court declines to overturn the jury's verdict on this issue.

2       In the Ninth Circuit, "a district court may not grant a new trial simply because

3   it would have arrived at a different verdict." Wallace v. City of San Diego, 479 F.3d

4   616, 630 (9th Cir. 2007) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot

5   Springs, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted). But

6   "the district court can grant a new trial under Rule 59 on any ground necessary to

7   prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com

8   Ltd., 742 F.3d 377, 390 (9th Cir. 2014). Because a reasonable jury could have found

9   that the alleged prior-art references did not disclose the interference-dominated

10  limitation of the '043 Patent or the capacity maximization limitation of the '043 Patent,

11  SS/L has not demonstrated that a new trial is necessary. Accordingly, the Court denies

12  SS/L's motion for a new trial on the basis of invalidity by anticipation of the '043

13  Patent.

14       *B.   Obviousness*

15      In the alternative, SS/L argues that it is entitled to judgment as a matter of law

16  that the asserted claims of the '043 Patent are invalid as obvious. (Doc. No. 1064 at 18-

17  28.) SS/L contends that the combined works of researchers at Nippon Telephone &

18  Telegraph Co. between 2003 and 2007 ("Nakasuga" and "Sagawa") rendered the '043

19  Patent obvious. (Id. at 20-24.) In addition, SS/L argues that, to the extent that either

20  Rinaldo & De Gaudenzi or iPSTAR falls short of fully anticipating the '043 Patent, a

21  combination of those works, or of those works and additional preexisting works, render

22  the '043 Patent obvious. (Id. at 24-26.)

23      In its opposition, ViaSat argues that the prior art references, even considered in

24  combination, fail to disclose the interference-dominated limitation of the '043 Patent

25  as well as the data capacity maximization limitation of the '043 Patent. (Doc. No. 1115

26  at 19-23.) ViaSat further argues that SS/L did not meet its burden of offering a valid

27  motivation for a person skilled in the art to combine the prior art references that SS/L

28  cites in order to understand all of the concepts disclosed in the '043 Patent. (Id. at 23.)

Finally, ViaSat argues that the jury was entitled to find that the claims of the '043 Patent were not invalid in light of other compelling objective evidence of nonobviousness, such as the fact that other satellite developers had failed to achieve results comparable to the ViaSat-1.  (Id. at 24-25.)

A court may overturn a jury verdict and grant motion for judgment as a matter of law if the evidence presented at trial "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009); see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1005 (9th Cir. 2004) ("judgment as a matter of law should be granted only if the verdict is 'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'").  In deciding a motion for judgment as a matter of law, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable evidentiary inferences in favor of the non-moving party. Reeves, 530 U.S. at 150; Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 802 (9th Cir. 2009).

At trial, ViaSat's expert Mr. Sturza testified that none of Rinaldo, iPSTAR, or Nakahira disclosed two key elements of the '043 Patent: the interference-dominated limitation and the data capacity maximization limitation.  (See Doc. No. 975 at 291-99.)  Mr. Sturza also testified that Sagawa and Nakasuga failed to disclose these limitations. With respect to Sagawa, ViaSat presented evidence that the equation used to derive C/I does not account for self-interference such that it can reliably indicate whether C/I is less than C/N.  (Id. at 299.) ViaSat also presented evidence that Sagawa sought to deterimine the optimal number of beams rather than seeking to optimize the beam spacing.  (Id.)  With respect to Nakasuga, ViaSat presented evidence that the reference fails to disclose the interference-dominated limitation because the reference did not disclose a C/N ratio.  (Id. at 297-98.)  Based on this evidence, the jury was entitled to find that SS/L did not prove by clear and convincing evidence that the '043

1  Patent is invalid for obviousness.  Accordingly, the Court declines to overturn the jury's
2  verdict on this issue.

3      In the Ninth Circuit, "a district court may not grant a new trial simply because
4  it would have arrived at a different verdict." <u>Wallace v. City of San Diego</u>, 479 F.3d
5  616, 630 (9th Cir. 2007) (quoting <u>Silver Sage Partners, Ltd. v. City of Desert Hot
6  Springs</u>, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted).  But
7  "the district court can grant a new trial under Rule 59 on any ground necessary to
8  prevent a miscarriage of justice." <u>Experience Hendrix L.L.C. v. Hendrixlicensing.com
9  Ltd.</u>, 742 F.3d 377, 390 (9th Cir. 2014).  Because a reasonable jury could have found
10 that the alleged prior-art references, even in combination, did not disclose the
11 interference-dominated limitation of the '043 Patent or the capacity maximization
12 limitation of the '043 Patent, SS/L has not demonstrated that a new trial is necessary.
13 Accordingly, the Court denies SS/L's motion for a new trial on the basis of invalidity
14 for obviousness of the '043 Patent.

15 **IV.    Conclusion**

16     SS/L has not met its burden of establishing that the evidence presented at trial
17 permits only one reasonable conclusion, that the '043 Patent is invalid as anticipated
18 or obvious.  <u>See</u> <u>Pavao v. Pagay</u>, 307 F.3d 915, 918 (9th Cir. 2002).  Nor does SS/L
19 present sufficient grounds to necessitate a new trial on the invalidity of the '043 Patent.
20 Accordingly, the Court denies SS/L's motion for judgment as a matter of law or for new
21 trial.

22     **IT IS SO ORDERED.**

23 DATED: August 8, 2014

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

12cv260