1
2
3
4
5
6
7
8
9
10
11
12
13

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

15
16

VIASAT, INC., VIASAT
COMMUNICATIONS, INC., f/k/a
WILDBLUE COMMUNICATIONS,
INC.,

Plaintiffs,

vs.

SPACE SYSTEMS/LORAL, INC.,
LORAL SPACE &
COMMUNICATIONS, INC.,

Defendants.

CASE NO. 3:12-CV-00260-H
(WVG)

**ORDER DENYING
DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF
LAW OR FOR NEW TRIAL
REGARDING PRIORITY DATE
OF THE '875 PATENT (7 OF 12)**

[Doc. Nos. 960, 1053]

On April 9, 2014, Defendant Space Systems/Loral, Inc. ("SS/L") filed a motion
seeking judgment as a matter of law to establish the earliest date at which written
support for United States Patent No. 8,107,875 ("the '875 Patent") existed.  (Doc. No.

960.)  On June 13, 2014, SS/L filed a renewed motion for judgment as a matter of law or a new trial regarding the priority date and invalidity of the '875 Patent.  (Doc. No. 1053.)  On July 11, 2014, Plaintiffs ViaSat, Inc. and ViaSat Communications, Inc., f/k/a Wildblue Communications, Inc. (collectively, "ViaSat") filed a response in opposition to SS/L's motion.  (Doc. No. 1112.)  On July 25, 2014, SS/L filed a reply in support of its motion.  (Doc. No. 1159.)  The Court held a hearing on August 7, 2014. Charles K. Verhoeven, Sean S. Pak, Adam B. Wolfson, and Michelle A. Clark appeared for ViaSat.  William C. Carmody, Jacob W. Buchdahl, Joseph S. Grinstein, and Amanda K. Bonn appeared for SS/L.  For the following reasons, the Court denies SS/L's motion.

## I.    Background

This case arises from a dispute between two companies in the satellite communications industry over contractual provisions and intellectual property. ViaSat is a corporation that develops commercial and military satellite and digital communication technologies.  (Doc. No. 475 ¶¶ 9-11.)  SS/L is in the business of manufacturing communications satellites and is a wholly owned subsidiary of Loral Space & Communications, Inc. ("Loral").  (Doc. No. 475 ¶ 14; Doc. No. 901 at 90.) In 2006, ViaSat and SS/L began negotiating over the possibility of collaborating on a major satellite construction project ("ViaSat-1").  (Doc. No. 475 ¶ 32; Doc. No. 486 ¶ 32.)  Eventually, ViaSat and SS/L entered into contractual agreements, including a contract for the construction of ViaSat-1 (the "Build Contract") and multiple nondisclosure agreements ("NDAs").  (Doc. No. 475 ¶¶ 40-51; Doc. No. 486 ¶¶ 40-51.)

Around the same time, SS/L commenced a separate satellite project with Hughes Network Systems ("Hughes") to build a satellite known as the Jupiter-1.  (Doc. No. 475 ¶ 56; Doc. No. 486 ¶ 56.)  According to ViaSat, SS/L gained access to confidential information about ViaSat's technologies over the course of the ViaSat-1 project and then passed this information on to Hughes for use on the Jupiter-1.  (Doc. No. 475 ¶¶ 55-72.)

On February 1, 2012, ViaSat filed this lawsuit, and on November 14, 2013, it filed a fourth amended complaint. (Doc. Nos. 1, 475.)  ViaSat alleged that SS/L and Loral had infringed the '875 Patent, along with United States Patents No. 8,010,043 ("the '043 patent"), No. 8,068,827 ("the '827 patent"), and No. 7,773,942 ("the '942 Patent"). (Doc. No. 475 at 73-88, 89-104, 105-120, 121-136.) ViaSat also alleged that SS/L and Loral had breached the Build Contract and NDAs.  (Id. at 137-151.)  SS/L filed counterclaims alleging that ViaSat had infringed United States Patents No. 6,400,696 and No. 7,219,132.  (Doc. No. 486 at 38-40, 40-41.)  ViaSat later withdrew its claims based on the '942 Patent, and SS/L withdrew its counterclaims.  (See Doc. No. 842 at 8-9; Doc. No. 1014.)

The '875 Patent is entitled "Placement of Gateways Near Service Beams." (Doc. No. 1053-2 at 2; Doc. No. 901 at 11.)  Designers of satellite systems can achieve different outcomes through different geographic arrangements of gateway terminals and service beams.  The purpose of the '875 Patent is to increase data-carrying capacity of a satellite system through a more efficient geographic placement of gateway terminals and service beams.  (Doc. No. 923 at 248-49.)  The '875 Patent issued from a chain of applications: (1) provisional application number 60/827,038, filed on September 26, 2006 (the "2006 provisional"); (2) application number PCT/US2007/079567, filed on September 26, 2007 (the "2007 application"); and (3) application number 12/411,315, filed on March 25, 2009 (the "2009 application").

Prior to trial, SS/L filed a motion seeking partial summary judgment to establish the earliest date at which written support for the '875 Patent existed.  (Doc. No. 306.)  The Court denied the motion based on genuine issues of material fact.  (Doc. No. 433.)

The parties tried their case to a jury beginning on March 25, 2014.  (Doc. No. 901.)  The jury reached a verdict on April 24, 2014.  (Doc. No. 1021 at 3.)  The jury determined that SS/L was liable for breach of contract and infringement of the '043, '827, and '875 Patents and awarded ViaSat damages.  (Doc. No. 1014 at 14.)  The jury found that SS/L failed to prove by clear and convincing evidence that the '875 Patent

was invalid for anticipation or obviousness.  (Id. at 6-7.)  The jury found no liability for Loral.  (Id. at 5-6, 8.)

## II.     Legal Standards

### A.     Legal Standard for Judgment as a Matter of Law

The law of the regional circuit, here the Ninth Circuit, governs the standards for deciding a Rule 50 motion for judgment as a matter of law.  See, e.g., Leader Techs., Inc. v. Facebook, Inc., 678 F.3d 1300, 1305 (Fed. Cir. 2012).  Under Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1); see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000).  In other words, the jury verdict should be overturned and motion for judgment as a matter of law granted if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009); see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1005 (9th Cir. 2004) ("judgment as a matter of law should be granted only if the verdict is 'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'").

In deciding a motion for judgment as a matter of law, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable evidentiary inferences in favor of the non-moving party.  Reeves, 530 U.S. at 150; Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 802 (9th Cir. 2009).  A district court must uphold a jury's verdict even if the record contains evidence that might support a contrary conclusion to the jury's verdict.  Pavao, 307 F.3d at 918.  The court "is not to make credibility determinations or weigh the evidence."  Wintaro v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001) (internal quotation marks omitted).  Finally, the district court must "accept the jury's credibility

- 4 -

findings consistent with the verdict" and "disregard all evidence favorable to the moving party that the jury is not required to believe" because "[w]hen two sets of inferences find support in the record, the inferences that support the jury's verdict of course win the day." Id. at 1283, 1286-87.

B.   Legal Standard for New Trial

Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial on some or all of the issues and to any party after a jury trial. Fed. R. Civ. P. 59(a)(1). Rule 59 does not specify grounds for new trial, but a court is bound to grant a new trial for "grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003); Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (internal citations and quotation marks omitted). In patent cases, the law of the regional circuit, here the Ninth Circuit, governs the standards for deciding a Rule 59 motion for new trial. Finisar Corp. v. DirecTV Grp, Inc., 523 F.3d 1323, 1328 (Fed. Cir. 2008). In the Ninth Circuit, "a district court may not grant a new trial simply because it would have arrived at a different verdict." Wallace v. City of San Diego, 479 F.3d 616, 630 (9th Cir. 2007) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted). But "the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 742 F.3d 377, 390 (9th Cir. 2014).

When a party moves for a new trial based on erroneous jury instructions, the moving party must establish that "(1) it made a proper and timely objection to the jury instructions; (2) those instructions were legally erroneous; (3) the errors had prejudicial effect; and (4) it requested alternative instructions that would have remedied the error." Advanced Display Sys. v. Kent State Univ., 212 F.3d 1272, 1281 (Fed. Cir. 2000) (internal citations omitted). The determination of whether the instructions were legally erroneous is a question of law. Id. "When reviewing an instruction for legal error, this court reads the instructions as a whole and considers them in light of the entire charge

1    to the jury." Id.  Furthermore, "[t]he grant of a new trial is 'confided almost entirely

2    to the exercise of discretion on the part of the trial court.'"  Murphy v. City of Long

3    Beach, 914 F.2d 183, 186 (9th Cir. 1990); see City Solutions v. Clear Channel

4    Commc'n., Inc., 365 F.3d 835, 843 (9th Cir. 2004).

5          *C.    Legal Standard for Priority Date of Patent Under 35 U.S.C. § 112*

6          A patent application may claim priority to and receive the benefit of the filing

7    date of an earlier-filed patent application only if the invention claimed in the later

8    application is fully disclosed in the earlier application. 35 U.S.C. § 112, ¶ 1.  A patent's

9    "specification shall contain a written description of the invention, and of the manner

10   and process of making and using it, in such full, clear, concise, and exact terms as to

11   enable any person skilled in the art to which it pertains, or with which it is most nearly

12   connected to make and use the same." Id.  The description "must clearly allow persons

13   of ordinary skill in the art to recognize that [the inventor] invented what is claimed."

14   Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (quoting

15   Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563 (Fed. Cir. 1991)). The description

16   need not explicitly claim the invention, but "a description that merely renders the

17   invention obvious does not satisfy the requirement." Ariad Pharm, 598 F.3d at 1351.

18   Whether a description in an earlier-filed patent application meets these standards is a

19   question of fact.  Id.

20         A jury is entitled to rely on the opinion of an expert to determine whether a

21   patent description conveys to one of ordinary skill in the art that the inventor possessed

22   the invention. Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1371 (Fed.

23   Cir. 2009).  There must be evidence to support the expert's opinion that the written

24   description discloses to one of ordinary skill in the art the patent's claims. Id. (holding

25   that a jury's reliance on expert's opinion is proper where the expert "explained how,

26   in his opinion, a person of ordinary skill in the art would understand those [patent

27   application] statements"); PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299,

28   1310 (Fed. Cir. 2008) (finding the expert's opinion insufficient and conclusory because

it failed to persuasively demonstrate the purported inventor was in possession of the claimed invention at the time of the filing date). And, an expert is entitled to rely on the specification as a whole in determining whether an inventor possessed the claimed invention. See In re Skvorecz, 580 F.3d 1262, 1269-70 (Fed. Cir. 2009)

> D. *Legal Standard for Invalidity Based on Anticipation Under 35 U.S.C. § 102(b)*

Under 35 U.S.C. § 102(b), a patent is invalid for anticipation if a single prior art reference discloses each element of the claim at issue. In re Montgomery, 677 F.3d 1375, 1379 (Fed. Cir. 2012), cert. denied 133 S. Ct. 788 (2012). Anticipation exists if the invention at issue was available for public use or on sale for more than one year prior to the date of the patent application. 35 U.S.C. § 102(b). This limitation under 35 U.S.C. § 102(b) is known as the "on sale" bar.

> [T]he on-sale bar under 35 U.S.C. § 102(b) applies when (1) the invention at issue had become the 'subject of a commercial offer for sale' more than one year before the filing of the patent application; and (2) the invention was ready for patenting, either by, for example, having that invention reduced to practice or by preparing 'drawings or other descriptions of the invention' that would enable one skilled in the art to practice the invention.

Special Devices, Inc. v. OEA, Inc., 270 F.3d 1353, 1354-55 (Fed. Cir. 2001) (quoting Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67-68 (1998)). The Federal Circuit has held that "anticipation cannot be proved by merely establishing that one practices the prior art." Zenith Elec. Corp. v. PDI Commc'n Sys., Inc., 522 F.3d 1348, 1363 (Fed. Cir. 2008). Instead, the law "requires patent challengers to prove invalidity by clear and convincing evidence." Id. (internal quotation marks omitted).

## III.   Discussion

> A. *Invalidity of '875 Patent under On-Sale Bar*

SS/L argues that the Court should grant judgment as a matter of law, or in the alternative a new trial, that the earliest date at which written support for the '875 Patent

//

//

existed was from the 2009 application,[1] and that the '875 Patent is therefore invalid under the on-sale bar of 35 U.S.C. § 102(b). (Doc. Nos. 960, 1053.)  SS/L contends that the 2006 provisional neither explicitly nor inherently discloses an embodiment of Claim 12 to one of ordinary skill in the art and that the relevant material of Claim 12 was first apparent in the additional information included with the 2009 application filing. (Doc. No. 1053 at 8-20.)  SS/L argues further that ViaSat's expert Bartone improperly based his analysis of the 2006 provisional on an obvious-type analysis rather than the explicit or inherent teachings in the application. (Doc. No. 1053 at 7, 12.)  SS/L also asserts that ViaSat failed to produce any evidence during trial concerning the 2007 application. (Id. at 6.)

SS/L argues that if the earliest date at which ViaSat can claim priority to the '875 Patent is 2009, then the '875 Patent is invalid for anticipation. (Doc. No. 1053 at 3.)  SS/L points to Dr. Schindall's expert testimony that the February 2008 program readiness review for the ViaSat-1 satellite disclosed each limitation of Claim 12. (Id. at 4; see Doc. No. 991 at 116-20, 129-31.)  Since SS/L claims that the priority date of the '875 Patent should be from the 2009 application, SS/L contends that this brings the '875 Patent under the on-sale bar of 35 U.S.C. § 102(b). (Doc. No. 1053 at 4-5.)

ViaSat argues that it presented sufficient evidence at trial to allow a reasonable jury to find that the 2006 provisional expressly disclosed to one of ordinary skill in the art all the features of Claim 12 of the '875 Patent. (Doc. No. 1112 at 7.)  ViaSat contends that Dr. Bartone did not engage in an obviousness analysis. (Doc. No. 1112 at 14.)  ViaSat argues further that an expert is entitled to consider the specification as a whole in conducting a written description analysis. (Id.)  ViaSat adds that SS/L failed to identify the 2007 application as a basis for their motion for judgment as a matter of law in their pre-verdict motion and have therefore waived this argument. (Id. at 17.)

---

[1]The '875 Patent issued from a chain of applications: (1) the 2006 provisional; (2) the 2007 application; and (3) the 2009 application.

ViaSat contends that even if SS/L had not waived this argument, ViaSat offered expert testimony from Bartone that all of the applications leading to the '875 Patent contained key disclosures.  (Id.)

Whether a description in an earlier filing teaches sufficient information to a person of ordinary skill in the art such that the priority date of the earlier filing should apply is a question of fact, and a jury is entitled to rely on expert testimony in making the determination.  Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1371 (Fed. Cir. 2009).  Here, the jury heard the testimony of both experts on what a person of ordinary skill in the art would have learned from the description of the 2006 provisional.  Both experts used the text of the 2006 provisional to support their opinions.  Dr. Bartone relied on the specification as a whole in determining whether an inventor possessed the claimed invention.  See In re Skvorecz, 580 F.3d 1262, 1269-70 (Fed. Cir. 2009).

During trial, ViaSat's expert Dr. Bartone testified that the 2006 provisional provided a thorough description of the invention.  (Doc. No. 923 at 255.)  Dr. Bartone relied on specific portions of the 2006 provisional in support of his opinion that the '875 Patent should benefit from the priority date of the 2006 provisional filing.  (Id. at 259-73.)  He testified that the 2006 provisional teaches to one of ordinary skill in the art how to do frequency reuse or color reuse when the service and user beams are in proximity to each other.  (Id. at 255.)  He supported his opinion by pointing to specific claims and the relevant supporting figures of the 2006 provisional.  (Id.)  In particular, Dr. Bartone testified that Figure 2B of the 2006 provisional depicts an example of a multibeam system in which a first feeder beam is proximate to a differently colored service beam.  (Doc. No. 1112 at 13-14; Doc. No. 923 at 256.)  He explained that Figure 2B also discloses that the first feeder beam is non-proximate to other, same-color service beams.  (Doc. No. 1112 at 14-16; Doc. No. 975 at 267.)  In addition, Dr. Bartone explained that Figure 2B discloses that a second feeder beam is non-proximate to all service beams and uses all colors.  (Doc. No. 1112 at 16-18.)  Based on this

testimony, Dr. Barone's review of all of the provisional applications, and the accompanying trial exhibits, a reasonable jury could have concluded that the 2006 provisional disclosed all of the limitations of Claim 12 of the '875 Patent and the provisional applications provided sufficient written description support.

After hearing evidence from both parties' experts, the jury determined that ViaSat could rely on the earlier filing date. (Doc. No. 1014.) The jury and not the court "is [] to make credibility determinations or weigh the evidence." Wintaro v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001). In deciding a motion for judgment as a matter of law, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable evidentiary inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000). Viewing the evidence in the light most favorable to ViaSat, the jury's conclusion was reasonable.

In the Ninth Circuit, "a district court may not grant a new trial simply because it would have arrived at a different verdict." Wallace v. City of San Diego, 479 F.3d 616, 630 (9th Cir. 2007) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted). But "the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 742 F.3d 377, 390 (9th Cir. 2014). Here, both ViaSat and SS/L presented evidence as to the priority date of the '875 Patent, and the jury's verdict was reasonable based on the evidence. As a result, the Court declines to grant a new trial on the issue of the priority date.

### B.   Jury Instructions on Priority Date

SS/L argues that a new trial is warranted because the Court failed to properly instruct the jury on the written description requirement. (Doc. No. 1053 at 23.) In order for the Court to grant SS/L's motion for a new trial, SS/L must establish that "(1) it made a proper and timely objection to the jury instructions; (2) those instructions

were legally erroneous; (3) the errors had prejudicial effect; and (4) it requested alternative instructions that would have remedied the error." <u>Advanced Display Sys. v. Kent State Univ.</u>, 212 F.3d 1272, 1281 (Fed. Cir. 2000) (internal citations omitted).

SS/L contends the instructions as given were legally erroneous because they allowed the jury to potentially find that the written description requirement of 35 U.S.C. § 112 was satisfied if undisclosed subject matter merely would have been obvious. (Doc. No. 1053 at 23.) The Court disagrees.

Whether a jury instruction is legally erroneous is a question of law, and when reviewing instructions for legal error, a court must read the jury instructions as a whole in light of the entire charge to the jury. <u>Advanced Display</u>, 212 F.3d at 1281. Here, the Court instructed :

> The written description requirement is satisfied if a person having ordinary skill reading the earlier-filed patent application would have recognized that they describe the invention as finally claimed in the patent and that the inventor actually possessed that full scope by the filing date of th patent application, although the exact words found in the claim need not be used.

(Doc. 1013 at Instr. No. 37.) The Court added that "enough [detail] must be included to convince a person of skill in the art that the inventor possessed the full scope of the invention." (<u>Id.</u>) There is nothing in the instruction that led jurors to believe that an obviousness standard was sufficient to satisfy the written description requirement. The jury instruction was an accurate statement of the written description requirement. As a result, the Court denies SS/L's motion for new trial on the grounds that the Court gave legally erroneous instructions to the jury regarding the written description requirement.

//
//
//
//
//
//

1  **IV.    Conclusion**

2         SS/L has not met its burden of establishing that the evidence presented at trial

3  required the jury to find that earliest date at which written support for the '875 Patent

4  existed was 2009.  See Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).  Nor does

5  SS/L present sufficient grounds to necessitate a new trial on infringement.

6  Accordingly, the Court denies SS/L's motion for judgment as a matter of law regarding

7  the priority date of the '875 Patent.

8         **IT IS SO ORDERED.**

9  DATED: August 8, 2014

10

11                                        MARILYN L. HUFF, District Judge
12                                        UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28