1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS, INC., <br><br> Defendants. | CASE NO. 3:12-CV-00260-H (WVG) <br><br> **ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL REGARDING NON-INFRINGEMENT (11 of 12)** <br><br> **[DOC. NOS. 968, 1043]** |

On April 10, 2014, Defendants Space Systems/Loral, Inc. and Loral Space & Communications, Inc. (collectively, "SS/L") filed a motion for judgment as a matter of law on non-infringement. (Doc. No. 968.) On June 13, 2014, SS/L filed a renewed motion for judgment as a matter of law or for new trial regarding non-infringement. (Doc. No. 1043.) On July 11, 2014, Plaintiff ViaSat, Inc. ("ViaSat") filed a response

1  in opposition to SS/L's motion.  (Doc. No. 1117.)  On July 25, 2014, SS/L filed a reply
2  in support of its motion.  (Doc. No. 1149.)  The Court held a hearing on August 7,
3  2014.  Charles K. Verhoeven, Sean S. Pak, Adam B. Wolfson, and Michelle A. Clark
4  appeared for ViaSat.  William C. Carmody, Jacob W. Buchdahl, Joseph S. Grinstein,
5  and Amanda K. Bonn appeared for SS/L.  For the following reasons, the Court denies
6  SS/L's motion.

7  **I.    Background**

8       This case arises from a dispute between two companies in the satellite
9  communications industry over contractual provisions and intellectual property.  ViaSat
10 is a corporation that develops commercial and military satellite and digital
11 communication technologies.  (Doc. No. 475 ¶¶ 9-11.)  SS/L is in the business of
12 manufacturing communications satellites and is a wholly owned subsidiary of Loral.
13 (Doc. No. 475 ¶ 14; Doc. No. 901 at 90.)  In 2006, ViaSat and SS/L began negotiating
14 over the possibility of collaborating on a major satellite construction project ("ViaSat-
15 1").  (Doc. No. 475 ¶ 32; Doc. No. 486 ¶ 32.)  Eventually, ViaSat and SS/L entered into
16 contractual agreements, including a contract for the construction of ViaSat-1 (the
17 "Build Contract") and multiple nondisclosure agreements ("NDAs").  (Doc. No. 475
18 ¶¶ 40-51; Doc. No. 486 ¶¶ 40-51.)

19      Around the same time, SS/L commenced a separate satellite project with Hughes
20 Network Systems ("Hughes") to build a satellite known as the Jupiter-1.  (Doc. No. 475
21 ¶ 56; Doc. No. 486 ¶ 56.)  According to ViaSat, SS/L gained access to confidential
22 information about ViaSat's technologies over the course of the ViaSat-1 project and
23 then passed this information on to Hughes for use on the Jupiter-1.  (Doc. No. 475 ¶¶
24 55-72.)

25      On February 1, 2012, ViaSat filed this lawsuit, and on November 14, 2013, it
26 filed a fourth amended complaint.  (Doc. Nos. 1, 475.)  ViaSat alleged that SS/L and
27 Loral had infringed United States Patents No. 8,010,043 ("the '043 Patent"), No.
28 8,107,875 ("the '875 patent"), No. 8,068,827 ("the '827 patent") and No. 7,773,942

("the '942 Patent").  (Doc. No. 475 at 73-88, 89-104, 105-120, 121-136.)  ViaSat also alleged that SS/L and Loral had breached the Build Contract and NDAs.  (Id. at 137-151.) SS/L filed counterclaims alleging that ViaSat had infringed United States Patents No. 6,400,696 and No. 7,219,132.  (Doc. No. 486 at 38-40, 40-41.)  ViaSat later withdrew its claims based on the '942 Patent, and SS/L withdrew its counterclaims. (See Doc. No. 842 at 8-9; Doc. No. 1014.)

The '043 Patent is entitled "Capacity Maximization for a Unicast Spot Beam Satellite System."  (Doc. No. 501-2 at 6.)  The '043 Patent involves the effects that interference and noise in a satellite system have on the system's data-carrying capacity. According to ViaSat, prior satellite designs sought to minimize interference in a satellite system so that the signal-to-interference ratio of the system ("C/I") would be greater than the signal-to-noise ratio ("C/N").  (Doc. No. 990 at 91-92.)  According to ViaSat, the key insight of the '043 Patent was to instead allow an interference-dominated environment: that is, a satellite system in which C/I is less than C/N.  (Id.) The '043 Patent discloses a method for adjusting the values of interference and noise in a system in order to maximize its data-carrying capacity, rather than attempting to limit interference.  (Id. at 92-95.)

The '827 patent is entitled "Non-interfering Utilization of Non-geostationary Satellite Frequency Band for Geostationary Satellite Communication." (Doc. No. 504-3 at 2; Doc. No. 901 at 12.)  A satellite can be geostationary ("GSO"), meaning that the satellite orbits the earth so that it remains in a fixed location relative to the ground, or non-geostationary ("NGSO"), meaning that the satellite does not orbit the earth in synchronization with the earth's rotation.  (Doc. No. 901 at 83-84; Doc. No. 990 at 141.) The Federal Communications Commission ("FCC") assigns one segment of radio frequencies preferentially to GSO satellites ("the GSO spectrum") and one segment preferentially to NGSO satellites ("the NGSO spectrum").  (See Doc. No. 1051-4.) The '827 Patent involves technology that enables a GSO satellite to use the NGSO spectrum without interfering with NGSO satellites. (Doc. No. 990 at 141-42.)

1    The '875 Patent is entitled "Placement of Gateways Near Service Beams." (Doc.

2  No. 1053-2 at 2; Doc. No. 901 at 11.)  Designers of satellite systems can achieve

3  different outcomes through different geographic arrangements of gateway terminals

4  and service beams.  The purpose of the '875 Patent is to increase data-carrying capacity

5  of a satellite system through a more efficient geographic placement of gateway

6  terminals and service beams. (Doc. No. 923 at 248-49.)

7    Prior to trial, SS/L moved for summary judgment of non-infringement or, in the

8  alternative, partial invalidity of the '043 Patent.  (Doc. No. 501.)  SS/L argued that the

9  Jupiter-1 does not maximize capacity in the manner that the '043 Patent teaches.  (Id.

10  at 7-8.)  The Court denied SS/L's motion based on genuine disputes of material fact.

11  (Doc. No. 652 at 7.)

12    Prior to trial, SS/L also moved for summary judgment of non-infringement or,

13  alternatively, invalidity of the '827 Patent.  (Doc. No. 504.)  SS/L argued that the '827

14  teaches a satellite with an on-board dynamic switch capable of moving in and out of

15  the NGSO spectrum based on interference information.  (Doc. No. 504-1 at 11.)  In

16  contrast, SS/L contended that the Jupiter-1 possesses a static switch that could be

17  commanded to eliminate NGSO transmissions altogether in the event that the satellite

18  risks interfering with an NGSO satellite.  (Id.)  The Court denied SS/L's motion based

19  on genuine disputes of material fact.  (Doc. No. 651 at 7.)

20    Additionally, prior to trial, SS/L moved for summary judgment of non-

21  infringement of the '875 Patent.  (Doc. No. 513.)  SS/L argued that the Jupiter-1 does

22  not infringe the '875 Patent because under ViaSat's own definition, it does not allocate

23  different colors to proximate service and feeder beams, as the '875 Patent teaches.  (Id.

24  at 5-13.)  The Court denied SS/L's motion based on genuine disputes of material fact.

25  (Doc. No. 649 at 8.)

26    The parties tried their case to a jury beginning on March 25, 2014.  (Doc. No.

27  901.)  The jury reached a verdict on April 24, 2014.  (Doc. No. 1021 at 3.)  The jury

28  determined that SS/L was liable for breach of contract and infringement of the '043,

1   '827, and '875 patents and awarded damages.  (Doc. No. 1014.)  In this motion, SS/L
2   asks the Court to rule that, as a matter of law under Rule 50(b) of the Federal Rules of
3   Civil Procedure, the Jupiter-1 does not infringe the '043, the '827, or the '875 Patent.
4   (Doc. No. 1043.)

5   **II.    Legal Standards**

6          *A.    Legal Standard of Judgment as a Matter of Law*

7          The law of the regional circuit, here the Ninth Circuit, governs the standards for
8   deciding a Rule 50 motion for judgment as a matter of law.  See, e.g., Leader Techs.,
9   Inc. v. Facebook, Inc., 678 F.3d 1300, 1305 (Fed. Cir. 2012).  Under Federal Rule of
10  Civil Procedure 50, a court should render judgment as a matter of law when "a party
11  has been fully heard on an issue during a jury trial and the court finds that a reasonable
12  jury would not have a legally sufficient evidentiary basis to find for the party on that
13  issue . . . ."  Fed. R. Civ. P. 50(a)(1); see Reeves v. Sanderson Plumbing Prods., 530
14  U.S. 133, 149 (2000).  In other words, the jury verdict should be overturned and motion
15  for judgment as a matter of law granted if the evidence "permits only one reasonable
16  conclusion, and that conclusion is contrary to the jury's verdict." Pavao v. Pagay, 307
17  F.3d 915, 918 (9th Cir. 2002); accord Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d
18  1301, 1309 (Fed. Cir. 2009); see also Hangarter v. Provident Life & Accident Ins. Co.,
19  373 F.3d 998, 1005 (9th Cir. 2004) ("judgment as a matter of law should be granted
20  only if the verdict is 'against the great weight of the evidence, or it is quite clear that
21  the jury has reached a seriously erroneous result.'").

22         In deciding a motion for judgment as a matter of law, the district court must view
23  the evidence in the light most favorable to the non-moving party and draw all
24  reasonable evidentiary inferences in favor of the non-moving party. Reeves, 530 U.S.
25  at 150; Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 802 (9th Cir. 2009).  A
26  district court must uphold a jury's verdict even if the record contains evidence that
27  might support a contrary conclusion to the jury's verdict. Pavao, 307 F.3d at 918.  The
28  court "is not to make credibility determinations or weigh the evidence." Wintaro v.

Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001). The district court must "accept the jury's credibility findings consistent with the verdict" and "disregard all evidence favorable to the moving party that the jury is not required to believe" because "[w]hen two sets of inferences find support in the record, the inferences that support the jury's verdict of course win the day." Wintaro, 274 F.3d at 1283, 1286-87.

### B.    Legal Standard for New Trial

Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial on some or all of the issues and to any party after a jury trial. Fed. R. Civ. P. 59(a)(1). Rule 59 does not specify specific grounds for new trial, but a court is bound to grant a new trial for "grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003); Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (internal citations and quotation marks omitted).  In patent cases, the law of the regional circuit, here the Ninth Circuit, governs the standards for deciding a Rule 59 motion for new trial. Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1328 (Fed. Cir. 2008).  In the Ninth Circuit, "a district court may not grant a new trial simply because it would have arrived at a different verdict." Wallace v. City of San Diego, 479 F.3d 616, 630 (9th Cir. 2007) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted).  But "the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 742 F.3d 377, 390 (9th Cir. 2014).

### C.    Legal Standard for Infringement

Under the United States Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent." 35 U.S.C. § 271(a).  Patent infringement is a question of fact. Absolute Software, Inc. v. Stealth Signal, Inc., 659 F.3d 1121, 1130-31 (Fed. Cir. 2011).  To determine whether there is direct infringement, the fact-finder compares the construed claims to the allegedly

infringing device and determines whether every limitation is present. <u>Gart v. Logitech, Inc.</u>, 254 F.3d 1334, 1339 (Fed. Cir. 2001). Infringement "requires that each and every limitation set forth in a claim appear in an accused product." <u>Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.</u>, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." <u>Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.</u>, 520 U.S. 17, 21 (1997) (quoting <u>Graver Tank & Mfg. Co. v. Linde Air Prods. Co.</u>, 339 U.S. 605, 609 (1950)). "[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." <u>Id.</u> at 29. The plaintiff must prove equivalency with "particularized testimony and linking argument." <u>Texas Instruments Inc. v. Cypress Semiconductor Corp.</u>, 90 F.3d 1558, 1566 (Fed. Cir. 1996).

**III.   Discussion**

In this motion, SS/L asks the Court to rule that, as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, the Jupiter-1 does not infringe the '043, '827, and '875 Patents. (Doc. No. 1043.)

*A.    Non-infringement of the '043 Patent*

SS/L argues that the Jupiter-1 satellite cannot have infringed the '043 Patent at any point before it was launched. (Doc. No. 1043 at 10.) SS/L argues that certain limitations of Claims 1 and 7 of the '043 Patent, such as the requirements that the satellite beam be affected by interference from other signal sources and that part of the beam be interference-dominated, cannot be met until the satellite is launched and operational. SS/L argues further that, even once launched, the Jupiter-1 does not maximize data-carrying capacity over alternate beam spacings and numbers of colors, and that the evidence presented at trial clearly demonstrated this point. (<u>Id.</u> at 11-16.) In addition, SS/L argues that ViaSat failed to present evidence of two overlapping spot

1  beams emanating from the same antenna, as the '043 Patent requires.  (Id. at 17-19.)

2  SS/L also argues that no reasonable jury could have determined that the Jupiter-1

3  infringes Claim 7 of the '043 Patent because ViaSat put forward no evidence that

4  Jupiter-1 ever sent any beams to subscriber terminals.  (Id. at 20.)

5  In its opposition, ViaSat argues that the asserted claims of the '043 Patent are

6  apparatus claims containing functional language and, as such, that Jupiter-1 infringed

7  these claims even before its launch.  (Doc. No. 1117 at 9-12.)  ViaSat argues that the

8  jury was entitled to find that the Jupiter-1 maximizes data-carrying capacity based on

9  evidence such as the Jupiter-1 performance specification, the Jupiter-1 critical design

10 review, and the testimony of ViaSat's expert Mr. Sturza.  (Id. at 13-16.)  With respect

11 to SS/L's's argument that the '043 Patent requires two overlapping spot beams

12 emanating from the same antenna, ViaSat argues that SS/L waived this argument by

13 failing to raise it earlier.  (Id. at 20.)

14 Under Federal Rule of Civil Procedure 50, a court should render judgment as a

15 matter of law when "a party has been fully heard on an issue during a jury trial and the

16 court finds that a reasonable jury would not have a legally sufficient evidentiary basis

17 to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1); see Reeves v.

18 Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000).  In other words, the jury verdict

19 should be overturned and motion for judgment as a matter of law granted if the

20 evidence "permits only one reasonable conclusion, and that conclusion is contrary to

21 the jury's verdict."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord Lucent

22 Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009).

23 At trial, ViaSat presented sufficient evidence for the jury to determine that the

24 Jupiter-1 infringed the asserted claims of the '043 Patent even before its launch.  When

25 functional claim language is used, the claim is read to "cover[] any and all

26 embodiments which perform the recited function."  In re Swinehart, 439 F.2d 210, 212

27 (C.C.P.A. 1971).  In the case of the '043 Patent, Claims 1 and 7 explain the claimed

28 satellite by describing the beams the satellite must be capable of emanating.

1   See Advanced Software Design Corp. v. Fiserv, Inc., 641 F.3d 1368, 1375 (Fed. Cir.

2   2011).  Because a reasonable jury could have determined that the Jupiter-1 infringed

3   the '043 Patent once it was capable of performing the functions that Claims 1 and 7

4   teach, even before it was launched, the Court declines to rule as a matter of law that no

5   infringement occurred before the launch of the satellite.

6         Furthermore, ViaSat presented sufficient evidence demonstrating that the

7   Jupiter-1 maximizes data-carrying capacity in the manner that the '043 Patent teaches.

8   For example, ViaSat presented the performance specification for the Jupiter-1 satellite,

9   which states that one of the requirements for the Jupiter-1 was to maximize the total

10  capacity of the system.  (Doc. No. 990 at 104.)  ViaSat also showed the jury the Jupiter-

11  1 critical design review, in which SS/L assured its customer, Hughes, that the Jupiter-1

12  maximizes data-carrying capacity.  (Id. at 104-05.)  A reasonable jury could be

13  persuaded by this circumstantial evidence that the Jupiter-1 maximizes data-carrying

14  capacity.  In addition, ViaSat's expert Mr. Sturza testified in detail regarding his

15  analysis of the Jupiter-1's capacity, and he shared his conclusion that the Jupiter-1

16  maximizes capacity relative to alternative beam spacings and numbers of colors.  (Id.

17  at 105-07.)  The jury was entitled to credit this testimony and find that the Jupiter-1

18  maximizes data-carrying capacity in the manner that the '043 Patent teaches.

19        With respect to SS/L's's argument that the '043 Patent requires two overlapping

20  spot beams emanating from the same antenna, SS/L essentially asks the Court to

21  construe the language of Claim 8 of the '043 Patent to require this limitation.[1]

22  "[L]itigants waive their right to present new claim construction disputes if they are

23  raised for the first time after trial."  Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683,

24  694 (Fed. Cir. 2008).  Accordingly, the Court declines to rule for SS/L as a matter of

25  law on this issue.  As a result, the Court denies SS/L's motion for judgment as a matter

26  _____

27        [1]SS/L argues in its reply that it is not asking the Court to give any special construction to the claim language at issue.  (Doc. No. 1149 at 3.)  Nonetheless, SS/L advocates a specific

28  interpretation of the claim language.  Neither party asked the Court to examine this language during claim construction.  (See Doc. Nos. 153, 154.)

- 9 -

1   of law that the Jupiter-1 does not infringe the '043 Patent.

2        In the Ninth Circuit, "a district court may not grant a new trial simply because

3   it would have arrived at a different verdict." Wallace v. City of San Diego, 479 F.3d

4   616, 630 (9th Cir. 2007) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot

5   Springs, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted).  But

6   "the district court can grant a new trial under Rule 59 on any ground necessary to

7   prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com

8   Ltd., 742 F.3d 377, 390 (9th Cir. 2014).  ViaSat presented sufficient evidence at trial

9   to show that the Jupiter-1 infringed the '043 Patent.  Accordingly, the Court denies

10  SS/L's motion for a new trial on infringement of the '043 Patent.

11       *B.    Non-infringement of the '827 Patent*

12       SS/L argues that the '827 Patent teaches satellite circuitry that switches in and

13  out of the NGSO spectrum based on information indicating a presence or an absence

14  of an interference situation, and that ViaSat offered no evidence that the Jupiter-1

15  switches in and out of the NGSO spectrum based on information.  (Doc. No. 1043 at

16  21.)  SS/L argues further that the '827 Patent teaches dynamic switching, but the

17  Jupiter-1 is incapable of dynamic switching.  (Id. at 22-24.)

18       In its opposition, ViaSat argues that SS/L's arguments rely on claim construction

19  positions that the Court has already rejected.  (Doc. No. 1117 at 21-22.)  ViaSat argues

20  further that it presented ample evidence at trial showing that the Jupiter-1 includes the

21  circuitry that Claim 7 of the '827 Patent requires.  (Id. at 22-23.)  ViaSat also argues

22  that substantial evidence at trial demonstrated that the Jupiter-1 is capable of the

23  dynamic switching that the '827 Patent teaches.  (Id. at 23-25.)

24       Under Federal Rule of Civil Procedure 50, a court should render judgment as a

25  matter of law when "a party has been fully heard on an issue during a jury trial and the

26  court finds that a reasonable jury would not have a legally sufficient evidentiary basis

27  to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1); see Reeves v.

28  Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000).  In other words, the jury verdict

1   should be overturned and motion for judgment as a matter of law granted if the

2   evidence "permits only one reasonable conclusion, and that conclusion is contrary to

3   the jury's verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord Lucent

4   Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009).

5        At trial, ViaSat presented sufficient evidence in support of its allegation that the

6   Jupiter-1 infringes the '043 Patent.  For example, the testimony of ViaSat's expert Mr.

7   Sturza included identification of relevant portions of the patent specification showing

8   how ground terminals can be used to send commands to the satellite indicative of an

9   interference event. (Doc. No. 990 at 154.)  It included identification of testimony from

10  SS/L's corporate designee stating that a command can be sent from the ground, or it can

11  be preprogrammed onto the Jupiter-1 to provide switching in and out of the NGSO

12  spectrum in the event of interference.  (Id. at 154-55.)  ViaSat also presented testimony

13  from SS/L's chief technology officer, Christopher Hoeber, that the Jupiter satellite had

14  the ability to turn the spectrum on and off in compliance with theFCC requirement of

15  non-interfering use.  (Id. at 155-56.)  Furthermore, ViaSat presented evidence of the

16  Jupiter-1 critical design review materials, which showed that the Jupiter-1 data

17  handling equipment handles both telecommands and time-tagged commands in the

18  same or equivalent manner as contemplated by the '827 Patent. (Id. at 156-57.)  ViaSat

19  also presented evidence of Hughes's filings with the FCC, which stated that Jupiter-1

20  was configured to dynamically shift in and out of the NGSO spectrum. (Id. at 180-84.)

21  Based on this evidence, a reasonable jury could have concluded that the Jupiter-1

22  satellite features dynamic switching and is capable of switching in and out of the

23  NGSO spectrum in the manner that the '827 Patent teaches.  As a result, the Court

24  declines to rule as a matter of law that the Jupiter-1 does not infringe the '827 Patent.

25        In the Ninth Circuit, "a district court may not grant a new trial simply because

26  it would have arrived at a different verdict." Wallace v. City of San Diego, 479 F.3d

27  616, 630 (9th Cir. 2007) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot

28  Springs, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted).  But

"the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 742 F.3d 377, 390 (9th Cir. 2014). ViaSat presented sufficient evidence at trial to show that the Jupiter-1 infringed the '827 Patent. Accordingly, the Court denies SS/L's motion for a new trial on infringement of the '827 Patent.

### C.    Non-infringement of the '875 Patent

SS/L argues that the Jupiter-1 satellite cannot have infringed the '875 Patent at any point before it was launched. (Doc. No. 1043 at 24-25.) SS/L explains that the '875 Patent requires that the satellite have a beam that is allocated specific colors, and a satellite cannot have a beam that is allocated a specific color before being launched. (Id.) SS/L argues further that Claims 1 and 12 of the '875 Patent require proximate gateway and user beams to not share the same color, but the evidence presented at trial clearly established that proximate gateway and user beams in the Jupiter-1 do share the same color. (Id. at 25-26.) SS/L also argues that Claims 1 and 12 of the '875 Patent require that the satellite allocate colors to a beam pattern, but ViaSat failed to put forward evidence that Jupiter-1 engages in any color allocation. (Id. at 26-27.)

In its opposition, ViaSat argues that the asserted claims of the '875 Patent are apparatus claims, so infringement was possible even before the launch of the Jupiter-1. (Doc. No. 1117 at 25-26.) It argues that the testimony of Dr. Bartone at trial was sufficient for the jury to determine that Jupiter-1 feeder beams are allocated different colors from proximate service beams. (Id. at 26-27.) Finally, ViaSat argues that the '875 Patent does not require the satellite to allocate colors to the respective beams. (Id. at 27-28.)

Under Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1); see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000). In other words, the jury verdict

should be overturned and motion for judgment as a matter of law granted if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009).

At trial, ViaSat presented sufficient evidence for the jury to determine that the Jupiter-1 infringed the asserted claims of the '875 Patent even before its launch. When functional claim language is used, the claim is read to "cover[] any and all embodiments which perform the recited function." In re Swinehart, 439 F.2d 210, 212 (C.C.P.A. 1971). In the case of the '875 Patent, Claim 1 describes the type of beams that the spot beam satellite must be configured to receive, including a feeder beam and a proximate service beam that are allocated different colors from the beam pattern. So long as the claimed spot beam satellite is capable of receiving the beams described in Claim 1, there is infringement even before the satellite is launched and begins actually receiving beams. See Advanced Software Design Corp. v. Fiserv, Inc., 641 F.3d 1368, 1375 (Fed. Cir. 2011). Thus, because a reasonable jury could have determined that the Jupiter-1 infringed the '827 Patent once it was capable of receiving beams, even before it was launched, the Court declines to rule as a matter of law that no infringement occurred before the launch of the satellite.

In addition, ViaSat presented evidence at trial showing that the Jupiter-1 contains feeder beams that are allocated different colors from proximate service beams. For example, ViaSat's expert Dr. Bartone identified feeder beam 10, centered over Englewood, Colorado, and service beam 60, centered over Denver, Colorado, as having coverage areas that were proximate to one another and being allocated different colors. (Doc. No. 923 at 277-78.) Based on this evidence, the jury was entitled to find that the Jupiter-1 meets the limitation that feeder beams must be allocated different colors from proximate service beams.

Finally, because Claims 1 and 12 of the '875 Patent are apparatus claims, the jury was entitled to find that Jupiter-1 infringes those claims if it is capable of allocating

colors in the manner that the '875 Patent describes.  The jury was not required to find that the Jupiter-1 actually engages in color allocation, as SS/L argues.  Accordingly, the Court denies SS/L's motion for judgment as a matter of law that the Jupiter-1 does not infringe the '875 Patent.

In the Ninth Circuit, "a district court may not grant a new trial simply because it would have arrived at a different verdict."  Wallace v. City of San Diego, 479 F.3d 616, 630 (9th Cir. 2007) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted).  But "the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice."  Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 742 F.3d 377, 390 (9th Cir. 2014).  ViaSat presented sufficient evidence at trial to show that the Jupiter-1 infringed the '875 Patent.  Accordingly, the Court denies SS/L's motion for a new trial on infringement of the '875 Patent.

*D.     Doctrine of Equivalents*

SS/L asks the Court to rule as a matter of law that SS/L is not liable under the doctrine of equivalents.  It argues that ViaSat did not provide "particularized testimony and linking arguments as to the insubstantiality of the differences between the claimed invention and the accused device or process . . . on a limitation by limitation basis." Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1567 (Fed. Cir. 1996); (Doc. No. 1043 at 27-31.)

Because ViaSat presented sufficient evidence for a reasonable jury to conclude that the Jupiter-1 literally infringes the '043, '827, and '875 Patents, the jury was also entitled to find infringement under the doctrine of equivalents.  See, e.g., Laitram Corp. v. NEC Corp., 62 F.3d 1388, 1395 (Fed. Cir. 1995) ("Because this court resolves the issues . . . on literal infringement grounds, this court need not reach the issue of infringement under the doctrine of equivalents.").

//

//

1

**IV.     Conclusion**

2          SS/L has not met its burden of establishing that the evidence presented at trial

3   required the jury to find SS/L not liable for infringement of the '043, '827, and '875

4   Patents.  See Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).  Nor does SS/L

5   present sufficient grounds to necessitate a new trial on infringement.  Accordingly, the

6   Court denies SS/L's motion for judgment as a matter of law or for new trial.

7          **IT IS SO ORDERED.**

8   DATED: August 8, 2014

9

                                          _____
10                                         MARILYN L. HUFF, District Judge
                                          UNITED STATES DISTRICT COURT
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -