**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIASAT, INC., VIASAT COMMUNICATIONS, INC., f/k/a WILDBLUE COMMUNICATIONS, INC.,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>SPACE SYSTEMS/LORAL, INC., LORAL SPACE & COMMUNICATIONS, INC.,<br><br>　　　　　Defendants. | CASE NO. 3:12-CV-00260-H (WVG)<br><br>**ORDER DENYING SS/L'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING INDEFINITENESS (8 of 12)**<br><br>**[DOC. NOS. 956, 1055]** |

On April 10, 2014, Defendants Space Systems/Loral, Inc. and Loral Space & Communications, Inc. (collectively, "SS/L") filed a motion for judgment as a matter of law that United States Patents No. 8,010,043 ("the '043 Patent") and 8,068,827 ("the '827 Patent") are invalid as indefinite. (Doc. No. 956.) On June 13, 2014, SS/L filed a renewed motion for judgment as a matter of law regarding indefiniteness of the '043

and '827 Patents. (Doc. No. 1055.) On July 11, 2014, Plaintiff ViaSat, Inc. ("ViaSat") filed a response in opposition to SS/L's motion. (Doc. No. 1114.) On July 25, 2014, SS/L filed a reply in support of its motion. (Doc. No. 1143.) The Court held a hearing on August 7, 2014. Charles K. Verhoeven, Sean S. Pak, Adam B. Wolfson, and Michelle A. Clark appeared for ViaSat. William C. Carmody, Jacob W. Buchdahl, Joseph S. Grinstein, and Amanda K. Bonn appeared for SS/L. For the following reasons, the Court denies SS/L's motion.

**I.     Background**

This case arises from a dispute between two companies in the satellite communications industry over contractual provisions and intellectual property. ViaSat is a corporation that develops commercial and military satellite and digital communication technologies. (Doc. No. 475 ¶¶ 9-11.) SS/L is in the business of manufacturing communications satellites and is a wholly owned subsidiary of Loral. (Doc. No. 475 ¶ 14; Doc. No. 901 at 90.) In 2006, ViaSat and SS/L began negotiating over the possibility of collaborating on a major satellite construction project ("ViaSat-1"). (Doc. No. 475 ¶ 32; Doc. No. 486 ¶ 32.) Eventually, ViaSat and SS/L entered into contractual agreements, including a contract for the construction of ViaSat-1 (the "Build Contract") and multiple nondisclosure agreements ("NDAs"). (Doc. No. 475 ¶¶ 40-51; Doc. No. 486 ¶¶ 40-51.)

Around the same time, SS/L commenced a separate satellite project with Hughes Network Systems ("Hughes") to build a satellite known as the Jupiter-1. (Doc. No. 475 ¶ 56; Doc. No. 486 ¶ 56.) According to ViaSat, SS/L gained access to confidential information about ViaSat's technologies over the course of the ViaSat-1 project and then passed this information on to Hughes for use on the Jupiter-1. (Doc. No. 475 ¶¶ 55-72.)

On February 1, 2012, ViaSat filed this lawsuit, and on November 14, 2013, it filed a fourth amended complaint. (Doc. Nos. 1, 475.) ViaSat alleged that SS/L and Loral had infringed the '043 and '827 Patents, as well as United States Patents No.

8,107,875 ("the '875 patent") and No. 7,773,942 ("the '942 Patent"). (Doc. No. 475 at 73-88, 89-104, 105-120, 121-136.) ViaSat also alleged that SS/L and Loral had breached the Build Contract and NDAs. (Id. at 137-151.) SS/L filed counterclaims alleging that ViaSat had infringed United States Patents No. 6,400,696 and No. 7,219,132. (Doc. No. 486 at 38-40, 40-41.) ViaSat later withdrew its claims based on the '942 Patent, and SS/L withdrew its counterclaims. (See Doc. No. 842 at 8-9; Doc. No. 1014.)

The '043 Patent is entitled "Capacity Maximization for a Unicast Spot Beam Satellite System." (Doc. No. 501-2 at 6 [hereinafter "'043 Patent"].) The '043 Patent involves the effects that interference and noise in a satellite system have on the system's data-carrying capacity. According to ViaSat, prior satellite designs sought to minimize interference in a satellite system so that the signal-to-interference ratio of the system ("C/I") would be greater than the signal-to-noise ratio ("C/N"). (Doc. No. 990 at 91-92.) According to ViaSat, the key insight of the '043 Patent was to instead allow an interference-dominated environment: that is, a satellite system in which C/I is less than C/N. (Id.) The '043 Patent discloses a method for adjusting the values of interference and noise in a system in order to maximize its data-carrying capacity, rather than attempting to limit interference. (Id. at 92-95.)

The '827 Patent is entitled "Non-interfering Utilization of Non-geostationary Satellite Frequency Band for Geostationary Satellite Communication." (Doc. No. 504-3 at 2 [hereinafter "'827 Patent"]; Doc. No. 901 at 12.) A satellite can be geostationary ("GSO"), meaning that the satellite orbits the earth so that it remains in a fixed location relative to the ground, or non-geostationary ("NGSO"), meaning that the satellite does not orbit the earth in synchronization with the earth's rotation. (Doc. No. 901 at 83-84; Doc. No. 990 at 141.) The Federal Communications Commission ("FCC") assigns one segment of radio frequencies preferentially to GSO satellites ("the GSO spectrum") and one segment preferentially to NGSO satellites ("the NGSO spectrum"). (See Doc. No. 1051-4.) The '827 Patent involves technology that enables a GSO satellite to use the

NGSO spectrum without interfering with NGSO satellites. (Doc. No. 990 at 141-42.)

Prior to trial, SS/L filed a motion seeking partial summary judgment of invalidity of the asserted claims of the '827 Patent or, in the alternative, of non-infringement. (Doc. No. 138.) SS/L argued that the "transmitter" limitation (id. at 6-15) and the "information indicating a presence or an absence of an interference situation" limitation of Claim 7 of the '827 Patent rendered the claim invalid as indefinite (id. at 15-17). The Court denied the motion because both portions of the claim language were susceptible to interpretations that would not render them indefinite. (Doc. No. 209 at 8-10.)

Additionally, prior to trial, SS/L filed a motion seeking partial summary judgment that the asserted Claims 1, 3, 5, 6, 7, and 8 of the '043 were invalid as indefinite pursuant to 35 U.S.C. § 112, ¶ 2. (Doc. No. 251.) SS/L argued that the claims recited both an apparatus and a use of that apparatus and were therefore indefinite. (Doc. No. 251-1 at 4.) The Court ruled that the cited language was permissible functional language under Microprocessor Enhancement Corp. v. Texas Instruments Inc. ("MEC"), 520 F.3d 1367 (Fed. Cir. 2008). (Doc. No. 358 at 8.)

The parties tried their case to a jury beginning on March 25, 2014. (Doc. No. 901.) The jury reached a verdict on April 24, 2014. (Doc. No. 1021 at 3.) The jury determined that SS/L was liable for breach of contract and infringement of the '043, '827, and '875 patents and awarded damages. (Doc. No. 1014.) In this motion, SS/L asks the Court to rule that, as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, the asserted claims of the '043 and '827 Patents are invalid as indefinite. (Doc. No. 1055.)

**II.  Legal Standards**

*A.  Legal Standard of Judgment as a Matter of Law*

The law of the regional circuit, here the Ninth Circuit, governs the standards for deciding a Rule 50 motion for judgment as a matter of law. See, e.g., Leader Techs., Inc. v. Facebook, Inc., 678 F.3d 1300, 1305 (Fed. Cir. 2012). Under Federal Rule of

Civil Procedure 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1); see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000). In other words, the jury verdict should be overturned and motion for judgment as a matter of law granted if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009); see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1005 (9th Cir. 2004) ("judgment as a matter of law should be granted only if the verdict is 'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'").

In deciding a motion for judgment as a matter of law, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable evidentiary inferences in favor of the non-moving party. Reeves, 530 U.S. at 150; Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 802 (9th Cir. 2009). A district court must uphold a jury's verdict even if the record contains evidence that might support a contrary conclusion to the jury's verdict. Pavao, 307 F.3d at 918. The court "is not to make credibility determinations or weigh the evidence." Wintaro v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001). "The court must accept the jury's credibility findings consistent with the verdict." Id. (internal quotation marks omitted). Finally, the district court must "accept the jury's credibility findings consistent with the verdict" and "disregard all evidence favorable to the moving party that the jury is not required to believe" because "[w]hen two sets of inferences find support in the record, the inferences that support the jury's verdict of course win the day." Wintaro, 274 F.3d at 1283, 1286-87.

//

//

*B.     Legal Standard for Indefiniteness*

Under 35 U.S.C. § 112, ¶ 2, the specification of a patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent." Halliburton Energy Servs., Inc., v. M-I LLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008). A claim that is indefinite is invalid under § 112. Id. at 1256. The statute "require[s] that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2129 (2014). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Id. at 2124.

A party seeking to prove that a patent claim is invalid for indefiniteness "must demonstrate by clear and convincing evidence that one skilled in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc., 723 F.3d 1363, 1368 (Fed. Cir. 2013) (quoting Wellman, Inc. v. Eastman Chem. Co., 642 F.3d 1355, 1366 (Fed. Cir. 2011)). In IPXL, the Federal Circuit ruled that a single claim covering both an apparatus and a method of use of that apparatus is invalid. 430 F.3d 1377, 1384 (Fed. Cir. 2005). The patent claim considered in that case read:

> The *system of claim 2* [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and *the user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

1  Id. (emphasis added by Federal Circuit).  The court reasoned that:

2      it is unclear whether infringement of [the claim] occurs when one
3      creates a system that allows the user to change the predicted transaction
    information or accept the displayed transaction, or whether infringement
    occurs when the user actually uses the input means to change transaction
4      information or uses the input means to accept a displayed transaction.

5  Id.  The claim was thus invalid as indefinite because it did "not apprise a person of

6  ordinary skill in the art of its scope."  Id.

7         The Federal Circuit has since clarified that an apparatus claim is not necessarily

8  invalid for including functional language.  See, e.g., MEC, 520 F.3d at 1374.  The

9  analysis turns on whether the functional language is likely to confuse the reader as to

10 whether the claim recites an apparatus or a method.  Id. at 1375.  In MEC, for example,

11 the Federal Circuit determined that the language in question described the functional

12 capacity of the apparatus and therefore did not convert an apparatus claim into an

13 indefinite apparatus-method claim.  Id.; In re Katz Interactive Call Processing Patent

14 Litigation, 639 F.3d 1303, 1318 (Fed. Cir. 2011) ("The court in [MEC] distinguished

15 IPXL because the method claim in [MEC] did not create any confusion as to when the

16 claim was directly infringed . . . .").

17 **III.  Discussion**

18        In this motion, SS/L asks the Court to rule that, as a matter of law under Rule

19 50(b) of the Federal Rules of Civil Procedure, the asserted claims of the '043 and '827

20 Patents are invalid as indefinite.  (Doc. No. 1055.)

21        *A.    Invalidity of the Asserted Claims of the '043 Patent*

22        SS/L argues that Claim 1 of the '043 Patent recites both an apparatus and a

23 method and is therefore invalid as indefinite under IPXL Holdings, LLC v.

24 Amazon.com, Inc., 430 F.3d 1377 (Fed. Cir. 2005).  (Doc. No. 1055 at 7-10.)  SS/L

25 argues further that Claim 3 of the '043 Patent is invalid as indefinite because it depends

26 from Claim 1, and that Claims 7 and 8 of the '043 Patent are invalid as indefinite

27 because they contain the same limiting language that renders Claim 1 indefinite.  (Id.

28 at 13-14.)

The first instance of limiting language (the "'reception of signals' limitation") reads as follows:

> the first spot beam as sent to the at least one of the first plurality of subscriber terminals is further affected by noise at a signal-to-noise ratio C/N, whereby reception of signals from the first spot beam by the at least one of the first plurality of subscriber terminals is interference-dominated such that C/I is less than C/N . . .

('043 Patent, claim 1.) Defendants SS/L argue that Claim 1 is an apparatus claim, and "whereby reception of signals from the first spot beam by the at least one of the first plurality of subscriber terminals is interference dominated such that C/I is less than C/N" recites a use of that apparatus. Defendants contend that this language recites limitations about how the first spot beam is received (reception) by a user (subscriber terminal). (Doc. No. 1055 at 8.) According to SS/L, Claim 1 mixes apparatus and method limitations and is therefore invalid as indefinite. (Id.)

The second instance of limiting language (the "'operated to maximize' limitation") reads as follows:

> the satellite is operated to maximize data-carrying capacity of the plurality of spot beams as measured in bits/Hz, by utilizing a beam pattern having a specific number of color(s) of frequency and polarization and specific beam spacing that results in higher data-carrying capacity of the plurality of spot beams than achieved with other alternative numbers of color(s) of frequency and polarization and beam spacings.

('043 Patent, claim 1.) SS/L argues that the "operated to maximize" language recites the way in which the apparatus is to be used rather than describing the apparatus. (Doc. No. 1055 at 7.) Because Claim 1 also recites an apparatus, SS/L argues that it mixes apparatus and method limitations and is therefore invalid as indefinite. (Id.) ViaSat responds that the claim language that SS/L cites is functional language under MEC, 520 F.3d at 1367. (Doc. No. 1114 at 10-22.)[1]

"[A] patent is invalid for indefiniteness if its claims, read in light of the

---

[1] ViaSat also argues that the Court should deny SS/L's motion because the Court ruled against SS/L on the same issues before trial, and the motion does not meet the standard for reconsideration. (Doc. No. 1114 at 8-9.) The Court agrees but elects to resolve these issues on the merits.

specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014).  A party seeking to prove that a patent claim is invalid for indefiniteness "must demonstrate by clear and convincing evidence that one skilled in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art."  Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc., 723 F.3d 1363, 1368 (Fed. Cir. 2013) (quoting Wellman, Inc. v. Eastman Chem. Co., 642 F.3d 1355, 1366 (Fed. Cir. 2011)).

In context, the claim uses the "reception of signals" language to describe the character of the signals that the satellite produces rather than a method or methods for using the satellite system. (Id.)  SS/L's argument to the contrary relies unduly on the claim's references to the subscriber terminals. (Doc. No. 1055 at 11.)  In evaluating whether the claim language mixes a method and an apparatus, the Federal Circuit evaluates whether the functional language confuses those skilled in the art as to the scope of the claim.  MEC, 520 F.3d at 1374.  Here, rather than rendering the claim unclear, the "reception of signals" language helps a person of skill in the art to determine whether an apparatus practices the claimed invention.  The person can do so by examining the character of the signal that the subscriber terminals receive.

Moreover, the claim language is not confusing to one skilled in the art.  For example, ViaSat's expert Mr. Sturza testified as to the meaning of the "reception of signals" limitation and how he, as a person skilled in the art, uses it to determine whether a satellite practices the '043 Patent. (Doc. No. 990 at 101.)  As a result, SS/L has failed to establish as a matter of law that the "reception of signals" limitation renders claims 1, 3, 5, 6, 7, and 8 of the '043 Patent invalid as indefinite.

Additionally, the "operated to maximize" language is functional language.  The claim does not require any use or action by the end user of the satellite for infringement to occur.  Instead, the "operated to maximize" language informs a person of ordinary

skill in the art how the beam pattern and beam spacing of the satellite should be designed functionally. For example, the specification describes a satellite with a beam and frequency plan configured before launch to maximize data-carrying capacity to the extent practicable. The variables involved include the frequency ranges and polarizations for the beams, the beam placement, and the arrangement of which colors are placed where within the satellite's coverage area. (See '043 Patent at 30-31.)

SS/L's expert Dr. Helgert testified at trial about his understanding of the meaning and scope of this limitation. (Doc. No. 931 at 179.) He stated that the claim language at issue was not confusing to him as a person of skill in the art. (Id. at 180.) A claim is invalid for indefiniteness only if a person of skill in the art would be confused about what infringes and what does not. See, e.g., Nautilus, 134 S. Ct. at 2124. As a result, the Court declines to rule that the asserted claims of the '043 Patent are invalid as indefinite.

### B. Invalidity of the Asserted Claims of the '827 Patent

SS/L argues that Claim 7 of the '827 Patent is indefinite because the "based on information" limitation teaches a satellite that activates or deactivates the NGSO frequency spectrum based on the subjective motivations of the individual on the ground who is operating the satellite. (Doc. No. 1055 at 14-17.) SS/L argues further that Claim 7 is indefinite because the phrase "a transmitter configured to transmit in one of the GSO frequency band and in the NGSO frequency spectrum" is logically inconsistent with the rest of the claim, rendering it nonsensical. (Id. at 17-20.)

ViaSat argues that Claim 7 does not depend on the subjective determinations of a third party because a person of ordinary skill in the art of satellite communications could objectively determine whether there is an interference situation. (Doc. No. 1114 at 23.) It argues that the phrase "one of" can mean "one or more of," and that the claim language is coherent under this interpretation. (Id. at 27.)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with

reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014).  A party seeking to prove that a patent claim is invalid for indefiniteness "must demonstrate by clear and convincing evidence that one skilled in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art."  Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc., 723 F.3d 1363, 1368 (Fed. Cir. 2013) (quoting Wellman, Inc. v. Eastman Chem. Co., 642 F.3d 1355, 1366 (Fed. Cir. 2011)).

SS/L's argument that the "based on information" limitation relies on the subjective intent of a third party is unavailing.  Claim 7 is directed to a GSO satellite that includes circuitry configured to activate the NGSO frequency spectrum "based on information indicating a presence or absence of an interference situation." ('827 Patent, Claim 7.)  A claim term is not ambiguous if there is sufficient guidance in the patent to put the public on notice of the claim scope.  See Starr Scientific, Inc., v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1374 (Fed. Cir. 2011) (holding claim term not indefinite because a person of skill in the art would not find the term ambiguous).

Here, one of ordinary skill in the art would be able to discern the boundaries of the claims because the patent provides examples of interference situations and how to measure them.  See, e.g., '827 Patent, 8:1-60; see also Datamize, 417 F.3d at 1350 (distinguishing Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.3d 1565 (Fed. Cir. 1986) because in that case "one of ordinary skill in the art would easily have been able to determine the appropriate dimensions that the claim language required").  As ViaSat points out, the '827 Patent and the knowledge of a person of ordinary skill in the art provide objective criteria defining "information that indicates the presence or absence of an interference situation."  See Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1335 (Fed. Cir. 2010) (finding imprecise claim term not indefinite because the intrinsic evidence provided sufficient criteria for a person of ordinary skill to understand the scope of the claim).  Thus, Claim 7 of the '827 Patent is not indefinite

on the grounds that the "based on information" limitation depends on the subjective intent of the individual operating the satellite.

With respect to the "transmitter" language, SS/L's argument relies on Claim 7's use of "one of," arguing that referring to "in one of X and Y" renders the "and" disjunctive rather than conjunctive. In a similar case, the Federal Circuit has held that the phrase "one of" may be interpreted as meaning "one or more of" depending on the claim language and specification. See Accent Packaging, Inc. v. Leggett & Platt, Inc., 707 F.3d 1318 (Fed. Cir. 2013). Accent Packaging involved a construction of a claim that stated "each of the operator bodies" was "operatively coupled with a respective one of" four listed operator elements. Id. at 1325. But the preferred embodiments in the specification showed operator bodies coupled to more than one of the listed operator elements. Id. The court interpreted "one of" to mean "one or more" of each of the operator elements to reflect the preferred embodiments. Id. at 1325-26.

Here, the remainder of Claim 7 and the specification describe the satellite transmitting either in a GSO band or in both GSO and NGSO bands together, never referring to transmitting in an NGSO-only mode. See, e.g., '827 Patent, Abstract, Figs. 5-6, 2:42-53, 15:51-16:17. SS/L's argument would exclude all embodiments discussed in the specification. See Vitrionics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583-84 (Fed. Cir. 1996) (noting construction that excludes preferred embodiments is "rarely, if ever, correct"). Further, the concluding phrase of the "transmitter" element, "based on the activated frequency spectrum mode," limits the choice among frequency bands to those that comport with the activated frequency spectrum mode; namely, the GSO-only mode or the GSO + NGSO mode. '827 Patent, 15:47-49.

Like the court in Accent Packaging, this court interprets the claim language according to the embodiments in the specification and the surrounding claim language and concludes that "one of" is used in the transmitter limitation to mean "one or more of." Based on that construction, the transmitter is configured to operate either in the GSO frequency band or in both the GSO frequency band and the NGSO frequency

band, depending on the activated frequency mode, and the claim language is not indefinite. Accordingly, the Court denies SS/L's motion with respect to the '827 Patent.

## IV. Conclusion

SS/L has not shown that no reasonable jury could have found that it failed to meet its burden of establishing by clear and convincing evidence that the asserted claims of the '043 or the '827 Patent are invalid as indefinite. Accordingly, the Court denies SS/L's motion for judgment as a matter of law.

**IT IS SO ORDERED.**

DATED: August 8, 2014

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT